John Cobb – Plaintiff
3955 Mt. Albertine Way
San Diego, CA 92111
Telephone: (858) 277-2026.

////
////
////

FILED
JAN 31 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA.**

| | |
|---|---|
| John Cobb, Plaintiff, | Violations of Civil Rights - § 1983; |
| vs. | Conspiracy To Violate Civil Rights - § 1983; |
| 1.) J. Reyes ( ID 606 ); | Violations of Civil Rights - § 1985; |
| 2.) S. Gustafson ( ID 601 ); | Conspiracy To Violate Civil Rights - § 1985(2); |
| 3.) Lt. Tom Morris ( ID 691 ); | Conspiracy To Violate Civil Rights - § 1985(3); |
| 4.) William MacIntyre ( ID 617 ); | Neglect to Prevent Conspiracy - § 1986; |
| 5.) Lt. David Rose ( ID 690 ); | Assault and Battery; |
| 6.) U.C.S.D. Police Chief O. King; | False Imprisonment; |
| Prosecutors: | California Due Process Violations; |
| 7.) Michael Hudson; | California Equal Protection Violations; |
| 8.) Mike Aguirre; | Intentional Infliction of Severe Emotional Distress; |
| 9.) Bonnie Dumanis; | Negligent Infliction of Severe Emotional Distress; |
| Public Defenders: | Negligent entrustment. |
| 10.) Shane McKay; | '08 CV 0188 JAH WMc |
| 11.) Steven Carroll; | Case Number : ________________. |
| 12.) Does 1 through 100; | Judge: ____________________. |
| Defendants. | Department: __________. |
| | Filed: _____________, 2008. |

////
////
////

## INTRODUCTION

This is an action for money damages and for injunctive relief brought pursuant to 42 U.S.C. §§ 1983 through 1988, and the Equal Protection, Due Process, Fourth and Fourteenth Amendments to the United States Constitution, and under the common law of the State of California.

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

---

## A. PARTIES

### I. Plaintiff:

#### a. John Cobb

Plaintiff John Cobb ( " Plaintiff " ) was at all material times, a citizen of the United States of America, a resident of the State of California, and resident of San Diego County, and of full age.

Plaintiff is male, Caucasian, was born in the United Kingdom, is a homosexual, and is Episcopalian.

### II. Defendants:

#### U.C.S.D. Police Officers

#### ( Instant Case ( 2-3-2006 Incident ) Officers )

#### i. J. Reyes ( ID 606 )

J. Reyes ( ID 606 ) is a U.C.S.D. Police Department police officer. He is one of three U.C.S.D. police officers involved in the 2-3-2006 incident, involving Plaintiff. He is the officer who wrote Plaintiff Citation UC 62151 for " 647(d) Public toiled lewd act ", and circled " M ", charging a misdemeanor, herein included as Exhibit No. 38. He is the police officer who wrote the section of the police report that includes the R/P ( " Reporting / Party " ) Atila Cilingir statement, herein include as Exhibit No. 42, page 3 ( 4th page of exhibit ). He is the officer who issued Plaintiff a PC § 626.6 stay away order. He and Officer Gustafson were involved in the battery upon Plaintiff.

#### ii. S. Gustafson ( ID 601 )

J. Gustafson ( ID 601 ) is a U.C.S.D. Police Department police officer. He is one of three police officers involved in the 2-3-2006 incident, involving Plaintiff. He co-authored the police report –

Exhibit No, 42. He and Office Reyes were involved in the battery upon Plaintiff.

**iii. Lt. Tom Morris ( ID 691 )**

Lt Tom Morris ( ID 691 ) is a U.C.S.D. Police Department police officer. Lt. Morris is referred to as Sgt. Morris ( ID 651 ) is the incident police report – Exhibit No. 42. He is one of three police officers involved in the 2-3-2006 incident, involving Plaintiff. He is the officer who took three photographs of Plaintiff ( Refer to Exhibit No. 42, page 3 – fourth page of exhibit, second paragraph from bottom ).

**iv. William MacIntyre ( ID 617 )**

Def. MacIntyre is the arresting officer in the 1993 Briggs incident ( Exhbits No. 3-9 ).

Def. MacIntrye illegally arrested Plaintiff, following Plaintiff's exercise of his First Amendment right to speak. Plaintiff told Def. MacIntyre that Briggs was lying, and that she walked over to his side of the path, etc. Immediately after this, Plaintiff was unlawfully, and without reasonable and probable cause, arrested by Def. MacIntyre. Def. MacIntyre acted with malice.

During this 1993 Incident, Def. MacIntyre acted with discriminatory intent, with vindictiveness and retaliation, after Plaintiff exercised his constitutional rights. A discriminatory police investigation ensued. Def. MacIntyre conspired to cover up Ms. Briggs crimes.

Plaintiff was further unlawfully detained by being unlawfully taken to County Mental Health. This occurred after Plaintiff pointed out to MacIntyre, Briggs' footprints on his white pants.

It is alleged that Officer MacIntyre is promoting and ratifying the policies, customs, and practices at the U.C.S.D. Police Department, which are the causes of rights violations.

**v. Lt. Rose ( ID 690 )**

Def. Lt. Rose, was involved in the 1993 Briggs incident ( Exhibits No. 3-9 ). Plaintiff told Def. Rose what had happened, and pointed out Briggs' footprints to Def. Rose. Following this, Def. Lt. Rose acted with vindictiveness and retaliation, and examined Plaintiff's eyes with a meter, and following this, Plaintiff was unlawfully taken to County Mental Health. This examination was without reasonable suspicions, and Plaintiff was further restrained in his freedom by being taken to County Mental Health. Def. Rose conspired to cover up Ms. Briggs crimes, and acted with malice. It is alleged that Officer Rose is promoting and ratifying the policies, customs, and practices at the U.C.S.D. Police Department, which are the causes of rights violations.

### vi. Orville King ( ID 600 )

Chief Orville King ( ID No. 600 ) is the U.C.S.D. Police Dept. police chief. He is being sued in his personal and professional capacity. This means that the U.C.S.D. Police Department itself is being named as a defendant as well.

The U.C.S.D. Police Department is being sued for misconduct and continued violation of Plaintiff's rights. The U.C.S.D. Police Department has a policy, custom, and practice of violating Plaintiff's rights. This includes conspiracies to violate Plaintiff's rights, including his fundamental right to be free from illegal searches and seizures.

The University of California at San Diego Police Department ( " U.C.S.D. Police Department " ), is the employer of all named U.C.S.D. Police Officers.

## Prosecution

### vii. Michael Hudson

Michael Hudson is believed to the San Diego City Attorney who prosecuted the accusatory pleading. He is being sued in his personal and professional capacity.

### viii. San Diego City Attorney – Mike Aguirre

The San Diego City Attorney is being named as a defendant. Mike Aguirre is the current City of San Diego City Attorney. He is being sued in his professional capacity.

### ix. District Attorney, San Diego County – Bonnie Dumanis

District Attorney Bonie Dumanis, is the current San Diego District Attorney. She is being sued in her professional capacity.

## Public Defenders

### x. Shane McKay

Shane McKay is the Public Defender who negotiated Plaintiff's plea bargain deal, for Case No. M 992810. Defendant Carroll is being sued in his personal and professional capacity.

### xi. County of San Diego, Public Defender – Steven Carroll

The County of San Diego, Public Defender, provided Plaintiff with his defense counsel. Defendant Carroll is being sued in his personal and professional capacity.

### xii. Unknown Defendants Does 1-100

Defendants Does 1-100 are currently unknown. Plaintiff will amend this complaint upon the

determination of these currently unknown defendants.

## Duty of Care

Each of the Defendants named in this law suit, had a duty of care, to protect Plaintiff's Constitutional Rights, including his life, liberty, and pursuit of happiness.

Each of the Defendants had a duty of care to know the law, and to know what facts constitute a violation of the laws, and what facts are not a violation of the laws.

### i. U.C.S.D. Officer Reyes

Defendant U.C.S.D. Office Reyes had a duty of care in the performance of his police job. Officer Reyes failed this duty of care and inflicted physical harm and extreme emotion distress upon Plaintiff John Cobb.

Officer Reyes acted with couscous disregard of Plaintiff's rights in perfuming his duty when he conducted his investigation and wrote Plaintiff a citation for a misdemeanor violation of " PC 647(d) Public toilet lewd act ".

Officer Reyes willfully and maliciously disregarded Plaintiff's rights in perfuming his duty when he conducted his investigation and wrote Plaintiff a citation for a misdemeanor violation of " PC 647(d) Public toilet lewd act ".

### ii. Other U.C.S.D. Police Officers

All other Def. U.C.S.D. police officers also had a duty of care, in conducting their duties. These other police officers violated their duty of care, willfully, and with causations and malicious disregard of Plaintiff's rights.

## B. FACTS REGARDING INSTANT CASE

### i. Officer Reyes' Bad Faith Acts

On 2-3-2006, Def. Officer Reyes interviewed the reporting Party, Atila Cilingir, and then wrote Plaintiff a citation for violation of PC § 647(d). The citation reads " 647(d) Public toilet lewd act ", and circles a misdemeanor violation. Refer to exhibit No. 38.

### ii. PC § 647(d) Law and Definition of Lewd Acts

Penal Code Section 647(d) reads as follows:

" (d) Who loiters in or about any toilet open to the public for the purpose of

engaging in or soliciting any lewd or lascivious or any unlawful act. ".

Lewd conduct is defined as ( from CALJIC 16.400 – must be each of the following ):

" 1. A person engaged in conduct that involved the touching of genitals, buttocks, or a female breast;

2. That the person did so with the specific intent to sexually arouse, gratify, annoy, or offend; ... ".

### iii. No Probable Cause To Issued Citation for PC § 647(d)

#### a. No Lewd Acts

U.C.S.D. Officer Reyes wrote a police report herein included as Exhibit No. 42. This contains a statement of the Reporting Party, Atila Cilinger ( Page 3 – fourth page of exhibit ). This police report and Cilingir statement is the product of Officer Reyes' investigation and interview of Reporting Party Cilingir.

This Reporting Party statement does not state any probable cause for a violation of PC § 647 (d). There are no facts constituting lewd or lascivious conduct ( defined above),, nor any facts relating to sex, sexual conduct of any kind, including masturbation.

### xiii. No Loitering

Further, there are no facts which state that Plaintiff was loitering. From the case People v. Caswell; 46 Cal. 3d 381; 758 P.2d 1046 ( Supreme Court of California ):

" ... Under such circumstances, if the officer observes the individual linger suspiciously in the restroom for an inordinately long period of time, he might properly infer that the suspect did not have an innocent intent. ".

There are no facts in the Reporting Party's ( Cilingir's ) statement which state that Plaintiff was waiting about for an " inordinately long period of time ".

### xiv. Plaintiff Did Not Violate Any Other Law

Further, there are no facts which constitute Plaintiff's ( Defendant John Cobb's ) violation of any other law – " any unlawful act ".

### iv. Officer Reyes' Bad Faith Acts

Defendant Officer Reyes acted in bad faith by doing the following acts:

- Not having reasonable suspicion nor probable cause to contact Plaintiff ( Defendant

John Cobb ) on the date of the incident ( 2-3-2006 ):

- Not having reasonable suspicion nor probable cause to issue Plaintiff a citation for violation of " PC 647(d) ":
- Searching Plaintiff's backpack:
- Not having reasonable suspicion nor probable cause to take " three digital photographs " of Plaintiff ( assuming he was involved in the taking of the photos ).
- Falsifying his police report to fabricate facts, and falsely accuse Plaintiff of violating the law. These falsified facts include;
  - i. Falsely mischaracterizing the initial Reporting Party's ( " R/P ") call as a call involving " lewd " acts;
  - ii. Falsely stating that Plaintiff refused to identify himself, and refused to tell the police officers who he was;
  - iii. Falsely stating that R/P Cilingir stated that " [ added; Cobb ] continued looking at him ";
  - iv. Gustafson pulled Plaintiff's backpack away from Plaintiff and Plaintiff resisted;
  - v. Plaintiff fell over onto the ground.

### v. <u>Officer Reyes – No Qualified Immunity</u>

Officer Reyes' issuing of the misdemeanor citation for " PC 647(d) Public toilet lewd act "was not reasonable, was issued without probable cause, and therefore, is not protected by qualified immunity. Def. Reyes acted with malice throughout his dealings with Plaintiff.

Officer Reyes did commit a battery upon Plaintiff by grabbing items out of Plaintiff's shirt pocket. Officer Reyes had no reason, and no probable cause to grab said item ( bus passes ) out of Plaintiff's shirt pocket.

Officer Reyes did commit an assault and battery upon Plaintiff by grabbing him and taking him down to the ground, and rolling him over. Said act scrapped Plaintiff's knee and bruised his hip.

Officer Reyes did commit a battery upon Plaintiff by placing handcuffs on Plaintiff.

Officer Reyes did violate Plaintiff's rights by illegally searching Plaintiff's backpack.

Officer Reyes did illegally obtain Plaintiff's information, this being his driver's license, his date of birth, height, weight, and other personal descriptors ( Refer to Exhibit No 38 ).

### vi. Officer Gustafson's Bad Faith Acts

Defendant Officer Gustafson acted in bad faith by doing the following acts:

- Not having reasonable suspicion nor probable cause to contact Plaintiff ( Defendant John Cobb ) on the date of the incident ( 2-3-2006 ):
- Not having reasonable suspicion nor probable cause to issue Plaintiff a citation for violation of " PC 647(d) " ( assuming he was involved in issuing the citation ):
- Searching Plaintiff's backpack:
- Not having reasonable suspicion nor probable cause to take " three digital photographs " of Plaintiff ( assuming he was involved in the taking of the photos ).
- Falsifying his police report to fabricate facts, and falsely accuse Plaintiff of violating the law. These falsified facts include;

i. Falsely stating that Plaintiff was looking over bathroom stall walls ( i.e. plural ).

ii. Falsely stating that Plaintiff refused to identify himself, and refused to tell the police officers who he was;

iii. Gustafson pull Plaintiff's backpack out of his hands;

iv. Plaintiff tried to pull his backpack out of Officer Gustafson's hands;

v. Plaintiff dropped his backpack;

vi. Plaintiff fell over onto the ground.

### vii. Officer Gustafson – No Qualified Immunity

Officer Gustafson's issuing of the misdemeanor citation for " PC 647(d) Public toilet lewd act " was not reasonable, was issued without probable cause, and therefore, is not protected by qualified immunity. ( This assumes that Officer Gustafson was involved in the issuance of the citation ). Def. Gustafson acted with malice throughout his dealings with Plaintiff.

Officer Gustafson did commit an assault and battery upon Plaintiff by grabbing him and taking him down to the ground, and rolling him over. Said act scrapped Plaintiff's knee and bruised his hip. Officer Gustafson did commit a battery upon Plaintiff by placing handcuffs on Plaintiff.

Officer Gustafson did violate Plaintiff's rights by illegally searching Plaintiff's backpack.

Officer Gustafson did illegally obtain Plaintiff's information, this being his driver's license, his date of birth, height, weight, and other personal descriptors ( Refer to Exhibit No 38 ) ( assuming

he did this ).

**viii. Officer Sgt. Morris' Bad Faith Acts**

Defendant Officer Sgt Morris ( ID No. 651 ) was a Sergeant at the time of the incident. He is now a Lieutenant Morris ( ID No. 691 ). Defendant Morris acted in bad faith by doing the following acts:

- Not having reasonable suspicion nor probable cause to contact Plaintiff ( Defendant John Cobb ) on the date of the incident ( 2-3-2006 ):
- Not having reasonable suspicion nor probable cause to issue Plaintiff a citation for violation of " PC 647(d) " ( assuming he was involved in issuing the citation ):
- Not having reasonable suspicion nor probable cause to take " three digital photographs " of Plaintiff. Def. Morris acted with malice when taking said photographs.

**ix. Officer Sgt. Morris – No Qualified Immunity**

Officer Morris' issuing of the misdemeanor citation for " PC 647(d) Public toilet lewd act " was not reasonable, was issued without probable cause, and therefore, is not protected by qualified immunity. ( This assumes that Officer Morris was involved in the issuance of the citation ). Def. Morris acted with malice throughout his dealings with Plaintiff.

Officer Morris did illegally obtain Plaintiff's information, this being his driver's license, his date of birth, height, weight, and other personal descriptors ( Refer to Exhibit No 38 ) ( assuming he did this ).

Officer Morris did illegally take three digital photographs of Plaintiff.

---

**Claim and Denial of Claim**

Plaintiff filed a claim herein include as Exhibit No. 46. This claim was denied – claim denial letter, herein included as Exhibit No. 47.

---

**COUNTS**

For each of the Counts, Section A above, and Plaintiff's Declaration, herein included, are incorporated into each Count, by reference as though fully set forth.

Each of the Police Defendants, including the U.C.S.D. Police Department, are alleged to have violated Plaintiff's Constitutional rights. Are alleged to have conspired to violate Plaintiff's rights.

Violated Plaintiff's right to be free from unlawful and unreasonable searches and seizures. All are alleged to have; acted with malicious; acted with a conscious disregard of Plaintiff's rights; used excessive force in effecting a search; unlawfully and without probable cause causing Plaintiff to be placed in fear of his personal safety; unlawfully and without probable cause committing a battery upon Plaintiff; unreasonably, unlawfully and without Plaintiff's will, restrained him his movement and freedom to move, which constituted false imprisonment.

Each of the Defendants are alleged to have conspired to violate Plaintiff's Constitutional rights. Conspired to explicitly and implicitly, condone unlawful acts, which violated Plaintiff's rights.

All defendant prosecutors, including the San Diego District Attorney, and the San Diego City Attorney, are alleged to have, by words and / or conduct, either explicitly and / or implicitly, authorized police officers to have engaged in conduct which violated Plaintiff's Constitutional rights. This violation of Plaintiff's Constitutional rights has been ongoing for many years. There are a substantial number of officer's acts which have been condoned by the prosecutors, and even defense attorneys. Prosecutors have engaged in discriminatory, selective, vindictive, and retaliatory prosecutions of Plaintiff, over the years. Unreasonable probation terms are made.

**Count 1 – Violation of 42 U.S.C. § 1983**

**(Against All Defendants)**

All Defendants are being sued for violation of Plaintiff's Constitutional rights, including his right against unlawful and unreasonable searches and seizures, and his due process and equal protection rights. Selective, malicious and discriminatory prosecutions are taking place.

**Count 2 – Conspiracy to Violate Civil Rights – 42 U.S.C. § 1983 Conspiracy Claims**

**(Against All Defendants)**

All Defendants are being sued for conspiracy to violate Plaintiff's Constitutional rights, including his right against unlawful and unreasonable searches and seizures, and his due process and equal protection rights. Selective, malicious and discriminatory prosecutions are taking place.

**Count 3 – Violation of 42 U.S.C. § 1985**

**(Against All Defendants)**

All Defendants are being sued for class based violation of Plaintiff's Constitutional rights, including his right against unlawful and unreasonable searches and seizures, and his due process

and equal protection rights. Selective, malicious and discriminatory prosecutions took place.

**Count 4 – Violation of 42 U.S.C. § 1985(2) – Conspiracies**

**(Against All Defendants)**

All Defendants are being sued for class based conspiracy to violate Plaintiff's Constitutional rights, including his right against unlawful and unreasonable searches and seizures, and his due process and equal protection rights. Selective, malicious and discriminatory prosecutions took place.

**Count 5 – Violation of 42 U.S.C. § 1985(3) – Conspiracies**

**(Against All Defendants)**

All Defendants are being sued for class based conspiracy to violate Plaintiff's Constitutional rights, including his right against unlawful and unreasonable searches and seizures, and his due process and equal protection rights. Selective, malicious and discriminatory prosecutions took place.

**Count 6 – Violation of 42 U.S.C. § 1986 – Neglect To Prevent**

**( Against All Defendants )**

All Defendants are being sued for class based violation of Plaintiff's Constitutional rights, including his right against unlawful and unreasonable searches and seizures, and his due process and equal protection rights. Selective, malicious and discriminatory prosecutions took place.

**Count 7 – Assault and Battery**

**( Against Individual Defendants Reyes and Gustafson )**

Defendants Reyes and Gustafson are being sued for assault and battery.

**Count 8 – False Imprisonment**

Defendants Reyes and Gustafson are being sued for false imprisonment.

**Count 9 – California Due Process Rights**

**(Against All Defendants)**

All Defendants are being sued for violation of Plaintiff's California rights, including his right against unlawful and unreasonable searches and seizures, and his due process and equal protection rights.

**Count 10 – California Equal Protection Rights**

**(Against All Defendants)**

All Defendants are being sued for violation of Plaintiff's California rights, including his right against unlawful and unreasonable searches and seizures, and his due process and equal protection rights.

**Count 11 – Intentional Infliction of Emotional Distress**

**(Against All Defendants)**

All Defendants are being sued for intentional infliction of emotional distress.

**Count 12 – Negligent Infliction of Emotional Distress**

**(Against All Defendants)**

All Defendants are being sued for negligent infliction of emotional distress.

**Count 13 – Negligent Entrustment**

**(Against U.C.S.D. Police Department)**

Defendant U.C.S.D. Police Dept. is being sued for negligent entrustment. It is alleged that the U.C.S.D. Police Department is insufficiently training its police officers.

---

**Injunction**

Plaintiff seeks an injunction enjoining Defendants from their continual harassment and violation of his civil rights. Plaintiff seeks an injunction to expose the causes of continued violations of his Constitutional rights.

---

**Damages**

As a result of their concerted unlawful, malicious and oppressive actions, Defendants intentionally, and with deliberate indifference and callous disregard of Plaintiff's rights, deprive Plaintiff of his liberty without due process of law and deprived him of equal protection of the laws, in violation of the Fifth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983, et. seq.

Plaintiff John Cobb endured pain and suffering, and extreme emotional distress due to the actions and inactions of Defendants.

**Damages – Physical Pain and Suffering**

Pain and suffering from the assault and battery by Defendants Reyes and Gustafson. This included physical abuse, injury ( scrap ) to Plaintiff's left knee, and a bruised hip. Plaintiff was

them placed into handcuffs.

**Damages – Severe Emotional Distress**

As a result of their concerted unlawful and malicious actions, Defendants intentionally, and with Deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of his emotional tranquility, and did cause severe emotional distress and injury upon Plaintiff John Cobb. This injury included anxiety, distress, sleeplessness, humiliation, and embarrassment.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered great damage to his reputation and embarrassment in the community. Accordingly, Plaintiff seeks damages.

**Costs**

Plaintiff has incurred, and continuers to incur costs and expenses in conducting this law suit. Plaintiff has incurred costs and expresses relating to his criminal and civil case legal history.

---

**PRAYER**

WHEREFORE, Plaintiff requests this Court to award compensatory and punitive damages to the Plaintiff and such other and further relief as appears reasonable. Plaintiff demands a jury.

1. For general damages for pain and suffering, and severe emotion distress;
2. For exemplary and punitive damages;
3. Costs of this action;
4. Costs of criminal trial related actions ( M – 992810 );
5. For injunctive relief;
6. For such other and further relief as the Court may deem just and equitable.

---

**SOME DEFINITIONS AND ANALYSIS**

**Vagueness – Violates Due Process of Law**

Cal. Const art I, and U.S. Const. amend. XIV guarantee that no person shall be deprived of life, liberty or property without due process of law.

The Evidence Code specifics that words are to be defined as they are used In common everyday language.

## Discriminatory Class Based Animus

Plaintiff John Cobb is Caucasian and male. He was born in the United Kingdom, and is an Episcopalian. He is a homosexual. It is alleged that he has been, and continues to be, discriminated against due to his race, sex, national origin, religion, and sexual orientation ( homosexual ).

## Federal Preemption

Federal preemption is based on the supremacy clause. U.S. Const. Art IV – which provides that the constitution and laws made in pursuance of the Constitution are the supreme law of the land. The Constitution also provides that state judges are bound by the US Constitution, regardless of any provision in the state constitution or laws to the contrary.

## Regarding Allegations of Conspiracy To Violate Civil Rights

Plaintiff John Cobb ( herein also referred to as "Plaintiff" ) possesses documentation which proves that San Diego prosecuting attorneys, both District Attorneys, and City of San Diego Attorneys, are explicitly and implicitly promoting vindictive and selective prosecutions. These prosecuting attorneys are ratifying bad faith actions of police officers and witnesses, and are committing perjury, and artifice.

Plaintiff John Cobb poses documentation which proves that perjury ( PC § 118 ) is being committed by police officers, State of California employees, and witnesses, and that falsified police reports are being made by police officers ( PC § 118.1 ), and that witnesses are violating PC §§ 148 and 148.5 ( obstructing justice, false reporting of a crime ). These bad faith acts are being ratified by state officials, including prosecutors and judges.

Prosecutors are implicitly and explicitly authorizing police agencies ( and loss prevention employees and witnesses ) to act in bad faith, and violation citizens' civil rights.

Plaintiff John Cobb can prove that prosecutors have used perjured testimony to obtain convictions. Have violated Business and Professions Codes §§ 6128(a) – no deceit or collusion; and 6068 – speak truthfully; and Cal Rules of Prof. Cond. 5-200 (A) – speak truthfully, and (B) – no Artifice;

These prosecuting attorneys continue this conspiracy to violate people's civil rights when they become judges. E.g. Judges Whelan ( issued incorrect restraining order to obstruct justice and

hinder Plaintiff's criminal defense ) and Shore ( vindictively placed Plaintiff in jail, without bail ( a denial of Plaintiff's constitutional right ) after Plaintiff exercised his constitution free speech rights and objected to an illegal search ).

**Proof of Conspiracies To Violate Civil Rights**

Plaintiff John Cobb possesses the following:

i. A falsified police report made by San Diego Police Sgt. Reschke ( herein included as Exhibit No. 1 ). It is signed by him under penalty of perjury. The police report falsely states that Plaintiff John Cobb ( " Plaintiff " ) pushed a woman ( " Jamous " ) to the ground, and falsely states that Plaintiff had warrants out for his arrest. These false facts are provable by the own woman's ( Jamous' )testimony at a later dated trial ( Exhibit No. 9 ), and by the court paperwork ( not here included ) that shows no information for arrest warrants for Plaintiff.

ii. City Attorney Beth Woodley speaks artifice, and states two false facts in the court, during a trial, before Judge Judith Hayes. These two facts were that 1.) Jamous was pushed to the ground, and 2.) was kicked. Jamous testified to neither. Refer to exhibit No. 9.

iii. Judge Hayes, a former Deputy Attorney General, Calif. State Department of Justice, former Assistant U.S. Attorney, and former Deputy District Attorney in San Diego County ( Refer to Exhibit No. 48 ), then, falsely states that Jamous was " knocked ... down ", notwithstanding of the fact that Jamous did not testify to being knocked down or pushed to the ground. Refer to Exhibit No. 9. This shows judicial corruption, and judicial ratification of corrupt police and prosecutor acts.

iv. Crimes committed against Plaintiff are not prosecuted. Refer to Exhibits No. 10, 11 and 12. This evidences discrimination in the prosecution of crimes.

v. Perjured evidence was used by a District Attorney ( Kay Meier ) to obtain a conviction. A plead bargain was entered which used a plea to behavior which was not a non-crime. Refer to Exhibits No.s 13-24.

**Definitions and Concepts**

**i. Perjury, Artifice and Deceit**

An attorney cannot assist in presenting perjury or arguing perjured testimony to the court or jury

( People v Guzman ( 1988 ) 45 C3d 915. 941, 248 CR 467, 482 ). It is unethical for counsel to mislead a judge by artifice of by a false statement of fact of law: Cal Rules of Prof. Cond. 5-200 (B). Artifice is defined as; a clever plan or idea, especially one intended to deceive. Base deception or trickery. Deceit is defined as misrepresentation and deception, a trick, or falseness.

" An attorney who attempts to benefit his client through the use of perjured testimony may be subject to criminal prosecution " ( Pen Code § 127) as well as severe disciplinary action ( In re Jones, 208 Cal. 240, 242 [280 P. 964.). ".

It is a misdemeanor for an attorney to engage in any deceit or collusion, or to consent to any deceit of collusion intended to deceive the court. Bus. & Prof. Code § 6128(a):

" Every attorney is guilty of a misdemeanor who either:

(a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. "

**ii. Bad Faith - Definition**

Each defendant acted in bad faith. This is defined as when the defendant committed acts with the purpose and intend to cause harm to Plaintiff ( Criminal Defendant ) John Cobb, or with a conscious disregard of the welfare of Plaintiff John Cobb, and with full knowledge of the negative consequences of his or her actions.

**Statutory Violations and Deceit by Prosecution.**

**( Business & Professions Code Violations; Cal. Rules of Prof Conduct. )**

It is a misdemeanor for any attorney to engage in any deceit or collusion, or to consent to any deceit or collusion intended to deceive the court. Bus & P. C. § 6128(a). This reads;

" 6128. Every attorney is guilty of a misdemeanor who either:
(a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. ".

It is unethical for counsel to mislead a judge by artifice or by a false statement of fact or law. California Rules of Prof. Cond. 5-200 (A) & (B), Bus & P C § 6068(d). These read:

." Rule 5-200. Trial Conduct

In presenting a matter to a tribunal, a member:

(A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth;

(B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law; "; and

Bus & P C § 6068: " It is the duty of an attorney to do all of the following:

(d) To employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law. ".

**i. Example**

In the U.C.S.D. Briggs case, prosecuting Attorney Beth Woodley ( now Williams ) engaged in deceit and artifice before Judge Hayes. She stated that Witness Jamous would testify to; that she was pushed to the ground and that she was kicked. Jamous testified to neither. Judge Hayes, when pronouncing judgment, then relied upon this false *evidence* of Prosecutor Beth Woodley, this false evidence being that Jamous was pushed to the ground. Refer to Exhibit No. 9 – trial transcript.

**Facts**

Discriminatory enforcement as a defense to a criminal action derives from the federal and state constitutional guarantee of equal protection of the law; U.S. Const. amend. XIV.

**Equal Protection –**

**Life, Liberty, Property, and Pursuit of Happiness.**

From the case of In re Strick, 148 Cal. App. 3d 906;

" HN7 - The constitutional guaranty of equal protection of the laws is judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, and property and in their pursuit of happiness. A state may provide for differences as long as the result does not amount to invidious discrimination.

**Plaintiff John Cobb's Constitutional Rights Have Been Repeatedly Violated.**

There have been multiple violations of Plaintiff John Cobb's constitutional rights. These are violations of the equal protection of the laws, of discriminatory prosecutions, due process violations, rights violations, of illegal seizures, by state officials, and by citizens, and have been ongoing for a period of approximately 25 years – since Plaintiff's first involvement with the criminal

system in the early 1980's. These violations have been carried out by multiple police officers, police officer investigators, prosecuting attorney's – both City of San Diego and State of California, defense attorney's, public defenders, agents of businesses, including loss prevention employees, and judges.

These constitutional violations include, but are not limited to;

- Police officers arresting and seizing Plaintiff John Cobb without probable cause;
- Police officers, without having probable cause to arrest, threatening to arrest Plaintiff John Cobb if he doesn't leave a business;
- Police officers failing to investigate crimes committed against Plaintiff;
- Conspiracies between citizen's and business owners and their agents and police officials to fabricate facts, after P. John Cobb; has been falsely arrested and charged, so as to justify the arrest and obtain a conviction;
- That the state has adopted classifications that affect two or more similarly situated groups in an unequal manner. Two of these groups are businesses and their agents, and non business related citizens. This includes discrimination based on socio-economic factors;
- That the state has discriminatorily enforced the laws based on race, national origin, sex, sexual orientation, sexual stereotypes, and socio-economic factors;
- Police officers conspiring to cover up evidence of crimes committed against P. John Cobb;
- Prosecutors violation of Business & Professions codes, and Rules of Professional Conduct;
- Public defenders not revealing to John Cobb that he actually had not violated the law that he had been charged with violating;
- Traffic court judges convicting John Cobb even though there was insufficient evidence;
- A judge not acknowledging the trial evidence, and covering up false statements of fact;
- That the City of San Diego has a municipal custom and policy which causes constitutional deprivations. Said policy, is to favor businesses and other classes, in law enforcement. Said policy has produced a symbiotic relationship between businesses and the City of San Diego. Said policy reflects deliberate indifference to the constitutional rights of the City of

San Diego's inhabitants.

**Prearranged Plan – Always a Conviction, No Matter What The Truth Is.**

In San Diego, there is in place, a policy and custom, and a prearranged plan by state individuals, including prosecutors, and public defenders, to completely control the justice system. To control the justice system so as to be able to determine the outcome of any criminal or civil matter, irrespective of justice, and irrespective of constitutional rights. To obtain convictions of any criminal defendant who has been written a citation by any police officer.

This includes City of San Diego police officers, U.C.S.D. police officers, and S.D.S.U. police officers, and even extends to loss prevention officers, and business employees, and anybody else that a police officer favors over defendants who have not committed any crimes. Defendants are convicted involuntarily, pay fines, and are on probation, for acts which are not crimes. This probation can and does severely limit certain people ( such as Plaintiff ) from attaining employment.

Part of this prearranged plan, is to automatically and always convict any person who has been issued a citation by any police officer, City of San Diego police officer, U.C.S.D. police officer, S.D.S.U. police officer, and loss prevention employees of a business. This plan includes the covering up crimes committed by loss prevention employees, and loss prevention co-workers committed against various individuals. The plan involves allowing people to commit crimes against Plaintiff, John Cobb, while prosecuting John Cobb for any thing possible, including minor offenses.

**Two-Class System**

There exists a two-class justice system here in San Diego, one in which one class of people can commit crimes against a second class, with impunity. This second class is also not protected by the police – the police do not prosecute crimes committed against this second-class. Police investigators do not investigate crimes committed against this second class. Police investigators do not investigate crimes committed by the first-class citizens. Prosecutors only prosecute crimes or alleged crime charges against this second-class person, while not prosecuting crimes committed by the first class person. Police officers regularly write falsified police reports and

narratives to discriminate against such second-class persons.

Plaintiff has been classified as being in this second class.

**Injustice as Hot Potato Pyramid Scheme**

Every trick is used to commit these injustices against the second-class citizen. There is a pyramid scheme amongst a chain of complainants / victims, witnesses, police officers, higher ranking police officers, police investigators, prosecutors, public defenders, defense attorneys, and judges, and appeals judges. The actual injustice is passed along from lower to higher individual, along the chain, hoping to exploit the immunity ( qualified and absolute ) from wrong of each individual operator in the chain. The scheme substantially involves involuntary pleas by defendants. Defendants who have not violated any law, are unknowingly convinced that they have, by a chain of events that they go through in their journey through the system.

////

////

**Respectfully submitted:**

**DATE:** 1-31 **, 2008.** **SIGNED:** [signature]**.**

**John Cobb – Plaintiff.**

# DECLARATION ( AND ANALYSIS ) OF PLAINTIFF JOHN COBB

I, Plaintiff John Cobb declare as follows:

## A. Regarding Jamous Incident ( 9-19-1992 )

**Exhibit No. 1 – 2.**

I did commit a battery upon Ms. Jamous and Mr. Krutner on 9-19-1992. I pushed Ms. Jamous with my elbow(s). However, I never pushed Ms. Jamous to the ground, and never kicked Ms. Jamous.

The San Diego police report authored by Officer Reshcke is included herein as Exhibit No. 1.

### Regarding Exhibit No. 1

### i. Falsified Police Report ( by Officer Reschke ).

San Diego Police Officer James G. Reschke ( ID No. 3556; Currently a Sergeant at San Diego Police Department, Northwestern Division. 12592 El Camino Real. 532-7000 ) made a falsified police report narrative ( and falsified under oath ) with regards to a 9-19-1992 Sears parking lot incident. The falsification involves saying that the female victim ( Jamous ) was pushed to the ground by Plaintiff John Cobb, when in fact she was not pushed to the ground:

[ Reschke Police Narrative and Declaration, Exhibit No. 1 ]:

[ Page 1 ]

" VICTIM STATEMENT: ...

... COBB THEN PUSHED JAMOUS TO THE GROUND ...; and

[ Page 1 of DECLARATION AND DETERMINATION ]:

FACTS ESTABLISHING ELEMENTS OF CRIME AND INDENTIFICAITON . . .

COBB THEN PUSHED JAMOUS TO THE GROUND "

This " DECLARATION AND DETERMINATION " was signed under penalty of perjury by Officer Reschke. Bottom of page 1 of Declaration and Determination [ Exhibit No. 1 ]:

" I declare under penalty of perjury that the foregoing is true and correct to

the best of my information and belief.

Executed on *09-19-92*, in the County of San Diego, State of California.

By *James G. Reschke* ( Declarant's Signature ). ".

### ii. Proof of Falsification.

Later, Ms. Jamous testified at a hearing ( a different incident ) on 11-15-1993. This testimony is in Exhibit

No. 9 – Transcript of Hearing ( a different case ). Ms. Jamous testified under oath, to that she was;

1,) " He shoved and hit my shoulder. " [ Exhibit No. 9; Page 41; Line 23 ]; and

2.) " proceeded to push and shove me " [ Ex. 9; P. 42; L. 4 ]; and

3.) " He just kept pushing me, and pushing me. I don't' believe he ever kicked me. I can't remember that. " [ Ex 9; P 42; L 13 ].

Nowhere does Ms. Jamous state that she was pushed to the ground. She also testifies that she was not kicked. " I don't believe he ever kicked me, I cant remember that " [ Ex 9; P 42; L 4 ].

Ms. Jamous also does not testify to ever being pushed to the ground.

**iii. <u>Officer Reschke Further Falsifies His Police Narrative.</u>**

Officer Reschke further falsified his narrative by stating that Plaintiff John Cobb had " one or more outstanding warrants ". This is false:

Ex No. 1; Page 2 of 4; Bottom of page, box no. 4 checked off.

" ☒ 4. There were one or more outstanding warrants for the person. ".

At this time, Plaintiff John Cobb did not have any out standing warrants. This is reflected in the court paperwork – not included, but can be provided.

**B. <u>Regarding U.C.S.D. Briggs Incident ( 2-10-1993 )</u>**

**<u>Exhibit No.s 3 – 9.</u>**

I told Officer MacIntyre approximately that; Briggs was lying, that she had walked over to my side of the path, walked ( approached ) to directly in front of me, and I pushed her aside. I said that there was going to be a trial with lawyers and everything. Officer MacIntyre then said he was arresting me, and I said that he was a " prick ".

I was then placed in handcuffs, and taken to a police car, placed into the police car, and sat in the police car for about 30-40 minutes. I could not hear what was said by any of the witnesses at this time. I was then taken to the U.C.S.D. police station.

While I was at the U.C.S.D. police station, I noticed for the first time, Briggs' foot prints and scuff marks on my white pants. I told Officer MacIntyre what had happened with regards to Ms. Briggs. I pointed out the foot prints to U.C.S.D. police Officer MacIntyre. I also stated at the police station, for the first time to Officer MacIntyre, that women were deliberately walking into my path.

After this, Officer MacIntrye left the room, and Sgt. David Rose came into the room. I told Officer Rose

what happened with regards to Briggs. Officer Rose then, examined my eyes ( pupils ) with a meter.

I was then transported to San Diego County Mental Health. I told a psychiatrist at County Mental Health what had happened between me and Ms. Briggs.

The U.C.S.D. police report is included herein as Exhibit No. 3, and the San Diego County Mental health documents are included herein as Exhibit No. 5.

i. **<u>Regarding Exhibits No's 3-9 ( U.C.S.D. Briggs Situation )</u>**

**<u>Results of Officer Reschke's Falsified Police Report.</u>**

**<u>Prosecutorial Misconduct – Referring to Evidence Not In Record.</u>**

At this Briggs trial, prosecutor Beth Woodley ( now Beth Williams ), refers to falsified facts in Officer Reschke's police report. Pros. Woodley states to Judge Hayes that Ms. Jamous would testify to, that she was pushed to the ground. This was not so, as Ms. Jamous did *not* testify to being pushed to the ground. Prosecutor Ms. Woodley ( Williams ) states that;

" The people are offering it for a lack of mistake motive and intent. . . .
And very specifically . . . based on defense put into issue as being a
violent or non-violent person, ". [ Ex 9; P 38; L 19-24 ].

Further;

Judge Hayes: " Your offer of proof again, ma'am, was that this witness will
Testify to what ?". [ Ex 9; P 39; L 9-10 ].

Ms. Woodley ( Prosecutor ):

" Almost identical. This witness was walking in a parking lot and the
defendant, a stranger to the witness, came up and pushed up against her.
The defendant [ added; probably witness] said, you know,
" why did you do that ? " and the defendant started yelling and screaming
and pushed her on the ground and started kicking her. ". [ Ex 9; P 39; L 11-16 ].

Prosecutor Beth Woodley has referred to evidence not in the record. She had said that Jamous would testify to being pushed to the ground, and to being kicked. But Jamous testified to neither. Prosecutor Woodley has herself, fabricated the fact of Def. John Cobb kicking Jamous. Officer Reschke's own police report did not state that Jamous was kicked. Jamous herself testifies only to being pushed – *not* to being

kicked and *not* to being pushed to the ground.

**ii. Judge Hayes' Misconduct;**

**( No Jurisdiction to Fabricate Evidence / Fact.**

**Prevents John Cobb From Correcting Record, and Establishing**

**That Officer Reschke Falsified Police Report, and that Prosecutor Woodley**

**Misstates Evidence )**

But in spite of Ms. Jamous testimony, Judge Hayes, when pronouncing her judgment, falsely states that;

" two women . . . said that you knocked them down " [ Ex 9; P 69; L 19-22 ].

Witness Jamous did not testify to that she was knocked down. Further, John Cobb then tried to tell Judge Hayes that Ms. Jamous did not say that she was knocked down, but Judge Hayes said; " don't interrupt me, sir " [ Ex 9; P 69; L 22 ].

Judge Hayes introduces the concept of reasonableness, when she is pronouncing judgment;

" it is not reasonable " [ Ex 9; P 69; L 8];

and then goes on to say that Briggs' testimony is " very believable ";

" AND I FIND, IN FACT, THAT HER TESTIMONY WAS VERY BELIEVABLE "

[ Ex 9; P 69; L 13-14 ];

**iii. Statutory Violations and Deceit by Prosecution.**

**( Business & Professions Code Violations; Cal. Rules of Prof Conduct. )**

It is a misdemeanor for any attorney to engage in any deceit or collusion, or to consent to any deceit or collusion intended to deceive the court. Bus & P. C. § 6128(a). This reads;

" 6128. Every attorney is guilty of a misdemeanor who either:
(a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. ".

It is unethical for counsel to mislead a judge by artifice or by a false statement of fact or law. California Rules of Prof. Cond. 5-200 (A) & (B), Bus & P C § 6068(d). These read:

" Rule 5-200. Trial Conduct

In presenting a matter to a tribunal, a member:

(A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth;

(B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement

of fact or law; "; and

Bus & P C § 6068: " It is the duty of an attorney to do all of the following:

(d) To employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law. ".

**iv. Facts**

Prosecuting Attorney Beth Woodley ( now Williams ) engaged in deceit and artifice before Judge Hayes. She stated that Witness Jamous would testify to; that she was pushed to the ground and that she was kicked. Jamous testified to neither. Judge Hayes, when pronouncing judgment, then relied upon this false *evidence* of Prosecutor Beth Woodley, this false evidence being that Jamous was pushed to the ground.

**v. Violations of Plaintiff's Constitutional Rights**

Plaintiff John Cobb was given a different form than that given to Ms. Briggs. Compare Exhibits No.s 4 and 7. Further, John Cobb's U.C.S.D. police statement ( Exhibit No. 7 ) disappeared – refer to Exhibit No. 8.

**vi. Discriminatory U.C.S.D. Police Investigation**

Compare the observations and reports made by the U.C.S.D. police ( Exhibit No. 3 ) and the County Mental Health Psychiatrist ( Exhibit No. 5 ). The U.C.S.D. police report makes no mention of John Cobb being kicked or scratched by Briggs.

**C. Vandalism Upon Plaintiff John Cobb's Car**

**( Exhibit No. 10 )**

**Description of Incident and Investigation**

Exhibit No. 10 regards a 2-9-1996 vandalism committed upon my ( John Cobb's ) car. This caused an estimated $ 713.17 worth of damages to the car ( Exhibit available ). I complained to the San Diego police about the vandalism. I spoke with a detective Mark Aysta, who said to me that the woman who was with the man who had vandalized my car, had said to him that she had seen this man vandalized my car.

No prosecution for this vandalism ever took place. I made a San Diego police complaint about inaction with regards to this incident. I mailed the complaint, however, I did not continue with the complaint by signing and returning the police provided form. I do not recall at this time, as to why I did not proceed with

the compliant.

**San Diego Police Officer Reschke Contact and Statements.**

**( Reschke is Officer Who Falsified a Police Report – Refer to Chapter Sections I & II. )**

During my conversations with San Diego police officers, I spoke with Officer Sergeant Jim Reschke. This is the same police officer Reschke referred to in above in Section A. This is stated in my compliant, not herein include, but can be provided. Officer Reschke makes a supposition, saying, suppose you are driving on the freeway, and hit another car, and give the other driver the finger. This, to me, is referring to an incident in 1988, in which I was illegally arrested by an off duty police officer. The Florid incident involved the police officer falsely stating that we had a collision on the road, and then me, truthfully, giving him the finger. This situation is described below as follows:

**Description of Florida Incident:**

In March of 1988, I was traveling to work and exiting the freeway. I looked over my shoulder, and saw one car, a fair distance up the road. As I was traveling along the cross street off of the freeway, I looked over to my right, and saw a man in a car, shaking his index finger and hand at me. I looked back to my driving, and then I heard a horn honk to my right, and I looked over and saw the same man still shaking his finger at me. I looked back again and he was still shaking his finger at me. I then gave him the middle finger sign. I then saw this man start to dig down into his back pocket. I made a left turn, to go to work, and he followed me. I pulled into the driveway of my employer, and this man pulled his car into the parking lot also. He got out or his car and placed a badge onto the passenger side of the car. He then went to the left side and said for me to get out of my car. I did so.

The man said that he was a police officer. ( It turned out that he was Harry Johnson of the Riviera Beach Police Department. ) He started to yell and scold me. He was very agitated, and angry and enraged. He proceeded to start to write me out a citation. He continued to yell and scold me. I listened to this for a long time. At one point, he said that I should be taken out into a field and beaten. I said to him that he couldn't be a cop.

He then showed me a box of citations in the back of his car. I also saw a truncheon in the trunk of his car. I continued to wait for the citation, but he continued to yell at me. At one point I said that I would sue him. This yelling went on for long enough, that I became scared, and I ran to the building where I worked. I had a key and went inside and then locked the door ( I went early to work to get some work done, and was the

first to get to work ).

I had been scared by the man, and I telephoned the police ( dialed 911 ). As I was talking to the police, my hand holding the phone was shaking. I saw the man move his car onto the road, and then he went to the far side of my car, and squatted down next to the front wheel. I stated this to the police on the telephone.

Other non-Riviera Beach Police officers arrived, as well as other Riviera Beach Police Officers. The two non-Riviera Beach police officers were, I believe, two State Troopers. A co-worker named Richard Milke tried to negotiate a deal with off duty police officer Johnson; the deal being that if I didn't sue him, the police officer would not arrest me. This was negotiated in front of the two non-Rivera Beach officers ( believed to be state troopers ). I agreed to not sue Johnson if he would not arrest me. After this, Milke negotiated with Johnson; that he would not arrest me if I would not sue him. But Johnson said ( approx. ) " ah, ah, ah, ", while looking at me intently, and then said, " no, I want him arrested." I believe he took this position because he could only arrest

me right then and there, but I could later turn around and sue him.

I was then taken to jail. While I was in jail, a woman came in and told me that I had struck Officer Johnson, and that he had a bruise on his body. This was not true. I never struck off-duty officer Johnson, and he never struck me.

I got out of jail and got a lawyer ( Anthony Natale ). This lawyer eventually cost around $ 3,500.000. I believe that I was charged with a felony battery upon a police officer ( Johnson ), and of leaving the scene of an accident. I heard for the first time from the lawyer, that Johnson was saying that there had been an accident and collision on the freeway, and that I had tried to run over Officer Johnson with my car. Both of these things were not true, as was me hitting Johnson. Atty. Natale also said that Johnson had put his gun onto the front window sill of his car. I never saw this, and never saw a gun during this incident. Attorney Natale had me take photographs of my car. There was no damage to my car.

I was told by the lawyer that the police department had lost the 911 tape of the call I had made on the date of the incident. But when I accepted the Pre-Trial Intervention Program, Attorney Natale told me that they had found the 911-tape. Attorney Natale recommended that I accept the Pre-Trial Intervention Program, and I did.

**Pre-Trial Intervention Program:**

**Both in Florida and in San Diego, California.**

The pre-trial intervention program was for a period of 18 months. Note; during my Target case ( Exhibits Nos. 72-75; my employment discrimination, harassment and battery case ), I was deposed by Leigh White of Carlton DiSante & Freudenberger, LLP, representing Target Corporation, and the other defendants. During my deposition, I deduced that the pre-trial intervention program must have been for 1 year, since I was only in Florida for about 1 year. I forgot that it was for 18 months, and that I had to connect with the probation department here in San Diego, and complete the pre-trial intervention program. The program started in July of 1988, and would last until, approximately, January of 1990. I moved back to San Diego around the end of October of 1988. Therefore, there was approximately 15 months of the program here in San Diego, CA. The program involved paying $ 30.00 per month, I believe for the entire 18 month period, but possibly not.

**D. <u>John Cobb Battered by Two Individuals at a Business.</u>**

**<u>San Diego Police Dept. Cover-up of Batteries</u>**

**<u>( Exhibits No.s 11-12. )</u>**

On 3-18-1996, I went to the F-Street Bookstore ( adult bookstore, now closed ) at 4626 Albuquerque Street, San Diego, and was the victim of a battery by two individuals – a ( believed to be ) customer, and one of the clerks of the store itself. The details of these batteries are described in the text of my complaint about the handling of the situation, by the San Diego Police Department ( which can be provided ). The Police Report ( by San Diego Police Dept. Officer G. Ravers, ID No. 3867 ) is Exhibit No. 11. There were three police officers who arrived at the scene. At first, a black male officer with badge number 2063, and a Sgt. Wilson, ( ID No. 3604 or 2604 ). The police report was written by an Officer G. Ravers ( ID No. 3867 ), it was approved by Sgt. Wilson ( 3604), and the detective assigned was " Kramer " ( from police report, Ex. No 11, bottom. ). No prosecutions occurred. The outcome of my police complaint ( Exhibit No. 11 and 12 ) was that the police officers involved were " Exonerated ".

**<u>Falsified Police Report – Cover-up of Two Batteries Upon John Cobb.</u>**

**<u>( Bad Faith by San Diego Police Officers and Abuse of Process )</u>**

The Police Report falsely states that I said that I " fought " with the original customer batterer. I did not make such a statement. I did not make a statement which was either directly or remotely construable as; that I fought with any body in this situation. The only thing that I did was to try and get away from the attacking customer and to protect myself from his hitting me. The San Diego police report falsely states:

" VICTIM STATEMET: [ added: John Cobb ]

COBB FOUGHT WITH THE INDIVIDUAL UNTIL THE CLERK AT THE STORE THREW THEM OUT."

This is not true, I did not fight back with the customer. I never stated to any police officer that I fought back, or said anything like this. I only defended myself and tried to avoid the customer's repeated and numerous punches, kicks, and spitting upon me. This is significant, because the police report later goes on to say that:

" OFFICER'S INVESTIGATION:

... I DIDN'T GET THE CLERKS INFORMATION BECAUSE I THOUGHT I MIGHT BE DEALING WITH A MUTUAL BATTERY ".

Characterizing either battery upon me as " a mutual battery" is a false and misleading statement. I did not fight back with either individual. Neither the customer nor the business clerk ( store employee ), were prosecuted for committing a battery upon me. Further, not getting the clerks information would make it more difficult for me to file a civil lawsuit against the store and or the store's clerk. ( I did not file a civil lawsuit with regards to this situation. ) This is an example of the San Diego Police Department protecting a business and its' employees from a criminal prosecution, and a possible civil lawsuit.

This falsifying of the police report demonstrated bad faith by the San Diego police department. Such acts are not excusable by qualified immunity. It is statutorily clear ( PC § 118.1 ) that a police officer is not meant to falsify a police report.

**Possible Video Recording of Incident.**.

I determined later that a video surveillance camera system was at this F-Street Bookstore ( in front of the cash register area ). This would have shown much of the customer's battery upon me, and all of the clerk's battery upon me. I telephoned the San Diego Police Department several times, to inform them about the surveillance cameras. Notwithstanding ( in spite of this ), a criminal prosecution was never initiated.

**Hate-Crime Allegation**

It is also alleged by me, that the San Diego Polices who arrived at the scene, knew that this book store was a location where gay men would meet one another and have sex ( which it was ). And that the customer who battered me was ( or could have been ) a perpetrator of hate-crimes upon homosexuals, and had committed such a hate-crime battery upon a believed to be, and possibly recognized homosexual man ( myself ). The police new this, but subsequently did nothing about it. This is discrimination base on sex,

and sexual orientation.

**No Battery Citation Written to Either Batterers**

No criminal citation ( for battery ) was written, nor a criminal prosecution taken with regards to this incident. I made a police complaint about this case disposition [ can be provided ]. This resulted in an exoneration [ Ex No. 12 ] of the police officers. A pamphlet was sent with the exoneration letter stating that exoneration meant that; " The act occurred , but was justified, legal and proper. ". To me, this is outrageous.

**Ratification: John Cobb Files a Police Complaint –**

**Result Was That The Police Were Exonerated.**

The three police officers were exonerated for their actions ( Refer to Ex. No. 12 – Results of John Cobb's police complaint ( not included herein, but can be provided )). This evidences a ratification policy of City of San Diego police officer's falsifying police reports, covering up batteries, to stop criminal prosecutions, to stop prosecutions of crimes committed by business employees, to cover-up hate-crimes against homosexuals, to stop and hinder civil lawsuits, to cover-up crimes committed against John Cobb.

**Cover-up Formula.**

**( Constitutional Violations; Discrimination, Equal Protection;**

**Due Process; Abuse of Process ).**

This situation was covered-up by the San Diego Police Officers, by falsely stating that I fought back with the other man / men, and falsely and misleadingly stating that it was a " mutual battery ". These are PC § 118.1 violations ( for a police officer to falsify a police report ). This goes to bad faith, maliciousness and to abuse of process. The unlawful abuse of process goal, being to discriminate against a customer who was a victim of a battery by a business store employee. To protect this employee and the business entity itself from criminal and civil liability. Further, to cover-up a hate crime against a known or suspected homosexual ( myself ).

**E. S.D.S.U. Illegal Arrest and Cover-Up.**

**Exhibits No.s 13 – 24.**

Plaintiff John Cobb was a student at S.D.S.U., refer to Exhibit No. 13 ( Student ID ). He was illegally arrested by two S.D.S.U. police officers. Falsified facts were made by the two police officers ( Ex. No. 14 & 15 ) and a S.D.S.U. employee ( Ex. No. 17 ) to cover-up the illegal arrest. They falsely stated that John Cobb refused to identify himself; refused to leave a building; and was combative. Compare Exhibits 14 and

15, with 17 – these describe the same incident. John Cobb never refused to leave the building, did provide identification, and was never " combative ".

There was a conspiracy amongst the S.D.S.U. police department, various S.D.S.U. Foundation employees, City and District Attorneys, civilian lawyers, and Judges, to cover-up the situation of the false arrest, and obtain an unknowing, unintelligent, and unwilling conviction of John Cobb.

**Evidence of a Conspiracy Between City Attorney and District Attorney**

The accusatory pleading was signed by San Diego City Attorney Davis ( Ex. No. 16 ), and the case was prosecuted by District Attorney Kay Meier ( refer to Ex. No. 20 ).

**Bad Faith Restraining Order Obtained To Obstruct Justice**

A restraining order was obtained in bad faith, using perjured testimony ( compare Exhibits No. 14, 15 and 17 – describing the same event ) , to hinder John Cobb's criminal defense, to stop John Cobb from obtaining exculpatory evidence ( contact witnesses ), and obstruct justice. Restraining order judge, Judge Whelan, issued a restring order in bad faith, reneging on what was stated in the court. Refer to Exhibit No. 18 ( Judge Whelan ( a former D.A. ) stated in court that John Cobb could walk around the outside of the Campanile Building ), and Ex. No. 19 ( not in R.O. issued and signed by Judge Whelan and his clerk Y. Brennan ).

**Used of Perjured Testimony To Obtain Conviction.**

District Attorney Kay Meier ( Refer to Ex. No. 20 ) used perjured testimony to obtain an unwilling, unintelligent, and unknowing conviction ( for disturbing the peace – noise ) from Defendant John Cobb. She heard what John Cobb stated in his opening statements to the criminal trial jury, and used it to trick him into an unintelligent, unwilling, and unknowing plea to disturbing the peace. Refer to Exhibit No. 21. Refer to Exhibits No.s 14, 15, and 17. John Cobb did not realize that there was no probable cause to offer a plea to disturbing the peace.

Generally, the parties cannot enter into a plea bargain for acts that do not constitute crimes [ Case of In re Crumpton ( 1973 ) 9 Cal. 3d 463, 106 Cal Rptr. 770. ( Habeas Corpus relief available ) ]. Atty. Meier offered a plea to disturbing the peace noise, yet there was no probable cause for such an offer. This was also the knowing use of perjured testimony to secure a conviction. This violates the Bus & P Code, and the Cal. Rules of Prof Conduct. The prosecution violated due process and fundamental fairness.

**Judge Shopping by State and City**

**( Conspiracy Amongst D.A. and Former D.A.s )**

Judge shopping was employed by the state to obtain biased rulings by judges. Former District Attorneys Judge Shore ( former D.A. ) and Judge Whelan ( former D.A. ) were selected to, and gave bad faith and biased rulings in favor of the state. Judge Shore's Judicial profile ( refer to Exhibit No. 49 ) states that he " won't stand up to the D. A. ", and " frequently rules in favor of the prosecution ", and " Leans towards the prosecution ", and " he's incredibly pro-prosecution ".

Judge Shore ( a former District Attorney – refer to exhibit No. 49 ) placed John Cobb in jail for 30 days, and denied him bail, in violation of his constitution right to bail in misdemeanor cases. Refer to Exhibit No. 22.

Judge Judith Hayes and Judge Davidson ( Judge John Davidson however, granted my motion to compel discovery ), are also former San Diego County District Attorneys. Judge Judith Hayes is a woman, and is married to Judge Charles Hayes, the man, who was a Chief Deputy District Attorney.

Judge John Davidson ( a former D. A. – refer to Ex. 49 ) was selected as the Judge, for the opposition to John Cobb's motion to compel discovery of a non-redacted police report. John Cobb witnessed a black male City Attorney try to connect ( through facial expressions ) with Judge Davidson ( a black male ), and get the Judge to deny John Cobb's motion to compel. Judge Davidson didn't like this ( communicated through facial expressions to the City Attorney ).

Judge Whelan ( refer to above section; Bad Faith Restraining Order Obtained To Obstruct Justice ) is also a former D.A. ( refer to Ex No. 49 ).

**Evidence Tampering by S.D.S.U. Police Dep't.**

John Cobb was given a 911-tape that had so much noise on it, that it is inaudible, except in a few places.

**Retaliatory and Vindictive Probation Conditions**

The probation bill was run up to $ 2,977.17 over a period of eight years. It was then reduced to $ 34.17, which John Cobb then paid. Refer to Exhibit No. 24. John Cobb had been granted informal probation by Judge Shore.

John Cobb did a Habeas Corpus motion ( HC 16223, dated 2-18-2000 ) to correct the situation, but this was unsuccessful.

( John Cobb also filed a Federal Suit on June 24, 1999 ( Case No. '99 CV 1321 CGA ), but the case was

dismissed, primarily due to the statue of limitations. ).

**F. Oceanside Traffic Citation – Dated 2-5-1998.**

**( Exhibit No. 25. )**

I, John Cobb, declare as follows:

On 2-5-1998, I was in Oceanside and was pulled over by Oceanside Police Officer Wall. Officer Wall did not go about writing a citation right away. I then asked him if he was going to issue me a citation. He said that, ( approx. ) " that would depend on how cooperative you are ".

He asked me what I was doing in Oceanside, and I said that I was visiting somebody. He then looked and sounded surprised, and then said " who ? ". I said that I didn't have to tell him things like that. He then issued me the traffic citation.

**Retaliation to Exercise of Constitutional Right**

This is an arbitrary act, and unconstitutional. It is abuse of process. To try to get me to give information under threat of a traffic citation. If further indicates that Officer Wall could have know that I am a homosexual, and was inquiring about who I was visiting in Oceanside.

This is a situation where I exercised a constitutional right, and then a police officer acted maliciously, and issued a citation. Further, the citation was issued without just cause.

**Citation Itself and Hearing**

Officer Wall's citation reads; " CVC 22108 · TURN W/OUT SIG · ". The courtesy notice sent to me charged a single count of CVC § 22108. CVC § 22108 reads;

> " Any signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning ".

The transcript of the hearing in herein included as Exhibit No. 25.

At the hearing, before Commissioner Anthony J. Brandenburg, Officer Wall ( the prosecution ) testified and said:

> " MY ATTENTION WAS OBSERVED BY THE VEHICLE NOT TURNING INTO THE NUMBER ONE LANE WITHOUT USING A SIGNAL ? ".
>
> [ Ex 25; P 7; L 26-27 ].

This means that a turn signal was given. However, Officer Wall did not give any testimony regarding the distance or duration that this turn signal was made. There is no testimony as to the

duration of the signal either in distance, e.g. feet, or in duration of time, e.g. seconds.

I then moved the court for an acquittal under a PC § 1118 motion ( lack of evidence ). Comm. Brandenburg denied the motion. I then said that I rested my case. When I said that, Comm. Brandenburg got a sour look on his face. He then found me guilty. I allege that Comm. Brandenburg realized what Officer Wall had done; that Officer Wall had not put on ( stated ) any evidence of the duration of the turn signal. He failed to state evidence for a violation of each of the elements of CVC § 22108. Comm. Brandenburg realized that, by me resting me case ( PC § 1118 then rest ), that I was going to appeal. This is what I had planned, and this is what I did.

I then left the court room, and went to the business office counter. A young white female then left from behind the desk, and went into the court room and then came back out again. She then said to me that, " he's old ".

**Obstruction of Justice**

I went about obtaining the tape of the trial proceedings, and was given a tape where my hearing was not on the tape. I had to make at least two round trips to the Vista court to get the correct tape – with my hearing on it.

**Appeals**

I appealed the case two times. Once to the Superior Court ( with Judges Knoepp P., Preckel J., and Weber J. ), and again to the Court of Appeal of the State of California, Fourth Appellate District, Division One ( I do not have these judges names at this time ).

**Unconstitutional Judgments**

**( Due Process Violations. Jurisdiction Violations. )**

Judges are required to define the meaning of the words which make up the vehicle code, as having the meaning that they have in ordinary language. Courts must take judicial notice of the true significance of all English words and phrases and of all legal expressions [ Evid. Code § 451(e) ]. The dictionary defines " any " to mean,

1. One, no matter which, from three or more: a, an, or some.
2. Some, regardless of quantity or number.
3. The smallest quantity or number of; even one.
4. Every.

A violation of CVC § 22108 means that a signal was given, but it was not given for a long enough period of time, and / or made for a long enough distance.

If a CVC §22108 citation can be used to obtain a conviction for a situation in which no turn signal is given altogether, then this violates the rule: That it is unconstitutional to have two different laws, or two different statutes, governing the same act. These being CVC §§ 22107 and 22108. It is unconstitutional to use these two laws to govern the same act of *not* making a turn signal.

I was also unconstitutionally convicted on no evidence ( no evidence that the distance of the turn signal I made was inadequate. ). Unconstitutionally convicted by a commissioner, and six judges.

This evidences that there is an unconstitutional policy of ratification by certain judges, the policy being that, if a police officer writes a citation, the person charged is always found guilty, no matter what the evidence is.

**G. U.C.S.D. False & Misleading Field Interview Report – Dated 2-5-1998.**

**( Exhibit No. 26. )**

Around 6-9-1999, I received the U.C.S.D. Field Interview Report [ Ex. No. 26 ] inadvertently, from the City of San Diego City Attorney's Office, with regards to obtaining discovery regarding two traffic citations. This discovery is included herein as Exhibit No. 26.

**i. Field Interview Report by Officer Jones**

Included with this traffic citation discovery was a "SAN DIEGO REGIONAL FILED INTERVIEW REPORT ", dated 2-5-1999; [ Refer to Exhibit No. 26; Page 4 ]. I did not know this existed until it came with the seat-belt discovery, around 6-9-1999. It was made by U.C.S.D. Police Officer " M. Jones, I.D. No. 602 ". Officer Michael Jones still works at U.C.S.D. ( as of 8-6-2007 ). He has new badge number, it is 650.

I do remember being contacted by Officer Jones in the food halls area of the price center. I think that I had been eating something. I cannot figure out what the " loitering " term means in relation to what I was doing at the price center. My only understanding is that, loitering, means waiting around.

**ii. False Accusations – No Reasonable Cause**

The " FILED INTERVIEW REPORT " states;

" CRIME POTENTIAL

314.1PC / 647(A)PC ".

This " FILED INTERVIEW REPORT " further states under REMARKS;

" REMARKS ( REASON FOR CONTACT )

KNOWN VIOLENT

SEX OFFENDER LOITERING AT PRICE

CENTER. HOSTILE TO POLICE. C-37 I ".

This is a completely fabricated fact. I, John Cobb, am not a registered sex offender, and am not a violent registered sex offender. To my knowledge, I have never been in any registered sex offender data base. I do not know what " HOSTILE TO POLICE. C-37 I " means, but I intent to find out thorough discovery.

PC § 314.1 is related to exposing one's private parts in public. PC § 647(A) is related to lewd conduct in public. I did not do anything like this, or anything which could be remotely construable as this. I was contacted by Officer Jones without any reasonable cause.

I found this Field Interview Report to be very offensive and distressing.

**iii. <u>Unconstitutional Collection of Information</u>**

Further, Officer Jones has collected, and the report form has spaces for; my social security number, driver's license number, phone number, and birth date. This is information which is not supposed to be collected. I found in the law library one time, a bulletin which said that, the only information that a person is required to give to a police officer, is your name an address. Presumably, on this occasion, I gave the additional information to Officer Jones volitionally.

**iv. <u>Further Interaction with Officer Jones – Profiling</u>**

Further, in relation to Officer Jones. One time after this price center incident, I was leaving the U.C.S.D. book store, on the second level of the building. I walked past a table with two U.C.S.D. Police Officer sitting at it. One was Officer Jones. He was at a table with a Hispanic looking officer. As I walked past this table, Officer Jones pointed me out to this second Hispanic looking police officer, who then looked over at me. This is an incident in which I am being profiled by Office Jones.

**H. <u>Hearing Before Comm. Berry</u>**

**<u>( Exhibits No. 27 - 28 )</u>**

I was illegally arrested by a San Diego police officer. I was illegally taken to jail. I had a release hearing before Commissioner Berry – this is described below. The chase was eventually settled by a civil compromise.

**i. <u>Taken to Jail – Denied O. R. Release; Bail Set at $ 250.00.</u>**

On 3-3-2000, I was arrested by San Diego Police Officer Davis, and taken to jail ( San Diego Central ). While I was at the jail, I asked the person who was processing me into the jail – a man who was at the window, about own recognizance ( " O. R. " ) release. I was told that the jail did not do " o. r. ' s " anymore. I was further told that my bail was $ 250.00. While in jail, I had a hearing before Commissioner Berry. I made a transcript of this hearing [ Exhibit No. 27 ]. I ended up receiving 5 days of custody credits for being in jail.

**ii. Court**

**Hearing Regarding Release From Jail**

There was a first attempt at a hearing, but I ended up not seeing a Judge / Commissioner this first time. After this, the next day, I had a second attempt at seeing a Judge / Commissioner, and saw Commissioner Berry. During the first attempt, I spoke with a male public defender. I said that I thought that it was entrapment that the police officer had said that he was arresting me for PC § 602(n), and that the charge had been changed to MC § 52.80.01 (a).

I knew the difference between the two laws; PC § 602(n) and MC § 52.80.01(a). This was primarily from my previous S.D.S.U. situation ( refer to Section E. ). If Officer Davis had said that he would arrest me for MC § 52.80.01 (a), I would have left the store, because I would have assumed that the clerk(s) at the bookstore, or the police officer himself, would have falsified their statements about what I did ( like the S.D.S.U. situation before ). I believed that I had not done anything which violated the law, and I had not.

This is exactly what happened, as I found out when I got the police report. It was falsified and stated that I did things which I had not done ( I did not knock or shake any doors, and was not working as a prostitute ). I do not know who – the clerk or the police officer, or both, falsified the facts of the police report.

The public defender said that it was not entrapment. He said that one couldn't expect a police office to know what every law is on the books. This may be true, but a police officer should at least know what the law is that he / she is arresting me for. In this case; PC § 602(n). A police officer is required to know settled law – Wood v Strickland, 420 U.S. 308. " (2) officers mistake in arresting citizen was not reasonable, and thus, not protected by qualified immunity. "; Resek V. City of Huntington Beach; 41 Fed. Appx. 57, 2002.

At a second attempt, I had a hearing before Commissioner Berry; Exhibit No. 27 is the transcript of this hearing. For this hearing, I had a public defender named Mr. Ford. I believe that I also stated to Mr. Ford that I thought the situation was also entrapment.

During the hearing, Prosecutor Marcella Ordorica opposed my release from jail, saying that I ( John Cobb ) had a failure to appear. I said that I did not have a failure to appear. I tried to determine what the failure to appear was, and was told by the Public Defender that " they don't, they don't have it " [ Exhibit No. 27, Page 2; Line 3-10 ].

" DEF COBB: Ok Your Honor, I will. Can you give me the date of that alleged failure to appear /

PUB DEF: They don't have it. ".

To me, this shows that I was lied to by the public defender. Prosecutor Marcella ( a.k.a. Marcie ) Ordorica is referencing this failure to appear so as to oppose my release from jail. I ask what it is that is being referred to by the prosecution, Atty. Ordorica, and is being pointed out in a file to the Judge / Commissioner ( see below ), but then I'm told that they don't have it.

**Release From Jail But With Conditions**

Commissioner Berry agrees to release me ( John Cobb ) from jail on condition that I ( John Cobb ) agree to stay away from the F-Street Bookstore:

" COMM: Alright, I will agree to release him O. R. if he agrees to stay away from the F-Street Bookstore on Albuquerque Street, during the pendency of these proceedings. "

DEF COBB: Ok Your Honor, I will. Can you give me the date of that alleged failure to appear ?

PUB DEF: They don't have it. ". [ Exhibit No. 27. Page 2; Lines 1-4 ].

**Improper Private Meeting Between Prosecution and Comm. Berry**

During my inquiry in open court about this failure to appear, I witnessed, during this hearing, in which I could see and hear Commissioner Berry in the court ( I was in jail ) remotely via television, that the sound was turned off, and a man went up to Commissioner Berry at her bench, and point something out to her in a file. This, presumably was the failure to appear that Prosecutor Marcella Ordorica was referring to. It was inappropriate for the sound to be turned off, and to have a private meeting between the prosecution and Commissioner Berry.

I was eventually granted own recognizance release from jail, by Comm. Berry.

**Failure to Appear is on Prior Case, Not Instant Case.**

Commissioner Berry states that John Cobb has a failure to appear on a prior case. Exhibit No. 27; Transcript, Page 1; Line 24-28:

" PROS: I would oppose O. R., just based on the fact he's failed to appear in the past.

DEF COBB: I don't have any failure to appears.

COMM: Do you know what the, hold on, what's the date of this failure to appear. Do you know Marcie ? He's got one, apparently one failure to appear on some prior case. I don't ??? see a failure to appear on this case.

PROS: I think it's just on the ??? Your Honor, not on this case. ".

### I. Extension of S.D.S.U. Restraining Order ( 9-12-2000 )

**( Exhibit No. 29 )**

Around September of 2000, the S.D.S.U. Foundation applied for an extension of the restraining order ( " RO " ) referred to in above, in Section E. ( Exhibits No.s 13-24 – the S.D.S.U. Foundation illegal arrest by two S.D.S.U. police officers incident – July 24, 1997 ). The restraining order extension was extended to include the entire S.D.S.U. Campus.

The RO extension was based on falsified facts about me, John Cobb. These falsified facts included; not following the instructions of the S.D.S.U. Foundation employees and the S.D.S.U. police; being drunk in public; trespassing; looking under bathroom stalls; exposing himself for sexual encounters. Stating such falsified facts in substantially upsetting to me.

### J. Home Depot Case. Incident 3-26-2004.

**( Exhibit No. 30 - 36 )**

#### a. Synopsis

I was illegally arrested ( which is technically a battery and a kidnapping ) by two business loss prevention employees ( " LPE " ). After which, there was a conspiracy between five of the businesses employees, and four San Diego police officers ( including two investigators who work for the San Diego City Attorney's criminal division ) to cover up this criminal battery and kidnapping, destroy the video surveillance tape of this crime, and obstruct any civil suit filed regarding this crime.

#### i. Causing Incident

( These events are describe originally in my " Plaintiff's Declaration of Events ", included in my 3-11-2005 dated law suit. This was filed on 3-11-2005, Case No. GIC 844062 ).

On 3-26-2004, I, John Cobb was falsely arrested by Home Depot Loss Prevention Employees ( "LPE" ) as I waited for a refund on a defective water heater. As I was standing waiting for a refund, in the normal course of business, and after exercising my first amendment rights, on two separate occasions, a first LPE

approached me and walked to within an inch or so of my face, and then began to breath into and onto my face. This constituted a battery. I gently pushed him away from me these two times. Following this, after a period of time and while waiting for a refund, I was grabbed from behind by a second Loss Prevention Employee, who, along with the first LPE, pinned my arms against my sides, then tipped me over backwards, and then slammed me onto the ground. This severely injured my right hand; causing a bruise which went half-way up my arm. ( I had about $ 780.00 in medical bills from this. ). I was then rolled over, handcuffed, and taken to the security office.

This was felony false imprisonment – a PC § 236 violation with violence, and was punishable by imprisonment in the state prison – as per PC § 237(a). This constituted an illegal seizure, in violation of my constitution rights. Such an act is a serious threat to society.

**ii. At Manager's / Security Office**

After sitting for 20 minutes in the office, I heard one of the loss preventions employees ask the other one if they were arresting me or not, and the other one said ( approx. ); " we've come this far we might as well ".

**iii. Discriminatory Investigation and Law Enforcement**

Two San Diego police officers arrived ( Peterson and an unknown second police officer ). Without probable cause, one wrote a citation for petty theft, which was then torn up. I was issued a second citation for battery ( PC § 242 ). Later, a crime case cancellation was issued by San Diego Police Department investigators Michalak and Morales. [ Ex. No. 31 ]. These two investigators work for the San Diego City Attorney's criminal division. This is stated by San Diego police officer Sgt. Andra Brown, in her declaration:

> " ... The "Crime Case Cancellation" document was dated March 30, 2004. The Document indicated that, within four days of the incident, the matter was referred to the San Diego City Attorney's criminal division or review and determination as to whether criminal charges would be issued. ".

[ Declaration of Police Sgt. Andra Brown; From City of San Diego's Summary Motion to Dismiss ].

The battery charge against me was not prosecuted. No charges for the crimes committed against me, John Cobb, were prosecuted – e.g. false imprisonment and battery by Mike Silva. I was much more severely battered and injured by the two loss prevention employees, than Justin Perron was by my pushing

him, yet neither LPE was issued a citation for battery.

I overheard Officer Peterson asking Loss Prevention Employee ("LPE") Mike Silva if I had threatened anybody ( PC § 601; trespass, credible threat ), and Silva said no. This evidences that Officer Peterson was investigating me ( John Cobb ) for crimes. But nobody else's crimes were investigated, no other crimes were documented and memorialized by the San Diego police officers, and no other citations were issued.

Four (4) falsified witness statements were made by Justin Perron, Ryan Kennedy, Shana Clark and Miguel Corona. The Kenney-Clark-Corona group falsely states that I ( John Cobb ) committed the crime of trespass ( interfering, obstructing or intimidating ) upon a business ( PC § 602.1 ). It was falsely stated that I cussed at Ryan Kennedy, Ryan Kennedy being the person who inspected returned water heater merchandise, when if fact, I had no interaction with Ryan Kennedy at all, and did not cuss at any Home Depot Employee. I did not interfere with the business.

No charge of battery ( PC § 242 ) or false imprisonment ( PC § 236 ) was issued to either of the loss prevention employees ( Perron and Silva ). This would have been felony false imprisonment ( due to violence ) punishable by imprisonment in the state prison ( PC § 237 (a) ). The perpetrators of such acts are a serious threat to society. No witnesses were ever charged with obstructing justice ( PC § 148 ) nor with falsely reporting the commission of a trespassing misdemeanor ( PC § 148.5 ) – not Perron, Kennedy, Clark, nor Corona. No police officer was charged with falsifying the police report ( PC § 118.1 ).

Further, all of these events were captured by the video surveillance cameras of Home Depot. This is stated by the two Home Depot Loss Prevention Employees ( Perron and Silva ) in my deposition of them during my civil lawsuit. [ Perron; Exhibit No. 35; Page 32; Line 3-5. And Silva; Exhibit No. 36; Page 19; Lines 17-19 ].

### iv. Falsified Witness Statements and Police Report Statement Falsely Attributed to John Cobb. Police Officer Acted in Bad Faith. PC § 118.1 Violation.

Four (4) Home Depot Employee witness statements were made [ These are Exhibits No. 32 and 33 ( type out versions, for readibility ]. These four employees were Perron, Kennedy, Clark, and Corona. These were initially included and attached with Officer Peterson's type-written narrative police report. These witness statements were falsified to make it look like Home Depot employees ( Perron and Silva ) were justified in what they did. That no false arrest occurred, and no excessive force was used. Further, to make

it look like I had in fact committed crimes, when in truth, I had not.

But there were two different versions; and two different depictions / stories of what happened. A

1.) Justin Perron ( typed ) version; and a

2.) Kennedy-Clark-Corona version ( hand-written).

Officer Peterson subsequently wrote a falsified police narrative about what happened. He falsified what I ( John Cobb ) had said to him. He made his narrative read that what had actually happened was like the falsified Kennedy-Clark-Corona version. He introduced facts stated to him by witnesses Kennedy, Clark, and Corona, and put these falsified facts into the " Statement of John Cobb " section of his report. He corroborated this false cover-up story with statements supposedly made by me. Thus, Officer Peterson conspired with the witnesses and fabricate criminal evidence for a crime.

### v. **<u>Crime Fabrication.</u>**

Specifically, he stated that I ( John Cobb ) told him that Home Depot Employees asked me questions about rust on the water heater. The police report reads ( from Ex. No. 30 ):

" **<u>Statement of John Cobb:</u>**

He [ added John Cobb ] said while he was at the return counter the employees of Home Depot began to ask him questions about some rust on the heater ".

[ Exhibit No. 30; "<u>Statement of John Cobb:</u> " ].

I never said that, or anything like that, to Officer Peterson. I only said that a *customer* ( a single person ) was saying that the water heater wasn't rusted ( did not have rust ).

Officer Peterson did this to make it look to investigators ( and any prosecuting attorneys ) that I was corroborating the Kenney-Clark- Corona version of what happened. He did this to enable prosecutors to be able to charge me with trespassing – disrupting a business ( PC § 602.1 ). To establish that there bad been no illegal arrest, and that I actually had interfered with the business of Home Depot, i.e. Ryan Kennedy's inspection of the water heater. This, in spite of the fact that I had no interaction with Ryan Kennedy on that day at all. This could have ( and may have ) been easily determined by the San Diego police officers viewing the video surveillance tape.

The Home Depot employees knew they were stuck with an improper and false arrest. They new that they had committed felony imprisonment. The Kennedy-Clark-Corona cover-up version was written so that a prosecutor could prosecute me for an amended charge of trespassing ( PC § 602.1 ), which requires

disrupting employees / disrupting a business. – in this case, the inspection of the water heater by Ryan Kennedy.

**vi. San Diego Police – Writing Citations Without Probable Cause.**

Further, I witnessed the other San Diego Police officer ( not Peterson ) start to write out a citation for shop-lifting. He did this while Officer Peterson was conducting his investigation. He then asked what it was for, and Officer Peterson said it was for battery. This not-Peterson police officer then tore up the citation he had been writing, and wrote a second citation. This evidences that City of San Diego police officers write out citations without probable cause.

At the haring, and before the jury, Officer Peterson testified that there was only one police officer who arrived at the scene.

**vii. Past Occurrences ( Section B, D, E. ).**

**Previous Occurrences of Police & State Cover-Ups.**

I have had this exact type of police cover-up happen before. Refer to above Section D. ( Exhibit No. 11-12. ). Here, the City of San Diego police report was falsified, and falsified to describe the incident as a mutual battery, where in fact it was a case of a battery by two individuals upon me. No video surveillance tape was procured by the San Diego Police Dept. No citation of battery was issued to either of the perpetrators. I made a police complaint about this situation, but the police were " exonerated ".

I have also been victimized by police and state official's cover-ups in the U.C.S.D.-Briggs situation; above, Section B, and in the S.D.S.U. Woodard-Cavarlez illegal arrest situation; above, Section E.

**K. Plaintiff's 4 Police Contacts in 6 Month Period**

Exhibit No. 37 documents a series of four (4) police contacts, three were while I was in my car. These occurred on dates; 6-10-2004, 7-29-1004, 11-16-2004, and 11-19-1004. One of these was by the California Highway Patrol. These all occurred in a six month period in 2004.

The 7-29-2004 dated incident included a search of my outer clothing. Officer Gaines also opened my car door – this was not done in my presence. He said that he had done this upon returning. I was also handcuffed.

**L. Regarding the Instant Case Incident ( 2-3-2006 )**

**Exhibit No.s 38 - 47.**

i. **Original and Starting Incident**

On 2-3-2006, I went by bus to the U.C.S.D. Geisel Library. I took the bus because my car was being repaired ( I can prove this ). I got off the bus stop and started walking directly to the library. I went into a men's bathroom, which is directly between the bus stop, and the library, to go to the bathroom. This bathroom is now known to me as the first floor bathroom in Pepper Canyon Hall. As I was about to leave, and as I was standing up, I heard a noise to my right, and looked over to my right, and saw the top of a man's head. He looked over at me and said something like, " what are you looking at ? " , and I said excuse me. I then looked away. After which, I waited for a short time for safety, and then I left the bathroom.

I then sat on a bench outside of the bathroom to make sure that my laptop computer was secure. I carry it inside my backpack, and have it surrounded with towels so that it doesn't get damaged / broken. This took several minutes. I then started to walk to the Geisel Library.

ii. **U.C.S.D. Police Contact**

**False Imprisonment / Assault and Battery / Illegal Search.**

As I was walking to the Geisel Library, I was contacted by U.C.S.D. Police. These two U.C.S.D. Police Officers were later identified to be Officer Reyes ( ID No. 606 ) and Gustafson ( ID No. 601 ). I got the name of Reyes from the citation. I tried to get their names and badge numbers during the stop, but they refused to give them to me. I got the name of Gustafson from the police report, when I eventually got the report. At one point, Officer Gustafson stated that a Sergeant Morris had showed up.

The two police officers asked me for identification and / or my driver's license. I said that I would give them only my name and address. Several things happened with regards to this:

- Officer Reyes insisted that I give him my driver's license. I started to get out my wallet, but then I remembered that I didn't have to give a police officer my driver's license. I told him this. [ One time I had gotten a handout from the San Diego Law Library, which said that the only thing that your required to do when a police officer contacts you, is to give them your name and address, and that you don't have to give them your driver's license. ]
- I told the police officers several times that I did not have to give them my driver's license.
- Officer Reyes insisted that I give him my driver's license.
- At one point, Officer Reyes grabbed the bus pass out of my front shirt pocket. I felt this. I would allege that he did this because it had a black stripe on the back, and he thought it was a driver's

license – which also has a black stripe. I did not give him permission to do this. I felt Officer Reyes tug on my shirt when he took the bus pass.

- I gave them my name and address, and I believe that it was written down by one of the police officers.
- I asked them for their names and badge numbers, but they refused to give them to me.
- I said that I was going to take out a pen ( and paper ? ) to write down their badge numbers.
- I believe that Officer Reyes told me not to do this.
- I then started to take out a pen from the outside pocket of my backpack.
- Officer Reyes then grabbed me, and Officer Gustafson followed, moving slightly after Officer Reyes.
- They took me to the ground, rolled me over and handcuffed me. This scrapped my knee, and I showed this to them later. I also suffered a slight bruise to my hip.
- Officer Reyes then searched my backpack. I told him that he did not have permission to do that.
- Officer Reyes then took out my wallet, and my driver's license.
- The information of my driver's license number and birth-date ( and other personal information ) on the citation and stay-away order has been illegally obtained.

One of the U.C.S.D. Officers talked to the dispatcher. I heard the dispatcher mention " 5150 ". Officers Reyes and Gustafson then went on to falsify the police report.

### iii. <u>Citation</u>

I was told by Officer Reyes that I was being issued a citation for " loitering ". This is confirmed by the police report:

> " I told COBB that he was being placed under private person's arrest for loitering in or about a public toilet per section 647(d) PC. ".

I remember him using the term "loitering ". He also used a term which referred to sex stuff. These are the terms which stuck in my mind, with regards to the situation as a whole.

### iv. <u>Unable to Obtain Police Report from U.C.S.D. Department.</u>

I was unable to obtain a police report from the U.C.S.D. Police Department. I telephone up the department and asked how to obtain a police report. I was told to send a $ 6.00 money order. On 2-6-2006, I sent the money order, and a request for the report, but it was returned by the U.C.S.D. Police Department. I telephoned around ( Mary Garcia; Jay Dyer; Chief King ), and was told I couldn't get it. I called the City

Attorney's Office, and was told that they didn't know why I couldn't get it from the U.C.S.D. Police. I did get the report, eventually, much later, from the public defender ( sometime after 6-29-2006 ). I had to ask them several times, and there was a delay in my getting the police report from the public defenders.

////

////

**VERIFICATION**

I, John Cobb, am the plaintiff in this law suit. I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Dated: 1-31, 2008, Signed: [signature].

John Cobb, Plaintiff.

John Cobb – Defendant.
3955 Mt. Albertine Way
San Diego, CA 92111

Telephone: (858) 277-2026.

////

////

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA.**

| | |
|---|---|
| John Cobb, Plaintiff,<br>vs.<br>U.C.S.D., et seq., Defendants. | **Violations of § 1983;**<br>**Conspiracy to Violate Civil Rights, et. seq.**<br><br>Case Number : ____________________.<br>Judge: ______________________.<br>Department: __________.<br>Filed: ______________, 2008. |

## DECLARATION OF JOHN COBB

I, John Cobb, declare as follows:

That, each and every page of all of the exhibits presented herein, in this law suit, are true and correct copies of the original documents. Some documents have been redacted. I, John Cobb, have possession of the originals of these documents, and they are available for inspection upon request by any party, or by the Court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 1-31, 2008. Signed: [signature].
John Cobb – Plaintiff.

# TABLE OF EXHIBITS
## ( & DESCRIPTIONS )

( John Cobb has the original of these Exhibits, and can provide these upon request. )

**Ex. No.** **Description**

---

### A. Falsified Police Report By S.D.P.D. Officer Reschke.

1. Excerpts of falsified San Diego Police Report ( Dated 9-19-1992 ) - Falsified by Officer Reschke ( ID No. 3556 – is currently a Police Sergeant ). Falsely states that John Cobb " Pushed Jamous to the ground ", and that John Cobb has " one or more outstanding warrants " ( checked under reasons to not release subject with notice to appear ). Officer Reschke signed his police report under penalty of perjury. Compare with testimony by Jamous in Briggs Case, below. Incident occurred in a Sears ( a business ) parking lot. Charges were filed against John Cobb, and he plead guilty to two batteries. City Attorney Beth Woodley (now Beth Williams; in the Briggs Case, below) would have had reason to know that San Diego Police Officer Reschke falsified his police report, in two ways.

2. Accusatory pleading signed by prosecutor.

---

### B. Briggs Situation; Battery, Conspiracy. ( Case No. M - 667177 ). Incident date; 2-10-1993

3. U.C.S.D. Police Report ( Dated 2-10-1993 ).

4. Victim's Questionnaire: ( Dated 4-19-1993 ).

5. The first two pages are the admission papers to San Diego County Mental Health. The third and fourth pages are the PSYCHIATIC ASSESSMENT – of John Cobb. ( Dated 2-10-1993. Redacted. ). These state that John Cobb was attacked ( "scratched" and "kicked" ) by Briggs. The last page shows a negative drug screen results.

6. Accusatory Pleading. ( Dated 6-28-1993 ).

7. U.C.S.D. POLICE DEPARTMENT STATEMENT. ( by John Cobb ). ( Dated 8-26-1993 ). Is a different form than the form given to Ms. Briggs. Compare to No. 11, above. Ms. Briggs was never charged with battery against John Cobb.

8. John Cobb's notes regarding a 12-15-1993 telephone conversation with man at City Attorney's Office. Was told that City Attorney did not have his U.C.S.D. complaint ( dated 8-26-1993; refer to Exhibit No. 8, above ).about Briggs' battery upon him.

9. Excerpts of Transcript of Hearing. Certificate at back. Hearing was 11-15-1993.

C. **Vandalism Upon John Cobb's Car – No Charges Filed ( 2-9-1996 )**

10. San Diego Police Report regarding vandalism. ( Dated 2-9-1996 ).

D. **2 Batteries Upon John Cobb – No Charges Filed Against Perpetrators ( 3-18-1996 ) – No Prosecution**

11. Police Report regarding two batteries committed upon him by two people, including a store employee. Events occurred on 3-18-1996, committed at F-Street Bookstore ( a business) on Albuquerque Street. No charges were filed against assailants. Police could have obtained the video surveillance tape, but did not do so. ( Dated 3-18-1996 ). Police report has been falsified by a San Diego police officer.

12. Exonerations letter from San Diego Police Dept. Internal Affairs. ( Dated 8-5-1997 )

E. **S.D.S.U. Illegal Arrest ; False Police Reports, and Declarations. (Case No. - 743277. Date 7-24-1997 )**

13. John Cobb's student identification card – shows he was enrolled in the San Diego State University Defense Conversion Program. Includes a color photograph of John Cobb.

14. S.D.S.U. Police Dept. - San Diego Regional Crime / Incident Report. Dated 7-24-1997.

15. S.D.S.U. Police Dept. - Incident Summary. Dated 7-24-1997.

16. Accusatory pleading signed by San Diego City Attorney Davis. Amendment adding a Second Count of MC § 52.80.01(a).

17. Jane Doe 3 Declaration for Restraining Order. Declarations of S.D.S.U. Employees were taken ( on 7-31-1997 ).

18. John Cobb's notes taken at Restraining Order hearing on 8-18-1997. Judge Thomas J. Whelan states that John Cobb " can walk around the building ". But this condition is never written into the RO that is signed and issued by Judge Whelan.

19. Temporary Restraining Order and Actual Restraining Order. Actual R. O. states to stay 20 yards away from the employee's place of work; to have no contact with Foundation employees; not to keep plaintiff under surveillance; not to telephone plaintiff. Doesn't say that John Cobb can walk around the building.

20. Excerpts of Transcript of November 14, 1997 Proceedings – Plea. Contains certificate. ( States that Prosecutor Kay Meier works as a " Deputy District Attorney " and for District Attorney Paul J. Pfingst ).

21. Excerpts of 11-14-1997 proceedings. John Cobb unknowingly, unwillingly, and unintentionally pleads guilty to the non-crime.

22. Excerpts of 12-19-1997 proceedings. John Cobb committed to jail for approx. 1 month. Given no bail; a violation of his constitution right.

23. Court paper work ( pink sheets ). Shows John Cobb was given custody credits for 42 days.

24. Probation bills: Starting date ( approx. ) 2-11-1998 and $ 239.00. Was run up to ( around ) $ 2,977.17 with date; 2-11-2005. Then bill and letter sent for $ 34.17 in April of 2005. John Cobb paid $ 34.17 on 4-19-2005 ( County of San Diego receipt ).

---

**F. ( Traffic Citation Dated 2-5-1998 )**

25. Excerpts of Appeal and Petition for Writ of Mandamus to certify ( transfer ) traffic case up to Court of Appeal. Dated May 4th, 1999. Situation involves falsely issued traffic citation by Oceanside police officer. Trial court made error in denying PC § 1118 motion – police officer did not put on evidence for violation of all elements of CVC § 22108. Commissioner and Judges violated of Evidence Code § 451(e). Defendant John Cobb appealed situation two times ( Traffic Court -> Superior Court -> up to Court of Appeal ( 4th Appellate District ) ). Defendant John Cobb was unsuccessful.

---

**G. Loitering Allegation by U.C.S.D. Police ( Dated 2-5-1999 )**

26. Discovery Production from San Diego City Attorney regarding two traffic citation ( Discovery dated 6-9-1999 ). Discovery produced Included a U.C.S.D. San Diego Regional Field Interview Report with John Cobb; made by U.C.S.D. Police Officer M. Jones ( ID No. 602 ). Dated 2-5-1999. Falsely States " KNOWN VIOLENT SEX OFFENDER LOITERING AT PRICE CENTER. HOSTILE TO POLICE, C-37 I. "

---

**H. Police Report ( Dated 3-3-2000 ) and Related for PC § 602(n) Citation at Business. Transcript of Hearing ( while in custody ) before Comm. Berry.**

27. Transcript of 3-7-2000 hearing before Commissioner Berry in which City Attorney Ordorica attempts to deny ( John Cobb ) O.R. release. Shows that John Cobb was lied to by a public defender.

28. R.e. San Diego City Attorney Marcella Ordorica ( California Bar Number 201688 ). States she has a degree from the University of California, San Diego. Same as John Cobb and Dr. Briggs ( refer to above – Briggs situation; 1993 ).

---

**I. Extension of S.D.S.U. Restraining Order ( Dated 9-12-2000 )**

29. Petition for Injunction – is replete with false and misleading statements. Contains a falsified declaration under oath by S.D.S.U. Police Officer Sgt. Sonny Cavarlez.

---

**J. Plaintiff's Home Depot Case. Incident date 3-26-2004 ( GIC 844062. Filed 3-11-2005. )**

30. San Diego Police Officer Peterson's Report Narrative. Dated 3-26-2004.

31. " Crime Case Cancellation " form, signed by SDPD Officers / Investigators Michalak and

Morales. Dated 3-30-2004.

32. Witness statements discovery production from Home Depot.

33. John Cobb's typed out witness statements ( Perron, Clark, Kennedy. Corona ). Typed out for readability. [ Note: All Witness Statements were received by Plaintiff John Cobb, for the first time, from Home Depot ( via discovery ) on 3-20-2006. ].

34. Home Depot External Policy Guidelines. Section 23.8 " If any part of the incident was captured on CCTV, ...preserve... maintain ... until the case reaches disposition." Section 24.11.3 states; " Retain the case file ...until the criminal case reaches final disposition or for a period of two years, whichever is earlier ".

35. Excerpt of Deposition of Defendant Justin Perron, taken by John Cobb on 4-13-2006.

36. Excerpt of Deposition of Defendant Michael Silva II ( Mike Silva ), taken by John Cobb on 4-13-2006.

---

## K. <u>Series of Four ( 4 ) Police Contacts by San Diego Police and Calif. Highway Patrol. Series; 6-10-2004; 7-29-2004; 11-16-2004; 11-19-2004.</u>

37. John Cobb documentation of series of four police contacts by San Diego Police and California Highway Patrol. No citations written.

---

## L. <u>U.C.S.D. Loitering Citation / Case ( Citation Date 2-3-2006 ).</u>

38. U.C.S.D. Citation issued to John Cobb on 2-3-2006. Issued by Officer Reyes ( ID No. 606 ). States " 647(d) Public toilet lewd act ".

39. Stay away order ( § PC 626.6 ) issued to John Cobb on 2-3-2006.

40. Documentation of Defendant John Cobb's attempt at getting the U.C.S.D. police report. Letter and $ 6.00 money order was returned. Dated from 2-6-2006 through 2-13-2006.

41. Notice of Correction mailed to John Cobb. Dated 2-22-2006.

42. U.C.S.D. Police Report. Dated 2-3-2006. States that John Cobb is being arrested for " loitering ". Police report finally obtained by John Cobb from public defender.

43. Accusatory pleading. Charges single count of " PC647 (K) (1) INVASION OF PRIVACY 1 COUNT ". Dated around 6-14-2006.

44. Public defender letter naming " Peter Will " as John Cobb's public defender. Dated 6-20-2006.

45. Court paperwork ( pink sheet ), dated 8-21-2006..

46. Plaintiff John Cobb's Claim regarding this U.C.S.D. Situation.

47 Claim results – denial of claim by Sedgwick CMS. Dated 12-28-2007.

## M. **Miscellaneous**

48. Various Attorneys Information. Shows that Marcella Ordorica ( U.C.S.D. ), Shane McKay ( U.C.L.A. ), and Nancy Song ( U.C. Irvine ) are University of California affiliated.

49. Judge's Profiles.

Exhibit No. 1

# DECLARATION AND DETERMINATION

| | | | | |
|---|---|---|---|---|
| WARRANT ☐ LOCAL ☐ OUT | AGENCY SDPD | ARJIS ASSISTED Y N | PAGE 1 OF 2 | AGENCY NUMBER |
| | | | | SDPD BOOKING NUMBER |
| ARREST DATE 9-17-92 | TIME 1600 | BEAT/DISTRICT 114 | RELATED REPORTS (TYPE, NUMBER) 92-089794 | CITATION NUMBER |
| CHARGE(S) 242 PC BATTERY - TWO COUNTS | | | | ADULT RELEASES QR ☐ 849PC B1 ☐ B2 ☐ |
| PERSON ARRESTED (L.F.M) COBB JOHN HAROLD | | | ADDN'L CHGS. | |
| NICKNAME | RACE W | SEX M | AGE 33 | D.O.B. 7-10-59 |
| P.O.B. [illegible] | HT 6'2" | WT 235 | BUILD [illegible] | HAIR / EYES [illegible] |

## FACTS ESTABLISHING ELEMENTS OF CRIME AND IDENTIFICATION

JOHN HAROLD COBB WAS ARRESTED BY TWO CITIZENS FOR THE CRIME OF BATTERY; IN THE NORTH PARKING LOT OF THE SEARS STORE - 4525 LA JOLLA VILLAGE DRIVE.

CECILIA JAMOUS ARRESTED COBB BECAUSE HIT HER FOR NO REASON WITH HIS ELBOW, STRIKING HER ON THE RIGHT SHOULDER, CAUSING HER TO DROP THE PACKAGES THAT SHE WAS HOLDING IN HER HANDS.

COBB THEN PUSHED JAMOUS TO THE GROUND.

KREUTNER, JAMES A. WENT TO HELP JAMOUS. COBB CONFRONTED KREUTNER. KREUTNER TOLD COBB TO COOL IT. COBB PUNCHED KREUTNER ON THE CHIN.

SECURITY AT THE MALL HANDCUFFED COBB AND AWAITED OUR ARRIVAL, WHEN WE TOOK CUSTODY OF COBB

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Executed on 09-17-92 in the County of San Diego, State of California,

By [signature] (Declarant's Signature)

On the basis of the foregoing Declaration, I hereby determine that there:

IS ☐ IS NOT ☐

Probable cause to believe this arrestee has committed a crime.

________ (Date) ________ (Time) ________ (Magistrate's Signature)

BY ________ (Telephonic Approval)

PAGE 2 OF 4

RACE CODE LEGEND: A - OTHER; B - BLACK; C - CHINESE; J - CAMBODIAN; F - FILIPINO; G - GUAMANIAN; H - HISPANIC; I - INDIAN; J - JAPANESE; K - KOREAN; L - LAOTIAN; O - OTHER; P - PACIFIC ISLANDER; S - SAMOAN; U - ; V - VIETNAMESE; W - WHITE; ASIAN INDIAN

AGENCY NUMBER

**JUVENILE ONLY**

| FATHER/STEPFATHER'S NAME (L,F,M) | ADDRESS | CITY | HOME PHONE | BUS. PHONE |
|---|---|---|---|---|
| / | | | | |
| MOTHER/STEPMOTHER'S NAME (L,F,M) | ADDRESS | CITY | HOME PHONE | BUS. PHONE |
| | | | | |

SCHOOL | GRADE | PARENTS NOTIFIED BY: WHOM AND HOW | DATE | TIME

LIVES WITH | RELEASE DATE | TIME

FIELD DISP.: [1] - JUVENILE HALL [2] - OTHER POLICE AGENCY: ______ AGENCY [3] - OTHER: ______ NAME/RELATIONSHIP OR ORGANIZATION

ATTITUDE OF JUVENILE AND PARENTS/GUARDIAN

DET. DISPO.: [1] - REFER COURT/PROB [2] - DEPT. DIVERSION [3] - COUNSEL/INFORMAL [4] - OTHER ______

**NARRATIVE**

ADDITIONAL CHARGES:

NARRATIVE: CHARGE: JOHN HAROLD COBB WAS ARRESTED FOR TWO COUNTS OF BATTERY.

CONTINUED ~~☒~~

**CITIZEN ARREST**

I have arrested JOHN H. COBB

☒ For a public offense committed or attempted in my presence.

☐ When the person arrested has committed a felony, although not in my presence.

☐ When a felony has been in fact committed, and I have reasonable cause for believing the person arrested to have committed it.

I know that pursuant to Section 849 of the Penal Code of the State of California, it is necessary for me to sign a complaint stating the charge against the prisoner, which complaint must be made before a magistrate, and I agree to sign said complaint and appear in said matter without delay.

Date: 09-19-92 Signed: [signature]

| ARRESTING CITIZEN (L,F,M) PRINT | RES. ADDRESS | CITY | HOME PHONE |
|---|---|---|---|
| [redacted] | [redacted] | | [redacted] |

| BUS. ADDRESS | CITY | BUS. PHONE | RACE | SEX | D.O.B. |
|---|---|---|---|---|---|
| "SAME" | | | CAUC | M | [redacted] |

**ADULT - MISD. ONLY**

Check each reason for not releasing the subject with a written notice to appear. **(ADULTS ONLY)**

☐ 1. The person arrested was so intoxicated that he could have been a danger to himself or to others.

☐ 2. The person arrested required medical examination or medical care or was otherwise unable to care for his own safety.

☐ 3. The person was arrested for one or more of the offenses listed in section 40302 of the vehicle code.

☒ 4. There were one or more outstanding warrants for the person.

☐ 5. The person could not provide satisfactory evidence of personal identification.

☐ 6. The prosecution of the offense(s) for which the person was arrested or the prosecution of any other offense(s) would be jeopardized by immediate release of person arrested.

☐ 7. There was a reasonable likelihood that the offense(s) would continue or resume, or that the safety of persons or property would be imminently endangered by release of the person arrested.

☐ 8. The person arrested demanded to be taken before a magistrate or refused to sign the notice to appear.

☐ 9. Any other reason: ______

Exhibit No. 2

2

MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
SAN DIEGO JUDICIAL DISTRICT

NOTIFY WARRANT ISSUED FOR APPEARANCE ON JANUARY 8, 1993 @ 08:00 A.M.
09-10-59 SDPD RESCHKE #3556 - slr

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, | No. M-__________ |
| v. | |
| JOHN HAROLD COBB Defendant. | COMPLAINT - CRIMINAL L27608 |

The undersigned, certifying upon information and belief, complains

COUNTS ONE THROUGH TWO:

That on or about September 19, 1992, in the City of San Diego, County of San Diego, State of California, a misdemeanor was committed by the defendant, who did willfully and unlawfully use force or violence upon another person in violation of Penal Code section 242/243(a).

I certify under penalty of perjury that the foregoing is true and correct.

Dated 12/15/92 at San Diego, California.

Grace C. Rosenberg
(COMPLAINANT)

Pursuant to Penal Code section 1054.5(b), the People are hereby informally requesting that defendant's counsel provide discovery to the People as required by Penal Code section 1054.3.

CRIMINAL COMPLAINT FILED ____________

Exhibit No. 3

# UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT
## SAN DIEGO, CALIFORNIA

THE STATUS OF THIS ARRESTED PERSON IS:
☐ STUDENT, STAFF OR FACULTY ☐ NON-AFFILIATED

THIS CASE IS:
☐ ALCOHOL-RELATED ☐ GANG-RELATED ☐ WEAPONS-RELATED

☒ ARREST REPORT
☐ NOTIFY WARRANT
☐ WARRANT ARREST
☐ JUVENILE CONTACT

CASE NO. 93-02823

| | |
|---|---|
| Name (L,F,M) | COBB, JOHN, HAROLD/ROBERT |
| Charge(s) | 242 P.C. BATTERY |
| Alias/Maiden Name (L,F,M) | |
| Race | W |
| Sex | M |
| Age | 33 |
| DOB | 9-10-59 |
| Ht. | 6'1" |
| Wt. | 220 |
| Build | HVY |
| Hair | BLN |
| Eyes | BLU |
| UCSD Student | Yes ☐ No ☒ |
| Address (Local) | 3955 MT. ALBERTINE WY. S.D. 92111 |
| (Phone) | 277-2026 |
| Address (Permanent) | SAME |
| (Phone) | SAME |
| Location of Incident | SIDEWALK W/ OF OLD STUDENT CNTR. U.C.S.D. |
| Date | 2-10-93 |
| Time | 1800 |
| Location of Arrest | SAME |
| Date | SAME |
| Time | 1830 |
| Arresting Officer | MACINTYRE |
| Badge | 617 |
| Admonished | Yes ☒ No ☐ |
| Admonished by | SAME |
| Date/Time | 2-10-93 / 1850 |
| Citizen's Arrest | Yes ☒ No ☐ |
| Citizen's Name (L,F,M) | BRIGGS, BRIDGET RENE |
| Waiver | Yes ☐ No ☒ |
| Statement | Yes ☐ No ☒ |
| Evidence Collected | Yes ☐ No ☒ |
| Property Tag # | |
| Complaints or evidence of injury | Yes ☐ No ☒ |
| Explain: | |
| Treated By: | |
| Description of evidence | |

| HAIR LENGTH/TYPE | HAIR | FACIAL HAIR | COMPLEXION | SPEECH | VOICE |
|---|---|---|---|---|---|
| 1 BALD | 1 AFRO/NAT. | (1) CLEAN SHAVEN | 1 ACNE | 1 ACCENT | 1 DISGUISED |
| 2 COLLAR | 2 BRAIDED | 2 FULL BEARD | 2 DARK | (2) LISPS | 2 HIGH PITCH |
| 3 LONG | 3 BUSHY | 3 FU MANCHU | 3 FRECKLED | 3 MUMBLES | 3 LOUD |
| (4) NECK | 4 GREASY | 4 GOATEE | (4) LIGHT | 4 OFFENSIVE | 4 LOW PITCH |
| 5 SHORT | 5 MILITARY | 5 LOWER LIP | 5 MEDIUM | (5) QUIET | (5) MEDIUM |
| 6 SHOULDER | 6 PONYTAIL | 6 MUSTACHE | 6 PALE | 6 RAPID | 6 MONOTONE |
| 1 COURSE | 7 PROCESSED | 7 NONE/FUZZ | 7 POCKED | 7 SLOW | 7 NASAL |
| 2 FINE | 8 STRAIGHT | 8 SIDEBURNS | 8 RUDDY | 8 STUTTERS | 8 PLEASANT |
| 3 THICK | (9) WAVY/CURLY | 9 UNSHAVEN | 9 SALLOW | 9 TALKATIVE | 9 RASPY |
| 4 THINNING | 10 WIG | 10 VAN DYKE | 10 TANNED | 10 OTHER: | 10 SOFT |
| (5) WIRY | 11 OTHER: | 11 OTHER: | 11 OTHER: | | 11 OTHER: |
| 6 OTHER: | | | | | |

IDENTIFICATION NUMBERS

| | |
|---|---|
| Driver's License No. | N6539830 |
| Social Security No. | 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 |
| Booking Number | |
| Citation Number | 12973 |
| Warrant Number | |

Suspect description (e.g. glasses, tatoos, teeth, birthmarks, jewelry, scars, etc.)

Clothing description: WHITE T-SHIRT, WHITE PANTS, BLUE TENNIS SHOES

| Suspect Vehicle | Year | Make | Model | Color/Color | Body type | License No. | State |
|---|---|---|---|---|---|---|---|
| | N/A | | | | | | |

Additional vehicle identifiers (chrome, damage, etc.)
VIN number
Disposition/vehicle
Registered owner (L, F, M)
Address
Phone

| (V) W RP DC | Name (L, F, M) | V W RP DC | Name (L, F, M) |
|---|---|---|---|
| | BRIGGS, BRIDGET RENE | | |
| Address (Local) | S.D. 92037 9180 REGENTS RD. # B | Address (Local) | |
| Phone | 626-0405 | Phone | |
| Address (Permanent/Business) | | Address (Permanent/Business) | |
| Phone | | Phone | |

| Father | Address | Home Phone | Bus Phone |
|---|---|---|---|
| | | | |

| Mother | Address | Home Phone | Bus Phone |
|---|---|---|---|
| | | | |

Detective Bureau Follow-up Yes (No)
Reviewed by Det.

| School | Grade | Parents notified by whom-how | Date | Time |
|---|---|---|---|---|
| | | | | |

Lives with
Disposition of Juvenile: Hall ☐ Other agency ☐ Parents ☐ Other:
Date
Time

| Reporting Officer | Badge | Report Date/Time | Report approved by | Badge | Date/Time |
|---|---|---|---|---|---|
| MACINTYRE | 617 | | | | |

PAGE 61

# UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT
## SAN DIEGO, CALIFORNIA

1. CASE NO. 93-0282 2/5

2. CODE SECTION: 242 P.C.
3. CRIME: BATTERY
4. CLASSIFICATION: PUSHING/KICKING
5. REPORT AREA: Ø1
6. DATE AND TIME OCCURRED - DAY: 2-10-93 1800 WED
7. DATE AND TIME REPORTED: 2-10-93 1815
8. LOCATION OF OCCURRENCE: W/SIDE OLD STU. CNTR. U.C.S.D. LA JOLLA 92092
9. VICTIM'S NAME — LAST, FIRST, MIDDLE: BRIGGS, BRIDGET RENE
10. RESIDENCE ADDRESS: 9180 REGENTS RD #B LA JOLLA 92037
11. RESIDENCE PHONE: 626-0405
12. OCCUPATION: STUDENT
13. RACE - SEX: W F
14. AGE: 22
15. DOB: 1-22-70
16. BUSINESS ADDRESS: SAME
17. BUSINESS PHONE: SAME

CODES FOR BOXES 20 AND 30: V = VICTIM W = WITNESS P = PARENT RP = REPORTING PARTY DC = DISCOVERED CRIME

18. CHECK IF MORE NAMES: ☒
19. NAME - LAST, FIRST, MIDDLE: ESQUIERDO, MARK PATRICK
20. CODE: W O.C.
21. RESIDENCE ADDRESS: 4786 MUIR AVE. S.D. CA. 92107
22. RESIDENCE PHONE: 222-9786
23. OCCUPATION: STUDENT
24. RACE - SEX: W M
25. AGE: 26
26. DOB: 8-11-66
27. BUSINESS ADDRESS: SAME
28. BUSINESS PHONE: SAME
29. NAME - LAST, FIRST, MIDDLE: KENNEDY, TODD RAYMOND
30. CODE: W O.C.
31. RESIDENCE ADDRESS: METEOR HALL #306 U.C.S.D. LA JOLLA 92092
32. RESIDENCE PHONE: 455-6422
33. OCCUPATION: STUDENT
34. RACE - SEX: W M
35. AGE: 20
36. DOB: 10-2-72
37. BUSINESS ADDRESS: 18903 GODINHO AVE CERRITOS CA. 90701
38. BUSINESS PHONE: 310-860-0057

39. DESCRIBE CHARACTERISTICS OF PREMISES AND AREA WHERE OFFENSE OCCURRED
FLAT CEMENT SIDEWALK BETWEEN SEVERAL UNIVERSITY BUILDINGS

40. DESCRIBE BRIEFLY HOW OFFENSE WAS COMMITTED
(V) &(S) WERE WALKING PAST EACH OTHER WHEN (S), TOTALLY UNPROVOKED, PUSHED (V) INTO BUSHES. (S) THEN STARTED KICKING (V) SHOUTING "YOU BITCH, YOU BITCH". SEVERAL (W)'S HEARD (S) CALLING FOR HELP AND INTERVENED.

41. DESCRIBE WEAPON, INSTRUMENT, EQUIPMENT, TRICK, DEVICE OR FORCE USED
HANDS / FEET

42. MOTIVE - TYPE OF PROPERTY TAKEN OR OTHER REASON FOR OFFENSE
ANGER

43. ESTIMATED LOSS VALUE AND/OR EXTENT OF INJURIES - MINOR, MAJOR
NO INJURIES NOTED

44. WHAT DID SUSPECT/S SAY - NOTE PECULIARITIES
SEE NARRATIVE

45. VICTIM'S ACTIVITY JUST PRIOR TO AND/OR DURING OFFENSE
WALKING TO CLASS

46. TRADEMARK - OTHER DISTINCTIVE ACTION OF SUSPECT/S
UNPROVOKED ATTACK

47. VEHICLE USED - LICENSE NO. - ID NO. - YEAR - MAKE - MODEL - COLORS (OTHER IDENTIFYING CHARACTERISTICS)
N/A

48. SUSPECT NO. 1 (LAST, FIRST, MIDDLE): COBB, JOHN HAROLD ROBERT

| 49. RACE - SEX | 50. AGE | 51. HT. | 52. WT. | 53. HAIR | 54. EYES | 55. ID NO. OR DOB | 56. ARRESTED |
|---|---|---|---|---|---|---|---|
| W M | 33 | 61 | 220 | BLN | BLU | 9-10-59 | YES ☒ NO ☐ |

ADDRESS, CLOTHING AND OTHER IDENTIFYING MARKS OR CHARACTERISTICS
SEE NARRATIVE

SUSPECT NO. 2 (LAST, FIRST, MIDDLE)

| 59. RACE - SEX | 60. AGE | 61. HT. | 62. WT. | 63. HAIR | 64. EYES | 65. ID NO. OR DOB | 66. ARRESTED |
|---|---|---|---|---|---|---|---|
| | | | | | | | YES ☐ NO ☐ |

ADDRESS, CLOTHING AND OTHER IDENTIFYING MARKS OR CHARACTERISTICS

| REPORTING OFFICER | BADGE | REVIEWED BY | BADGE | DATE |
|---|---|---|---|---|
| MACINTYRE | 617 | [signature] | 654 | 2-18-93 |

OTHER ACTION:
☐ ALCOHOL-RELATED
☐ WEAPONS-RELATED

**UNIVERSITY OF CALIFORNIA**
**POLICE DEPARTMENT**

___ Employee's Report
___ Supplemental
✓ Continuation

Case # 93-0282
Page # 3/5
Date: 2-10-93

| Incident Type: | Incident Date: | Time: |
|---|---|---|
| 242 P.C. | 2-10-93 | 1815 |
| Incident Location: OLD STU. CNTR | | |

ORIGIN

AT ABOUT 1800 2/10/93 I RECEIVED A RADIO CALL OF POSSIBLE DOMESTIC VIOLENCE OUTSIDE THE GROVE CAFE NEAR THE U.C.S.D. OLD STUDENT UNION BUILDING. AN R/P REPORTED THAT A MALE AND A FEMALE WERE STRUGGLING OVER A BACKPACK JUST WEST OF THE CAFE.

VICTIMS STATEMENT

SHORTLY BEFORE 1800 TODAY, (V)BRIGGS SAID SHE WAS WALKING E/B FROM THE STUDENT UNION BUILDING WHEN SHE HAPPENED TO LOOK UP AND SAW AN UNKNOWN W/M/A , LATER IDENTIFIED AS COBB, WALKING CASUALLY TOWARD HER. BRIGGS SAYS IT APPEARED AS THOUGH COBB WAS GOING TO WALK DIRECTLY INTO HER SO SHE STARTED TO SIDE STEP. AS SHE DID SO COBB RUSHED UP TO HER "LIKE A FOOTBALL PLAYER" AND WITH BOTH HIS HANDS/ARMS EXTENDED PUSHED HER DOWN TO THE GROUND AND INTO THE BUSHES. COBB THEN STOOD BESIDE HER FOR SEVERAL SECONDS AND BRIGGS SHOUTED "HEY, WHAT THE HELL DO YOU THINK YOU'RE DOING!?". BRIGGS THEN STARTED TO GET UP AND AS SHE DID SO COBB TRIED TO PUSH HER BACK DOWN WHILE KICKING HER ABOUT HER LEGS SHOUTING "YOU BITCH!, YOU BITCH!". AFTER KICKING BRIGGS FOR SEVERAL SECONDS COBB STARTED TO WALK AWAY HOWEVER BRIGGS, INTENT ON IDENTIFYING AND DETAINING HIM, GRABBED HIS BACKPACK AND THE TWO STRUGGLED ON THE SIDEWALK.

AT THIS POINT SEVERAL WITNESSES, WHO HAPPENED TO BE WALKING NEAR THE GYM, HEARD BRIGGS SCREAMING FOR HELP AND THEY RAN TO ASSIST. WHEN THEY SAW COBB CONTINUALLY KICKING BRIGGS THEY SEPARATED THE TWO AND DETAINED COBB FOR POLICE.

BRIGGS SAID SHE DOESN'T KNOW COBB AND HAS NO IDEA WHY HE ATTACKED HER. THE INCIDENT WAS TOTALLY UNPROVOKED AND BRIGGS DESIRES PROSECUTION FOR 242PC. BRIGGS SAID SHE DID NOT THINK SHE SUFFERED ANY INJURIES AND DID NOT REQUEST ANY MEDICAL TREATMENT.

WITNESS STATEMENTS

THE FOUR WITNESSES, ESQUIERDO, KENNEDY, BAUM AND HANSEN, WERE ALL IN THE AREA OF THE MAIN GYM, ABOUT 60' AWAY, WHEN THEY HEARD BRIGGS SCREAMING FOR HELP. ESQUIERDO WAS WALKING N/B ON REVELLE PLAZA WHEN HE HEARD A FEMALE SCREAMING FOR HELP. ESQUIERDO WAS THE FIRST TO ARRIVE AND SAW COBB KICKING BRIGGS. SHORTLY AFTER HIS ARRIVAL THE OTHER WITNESSES ARRIVED AND THEY SEPERATED THE TWO. KENNEDY, BAUM AND HANSEN WERE ALL WALKING S/B ON REVELLE PLAZA NEAR THE GYM WHEN THEY HEARD THE SOUND OF SOMEONE SCREAMING. ALL THREE RAN TOWARD THE STUDENT CENTER AND SAW BRIGGS LYING IN THE BUSHES BEING KICKED BY COBB. THEY IMMEDIATELY PULLED COBB AWAY AND DETAINED HIM FOR POLICE.

**UNIVERSITY OF CALIFORNIA**
**POLICE DEPARTMENT**

___ Employee's Report
___ Supplemental
_✓_ Continuation

Case # 93-0282
Page # 4/5
Date: 2-10-93

| Incident Type: | Incident Date: | Time: |
|---|---|---|
| 242 P.C. | 2-10-93 | 1815 |
| Incident Location: 010 STU. CNTR | | |

OFFICERS OBS/ACTIONS

UPON MY ARRIVAL (V)BRIGGS WAS STANDING ABOUT 30' WEST OF THE STUDENT UNION BUILDING WITH THREE OF THE WITNESSES. (S)COBB WAS SITTING ON THE GRASS OPPOSITE HER WITH THE OTHER WITNESS WATCHING HIM. I FIRST SPOKE WITH BRIGGS, WHO GAVE ME A BRIEF SYNOPSIS OF THE INCIDENT, AND I THEN WENT TO TALK WITH COBB. I ASKED COBB IF HE COULD TELL ME WHAT HAPPENED AND HE REPLIED "SHE GOT IN MY WAY SO I PUSHED HER ASIDE. I WAS JUST WALKING ALONG AND SHE INTENTIONALLY BLOCKED MY PATH. WOMEN ARE ALWAYS DOING THIS KIND OF STUFF. LOOK, I'M NOT SAYING ANYTHING ELSE SO EITHER ARREST ME OR LET ME GO. I'M NOT SAYING ANYTHING ELSE WITHOUT MY LAWYER".

AT HIS POINT COBB WAS BECOMING MORE AND MORE ADGITATED/HOSTILE AND BASED UPON THE VICTIM AND WITNESS STATEMENTS I PLACED HANDCUFFS ON HIM AND PUT HIM IN THE BACK OF MY PATROL CAR FOR OFFICER SAFETY REASONS. WITH SGT. ROSE,#655, WATCHING MY CAR I RECONTACTED BRIGGS WHO TOLD ME SHE WANTED TO PRESS CHARGES FOR 242PC (BATTERY).

I DROVE COBB TO THE U.C.S.D. POLICE STATION AND ONCE THERE I ADVISED HIM OF HIS MIRANDA RIGHTS VIA MY DEPARTMENT NOTEBOOK. COBB SAID "YES" THAT HE UNDERSTOOD HIS RIGHTS AND "NO" HE DID NOT WISH TO MAKE A STATEMENT. I THEN ISSUED COBB CITE #12973 FOR 242PC AS WELL AS A NOTICE OF 626.6PC (NOTICE TO STAY OFF CAMPUS).

DUE TO COBBS VIOLENT IRRATIONAL BEHAVIOR I THEN TRANSPORTED HIM TO S.D. COUNTY MENTAL HEALTH FOR AN EVALUATION. COBB WAS ACCEPTED BY THE STAFF PENDING FURTHER EVALUATION AND A DRUG SCREENING.

**UNIVERSITY OF CALIFORNIA**
**POLICE DEPARTMENT**

___ Employee's Report
___ Supplemental
✓ Continuation

Case # 93-0282
Page # 5/5
Date: 2.10.93

| Incident Type: | Incident Date: | Time: |
|---|---|---|
| 242 P.C. | 2.10.93 | 1815 |

Incident Location:
W/ SIDE WALK U.C.S.D. STUDENT CENTER

ADDITIONAL WITNESSES:

BAUM ANDREW IAN : METEOR HALL #304 U.C.S.D. LA JOLLA 92092
PH # 558-6816 D.O.B. 11.20.71
PERM. ADD. : 5440 QUAKERTOWN WOODLAND HILLS CA. 91364
PH # 818.347.3118

HANSEN, BRIAN ERIC : METEOR HALL #303 UCSD LA JOLLA 92092
PH # 558-6515 D.O.B. 5.1.73
PERM. ADD. 543 HAMPTON DR. LODI CA. 95242
PH # 209.368.9760

Exhibit No. 4

# VICTIM QUESTIONNAIRE

The purpose of this questionnaire is to obtain background information needed to evaluate your case. Please answer as many of the questions as you can. If you cannot answer a question, please state the reason (e.g., no knowledge). If you need more room to write, please attach additional pages.

Your name: Bridget Briggs

Your current address: 9150-B. Regents Rd

Your telephone number: (work) 0 (home) 625-0405

Your date of birth: 1-22-70

Suspect's name: John Cobb

Suspect's current address: ______

Suspect's telephone number: (work) ______ (home) ______

Suspect's date of birth: ______

Your relationship with suspect:

[X] Stranger
[ ] Acquaintance
[ ] Relative

If acquaintance or relative, please explain. ______

Are there any civil actions (lawsuits) pending between you and the suspect? If yes, please explain. No

Date of incident: 2-10-93 Time of incident: 6:45pm

Location of incident: UCSD - Campus

Was anyone else a witness to the incident? If so, please provide the following for each witness: yes - about 5 witnesses.

(1) Name: officer has this information

Address: ______

Telephone number: ______

(2) Name: ______________________

Address: ______________________

Telephone number: ______________________

(3) Name: ______________________

Address: ______________________

Telephone number: ______________________

Were you or was anyone else involved in a dispute with the suspect? If so, what was it about? ONLY ME - I was WALKING on campus - He charged me - threw me into the bushes I stood up and asked him why did he do this - he started freaking out - threw me on the cement + started kicking me while I was on the ground about 5 to 6 times.

Had either you or the suspect been drinking? If so, please state who was drinking and how much. No

Did the suspect hit you? If yes, please answer the following:

(1) How many times? 5-6 times

(2) With what? his Foot

(3) Where were you hit? legs, stromach, back

Did you hit or use violence toward the suspect? If so, when? No

What exactly did you do? cried out for help - tried to hold on to his back back when he tried to run so someone ~~was~~ would catch him.

Were there any weapons involved in this incident? If yes, what type? How were they involved? NO - Just his Foot while he kicked me.

Please describe any damages which you suffered as a result of this incident.

[X] Bodily injury: Back injury, bruises, etc. amount: $
[ ] Property damage: amount: $
[ ] Out of pocket expenses: amount: $
[ ] Other: amount: $

Did anyone take photographs of the injuries or damage? If yes, who has them. NO

Have you and the suspect been involved in any incidents <u>before</u> this happened? If so, when? What happened? NO

Have you and the suspect been involved in any incidents <u>after</u> this happened? If so, when? What happened? NO

Do you know whether the police report of this incident is correct? If it is not, how is it incorrect? I believe its correct.

If criminal charges are filed, are you willing to come to court and testify about the incident? Yes !!

Is there anything else you believe would be helpful in evaluating this incident? Please describe. I believe from the way he charged at me - that something was troubling his mind prior to our encounter. He appeared very angry and hostile and I feel that he was releasing some pent up anger or emotional disturbance - During the incident he seemed emotionally off !!

Have you entered into any agreement, or are you working on an agreement, with the other party to resolve this incident? If yes, explain. NO

I declare under penalty of perjury that the above statements are true and correct according to my information and belief. I agree to keep the City Attorney's Office informed of the last known address of all witnesses if I become aware of any change. I am willing to testify under oath concerning the incident described above.

[ ] No prosecution desired.

Signature: Bridget Briggs Date: April 19, 1993.

Exhibit No. 5

# COUNTY OF SAN DIEGO

## DEPARTMENT OF HEALTH SERVICES

1700 Pacific Highway, San Diego, CA 92101
JAMES A. FORDE, Director

Mental Health Services
ADMITTANCE REQUEST

| Date | Time |
|---|---|
| 2·10·93 | 1930 |

| From - Department | To |
|---|---|
| UNIV. OF CA. POLICE S.D. | Mental Health Services |

| Name - Last | First | Middle |
|---|---|---|
| COBB | JOHN | HAROLD / ROBERT |

| Address - Street No. | City | County | State | Zip Code No. |
|---|---|---|---|---|
| 3955 MT. ALBERTINE WY | S.D. | S.D. | CA. | 92111 |

| Date of Birth | Telephone Number |
|---|---|
| 9·10·59 | 277-8026 |

| Whom to Notify | Relationship |
|---|---|
| | |

| Address - Street No. | City | State | Telephone Number |
|---|---|---|---|
| | | | |

Brought from

Jail ☐ Home ☐ Honor Camp ☐ Other ____

| Jail Hold | Guard |
|---|---|
| Yes ☐ No ☒ | Yes ☐ No ☒ |

| Automobile | Make | Year | License No. |
|---|---|---|---|
| Yes ☒ No ☐ | CHRYSLER | '87 | UNK. |

Location of car and keys (if applicable)

TORREY PINES & L.J. VILLAGE / KEYS W/ SUBJECT

Reason for the Request

Mentally ill ☒ Alcoholic ☐ Drugs ☐ Court Order ☐ Conservatorship ☐

Comments:

Signature of ...

of California—Health and Welfare Agency

Department of Mental Health

# APPLICATION FOR 72-HOUR DETENTION FOR EVALUATION AND TREATMENT

*Confidential Client/Patient Information*
See California W & I Code Section 5328

MH 302 (Rev. 2/88)

**W & I Code, Section 5157, requires that each person when first detained for psychiatric evaluation be given certain specific information orally, and a record be kept of the advisement by the evaluating facility.**

## DETAINMENT ADVISEMENT

My name is ____________

I am a (Peace Officer, etc.) with (Name of Agency).

You are not under criminal arrest, but I am taking you for examination by mental health professionals at (Name of Facility).

You will be told your rights by the mental health staff.

*If taken into custody at his or her residence, the person shall also be told the following information in substantially the following form:*

You may bring a few personal items with you which I will have to approve. You can make a phone call and/or leave a note to tell your friends and/or family where you have been taken.

☒ Advisement Complete ☐ Advisement Incomplete

Good Cause for Incomplete Advisement

| Advisement Completed By | Position | Date |
|---|---|---|
| W.T. MacIntyre #617 | Police Ofc. #617 | 2-10-93 |

To ____________

Application is hereby made for the admission of JOHN HAROLD ROBERT COBB

residing at 3955 MT. ALBERTINE WY, California, for

72-hour treatment and evaluation pursuant to Section 5150, et seq., of the Welfare and Institutions Code.

• • • • • • • • • • •

The circumstances under which said person's condition was called to my attention are as follows:
COBB WAS DETAINED BY SEVERAL CITIZENS AFTER KICKING & STRIKING A FEMALE. WITNESSES STATE THE ATTACK WAS COMPLETELY UNPROVOKED

SEE REVERSE SIDE FOR DEFINITIONS

• • • • • • • • • • •

The following information has been established: (Please state with sufficient detail information to warrant the belief that the person for whom evaluation and treatment is sought is in fact a danger to others, a danger to himself, or gravely disabled.)
COBB SAID THAT VARIOUS WOMEN INTENTIONALLY CHALLENGE HIS INTEGRITY BY STARING HIM DOWN AND INTENTIONALLY WALKING INTO HIM. COBB IS ANGERED BY THEIR BEHAVIOR AND SOMETIMES LOSES CONTROL.
COBB HAS BEEN ARRESTED FOR SIMILAR OFFENSES IN PAST & BASED ON TODAYS INCIDENT I FEEL COBB MAY BE A DANGER TO OTHERS.

Based upon the above information it appears that there is probable cause to believe that said person is, as a result of mental disorder:

☐ A danger to himself. ☒ A danger to others. ☐ Gravely disabled.

| Signature and title of peace officer, member of attending staff of evaluation facility or person designated by county. | Date | Phone |
|---|---|---|
| [signature] | 2-10-93<br>Time 1930 | 534-4357 |

Address of Law Enforcement Agency or Facility
UNIV. OF CA. POLICE S.D. 9500 GILMAN DR. LA JOLLA CA. 92093

**Certication of Criminal Charges**
**(W & I) Code 5152.1, also 5152.2)**

If person is not accepted for admission or is detained for less than 72 hours, notification shall be made pursuant to W & I Code, Section 5152.1.

☐ Notification is requested as person has been referred under circumstances in which criminal charges might be filed.

Signature of Peace Officer

SEE REVERSE SIDE FOR INSTRUCTIONS

Chief Complaint
Complaint of Others
History of Present Episode
Past Psych History

Medical History
Family History
Vital Signs
BP P T R

Mental Status Exam
Diagnostic Formulation:
All Five Axis
Assets

Treatment Plan
Discharge Criteria
Signature

CHIEF COMPLAINT: "I just pushed her down."

HISTORY OF PRESENT EPISODE: This 33 year-old, currently unemployed, single white male is brought for psychiatric evaluation by the University of California Police Department. The patient was on the campus at University of California San Diego this evening. He pushed a woman down who was walking on the sidewalk, who in turn scratched his face and kicked him and police were called because the woman felt he attacked her. Apparently there was no provocation for him pushing her down and because of some statements about his life-style and his dislike of women the officer brought him for psychiatric evaluation. Patient has no formal charges, though he does have apparently a misdemeanor charge filed. Patient states that while he was walking on campus this evening a woman bumped into him, "rudely" he then pushed her down and she fell into some bushes. She in turn attacked him, kicking him and scratching his face with her fingernails and apparently the two of them scuffled for a few minutes. The patient was then taken away by police and then brought here. The patient really has no other complaints. He is somewhat strange in interaction but he is not threatening. He doesn't appear to be intoxicated.

SOCIAL HISTORY: The patient graduated from University of California at San Diego in 1987 with a degree in Computer Science. He states he was recently laid off as an Engineering Consultant from a firm in La Jolla. Patient lives in Clairemont, he lives alone. Patient has few friends. The patient states he's homosexual but has few contacts with the gay community in San Diego because "I don't put out". The patient has no particular legal difficulties. Apparently he lives a rather isolated life-style. Patient is self supporting though he is out of work right now.

DRUG AND ALCOHOL HISTORY: The patient denies use of drugs or alcohol.

MEDICAL HISTORY: The patient is uncertain but he may be allergic to Penicillin. The patient has no serious ongoing medical problems or history of head trauma, takes no medication.

FAMILY HISTORY: Negative.

INSURANCE STATUS: None.

CONFIDENTIAL INFORMATION
DO NOT REPRODUCE
... is protected under ... Code 5328. You are ... further disclosure ... consent of the ...

County of San Diego
Department of Health Services
Mental Health Services
SAN DIEGO COUNTY PSYCHIATRIC HOSPITAL
**PSYCHIATRIC ASSESSMENT**

| | |
|---|---|
| PATIENT NAME: COBB, JOHN | |
| M.R. # | UNIT |
| DATE OF BIRTH: 9-10-59 | DATE: 2-10-93 |
| ASSESSED TIME From: 2045 To: 2130 | SECTION 5572 ☐ Yes ☑ No |

DHS: MHS-204-A (5/92)

Chief Complaint
Complaint of Others
History of Present Episode
Past Psych History

Medical History
Family History
Vital Signs
BP P T R

Mental Status Exam
Diagnostic Formulation:
All Five Axes
Assets

Treatment Plan
Discharge Crite
Signature

Page 2

VITAL SIGNS: Blood Pressure: 170/98 Temperature: 98.0 Pulse: 92 Respirations: 20.

MENTAL STATUS: The patient is a tall, overweight, 33 year-old man who appears hi stated age. He is dressed in a pair of white jeans and a white T-shirt. Patient i cooperative and pleasant. He is without behavioral disturbance. He has no odor o alcohol and has no pressure or slurring of speech. The patient is oriented, memory i. grossly intact, mood is dysphoric, affect is friendly. Thinking is reasonably goa directed without obvious psychotic symptoms. Denies paranoia, thought broadcasting, an auditory hallucinations. He has some vague ideas of reference regarding televisio programs about gay people in San Diego and how this somehow relates to him. Patient i not overtly psychotic and there is no particular thought disorder, though he has quality that is somewhat unusual. The patient denies any suicidal or homicidal ideation. Intellectual functioning is not impaired, insight and judgment adequate, in goo control.

TREATMENT PLAN: At this point the patient really isn't holdable by 5150 criteria, he doesn't appear to be psychotic or even threatening to other people. It is unclear what his motivations for his behavior this evening. Patient will be asked to provide a urine drug screen assuming that he remains calm and cooperative he will be released to home.

LEE BOWLUS, M.D.
STAFF PSYCHIATRIST

DO NOT REPRODUCE
This information is protected under Ca. Welfare Institutions Code 5328. You are prohibited from making further disclosure without the consent of the person ...

LB:sm
D: 2-10-93
T: 2-10-93

2-10-93 2200 PSYCHIATRY

Pt remained calm, cooperative and with threatening or bizarre behavior. UDS NEGATIVE. Pt is not holdable by 5150 criteria and is released to home. Pt declines psychiatric referral.

L. Bowlus, MD

County of San Diego
Department of Health Services
Mental Health Services
SAN DIEGO COUNTY PSYCHIATRIC HOSPITAL

**PSYCHIATRIC ASSESSMENT**

DHS: MHS-204-A (5/92)

| | |
|---|---|
| PATIENT NAME: COBB, JOHN | |
| M.R. # | UNIT |
| DATE OF BIRTH: 9-10-59 | DATE: 2-10-93 |
| ASSESSED TIME From: 2045 To: 2130 | SECTION 2572 ☐ Yes ☐ No |

# LAB RESULTS SHEET

PATIENTS NAME: Cobb, Foster

CODES: (+)=POSITIVE (-)=NEGATIVE (N\T)=NOT TESTED (N/A)= NOT APPLICABLE

## ONTRAK

AMPHETAMINES: (–)

COCAINE: (–)

THC: (–)

MORPHINE: (–)

PCP: (–)

DATE & TIME 2/10/93 - 2115

PERFORMED BY: [signature] R.N.

CONFIRMED BY: [signature]

DR'S SIGNATURE/INITIALS [initials]

## MISCELLANEOUS

PREGNANCY:

ALCO SENSOR III (B.A.L.)

EXACTECH (BLOOD GLUCOSE)

OTHER:

DATE & TIME

PERFORMED BY:

CONFIRMED BY:

DR'S SIGNATURE/INITIALS

EPU\DA\91

Exhibit No. 6

MUNICIPAL COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
SAN DIEGO JUDICIAL DISTRICT

NOTIFY WARRANT ISSUED FOR APPEARANCE ON JULY 22, 1993 @ 08:00 A.M.
09-10-59 UCSD MACINTYRE #617 - slr

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff,<br>v.<br>JOHN HAROLD COBB<br>aka: JOHN HAROLD ROBERT COBB<br>Defendant. | No. M-________<br>COMPLAINT - CRIMINAL<br>L40421 |

The undersigned, certifying upon information and belief, complains

That on or about February 10, 1993, in the City of San Diego, County of San Diego, State of California, a misdemeanor was committed by the defendant, who did willfully and unlawfully use force or violence upon another person in violation of Penal Code section 242/243(a).

I certify under penalty of perjury that the foregoing is true and correct.

Dated 6/28/93 at San Diego, California.

(COMPLAINANT)

Pursuant to Penal Code section 1054.5(b), the People are hereby informally requesting that defendant's counsel provide discovery to the People as required by Penal Code section 1054.3.

CRIMINAL COMPLAINT FILED ____________

Exhibit No. 7

**UNIVERSITY OF CALIFORNIA**
**POLICE DEPARTMENT**
**STATEMENT**

CASE # 93-0282

I, John H. Cobb, age 33, residing at 3955 Mt. Albertine Way San Diego, CA 92111, telephone number (619) 277-2026, make the following written statement that I was advised of my Miranda Rights: I understand that I have the right to remain silent during any questioning now or at any time; that anything I say can and will be used against me in a court of law; and that I have the right to have an attorney present, prior to or during this or any conversation, either an attorney of my own choosing or, if I am unable to afford an attorney, one will be appointed prior to any questioning, if I so desire. Understanding these rights and with them in mind, I wish to make the following statement of my own free will.

On February 10th, 1993 at about 6:10 p.m. I was walking from the U.C.S.D Central Library to my car (parked on the other side of campus, behind the Humanities Library) to go to a meeting for C++ Users at 7:00 p.m. At that time, a person who I now know to be Bridget Rene Briggs of 9180 Regents Road, # B, La Jolla 92037, comitted an assault against me, and then a battery!

~~The Witness Statements Refer to Briggs~~

Briggs tried to dig her nails into my eyes and I had to hold onto her hands to stop this from happening. Briggs then began kicking me and I then bent her hands back to stop her from kicking me. She then started ~~kicking~~ and ~~[illegible]~~ fighting me. Then, by bending her hands back more, she went onto her knees and then sat down to kick me again from a seated position. I ~~did~~ then used my feet to try to deflect her blows to me.

Witnessed: [signature] Signed: [signature]

Date: 08 26 93 Time: 1345 Date: 8/26/93 Time: 1:45

Page ____ Of ____

Exhibit No. 8

J.C. Filing Battery against Briggs

12-15-93; To City Atty office, asked clerk about my 'Filing of Battery Charge" against Briggs. I said I filled out a Police Report @ U.C.S.D. Clerk said, couldn't find it. Said to me, "are you feeling alright" after he went off some place and returned. Said to check w/ U.C.S.D. Police Dept.

"Not in file"

Exhibit No. 9

MUNICIPAL COURT
SAN DIEGO, CALIFORNIA

| | |
|---|---|
| PEOPLE OF SAN DIEGO, CA, PLAINTIFF, v. JOHN H. R. COBB, DEFENDANT. | CASE NO. M667177 (NON-JURY TRIAL) |

MUNICIPAL COURTHOUSE
220 W. BROADWAY
COURTROOM M-7
SAN DIEGO, CA 92101

2:15 P.M.

MONDAY, NOVEMBER 15, 1993

BEFORE:

JUDGE JUDITH HAYES,
PRESIDING JUDGE

KATHY MORTON,
COURT CLERK

APPEARANCES:

ON BEHALF OF PLAINTIFF:

BETH WOODLEY, ESQUIRE
SUITE 700
1200 THIRD AVENUE
SAN DIEGO, CALIFORNIA 92101

ON BEHALF OF DEFENDANT:

THOMAS MARSHALL, ESQUIRE
5252 BALBOA AVENUE
SAN DIEGO, CALIFORNIA
PRO BONO
(619) 292-0478

A YES.
Q WHERE YOU LOST YOUR BALANCE?
A HE PUSHED ME DOWN IN THE BUSHES.
Q AT SOME POINT IN THIS ALTERCATION, DID YOU KICK HIM?
A NO.
Q WHAT COLOR PANTS WAS HE WEARING?
A PERHAPS --
Q IF I SHOWED YOU A PAIR OF -- DO YOU RECOGNIZE THESE PAIR OF PANTS (INDICATING)?
A NO, I DON'T.
Q DO YOU RECOGNIZE THESE MARKS HERE, WHERE YOU POSSIBLY COULD HAVE KICKED HIM?
A NO.
Q AND YOU SAY THAT SOME OTHER PEOPLE ARRIVED SHORTLY AFTER THIS TOOK PLACE; CORRECT?
A YES.
Q WAS THIS BEFORE OR AFTER YOU GRABBED HIS BACKPACK?
A THEY WERE APPROACHING. I SAW CERTAIN PEOPLE IN CERTAIN --
Q HE STARTED TO WALK AWAY?
A YES.
Q NOT RUN, BUT WALK AWAY? AND THEN YOU GRABBED HIS BACKPACK; CORRECT?
A YES.
Q AND WHEN YOU GRABBED HIS BACKPACK, DID YOU KNOCK HIM

Q DID YOU HAVE A CONVERSATION WITH HER IMMEDIATELY AFTER THIS?
A BOY. I THINK I ASKED HER WHAT HAPPENED.
Q WHAT DID SHE SAY?
A NO, I DON'T REMEMBER. I JUST -- I DON'T REMEMBER AT ALL.
Q SO, GIVE US THE BEST OF YOUR RECOLLECTION.
A UH, I THINK SHE SAID THAT SHE WAS JUST WALKING AND BUMPED INTO HIM, OR THEY BUMPED INTO EACH OTHER. AND HE JUST, YOU KNOW, PUSHED HER ON THE GROUND AND STARTED KICKING HER FOR NO REASON.
THAT'S THE BEST I CAN COME UP WITH. I DON'T REALLY REMEMBER IF THAT'S WHAT SHE SAID.
Q AND AFTER THE TWO OF THEM WERE SEPARATED, DID HE VOLUNTARILY STAY AT THE SCENE?
A PARDON ME?
Q AFTER THE TWO OF THEM WERE SEPARATED, DID MR. COBB VOLUNTARILY STAY AT THE SCENE?
A YES, HE DID.
MR. MARSHALL: NO FURTHER QUESTIONS.
JUDGE HAYES: ANYTHING FURTHER?
MS. WOODLEY: NO, YOUR HONOR.
JUDGE HAYES: THANK YOU, SIR. YOU MAY STEP DOWN.
(WITNESS EXCUSED.)

A NO, SIR.

MR. MARSHALL: NO FURTHER QUESTIONS.

JUDGE HAYES: REDIRECT?

MS. WOODLEY: NO, YOUR HONOR.

JUDGE HAYES: THANK YOU, SIR. YOU MAY STEP DOWN.

(WITNESS EXCUSED.)

MS. WOODLEY: AT THIS TIME, THE PEOPLE CALL CECILIA JAMOUS.

MR. MARSHALL: PRIOR TO HER TESTIFYING, WE WOULD OBJECT. IT WOULD BE AN UNRELATED INCIDENT OFFERED ON THE UCSD CAMPUS.

JUDGE HAYES: ALL RIGHT. I'M GOING TO PERMIT THE WITNESS TO TESTIFY. THIS IS THE MATTER WE DISCUSSED IN CHAMBERS; IS THAT CORRECT?

MR. MARSHALL: YES.

JUDGE HAYES: PLACE YOUR OFFER OF PROOF ON THE RECORD, PLEASE.

MS. WOODLEY: THE PEOPLE ARE OFFERING IT FOR A LACK OF MISTAKE MOTIVE AND INTENT, AND VERY SPECIFICALLY WOULD LATER ALSO IT WOULD BE RELEVANT ON THE ISSUE OF-- BASED ON DEFENSE PUT INTO ISSUE AS BEING A VIOLENT, OF NON-VIOLENT PERSON, WHICH OPENS THE DOOR ON THAT CHARACTER TRAIT.

SO IT WOULD CERTAINLY BE RELEVANT FOR THAT ALSO.

MR. MARSHALL: THIS ISN'T PROPER TO IMPEACH ON CHARACTER TRAIT, YOUR HONOR. AND, AGAIN, IT'S GOING TO BE OUR POSITION THAT THIS SITUATION IS UNIQUE TO THE UCSD CAMPUS WHERE MR. COBB WAS A STUDENT, AND HAD BEEN HARASSED AND HASSLED WHILE HE WAS A STUDENT THERE, ALTHOUGH HE HAD GONE BACK TO DO RESEARCH AND THINGS LIKE THAT.

WE FEEL IT'S A UNIQUE SITUATION. THIS IS A SHOPPING CENTER INCIDENT.

JUDGE HAYES: YOUR OFFER OF PROOF AGAIN, MA'AM, WAS THAT THIS WITNESS WILL TESTIFY AS TO WHAT?

MS. WOODLEY: ALMOST IDENTICAL. THIS WITNESS WAS WALKING IN A PARKING LOT AND THE DEFENDANT, A STRANGER TO THE WITNESS, CAME UP AND PUSHED UP AGAINST HER.

THE DEFENDANT SAID, YOU KNOW, "WHY DID YOU DO THAT?" AND THE DEFENDANT STARTED YELLING AND SCREAMING AND PUSHED HER ON THE GROUND AND STARTED KICKING HER.

JUDGE HAYES: ANYTHING FURTHER FROM EITHER SIDE ON THIS ISSUE?

(NO RESPONSE.)

JUDGE HAYES: THE WITNESS WILL BE PERMITTED TO TESTIFY.

WHEREUPON,

CECILIA JAMOUS

CALLED AS A WITNESS BY AND ON BEHALF OF THE PLAINTIFF AND, HAVING BEEN FIRST DULY SWORN, WAS EXAMINED AND TESTIFIED,

AS FOLLOWS:

MS. WOODLEY: BEFORE YOU BEGIN, I'LL JUST ASK YOU TO SPEAK UP REAL LOUD.

THE WITNESS: OKAY.

DIRECT EXAMINATION

BY MS. WOODLEY:

Q COULD YOU PLEASE STATE YOUR FULL NAME, AND SPELL YOUR LAST NAME FOR THE RECORD?

A CECILIA JAMOUS, J-A-M-O-U-S.

Q WHERE ARE YOU CURRENTLY EMPLOYED?

A UCSD.

Q HOW LONG HAVE YOU BEEN EMPLOYED THERE?

A THREE AND A HALF TO FOUR YEARS.

Q AND WHAT DO YOU CURRENTLY DO?

A I WORK AS A BUYER, AGENT.

Q I WANT TO CALL YOUR ATTENTION TO 9/19 OF LAST YEAR, 1992, ABOUT 4 O'CLOCK IN THE AFTERNOON.

WHERE WERE YOU ON THAT AFTERNOON?

A UM, ACTUALLY, I WAS COMING OUT OF SEAR'S. I WAS IN SEAR'S PARKING LOT.

Q AND WHAT HAPPENED?

A I WAS GOING TOWARDS MY CAR. AND AS I WAS WALKING, I HEARD A CAR COMING BEHIND ME. AND IT NEARLY CLIPPED ME. AND THEN IT WENT AND PARKED.

AND THEN I JUST DIDN'T THINK ANYTHING OF IT

AFTER THAT. AND AS I WAS WALKING --- I WAS WITH MY SIX-YEAR OLD SON -- HE, MR. COBB, APPROACHED ME AND SLAMMED INTO MY SHOULDER. AND --

Q LET'S BACK UP A LITTLE BIT. MR. COBB, CAN YOU IDENTIFY HIM HERE TODAY?

A YES, THAT'S HIM.

Q CAN YOU IDENTIFY A PIECE OF CLOTHING THAT HE'S WEARING?

A DO YOU MEAN AT THE TIME?

Q RIGHT NOW.

A I DON'T UNDERSTAND.

Q AS FAR AS IDENTIFYING HIM FOR THE TAPE.

A OH.

Q COULD YOU TELL ME WHAT HE IS WEARING?

A OH, HE IS WEARING A JACKET, A BEIGE JACKET, WITH A GRAY TEE-SHIRT -- WHITE TEE-SHIRT.

MS. WOODLEY: LET THE RECORD REFLECT THAT THE WITNESS IDENTIFIED THE DEFENDANT.

JUDGE HAYES: IT WILL.

BY MS. WOODLEY:

Q OKAY. AND THEN WHAT HAPPENED? YOU SAID HE APPROACHED YOU WITH HIS SHOULDER.

A HE SHOVED ME AND HIT MY SHOULDER. I'M NOT SURE WHETHER IT WAS THE RIGHT OR LEFT. AND I TURNED AROUND, KIND OF GROPING AROUND. I TURNED AROUND AND I SAID, "WHY

DID YOU DO THAT?"

AND THEN HE SAID THAT I GOT IN HIS WAY. HE SAID, "YOU GOT IN MY WAY." AND I SAID, "NO, I DID NOT."

AND HE PROCEEDED TO PUSH AND SHOVE ME, AND HE YELLED ALL KINDS OF VULGARITIES AT ME.

Q WHAT DID HE SAY, SPECIFICALLY?

A HE CALLED ME A SLUT AND A WHORE. AND SAID, "YOU'VE BEEN GETTING IN MY WAY FOR YEARS AND I'M TIRED OF IT," AND WORDS TO THAT EFFECT.

Q HAD YOU EVER SEEN MR. COBB BEFORE THAT DAY?

A NEVER IN MY LIFE.

Q AND THEN WHAT HAPPENED AFTER HE PUSHED YOU?

A HE JUST KEPT PUSHING ME, AND PUSHING ME. I DON'T BELIEVE HE EVER KICKED ME. I CAN'T REMEMBER THAT.

AND IT JUST SEEMED LIKE HE WAS GETTING ANGRIER AND ANGRIER AND ANGRIER AT ME, AND JUST YELLING AND SAYING THE WORDS. AND THEN ANOTHER MAN -- FINALLY, I SAW TWO PEOPLE COMING WITH THEIR DAUGHTER. AND THAT MAN TRIED TO HELP ME, AND STARTED YELLING AT HIM AND TELLING HIM TO LEAVE ME ALONE.

AND HE HIT THAT MAN.

MS. WOODLEY: I HAVE NO ADDITIONAL QUESTIONS.

JUDGE HAYES: CROSS-EXAMINATION?

CROSS-EXAMINATION

BY MR. MARSHALL:

Q MS. JAMOUS, YOU SAY WHAT TRIGGERED THIS INCIDENT WAS SOME KIND OF A SITUATION WITH THE TWO CARS, A NEAR ACCIDENT, OR SOMETHING LIKE THAT?

A NO. I WAS WALKING TO MY CAR, YOU KNOW, ON THE AISLE OF THE PARKING LOT. AND HE JUST-- I HEARD HIM COMING AROUND THE CORNER AND HE LIKE PASSED ME VERY CLOSE. AND, YOU KNOW, ALMOST CLIPPED ME.

AND I DIDN'T THINK ANYTHING, YOU KNOW. I JUST THOUGHT IT WAS A LITTLE BIT RUDE, OR MAYBE IT WAS AN ACCIDENT, YOU KNOW, AND HE JUST WASN'T NOTICING.

AND THEN HE WENT AND PARKED AND I WAS LOOKING OFF INTO A DIFFERENT DIRECTION. YOU KNOW, I WASN'T REALLY THINKING ABOUT IT. AND THEN HE CAME AND SLAMMED INTO MY SHOULDER AND HE JUST --

Q DID YOU SEE HIM GET OUT OF HIS CAR?

A UH, HE HAD PARKED UP FAR ENOUGH WHERE I REALLY WASN'T LOOKING, SO I DID NOT.

Q SO YOU DON'T KNOW THAT IT WAS HIS CAR?

A WELL, I SAW THE CAR PARK INTO THAT LOT.

Q UH-HUH, BUT DID YOU SEE HIM GET OUT?

A NO, I'M NOT CERTAIN ON THAT.

Q SO YOU'RE NOT SURE THAT HE WAS THE SAME --

A WELL, I KNOW IT WAS THE SAME CAR BECAUSE I WROTE DOWN THE LICENSE PLATE AFTER THE WHOLE INCIDENT HAD HAPPENED.

AND, SOMEHOW I KNEW THAT WAS HIS CAR.

Q But, you think it was his car --
A That I may have seen him.
Q You say -- were you employed at UCSD last year?
A Yes, I was.
Q You didn't know Mr. Cobb was a former student there?
A No, I did not. No, I did not even know that until today.
MR. MARSHALL: No further questions.
JUDGE HAYES: Any additional questions?
MS. WOODLEY: No, your Honor.
JUDGE HAYES: Thank you, ma'am. You may step down.
(Witness excused.)
JUDGE HAYES: Call your next witness.
MS. WOODLEY: The People have nothing further on direct.
JUDGE HAYES: Affirmative evidence from the defense?
MR. MARSHALL: Your Honor, could I have about five minutes with Mr. Cobb?
JUDGE HAYES: Certainly. The Court will take its afternoon recess at this time. We'll be in recess until five after 4. Until five after 4.
(Recess.)
JUDGE HAYES: All right. At this time, we've

MR. COBB: IS SHE GOING TO GET A BATTERY CHARGE FILED AGAINST HER?

JUDGE HAYES: ANYTHING FURTHER?

MR. MARSHALL: NO.

JUDGE HAYES: NOW IS NOT THE TIME TO BE ASKING QUESTIONS. THE EVIDENCE HAS BEEN RECEIVED.

ALL RIGHT. IN THIS MATTER, BASED ON THE EVIDENCE THAT I HEARD, IT IS NOT REASONABLE TO ASSUME THAT A MEDICAL STUDENT WHO'S NEVER MET THE DEFENDANT BEFORE, NEVER SEEN YOU BEFORE, DOESN'T KNOW YOU, HAS HAD NO ASSOCIATION WITH YOU, THAT SHE WOULD JUST FOR NO REASON ATTACK YOU ON THE STREET.

AND I FIND, IN FACT, THAT HER TESTIMONY WAS VERY BELIEVABLE.

ON THE OTHER HAND, I FIND THAT YOUR TESTIMONY WAS INCREDIBLE IN MANY RESPECTS. THIS IS, IN FACT, THE SECOND TIME THIS HAS HAPPENED. THE FIRST TIME, IT COULD HAVE BEEN A MISUNDERSTANDING.

BUT, AT THIS POINT, THERE ARE AT LEAST TWO WOMEN WHO DON'T KNOW YOU, WHO DON'T KNOW EACH OTHER AS FAR AS I CAN SEE, WHO HAVE COME IN AND SAID THAT YOU KNOCKED THEM DOWN AND -- DON'T INTERPRET ME, SIR.

(PAUSE.)

BUT, LISTENING TO THE EVIDENCE, I WOULD HAVE TO BELIEVE THAT THESE TWO WOMEN, INDEPENDENT OF EACH OTHER,

# INDEX


| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| ON BEHALF OF PLAINTIFF: | | | | |
| BRIDGETT BRIGGS | 6 | 12 | 20 | 21 |
| MARK P. ESQUIERDO | 22 | 26 | XX | XX |
| BRIAN ERIC HANSEN | 28 | 32 | XX | XX |
| WILLIAM T. MACINTYRE | 32 | 36 | XX | XX |
| CECILIA JAMOUS | 39 | 42 | XX | XX |
| ON BEHALF OF DEFENDANT: | | | | |
| STEVEN MELOCHE | 4 | 5 | XX | XX |
| JOHN COBB | 45 | XX | XX | XX |


## EXHIBITS


| FOR DEFENDANT: | IDENTIFIED |
|---|---|
| DEFENDANT'S EXHIBIT A | 14 |
| FOR PLAINTIFF: | |
| (NONE.) | |


/

/

/

/

/

## CERTIFICATE

I, BILLIE LEE COLBURN, DO HEREBY ATTEST THAT I HAVE TRANSCRIBED THE FOLLOWING PAGES, 1 THROUGH 79 INCLUSIVE, FROM TWO TAPES PROVIDED TO ME BY MR. JOHN COBB OF A COURT PROCEEDING OCCURRING ON NOVEMBER 15, 1993 IN THE MUNICIPAL COURT IN SAN DIEGO; THAT I HAVE TRANSCRIBED THEM ACCURATELY TO THE BEST OF MY ABILITY.

Billie Lee Colburn

BILLIE LEE COLBURN,
(619) 239-5956
DECEMBER 15, 1993

Exhibit No. 10

RELATED REPORTS Y N | ADDN'L PROPERTY Y N | ADDN'L OFFENSES LISTED IN Y N

# SAN DIEGO REGIONAL CRIME / INCIDENT REPORT

PAGE 1 OF 4 | CASE NUMBER 96-009844

**CRIME**

| CODE SECTION AND DESCRIPTION (ONE INCIDENT ONLY) | HC DV OAK | MONTH | DAY | YEAR | DAY OF WEEK | TIME |
|---|---|---|---|---|---|---|
| 594(b)(4) P.C. VANDALIZM | | 02 | 09 | 96 | FRI | 2100 |

| LOCATION OF INCIDENT (OR ADDRESS) | CITY | BEAT | DISTRICT |
|---|---|---|---|
| 7715 BALBOA AV (LUCKY'S) | S.D. | 111 | |

**VICTIM / WITNESS**

| V W | SP DC RP | W-TYPE | VICTIM'S NAME (LAST, FIRST, MIDDLE / OR ORGANIZATION) | RESIDENCE ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|
| W | RP | 06 | COBB, JOHN HAROLD R. | 3955 MT. ALBERTINE WAY | S.D. | | 92111 |

| RESIDENCE PHONE | SEE RACE CODE LEGEND ON TOP OF BACK PAGE | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED Y N | RELATION TO VICTIM / SUSPECT R A S R A S |
|---|---|---|---|---|---|---|---|---|
| 277-2026 | | W | M | 09-10-59 | CDL | N6539830 | N | S |

| STATUS | EMPLOYER (RANK IF MILITARY) | BUSINESS OR MILITARY ADDRESS | CITY | STATE | ZIP | DAYS OFF | WORK HRS |
|---|---|---|---|---|---|---|---|
| U | | | | | | | |

| BUSINESS PHONE | ADDITIONAL INFORMATION (VICTIM VEHICLE INFO. IF APPLICABLE) |
|---|---|
| | |

| V W | SP DC RP | W-TYPE | VICTIM'S NAME (LAST, FIRST, MIDDLE / OR ORGANIZATION) | RESIDENCE ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED Y N | RELATION TO VICTIM / SUSPECT R A S R A S |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| STATUS | EMPLOYER (RANK IF MILITARY) | BUSINESS OR MILITARY ADDRESS | CITY | STATE | ZIP | DAYS OFF | WORK HRS. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| BUSINESS PHONE | ADDITIONAL INFORMATION (VICTIM VEHICLE INFO. IF APPLICABLE) |
|---|---|
| | |

TOTAL # OF WITNESSES AT CRIME: 1

WITNESS TYPE: 01 ARRESTING OFFICER, 12 OTHER EXPERT, 06 OTHER LAY WITNESS, 13 INVESTIGATOR, 07 NARC CHEMIST, 16 OTHER POLICE

STATUS: E EMPLOYED, U UNEMPLOYED, S STUDENT, N NON-SALARIED WORKER

**M.O. INFORMATION**

PLACE OF ATTACK: 1 Structure, 2 Vehicle, 3 Street/Alley, (4) Lot/~~Park/Yard~~ PARKING, 5 VESSELS, 6 Other

DESCRIPTION OF SURROUNDING AREA: 1 Residential, (2) Business, 3 Industrial/Mfg., 4 Recreational, 5 Institutional, 6 Open Space, 7 School, 8 Marina/Water, 9 Other

FORCE F, TOOL T, WEAPON (W) — SPECIFY: FOOT — HOW USED: TO KICK DOOR

FORCE F, TOOL T, WEAPON W — SPECIFY: — HOW USED:

**TYPE OF STRUCTURE** (N) N/A

NON-RESIDENTIAL: 1 BANK/S&L/CU, 2 BUSINESS OFFICE, 3 COMMERCIAL VEHICLE, 4 CONVENIENCE, 5 DEPT, 6 DRUG/MEDICAL, 7 ENTERTAIN/RECREATION, 8 FAST FOOD, 9 FINANCE COMPANY, 10 GAS/SERV STA, 11 HOTEL/MOTEL, 12 JEWELRY/COIN/PAWN, 13 LIQUOR, 14 MFG/CONSTRUCTION, 15 PUBLIC BLDG, 16 RESTAURANT/BAR, 17 RETAIL GOODS, 18 SCHOOL, 19 SERVICES, 20 SUPERMARKET, 21 WHOLESALE

TARGET(S): 1 CASH REG DRAWER, 2 COIN—OP MACH, 3 DISPLAY ITEMS, 4 OFFICE, 5 PERSON, 6 SAFE/BOX, 7 STORAGE AREA

RESIDENTIAL: 1 APT/CONDO, 2 DUPLEX/TOWNHS, 3 HOTEL/MOTEL, 4 HOUSEBOAT, 5 SINGLE DETACH, 6 TRAILER

TARGET(S): 1 ATTIC, 2 BATHROOM, 3 BEDROOM, 4 COIN OP MACH, 5 DEN, 6 ENTIRE HOUSE, 7 FAMILY ROOM, 8 GARAGE, 9 KITCHEN, 10 LIVING ROOM, 11 PERSON, 12 STORAGE AREA, 13

**POINT OF ENTRY**: (N) N/A, 1 UNKNOWN, 2 FRONT, 3 GARAGE, 4 REAR, 5 SIDE, 6 GROUND LEVEL, 7 UPPER LEVEL, 8 DOOR, 9 DUCT/VENT, 10 ROOF/FLOOR, 11 TRUNK/HOOD, 12 WALL, 13 WINDOW, 14

**SECURITY USED**: (N) N/A, 1 ALARM, 2 BARS/GRATE, 3 DOG, 4 EXT LIGHTS, 5 GUARD, 6 INT LIGHTS, 7 LOCKED DOORS, 8 LOCKED WINDWS, 9 NEIGHBOR/WATCH, 10 OPERATION ID, 11 PHOTO/CAMERA, 12 SECURITY FENCE, 13 WEAPON, 14

**TYPE LOCK ATTACKED**: (N) N/A, 1 ALARM DEFEATED, 2 DEADBOLT, 3 PADLOCK, 4 SPRINGLATCH, 5 SLIDE LATCH/CHAIN, 6 VEHICLE LOCK, 7 WINDOW LATCH, 8

**SUSPECT ACTIONS**: 1 UNKNOWN, 2 ATE/DRANK ON PREMISES, 3 BLINDFOLD VICTIM, 4 BOUND VICTIM, 5 CASED AREA, 6 CHILD MOLEST, 7 CHILD NEGLECT, 8 CONCEALED GOODS, 9 DEFEATED SECURITY DEFECATED, 10 DEMANDED CASH, 11 DEMANDED JEWELRY, 12 DISABLED PHONE, 13 FIRED WEAPON, (14) FOLLOWED/STALKED, 15 FORCED ENTRY, 16 FORCED VICTIM TO LAY ON FLOOR, 17 FORCED VICTIM TO MOVE, 18 FRAUD/FALSE PRETENSE, 19 GANG RELATED, 20 NO/CONCEALED OWN FACE/WORE MASK, 21 HIDEOUT TECHNIQUE, 22 INFLICTED INJURY, 23 OFFERED ASSISTANCE, 24 OFFERED DRUGS, 25 OFFERED GAMBLING, 26 OFFERED SEX, 27 OTHER SEX ACTS, 28 PICKED POCKET, 29 PREPARED EXIT, 30 PURSE SNATCH, 31 PUSHED/SHOVED VICTIM, 32 PUT CASH IN BAG/PURSE, 33 RANSACKED, 34 RAPED, 35 SHOPLIFTED, 36 SMOKED ON PREMISES, 37 TAMPER WITH VEHICLE, 38 THREATENED RETALTN, 39 TOOK ANIMALS, 40 TOOK CASH FROM REGISTER PERSONALLY, 41 TOOK ONLY JEWELRY, 42 TOOK ONLY MONEY, 43 TOOK ONLY TOOLS, 44 TOOK ONLY TV/STEREO/CAMERA, 45 TOOK PROPERTY FROM PERSON, 46 TOOK PROPERTY FROM VEHICLE, 47 TOOK VEH PTS/ACCES, 48 TOOK VICTIMS VEHICLE, 49 USED DEMAND NOTE, 50 USED LEFT HAND, 51 USED LOOKOUT, 52 USED MATCHES, 53 USED PHONE, 54 USED RIGHT HAND, 55 USED STOLEN VEHICLE, 56 USED THREATS, 57 USED VICTIM'S TOOL, (58) VANDALIZED, 59 VEHICLE NEEDED TO REMOVE PROPERTY, 60 OTHER, 61 PRETENDED TO BE

| ITEM NO. | ARTICLE NAME | STOLEN / RECV'D | IDENTIFICATION NUMBERS | BRAND, MAKE OR MANUFACTURER | MODEL NAME AND MODEL NUMBER | MISCELLANEOUS DESCRIPTION | VALUE |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |

VICTIM INJURED: Y (N) | EXTENT OF TREATMENT: (N)ONE, TREATED, HOSPITAL, DEATH | SIC: YES, ADULT, JUVENILE, (N)O-PROBABLY IS (A) J ?

| REPORTING OFFICER | I.D.# | DIVISION | APPROVED BY | I.D.# | DETECTIVE(S) ASSIGNED | I.D.# | DIVISION |
|---|---|---|---|---|---|---|---|
| R. FISCHER | 5165 | N.Z | SGT [signature] | 3295 | | | |

| DATE AND TIME OF REPORT | CASE STATUS | AGENCY | CRIME TYPE |
|---|---|---|---|
| MO. 02 DAY 10 YEAR 96 TIME 1750 | | SDPD | 594(B)(4) P.C. |

aam

PAGE 2 OF 4

RACE CODE LEGEND: A - OTHER ASIAN, B - BLACK, C - CHINESE, D - CAMBODIAN, F - FILIPINO, G - GUAMANIAN, H - HISPANIC, I - INDIAN, J - JAPANESE, K - KOREAN, L - LAOTIAN, O - OTHER, P - PACIFIC ISLANDER, S - SAMOAN, U - HAWAIIAN, V - VIETNAMESE, W - WHITE, Z - ASIAN INDIAN

CASE # 96-009844

**SUSPECT #1** (LAST, FIRST, MIDDLE) — ARRESTED: Y (N)

| NICKNAME/AKA | RACE | SEX | AGE | DOB | HT | WT | BUILD | HAIR COLOR | EYE COLOR |
|---|---|---|---|---|---|---|---|---|---|
| | W | M | 40-50 | | 5-8 | 160 | MED | BLD | |

SUSPECT'S ADDRESS / CITY / STATE / ZIP / PHONE / ID TYPE / ID NUMBER

ADDITIONAL INFORMATION / FURTHER SUSPECT DESCRIPTION (I.E., GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, ETC.)
SUS HAD MUSTACHE AND GLASSES

SUSPECT'S CLOTHING
GRAY SWTSHIRT, DRK PANTS

**SUSPECT #2** (LAST, FIRST, MIDDLE) — ARRESTED: Y N

NICKNAME/AKA / RACE / SEX / AGE / DOB / HT / WT. / BUILD / HAIR COLOR / EYE COLOR

SUSPECT'S ADDRESS / CITY / STATE / ZIP / PHONE / ID TYPE / ID NUMBER

ADDITIONAL INFORMATION / FURTHER SUSPECT DESCRIPTION (I.E., GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, ETC.)

SUSPECT'S CLOTHING

**SUSPECT(S)**

- HAIR LGTH/TYPE (Suspect 1): SHORT (circled). Options: UNKNOWN, BALD, COLLAR, LONG, NECK, SHORT, SHOULDER, COARSE, FINE, THICK, THINNING, WIRY, OTHER
- HAIR STYLE (Suspect 1): UNKNOWN (circled). Options: UNKNOWN, AFRO/NAT, BRAIDED, BUSHY, GREASY, MILITARY, PONYTAIL, PROCESSED, STRAIGHT, WAVY CURLY, WIG, OTHER
- FACIAL HAIR (Suspect 1): MUSTACHE (circled). Options: UNKNOWN, CLEAN SHAVE, FULL BEARD, FU MANCHU, GOATEE, LOWER LIP, MUSTACHE, NONE/FUZZ, SIDEBURNS, UNSHAVEN, VAN DYKE, OTHER
- COMPLEXION (Suspect 1): UNKNOWN (circled). Options: UNKNOWN, ACNE, DARK, FRECKLED, LIGHT, MEDIUM, PALE, POCKED, RUDDY, SALLOW, TANNED, OTHER
- GENERAL APPEARANCE (Suspect 1): UNKNOWN (circled). Options: UNKNOWN, CASUAL, DIRTY, DISGUISE, FLASHY, GOOD-LOOKING, MILITARY, UNKEMPT, UNUSUAL ODOR, WELL GROOMED, OTHER
- DEMEANOR (Suspect 1): UNKNOWN (circled). Options: UNKNOWN, ANGRY, APOLOGETIC, CALM, DISORGANIZED, IRRATIONAL, NERVOUS, POLITE, PROFESSIONAL, STUPOR, VIOLENT, OTHER
- SPEECH (Suspect 1): UNKNOWN (circled). Options: UNKNOWN, ACCENT, LISPS, MUMBLES, OFFENSIVE, QUIET, RAPID, SLOW, STUTTERS, TALKATIVE, OTHER
- VOICE (Suspect 1): UNKNOWN (circled). Options: UNKNOWN, DISGUISED, HIGH PITCH, LOUD, LOW PITCH, MEDIUM, MONOTONE, NASAL, PLEASANT, RASPY, SOFT, OTHER

| SUSPECT VEHICLE | YEAR | MAKE | MODEL | COLOR / COLOR | TYPE | LICENSE NO. | LIC STATE |
|---|---|---|---|---|---|---|---|
| | | | | RED | | 3BYU273 | CA |

ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, ETC.)

VEHICLE IMPOUND: Y (N) — TOWING COMPANY

**EVIDENCE OBTAINED**: (0) NONE (circled), 1 FINGERPRINTS, 2 OTHER PRINTS, 3 WEAPON/TOOLS, 4 VEHICLE, 5 PHOTOS, 6 HAIR, 7 STAINS, 8 BLOOD/SEMEN, 9 OTHER

DISPOSITION OF EVIDENCE / TAG NOS.

ADDITIONAL OFFENSES: — ADDN'L PERSONS LISTED: Y (N) — WITNESS CHECK: Y (N)

HEADINGS. CRIME DESCRIPTION; VICTIM(S) STATEMENT; OFFICER'S STATEMENT / INVESTIGATION; EVIDENCE/DISPOSITION; WITNESS STATEMENT / WITNESS CHECKS; INJURIES / PROPERTY DAMAGE

INCIDENT # P96020020141

SEE ATTACHED A-9

**officer assault:** OAK ZZ

- ☐ One-Officer Vehicle
- ☐ Two-Officer Vehicle
- ☐ Detective or Special Assignment
- ☐ Alone
- ☐ Assisted

Number Officers with personal injury ........
Number Officers without personal injury ........

Activity when assault occured:
☐ 415 ☐ 459 ☐ 211 ☐ OTHER ARREST ☐ CIVIL DISORDER ☐ SUSP CIR / PERSON ☐ TRANSPORTING ☐ TRAFFIC STOP ☐ PURSUIT ☐ AMBUSH ☐ 5150 ☐ ALL OTHER

ARSON TYPE: A SINGLE RESIDENTIAL, B OTHER RESIDENTIAL, C STORAGE, D INDUSTRIAL/MANUFACTURING, E OTHER COMMERCIAL, F COMMUNITY/PUBLIC, G ALL OTHER STRUCTURE, H MOTOR VEHICLES, I OTHER MOBILE PROPERTY, J CROPS, TIMBER, FENCES, SIGNS, ETC

DESCRIPTION. — CONTENT LOSS $ — STRUCT LOSS $ — ABANDONED Y N — CONTINUED (Y circled)

OFFICER'S REPORT ONLY

SAN DIEGO REGIONAL OFFICER'S REPORT NARRATIVE

CONTINUED: ☐ ARR./JUV.CON.
FROM ☒ CRIME
☐ OTHER

| PAGE | CASE NUMBER |
|---|---|
| 3 OF 4 | 96-009844 |

| OFFENSE SECTION AND DESCRIPTION (ONE INCIDENT ONLY) | MONTH | DAY | YEAR | DAY OF WEEK | TIME |
|---|---|---|---|---|---|
| | | | | | |

| LOCATION OF INCIDENT (OR ADDRESS) | CITY | BEAT | DISTRICT |
|---|---|---|---|
| | | | |

| PERSON(S) INVOLVED: VICTIM | SUSPECT (IF NAMED) | PROPERTY TAG NO. (S) |
|---|---|---|
| | | |

SYNOPSIS:

COBB WAS FOLLOWED FROM THE STORE AT 7715 BALBOA TO HIS CAR IN THE PARKING LOT. AN UNKNOWN SUSPECT KICKED HIS DOOR, DENTING IT. INCIDENT # P9602002014l. THIS OCCURRED ON 02.09.96 AT 2100 HRS.

ORIGIN:

ON 02.10.96 AT 1700 HRS I RECEIVED A RADIO CALL TO TAKE A VANDALIZM REPORT AT 3955 MT. ALBERTINE WAY. I ARRIVED AND SPOKE TO JOHN COBB.

INVESTIGATION:

BACKGROUND: NONE

STATEMENTS:

STATEMENT OF JOHN COBB (VICTIM/WITNESS)

COBB WAS FOLLOWED BY A MAN HE HAS NEVER SEEN BEFORE FROM THE LUCKY STORE TO HIS

| REPORTING OFFICER | I.D. # | DIVISION | APPROVED BY | DATE OF REPORT: MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|
| FISCHER | 5165 | N-2 | SGT [signature] 2275 | 02 | 10 | 96 | 1750 |

(REV. 9-84)

CONTINUED ☒

CAR WHICH WAS PARKED IN THE PARKING LOT. THE SUSPECT DID NOT SAY ANYTHING JUST KICKED COBB'S BACK LEFT CAR DOOR. THE SUSPECT GOT IN A SMALL RED CAR, PLATE CA 3BYU273. COBB GAVE THE ABOVE DISCRIPTION OF THE SUSPECT. COBB WAITED TO CALL POLICE TO SEE IF HE COULD GET THE DENT OUT OF HIS CAR ON HIS OWN. COBB GAVE NO REASON WHY THE SUSPECT WOULD KICK HIS DOOR.

EVIDENCE: NONE

INJURIES: NONE

PROPERTY DAMAGE:

A 1/4" DEEP 3" LONG DENT ON COBB'S LEFT BACK CAR DOOR.

FOLLOW-UP: NONE

RELATED REPORTS:

NONE

(REV 3-84)

Exhibit No. 11

03960342
HOLD PENDING

# SAN DIEGO REGIONAL CRIME / INCIDENT REPORT

PAGE 1 OF 4

CASE NUMBER: 153 ONLY

RELATED REPORTS Y N | ADDN'L PROPERTY Y N | ADDN'L OFFENSES LISTED IN NARR. Y N A

**CRIME**

| CODE SECTION AND DESCRIPTION (ONE INCIDENT ONLY) | HC DV OAK | MONTH | DAY | YEAR | DAY OF WEEK | TIME |
|---|---|---|---|---|---|---|
| 242 PC BATTERY | | 3 | 18 | 96 | MON | 1600 |

| LOCATION OF INCIDENT (OR ADDRESS) | CITY | BEAT | DISTRICT |
|---|---|---|---|
| 4626 Albuquerque St | San Diego FST Book Store | 122 | |

**VICTIM / WITNESS INFORMATION**

| V/W | VICTIM'S NAME (LAST, FIRST, MIDDLE / OR ORGANIZATION) | RESIDENCE ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| 06 | ROBERT-COBB JOHN HAROLD | 3955 MT ALBERTINE WY | SD | CA | |

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED | RELATION TO VICTIM / SUSPECT |
|---|---|---|---|---|---|---|---|
| 277-2026 | W | M | 9-10-59 | CDL | N6539830 | N | S |

SEE RACE CODE LEGEND ON TOP OF BACK PAGE

| STATUS | EMPLOYER (RANK IF MILITARY) | BUSINESS OR MILITARY ADDRESS | CITY | STATE | ZIP | DAYS OFF | WORK HRS. |
|---|---|---|---|---|---|---|---|
| U | | | | | | | |

BUSINESS PHONE: | ADDITIONAL INFORMATION (VICTIM VEHICLE INFO. IF APPLICABLE):

| V / W | SP / DC / RP | W-TYPE | VICTIM'S NAME (LAST, FIRST, MIDDLE / OR ORGANIZATION) | RESIDENCE ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED Y N | RELATION TO VICTIM / SUSPECT R A S R A S |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| STATUS | EMPLOYER (RANK IF MILITARY) | BUSINESS OR MILITARY ADDRESS | CITY | STATE | ZIP | DAYS OFF | WORK HRS. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

BUSINESS PHONE: | ADDITIONAL INFORMATION (VICTIM VEHICLE INFO. IF APPLICABLE):

TOTAL # OF WITNESSES AT CRIME: 1

WITNESS TYPE: 01 ARRESTING OFFICER; 12 OTHER EXPERT; 06 OTHER LAY WITNESS; 13 INVESTIGATOR; 07 NARC CHEMIST; 16 OTHER POLICE

STATUS: E EMPLOYED; U UNEMPLOYED; S STUDENT; N NON-SALARIED WORKER

**M.O. INFORMATION**

PLACE OF ATTACK: (1) Structure (circled); 2 Vehicle; 3 Street/Alley; 4 Lot/Park/Yard; 5 VESSELS; 6 Other

DESCRIPTION OF SURROUNDING AREA: 1 Residential; (2) Business (circled); 3 Industrial/Mfg.; 4 Recreational; 5 Institutional; 6 Open Space; 7 School; 8 Marina/Water; 9 Other

FORCE (F circled) TOOL WEAPON — SPECIFY: HANDS — HOW USED: TO HIT THE VICTIM

FORCE TOOL WEAPON — SPECIFY: — HOW USED:

**TYPE OF STRUCTURE** (0 N/A)

NON-RESIDENTIAL: BANK/S&L/CU; BUSINESS OFFICE; COMMERCIAL VEHICLE; CONVENIENCE; DEPT; DRUG/MEDICAL; ENTERTAIN/RECREATION (circled); FAST FOOD; FINANCE COMPANY; GAS/SERV STA.; HOTEL/MOTEL; JEWELRY/COIN/PAWN; LIQUOR; MFG/CONSTRUCTION; PUBLIC BLDG.; RESTAURANT/BAR; RETAIL GOODS; SCHOOL; SERVICES; SUPERMARKET; WHOLESALE

TARGET(S): CASH REG/DRAWER; COIN—OP MACH; DISPLAY ITEMS; OFFICE; PERSON; SAFE/BOX; STORAGE AREA

RESIDENTIAL: APT/CONDO; DUPLEX/TOWNHS; HOTEL/MOTEL; HOUSEBOAT; SINGLE DETACH; TRAILER

TARGET(S): ATTIC; BATHROOM; BEDROOM; COIN OP MACH; DEN; ENTIRE HOUSE; FAMILY ROOM; GARAGE; KITCHEN; LIVING ROOM; PERSON; STORAGE AREA

**POINT OF ENTRY**: N/A; UNKNOWN; FRONT (circled); GARAGE; REAR; SIDE; GROUND LEVEL (circled); UPPER LEVEL; DOOR (circled); DUCT/VENT; ROOF/FLOOR; TRUNK/HOOD; WALL; WINDOW

**SECURITY USED**: N/A (circled); ALARM; BARS/GRATE; DOG; EXT LIGHTS; GUARD; INT LIGHTS; LOCKED DOORS; LOCKED WINDOWS; NEIGHBOR/WATCH; OPERATION ID; PHOTO/CAMERA; SECURITY FENCE; WEAPON

**TYPE LOCK ATTACKED**: N/A (circled); ALARM DEFEATED; DEADBOLT; PADLOCK; SPRINGLATCH; SLIDE-LATCH-CHAIN; VEHICLE LOCK; WINDOW LATCH

**SUSPECT ACTIONS**: UNKNOWN; ATE/DRANK ON PREMISES; BLINDFOLD VICTIM; BOUND VICTIM; CASED AREA; CHILD MOLEST; CHILD NEGLECT; CONCEALED GOODS; DEFEATED SECURITY DEFECATED; DEMANDED CASH; DEMANDED JEWELRY; DISABLED PHONE; FIRED WEAPON; FOLLOWED/STALKED; FORCED ENTRY; FORCED VICTIM TO LAY ON FLOOR; FORCED VICTIM TO MOVE; FRAUD/FALSE PRETENSE; GANG RELATED; HID/CONCEALED ON; FACE/WORE MASK; HIDEOUT TECHNIQUE; INFLICTED INJURY (circled); OFFERED ASSISTANCE; OFFERED DRUGS; OFFERED GAMBLING; OFFERED SEX; OTHER SEX ACTS; PICKED POCKET; PREPARED EXIT; PURSE SNATCH; PUSHED/SHOVED VICTIM; PUT CASH IN BAG/PURSE; RANSACKED; RAPED; SHOPLIFTED; SMOKED ON PREMISES; TAMPER WITH VEHICLE; THREATENED RETALTN; TOOK ANIMALS; TOOK CASH FROM REGISTER PERSONALLY; TOOK ONLY JEWELRY; TOOK ONLY MONEY; TOOK ONLY TOOLS; TOOK ONLY TV/STEREO/CAMERA; TOOK PROPERTY FROM PERSON; TOOK PROPERTY FROM VEHICLE; TOOK VEH. PTS/ACCES; TOOK VICTIMS VEHICLE; USED DEMAND NOTE; USED LEFT HAND; USED LOOKOUT; USED MATCHES; USED PHONE; USED RIGHT HAND; USED STOLEN VEHICLE; USED THREATS; USED VICTIM'S TOOL; VANDALIZED; VEHICLE NEEDED TO REMOVE PROPERTY; OTHER; PRETENDED TO BE

| ITEM NO. | ARTICLE NAME | STOLEN / RECVD | IDENTIFICATION NUMBERS | BRAND, MAKE OR MANUFACTURER | MODEL NAME AND MODEL NUMBER | MISCELLANEOUS DESCRIPTION | VALUE |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |

...may be used solely for those purposes stated, and will not be used to ... agrees to hold harmless the San Diego Police Department and the City of San Diego for any liability ... out of the improper use of the information provided.

VICTIM INJURED: (Y) N — EXTENT OF TREATMENT: (N)ONE; TREATED; HOSPITAL; DEATH — SIC: YES; ADULT; JUVENILE; (N)O — PROBABLY IS (A) J ?

| REPORTING OFFICER | I D # | DIVISION | APPROVED BY | I D # | DETECTIVE(S) ASSIGNED | I D # | DIVISION |
|---|---|---|---|---|---|---|---|
| REVERS G | 3867 | N.2 | Fred Wilson | 3604 | Kramer 3/19 | | |

DATE AND TIME OF REPORT: 3 18 96 1620 | CASE STATUS | AGENCY | CRIME TYPE

PAGE 2 OF 4

RACE CODE LEGEND: A - OTHER ASIAN, B - BLACK, C - CHINESE, D - CAMBODIAN, F - FILIPINO, G - GUAMANIAN, H - HISPANIC, I - INDIAN, J - JAPANESE, K - KOREAN, L - LAOTIAN, O - OTHER, P - PACIFIC ISLANDER, S - SAMOAN, U - HAWAIIAN, V - VIETNAMESE, W - WHITE, Z - ASIAN INDIAN

CASE #

## SUSPECT(S)

ARRESTED Y N (N marked) | SUSPECT #1 (LAST, FIRST, MIDDLE) | NICKNAME/AKA | RACE: W | SEX: M | AGE: 20/30 | DOB | HT: 5'8" | WT: 160 | BUILD: MED | HAIR COLOR: BLK | EYE COLOR: UNK

SUSPECT'S ADDRESS | CITY | STATE | ZIP | PHONE | ID TYPE | ID NUMBER

ADDITIONAL INFORMATION / FURTHER SUSPECT DESCRIPTION (I.E., GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, ETC.)

SUSPECT'S CLOTHING: PALE CHECKERED SHIRT / DARK GRAY SLACKS

ARRESTED Y N | SUSPECT #2 (LAST, FIRST, MIDDLE) | NICKNAME/AKA | RACE | SEX | AGE | DOB | HT | WT | BUILD | HAIR COLOR | EYE COLOR

SUSPECT'S ADDRESS | CITY | STATE | ZIP | PHONE | ID TYPE | ID NUMBER

ADDITIONAL INFORMATION / FURTHER SUSPECT DESCRIPTION (I.E., GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, ETC.)

SUSPECT'S CLOTHING

| HAIR LGTH/TYPE | HAIR STYLE | FACIAL HAIR | COMPLEXION | GENERAL APPEARANCE | DEMEANOR | SPEECH | VOICE |
|---|---|---|---|---|---|---|---|
| 1 SUSPECT 2 | 1 SUSPECT 2 | 1 SUSPECT 2 | 1 SUSPECT 2 | 1 SUSPECT 2 | 1 SUSPECT 2 | 1 SUSPECT 2 | 1 SUSPECT 2 |
| UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN |
| BALD | AFRO-NAT | CLEAN SHAVE (marked) | ACNE | CASUAL (marked) | ANGRY (marked) | ACCENT | DISGUISED |
| COLLAR | BRAIDED | FULL BEARD | DARK | DIRTY | APOLOGETIC | LISPS | HIGH PITCH |
| LONG | BUSHY | FU MANCHU | FRECKLED | DISGUISE | CALM | MUMBLES | LOUD (marked) |
| NECK | GREASY | GOATEE | LIGHT (marked) | FLASHY | DISORGANIZED | OFFENSIVE (marked) | LOW PITCH |
| SHORT (marked) | MILITARY | LOWER LIP | MEDIUM | GOOD-LOOKING | IRRATIONAL (marked) | QUIET | MEDIUM |
| SHOULDER | PONYTAIL | MUSTACHE | PALE | MILITARY | NERVOUS | RAPID | MONOTONE |
| COARSE | PROCESSED | NONE/FUZZ | POCKED | UNKEMPT | POLITE | SLOW | NASAL |
| FINE | STRAIGHT (marked) | SIDEBURNS | RUDDY | UNUSUAL ODOR | PROFESSIONAL | STUTTERS | PLEASANT |
| THICK (marked) | WAVY/CURLY | UNSHAVEN | SALLOW | WELL GROOMED | STUPOR | TALKATIVE | RASPY |
| THINNING | WIG | VAN DYKE | TANNED | OTHER | VIOLENT (marked) | OTHER | SOFT |
| WIRY | OTHER | OTHER | OTHER | | OTHER | | OTHER |
| OTHER | | | | | | | |

SUSPECT VEHICLE | YEAR: 87 | MAKE: VW | MODEL | COLOR / COLOR: METALLIC GOLD | TYPE | LICENSE NO.: 2UAX683 | LIC STATE: CA

ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, ETC.) | VEHICLE IMPOUND Y N (N marked) | TOWING COMPANY

## EVID

EVIDENCE OBTAINED: 0 NONE, 1 FINGERPRINTS, 2 OTHER PRINTS, 3 WEAPON/TOOLS, 4 VEHICLE, 5 PHOTOS (marked), 6 HAIR, 7 STAINS, 8 BLOOD/SEMEN, 9 OTHER

DISPOSITION OF EVIDENCE: ATTACHED TO REPORT | TAG NOS. | ADD'N'L PERSONS LISTED Y N (N marked) | WITNESS CHECK Y (marked) N

ADDITIONAL OFFENSES:

## NARRATIVE

HEADINGS: CRIME DESCRIPTION; VICTIM(S) STATEMENT; OFFICER'S STATEMENT / INVESTIGATION; EVIDENCE/DISPOSITION; WITNESS STATEMENT / WITNESS CHECKS; INJURIES / PROPERTY DAMAGE

SYNOPSIS: JOHN ROBERT COBB WAS IN THE F STREET BOOK STORE LOCATED AT 4626 ALBUQUERQUE ST. COBB WAS IN THE VIDEO BOOTH AREA, AND OPENED THE DOOR TO AN OCCUPIED BOOTH. THE INDIVIDUAL INSIDE THE BOOTH GOT UPSET AND PHYSICALLY ATTACKED COBB.

## officer assault: OAK ZZ

- [ ] One-Officer Vehicle
- [ ] Two-Officer Vehicle
- [ ] Detective or Special Assignment
- [ ] Alone
- [ ] Assisted

Number Officers with personal injury ........

Number Officers without personal injury ........

Activity when assault occured:

- [ ] 415
- [ ] 459
- [ ] 211
- [ ] OTHER ARREST
- [ ] CIVIL DISORDER
- [ ] SUSP CIR / PERSON
- [ ] TRANSPORTING
- [ ] TRAFFIC STOP
- [ ] PURSUIT
- [ ] AMBUSH
- [ ] 5150
- [ ] ALL OTHER

## ARSON

ARSON TYPE: A SINGLE RESIDENTIAL, B OTHER RESIDENTIAL, C STORAGE, D INDUSTRIAL MANUFACTURING, E OTHER COMMERCIAL, F COMMUNITY, PUBLIC, G ALL OTHER STRUCTURE, H MOTOR VEHICLES, I OTHER MOBILE PROPERTY, J CROPS, TIMBER, FENCES, SIGNS, ETC

DESCRIPTION | CONTENT LOSS $ | STRUCT LOSS $ | ABANDONED Y N | CONTINUED (marked)

# SAN DIEGO REGIONAL OFFICER'S REPORT NARRATIVE

CONTINUED: FROM
☐ OFFICER'S REPORT ONLY
☐ ARR./JUV.CON.
☒ CRIME
☐ OTHER ________

H. P

| CODE SECTION AND DESCRIPTION (ONE INCIDENT ONLY) | MONTH | DAY | YEAR | PAGE 3 OF 4 | CASE NUMBER |
|---|---|---|---|---|---|
| | | | | DAY OF WEEK | TIME |
| LOCATION OF INCIDENT (OR ADDRESS) | CITY | | | BEAT | DISTRICT |
| PERSON(S) INVOLVED: VICTIM | SUSPECT (IF NAMED) | | | PROPERTY TAG NO. (S) | |

ORIGIN: ON 3-18-96 AT 1620 HRS, I TOOK A CALL TO CHECK A BATTERY VICTIM AT 2804 GARNET. I WAS TOLD THE VICTIM WOULD BE STANDING BY AT THE UNOCAL 76 STATION. THE BATTERY OCCURRED AT THE F STREET BOOK STORE AT 4626 ALBUQUERQUE ST. I ARRIVED AT 1630 HRS AND MET THE VICTIM JOHN ROBERT COBB. THE INCIDENT NUMBER IS 96Ø300Ø36 196.

... agrees to ... San Diego Police Department ... or San Diego for any liability ... out of the improper use of the ... provided.

INVESTIGATION

BACKGROUND: N/A

VICTIM STATEMENT: COBB TOLD ME THE FOLLOWING: COBB WAS IN THE VIDEO/PEEP SHOW SECTION OF THE F STREET BOOK STORE. COBB OPENED THE DOOR TO ONE OF THE PRIVATE BOOTHS AND FOUND SOMEONE INSIDE. THE MALE INSIDE THE BOOTH GOT UPSET AND PHYSICALLY ATTACKED COBB. COBB FOUGHT WITH THE INDIVIDUAL UNTIL THE CLERK AT THE STORE THREW THEM OUT. COBB WENT BACK INTO THE STORE TO GET SOMETHING TO TAKE THE SUSPECT'S LICENSE PLATE NUMBER WITH. THE CLERK REFUSED TO LET COBB TAKE A PEN FROM THE COUNTER. COBB TRIED TO TAKE PEN AND PAPER ANYWAY, AND ACCORDING TO COBB THE CLERK HIT HIM. ONCE OUT OF THE STORE, COBB GOT INTO HIS VEHICLE. THE SUSPECT RAN UP TO COBBS VEHICLE AND HIT IT WITH AN UMBRELLA, PUTTING SMALL MARKS ON IT. COBB STATES HE WOULD RECOGNIZE THE SUSPECT IF SEEN AGAIN. BEFORE THE SUSPECT LEFT THE SCENE COBB MANAGED TO GET A GOOD PLATE NUMBER ON THE

| REPORTING OFFICER | I.D. # | DIVISION | APPROVED BY: | DATE OF REPORT | MONTH | DAY | YEAR | TIME |
|---|---|---|---|---|---|---|---|---|
| RIVERS G | 3867 | N.2 | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] |

VEHICLE HE WAS DRIVING.

OFFICERS INVESTIGATION: COBB WAS VERY VAGUE IN HIS REPORT OF WHAT HAPPENED. COBB REFUSED TO GIVE ME DETAILS OF WHAT HAPPENED. WHEN I TOLD HIM I COULDN'T TAKE A REPORT BASED ON THE VERY LIMITED INFORMATION HE WAS GIVING ME, HE GOT UPSET. I THEN WENT TO THE F STREET BOOK STORE TO TALK TO THE CLERK AND GET ADDITIONAL INFORMATION. THE CLERK THERE TOLD ME HE HEARD A LOUD NOISE COMING FROM THE VIDEO BOOTH AREA. THEY WERE SOUNDS OF PEOPLE FIGHTING. HE WENT BACK AND SAW COBB AND ANOTHER MALE LOCKED IN A HEAD LOCK WITH EACH OTHER. THE CLERK TRIED TO GET THEM TO LEAVE BUT THEY CONTINUED FIGHTING. COBB TRIED TO TAKE A PEN FROM BEHIND THE COUNTER BUT THE CLERK STOPPED HIM. THE CLERK THEN HAD TO PHYSICALLY PUSH COBB OUT THE STORE. I DIDN'T GET THE CLERKS INFORMATION BECAUSE I THOUGHT I MIGHT BE DEALING WITH A MUTUAL BATTERY. SGT. WILSON #3604 ARRIVED AND ADVISED TAKING A HOLD PENDING REPORT. I WENT BACK TO THE BOOK STORE TO GET THE CLERKS INFORMATION AND HE WAS GONE FOR THE DAY.

EVIDENCE: TWO PHOTOS OF COBB ATTACHED.

INJURIES: COBB SUSTAINED A SMALL SCRATCH ON HIS RIGHT UPPER ARM.

PROPERTY DAMAGE: NONE

FOLLOW-UP: NONE

RELATED REPORTS: NONE

Exhibit No. 12

12

THE CITY OF SAN DIEGO

IN REPLYING
PLEASE GIVE
OUR REF. NO.

97-112

August 5, 1997

John Cobb
3955 Mt Albertine Way
San Diego, CA 92111

Dear Mr. Cobb:

This is to inform you that a thorough investigation into your complaint has been completed. Your complaint was investigated by Lieutenant Louis Scanlon, of Northern Division **(552-1700).** The investigation resulted in the following conclusion(s):

1. The allegation that the suspect who battered you should have been prosecuted was Exonerated.

2. The allegation that officers should have obtained the surveillance tape from the bookstore to use as evidence was Exonerated.

Please see the enclosed pamphlet for a definition of these findings.

A copy of your complaint and the subsequent investigation will remain in Department files for a minimum of five years, pursuant to section 832.7 of the California Penal Code.

We appreciate your concern in bringing this matter to our attention.

Sincerely,

JERRY SANDERS
Chief of Police

by: MICHAEL GILLESPIE, Lieutenant
Internal Affairs

MG:jcw

Office of the Chief of Police
1401 Broadway • San Diego, CA 92101-5729
Tel (619) 531-2000

# The San Diego Police Department

recognizes that its officers are responsible to the public for their conduct. All members of the Department encourage citizens to report what they believe to be any acts of police misconduct.

The complaint must be made in good faith and the Department promises to respond swiftly, thoroughly and fairly to reports of ...eged misconduct.

...ot all of our contacts with the public ... negative nor do they result in com...aints. The majority of our contacts ...re helping individuals and in some ...es performing life saving acts.

...f you feel strongly about an officer's ...rformance either way, let us know.

...ry Sanders

...hief of Police

## ■ Does that mean the Police Department wants complaints?

**Of course not.** But if you are involved in or witness a police situation you feel is not right, we want to know about it. We realize that at times an officer's conduct may not be proper. When these cases are called to our attention, we promise a fair and impartial investigation.

## ■ Will you listen to my complaint?

**Certainly.** We want to find out what went wrong, if anything, so we can see that it does not happen again.

## ■ Who should I go to first?

**You should bring** your complaint to the attention of a police supervisor, if there is one at the incident in which you are involved. If not, you may request a police supervisor by calling 531-2000. You may also call the Citizens' Review Board Coordinator at 236-6296, or the Community Relations Storefront Office in your area.

| | |
|---|---|
| Balboa Park | 625-8206 |
| Clairemont | 581-3187 |
| East San Diego Area | 531-1580 |
| Downtown Area | 531-1544 |
| Indochinese Assistance | 531-1590 |
| La Jolla | 551-2352 |
| Linda Vista | 495-7895 |
| Logan Heights Area | 531-1572 |
| Ocean Beach | 531-1540 |
| Pacific Beach | 581-9920 |
| Rancho Bernardo | 538-8146 |
| Mira Mesa | 538-8120 |
| Southeast Area | 527-3487 |
| San Ysidro | 424-0460 |

## ■ How will my complaint be investigated?

**Your case will be** assigned to an appropriate police supervisor. During the investigation, you, the officer, and all witnesses will be interviewed. Where appropriate, physical evidence will be examined. At the conclusion of the investigation the Department will notify you of the results.

## ■ Do I have to complain in person?

**No. Unlike many** other departments, the San Diego Police Department will accept a complaint over the telephone, by mail, or even from another party on your behalf.

## ■ Will I have to write out my complaint?

**No. We will take** your complaint by telephone, in person, or by letter. After receiving your complaint, the Department will send you a copy of the form we prepare, briefly describing your version of what happened, and the allegations you made against the officer. This will insure that your complaint was accurately depicted. In order for your complaint to be investigated, State Law (148.6 P.C.) requires that you sign an acknowledgment that it is illegal to knowingly make a false complaint against an officer.

## ■ Will I be told how the complaint came out?

**Yes. We will send** you a letter with the results at the completion of the investigation. We will arrive at one of five possible conclusions:

1. **Sustained**
   All or part of the act occurred.
2. **Not Sustained**
   There was not enough evidence to clearly prove or disprove the allegation.
3. **Unfounded**
   The act did not occur.
4. **Exonerated**
   The act occurred, but was justified, legal and proper.
5. **Complainant Not Cooperative**
   This conclusion is reached if you cannot be located for an interview, or if you refuse to cooperate with the investigation.

## ■ Who will review the Police Department's investigation?

**Allegations of a serious** nature will be reviewed by the Citizens' Review Board on Police Practices.

## ■ What if I am not satisfied with the results of the investigation?

**We sincerely hope** that would not happen. If it did, you may contact the Citizens' Review Board Coordinator at 236-6296.

## ■ What will happen to the officer?

**That will depend on** what they did. If their actions were improper, they would be subject to discipline. However, by Law (832.7 P.C.) we are prohibited from telling you what specific disciplinary action was taken against the officer.

Exhibit No. 13




Exhibit No. 3 – S.D.S.U. I.D.
Page 1 of 1.