SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

[redacted]

JOHN COBB,

Plaintiff,

vs. ) No. GIC 844062

JUSTIN PERRON, MIKE SILVA, HOME DEPOT, et seq.,

Defendants.

THE DEPOSITION OF MICHAEL SILVA II

Taken on behalf of Plaintiff

At 600 'B' Street, Suite 2300, San Diego, California

Commencing 1:00 p.m., Thursday, April 13, 2006

Reported by Robert C. Steeves, CSR No. 2147

APPEARANCES OF COUNSEL:

JOHN COBB
IN PROPRIA PERSONA
3955 Mt. Albertine Way
San Diego, California 92111

FOR THE DEFENDANTS:

GIBBS & FUERST, LLP
BY: STEVEN A. TISI, ESQ.
600 'B' Street, Suite 2300
San Diego, California 92101



I N D E X

THURSDAY, APRIL 13, 2006

| WITNESS: | EXAMINATION |
|---|---|
| MICHAEL SILVA II | |
| BY MR. COBB | 4 |

E X H I B I T S

| DEPOSITION | | PAGE |
|---|---|---|
| 1 | Internal Policy Guidelines | 4 |
| 2 | External Policy Guidelines | 4 |
| 3 | One-page document entitled "Case Management" | 4 |
| 4 | Incident Report submitted by Ryan C. Kennedy | 4 |
| 5 | Incident Report submitted by Shana Clark | 4 |
| 6 | Incident Report submitted by Miguel Corona | 4 |
| 7 | San Diego Regional Officer's Report Narrative | 4 |



MICHAEL SILVA II,
being first duly sworn, testified as follows:

(Exhibits 1 through 7 were marked for identification.)

MR. COBB: Good afternoon. This is the oral deposition of Mike Silva, taken at Gibson, Fuerst at 600 'B' Street, Suite 2300, in San Diego, California, on April 13, 2006 in the matter of John Cobb versus Justin Perron, Mike Silva, and Home Depot Corporation, USA. This deposition is on the behalf of the Plaintiff, John Cobb.

Would all present please identify themselves starting with the witness.

THE WITNESS: Michael Silva.

MR. TISI: Steve Tisi.

MR. COBB: And I'm John Cobb, the Plaintiff.

EXAMINATION

BY MR. COBB:

Q. Good afternoon, Mr. Silva. My name is John Cobb, and I'm the Plaintiff in this lawsuit that I have filed against Justin Perron, Mike Silva, and Home Depot Corporation.

I would like to now go over some of the basic rules of a deposition just so it's clear that we



all understand what's going to happen today.

Even though we're in an informal conference room, your testimony here is under oath.

Do you understand that?

A. Yes, I do.

Q. Your testimony here has the same force and effect as if given in a court of law.

Do you understand that?

A. Yes, I do.

Q. Everything that's being said here today will be taken down by the court reporter, and after the deposition is completed, the court reporter will type up a deposition transcript, and that deposition transcript will have everything that everyone said while we were here on the record today.

After the deposition transcript is completed, you'll be given an opportunity to read it and make any changes that you feel are necessary to make your testimony accurate and complete.

If you make any changes to your deposition transcript that are substantial, I or an attorney trying the case will be entitled to comment in front of the judge or the injury about the fact that you said one thing here today and then later changed that testimony, and for that reason, it's important to try

Page 6

to give your best and most accurate testimony today.
Is there any reason why you wouldn't be able to give your best testimony today?
A. No.
Q. Great. Anytime you feel like taking a break, let me know. I'll be happy to do that. It's not an endurance test, so if you need a break for any reason, just let me know.
If you don't understand my question, let me know, and I'll be happy to clarify it or explain what my question is about. Okay. I'll start.
Did you do anything to prepare for your deposition today?
MR. TISI: Objection. Calls for attorney-client privilege. Don't reveal the substance of any conversations we had.
BY MR. COBB:
Q. So then I take it you just spoke with Mr. Tisi?
A. Yes.
Q. Could you please state and spell out your name for the record, please.
A. Michael Silva II, M-i-c-h-a-e-l, S-i-l-v-a.
Q. Have you ever been known by any other name?
A. Mike Silva.

Page 7

Q. Are you a citizen of the United States?
A. Yes.
Q. Did you graduate from high school?
A. Yes.
Q. Did you attend any post high school education?
A. Briefly.
Q. Can you say what that was?
A. A couple of semesters at a couple of different community colleges around San Diego County.
Q. Have you ever been convicted of a felony?
A. No.
Q. Were you employed by Home Depot on or around March 26 of 2004?
A. Yes.
Q. What was your employment position or title at Home Depot on that date?
A. Loss Prevention Investigator.
Q. Are you still employed at Home Depot?
A. Yes, I am.
Q. What is your employment position or title at Home Depot currently?
A. Currently is asset protection investigator.
Q. On the date of the incident, which is March the 26th, 2004, were you an at-will employee?

Page 8

MR. TISI: Objection. Calls for a legal conclusion.
BY MR. COBB:
Q. Do you know if you could be fired with no cause?
A. I'm not sure.
Q. How many apprehensions or arrests have you made while employed at Home Depot?
MR. TISI: Objection. It's overbroad. It's vague and ambiguous. Not calculated to lead to the discovery of admissible evidence.
You can answer as best you can recall.
THE WITNESS: Can you repeat the question again for me?
BY MR. COBB:
Q. How many apprehensions or arrests have you made while employed Home Depot, approximately?
A. Approximately, I'd say roughly about around 175.
Q. I'm going to be asking you questions about an incident which occurred at the Home Depot on March the 26th, 2004.
Do you recall an incident in which a person was apprehended by two Home Depot employees on or around the date of March 26, 2004?

Page 9

A. Yes.
Q. Where were you working at the Home Depot on the date of the incident of March the 26th, 2004? This would be the Home Depot on Balboa.
A. I don't quite understand your question. Where was I working?
Q. Yes. Where were you working at Home Depot?
A. As in my title or where was I in the store?
Q. Where were you located physically?
A. I was located --
MR. TISI: It's overbroad. It's vague and ambiguous as to time. At what point are you talking about?
MR. COBB: Immediately before the incident. I'm sorry.
MR. TISI: What does that mean, "immediately before the incident"? Where was he when he found out about the incident?
MR. COBB: Yes.
THE WITNESS: I was in the outdoor garden department.
BY MR. COBB:
Q. And could you identify the person that you apprehended as being myself?
A. Yes.

Page 18

BY MR. COBB:
Q. When the customer got about two-thirds of the way down towards the ground, not all the way, but about two-thirds, did you increase the amount of force that you were using in tipping over the customer?
A. **No. I do not recall.**
Q. Is that a "no" or you don't recall?
A. **I don't recall.**
Q. So when the customer was on the ground, you got handcuffs, who had the handcuffs?
A. **I did.**
Q. And then who was it that placed the handcuffs onto the customer?
A. **I do not recall which one of us it was that actually placed the handcuffs on you.**
Q. Did you roll the customer over face down onto the floor?
A. **Yes.**
Q. And then you put the handcuffs on after he was rolled over; is that correct?
A. **Correct.**
Q. Did you have any injuries -- can you describe exactly what the customer did when he choked you? Where did he choke you?
A. **The throat area.**

Page 19

Q. Did you have any injuries from that?
A. **No, I did not.**
Q. Did you report any -- did you report to Home Depot that you had any injuries relating to this apprehension?
A. **No.**
Q. I'd like you to look at Exhibit No. 1. That's regarding your understanding of the External Policy Guidelines; is that correct?
A. **No. This is the Internal Policy Guidelines.**
Q. The next page.
A. **Okay. Correct.**
Q. This will be Exhibit 2.
Are those the Internal and External Policy Guidelines, as far as you can recall?
A. **These are External Policy Guidelines.**
Q. Did you view the video surveillance tape of the incident?
A. **Yes, I did.**
Q. Did you make any handwritten statement of the incident?
A. **No.**
Q. Did you make any typed statement of the incident?
A. **I don't believe so. I believe the only**

Page 20

**statement that was made was made by Justin.**
MR. TISI: You mean the only report?
THE WITNESS: The only report. Correct.
BY MR. COBB:
Q. Did anybody ask you to make a report?
A. **I don't recall.**
Q. Did you collect witness statements from any witnesses regarding the incident?
A. **No. Justin took care of that.**
Q. Did you ever read any witness statements regarding the incident?
A. **I don't recall.**
Q. Do you recall seeing -- this is Exhibit 3.
Do you recall seeing a statement like that before?
A. **Yes.**
Q. You've seen that before, and when did you see that?
A. **The day of the incident.**
Q. That would be Exhibit 3.
Exhibit 4, have you seen that report before? It's a report by --
A. **I don't recall. I don't recall this report.**
Q. It's a report by Ryan Kennedy.
Did you see a report -- this is Exhibit 5 --

Page 21

did you see a report like this before? Have you read it or seen it before? This is a report by Shana Clark or Shauna Clark?
A. **No. I don't recall.**
Q. And there's one more. Here's a report by Miguel Corona.
A. **I don't recall.**
Q. You don't recall.
Do you know whether or not Home Depot has a copy of the video surveillance tape of the incident?
A. **Home Depot does not.**
Q. Do you know that they do not or do you know why they don't have a copy of the report?
MR. TISI: The report or the tape?
BY MR. COBB:
Q. I'm sorry. A copy of the video surveillance tape.
Do you know why Home Depot does not have a copy of the video surveillance tape?
A. **Because at the time I was at the store, the case was resolved. There was no loss involved in the case. I was transferred to a different store, and once I was transferred to a different store, the videotape was then not deemed necessary to retain.**
Q. So how do you know that the videotape was

Q. Did you talk to any attorney of Home Depot regarding the incident on the date of the incident?
A. No, I did not.
Q. Did you hear anybody talking about the incident after the incident?
A. Yes, I did.
Q. And who was that?
A. I do not recall.
Q. Do you recall what they said?
A. No, I do not.
Q. I'm going to give you some ending instructions.
MR. TISI: We can use the same one. Stipulate to the same stipulation as before?
MR. COBB: Okay.
MR. TISI: Okay.
MR. COBB: And that will be the end of it?
MR. TISI: Yes. That's fine.
MR. COBB: Thank you for coming.
THE WITNESS: Thank you.
(The following stipulations were agreed upon in the deposition of Justin Perron taken on April 13, 2006:
"MR. TISI: We will stipulate that the transcript will come directly to me,



and it will be forwarded to Mr. Perron. He'll be asked to sign it under penalty of perjury and make any changes that are necessary. He'll notify me within two weeks of receipt or since we're approaching a trial date, prior to the date of trial. I'll maintain the original and make it available upon reasonable request. In the event the signed original is not available, an unsigned certified copy can be used in its place. Okay?
"MR. COBB: Okay. Take care.")

-o0o-

(The deposition was concluded at 1:48 p.m.)



I, MICHAEL SILVA II, do hereby declare under penalty of perjury that the foregoing is my deposition under oath; that these are the questions asked of me and my answers thereto; that I have read my deposition and have made any corrections, additions or changes that I deem necessary.

DATED: This the ______ day of ______________, 2006.

______________________________
MICHAEL SILVA II



STATE OF CALIFORNIA )
:
COUNTY OF SAN DIEGO )

I, Robert C. Steeves, CSR No. 2147, a Certified Shorthand Reporter for the County of San Diego, State of California, do hereby certify that the deponent was by me first duly sworn and the foregoing testimony was reported by me and was thereafter transcribed with Computer-Aided Transcription; that the foregoing is a full, complete, and true record of said proceedings.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing proceeding and caption named or in any way interested in the outcome of the cause in said caption.

The dismantling, unsealing, or unbinding of the original transcript will render the reporter's certificate null and void.

In witness whereof, I have hereunto set my hand this day: ______________________, 2006.

______________________________
Robert C. Steeves

Exhibit No. 37

John Cobb – Complainant.
3955 Mt. Albertine Way
San Diego, CA 92111

Telephone: (858) 277-2026

////

////

## Complainants Description of Events

There are four separate complaint incidents, dated;

1.) 6-10-2004;

2.) 7-29-2004;

3.) 11-16-2004;

4.) 11-19-2004.

1.) **6-10-04 Event**: Related San Diego Police Officers: Officer Mathew Botkin ( ID # 5875 )
Officer Gallivan ( ID # 4329 )
Officer Brogdon ( ID # 3757 )

2.) **7-29-04 Event**: Related San Diego Police Officers: Officer Queen ( ID # 5457 )
Officer Gaines ( ID # 5722 )
Officer Stewart ( ID 3640 )

3.) **11-16-04 Event**: Related San Diego Police Officers: Officer Brent ( ID # 5572 )
Officer Brown ( ID # 5994 )

4.) **11-19-004 Event**: Related CA Highway Patrol Ofcr's: Officer Nicholas ( ID # 15880 )
Officer Padilla ( ID # 17358 )

////

## Police Complaint # 1 - ( Date: 6-10-2004 )

6-10-04 Event: Related San Diego Police Officers: Officer Mathew Botkin ( ID # 5875 )
Officer Gallivan ( ID # 4329 )
Officer Brogdon ( ID # 3757 )

On 6-10-2004 I, John Cobb, went shopping at the Target Store at 8001 Othello Ave, San Diego. Refer to Exhibit No. 1, which shows a sales receipt timed at 9:31 P.M.

I left the store to drive home, and went North along Mercury Street, and then would turn left, to go West on Balboa Ave. so as to go home. As I was just coming up to the Mercury-Balboa Intersection, for my left turn West, I noticed a police car on my left, traveling South on Mercury Street. The driver was looking over at me, to his left. As I pulled up to the stop light, the police car made a U-turn and started following me. The light went green, and this police car followed me until just before the Advantage Grocery Store traffic light. The police car then put on its overhead lights, and I then took a left into the Advantage parking lot, and stopped. The driver ( Mathew Botkin ID # 5875 ), got out of his car, and contacted me.

After this, another police car arrived, and either Officer Gallivan or Brogdon ( the one with the mustache; he was one of the officers from a 1-10-04 arrest; Case Number A981985; Ticket Number A981985 ), got out of this second police car. I was eventually let go, and no citation of any kind was issued.

**Allegations**

I am being profiled by the S.D.P.D.

////

**Police Complaint # 2 - ( Date; 7-29-2004 )**

7-29-04 Event: Related San Diego Police Officers: Officer Quinn ( ID # 5457 )
Officer Gaines ( ID # 5722 )
Officer Stewart ( ID 3640 )

On 7 / 29 / 2004, at about 4:15 a.m., I was walking in the Target-205 stores parking lot. I was employed there, previously. I have filed a lawsuit ( GIC 832227 ) about workplace harassment and wrongful termination. I had gone there on 7 / 29 / 2004, to get the license plate of a former coworker's car, so that I could aid the process server in identifying him, and serving a complaint I have filed against this former coworker.

As I was walking from my car to the front of Target-205's parking lot, a police car pulled up next to me. It contained two police officers, later identified as Officers J. Quinn ( ID 5457 ), and Officer B. Gaines ( ID 5722 ). I continued to write down the license plate numbers. Officer Gaines got out and contacted me. He said that he wanted to talk to me.

Officer Gaines repeatedly asked me for my birthday, and I repeatedly told him that I was

only required to give him my name and address. I said if he were to ask me more question, that I wanted a lawyer.

Officer Gaines searched all my pockets, and took possession of my car keys, note pad and pen.

Officer Gaines asked me if I had a car, and I said yes. He said where is it, and I nodded in the direction of my car. Later, Officer Gaines went over to the car. He came back, and Sgt. Ken Stewart ( ID 3640 ), who had arrived in another police car, asked if it was locked, and Officer Gaines said that the back right door was unlocked. On my car, sometimes the right ( passenger ) rear door doesn't lock when I press the automatic door lock. This would indicated that Officer Gaines had tried all of the doors.

I told Officer B. Gaines, that the only thing I was required to give him was my name and address. Officer Gaines, asked me repeatedly various other questions.

P.O. Gaines said that I was " pissing him off ". He also said this to Officer Quinn, that I was " pissing him off ".

Officer Gaines told me to put my hands behind my back, and he then placed handcuffs on me. He then kept asking me various questions.

While I was seated in the police car, with my hands handcuffed behind my back, Officer Gaines said to Officer Quinn, that " he's pissed me off ". Officer Gaines then asked me if I was " 5150", or " 5152" (something like that ) some numbers that I don't know about. I couldn't say anything about this, since I don't know what this means.

I was eventually let go, and I was not issued any kind of citation.

## Allegations

On 7 / 29 / 2004, I should not have been stopped by the police officers in the first place. I should not have been searched. Supposedly, this was a " Terry Stop " situation. In the U.S. Supreme Court Terry Case, the individuals looked into a store window approximately 24 times, before being stopped by the police. My behavior did not constitute suspicious behavior. The area is not a high crime area. I am being profiled.

////

////

**Police Complaint # 3 - ( Date: 11-16-2004 )**

3.) **11-16-2004 Event**: Related San Diego Police Officers: Officer Brent ( ID # 5572 )
Officer Brown ( ID # 5994 )

On 11-16-2004, I was driving home after shopping at Albertsons on Balboa Ave. This was approximately at 10:37 pm. Refer to the sales receipt, attached as Exhibit No. 2. I got to my left turn at the Mt. Albertine Ave. cross street, and was waiting at the traffic light to make the left turn. A car was behind me waiting also, in the left turn lane. The light turned green, and I started to make the left turn. Just after I drove into the intersection, the car behind me put on overhead lights – the police car signaled for me to pullover. I then drove into the church parking lot, on my right.

One of the above referred officers got out of the car. I asked him what I was being pulled over for, and he said that my tail pipe was hanging down. He asked me for my license, registration, and insurance.

I was eventually released, and no citation of any kind was issued.

**Allegations**

1.) I allege that certain S.D.P.D. officers are harassing me. Singling me out for investigation.

////

**Police Complaint # 4 - ( Date: 11-19-2004 )**

4.) **11-19-2004 Event**: California Highway Patrol Officers: Officer Nicholas ( ID # 15880 )
Officer Padilla ( ID # 17358 )

On 11 / 19 / 2004, at about 9:30 pm, I was driving South on I-805, and was pulled over by the a police car, with the above two officers inside. Officer Nicholas was driving. Officer Nicholas asked me repeatedly, if I had been drinking, or was on drugs or medication. I said no, several times. While I was inside my car, Officer Nicholas examined my eyes with a flashlight. He then had me get out of my car, and go the rear of my car, and do some more, so called sobriety tests. I was then let go. No citation was issued.

**Allegations**

1.) I am being harassed by certain California Highway Patrol Officers

Exhibit No. 38

UNIVERSITY OF CALIFORNIA POLICE,
SAN DIEGO

**UC 62151**

## NOTICE TO APPEAR

☐ TRAFFIC ☒ NON-TRAFFIC ☒ MISDEMEANOR

| Date of Violation | Time | ☐ AM ☒ PM | Day of Week | Case # |
|---|---|---|---|---|
| 02 / 03 / 06 | 1800 | PM | FRI | 2006-0253 |

Name (First, Middle, Last): John Harold Robert Cobb ☐ Owner's Responsibility (Veh. Code, § 40001)

Address: 3955 Mt Albertine Way

City: San Diego State: CA ZIP Code: 92111

| Driver Lic. No. | State | Class | Commercial | Age | Birth Date |
|---|---|---|---|---|---|
| N6539830 | CA | C | ☐ Yes ☒ No | 46 | 09 / 16 / 59 |

| Sex | Hair | Eyes | Height | Weight | Race | Other Description |
|---|---|---|---|---|---|---|
| M | Brn | Blu | 6-02 | 220 | W | |

Veh. Lic. No. or VIN State

Yr. of Veh. Make Model Body Style Color

Evidence of Financial Responsibility

☐ COMMERCIAL VEHICLE (Veh. Code, § 15210(B))

☐ HAZARDOUS MATERIAL (Veh. Code, § 353)

Registered Owner or Lessee ☐ Same as Driver

Address ☐ Same as Driver

City State ZIP Code

Correctable Violation (Veh. Code, § 140610) ☐ Booking Required

| Yes | No | Code and Section | Description | Misdemeanor or Infraction (Circle) | |
|---|---|---|---|---|---|
| ☐ | ☒ | 647(d) | Public toilet lewd act | (M) | I |
| ☐ | ☐ | | | M | I |
| ☐ | ☐ | | | M | I |
| ☐ | ☐ | | | M | I |

| Speed Approx. | P.F./Max Spd. | Veh. Lmt. | Safe | Radar | ☐ Continuation Form Issued | N |
|---|---|---|---|---|---|---|
| | | | | | | |

Location of Violation(s) at: Pepper Canyon Hall City of Occurrence: (San Diego) W E

Comments (Weather, Road & Traffic Conditions): [illegible] fine, dry, night ☐ Accident S

☒ VIOLATION(S) not committed in my presence, certified on information and belief.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

J. Reyes 6060
Arresting or Citing Officer I.D.#

/ /
Date Name of Arresting Officer if different from Citing Officer I.D.#

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.
X Signature

WHEN: APPEAR ON DATE 03 / 22 / 06 TIME: 0800 ☒ AM ☐ PM

WHAT TO DO: FOLLOW THE INSTRUCTIONS ON THE REVERSE.

WHERE:

☒ San Diego Superior Court, Kearny Mesa Branch, Court A, 8950 Clairemont Mesa Blvd. San Diego, CA 92123 (858) 565-1006

☐ San Diego Superior Court, Misdemeanor Arraignment Dept. 200 West Broadway San Diego, CA 92101 (619) 685-6220

☐ San Diego Superior Court, Kearny Mesa Branch, Court B, 8950 Clairemont Mesa Blvd. San Diego, CA 92123 (858) 565-1006

☐ San Diego Superior Court, Juvenile, 2851 Meadowlark Dr. San Diego, CA 92123 (858) 565-1006

Judicial Council of California Form
Rev. 09-20-05 (Veh. Code, §§ 40500(b), 40513(b), 40522, 40600; Pen. Code, § 853.9)

SEE REVERSE
TR-130

Exhibit No. 39

UNIVERSITY OF CALIFORNIA, SAN DIEGO

UCSD

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO

SANTA BARBARA · SANTA CRUZ

POLICE DEPARTMENT (0017)

9500 GILMAN DRIVE
LA JOLLA, CALIFORNIA 92093-0017

TO: John Harold Robert Cobb
Name

5155 Mt. Albertine Way San Diego, CA 92111
Address

01-10-59 / N6539830
DOB / DL#

SS/N#

**A person who is not a student or employee of the University and is not required by his/her employment to be on the campus of the University, who comes onto campus and/or enters a University facility and it reasonably appears to an officer designated by the Chancellor of the University of California, San Diego to maintain order on such campus that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or who has entered the campus or facility for the purpose of committing any such act, the designated officer may direct the person to leave the campus or facility.**

**If the person directed to leave fails to leave or if the person willfully and knowingly re-enters upon the campus or facility within seven days after being directed to leave, he/she may be guilty of a misdemeanor in violation of section 626.6 of the California Penal Code.**

**You are hereby notified by the undersigned, an officer designated by the Chancellor of the University of California, San Diego to maintain order on such campus, that you are directed to leave the San Diego campus of the University of California.**

**You are further advised that, if you fail to leave the campus, or if you return thereto within seven days after this direction to leave, you may be arrested and later found guilty of a violation of section 626.6 of the California Penal Code.**

J. Reyes #606
**Name of Officer**

[signature] 606
**Signature of Officer**

02/03/06-1810
**Date / Time of order to leave**

[signature]
**Notice received by**

Exhibit No. 40

From: John Cobb
3955 Mt. Albertine Way
San Diego, CA 92111
(858) 277-2026.

Today's Date: 2-6-2006.

To: U.C.S.D. Police Department.
Records Division
9500 Gilman Drive
La Jolla, CA 92093-0017.

**Ref: Request for DOCUMENTS. Re: Citation, UC 62151.**

This is a request to the U.C.S.D. Police Department, and any other relevant agency, to provided me, John Cobb, with as many DOCUMENTS ( defined below ) as can be provided, regarding the issuing of U.C.S.D. NOTICE TO APPEAR UC 62151, issued on 2-3-2006, by Officer Reyes ( ID No. 606 ).

I have telephoned the U.C.S.D. Police Department, and was told that I could get a " police report " ( approximate ), and that it would cost $ 6.00. I am providing the $ 6.00 via a money order, herein enclosed.

This request for DOCUMENTS, would also include any tapes of any and all 911 calls, any and all dispatcher communications, video surveillance tape recordings, any and all witness statements, photographs, voice recordings, notes on the backside of the citation issuing police officer's ( Reyes ID 606 ) citation copy, any other notes by Officer Reyes, and evidence of any kind, with regards to the UC 62151 ( 2-3-2006 ) citation incident

This request also includes any and all DOCUMENTS regarding John Cobb, for any other dates, and for any other names, e.g. John Harold Cobb / John Harold Robert Cobb, kept by the U.C.S.D. Police Department, or any other agency, in regards to

policing activities. ( E.g. Filed Interview Reports ).

This request also includes any and all DOCUMENTS authored by U.C.S.D. Police Officer M. Jones ( ID No. 602 ). This includes the date of 2-5-1999. This include any Filed Interview Reports by Officer Jones. This includes a report titled " HOSTILE TO POLICE, C-37 I. ", previously referred to by Officer Jones.

This request also includes any and all DOCUMENTS authored by U.C.S.D. Police Officer W. MacIntyre, for any date. This would include the date of 2-10-1993.

This request also includes any and all DOCUMENTS issued to John Cobb, regarding California Penal Code § 626.6, for any date.

This request also includes any and all DOCUMENTS issued to John Cobb, regarding California Welfare and Institutions Code § 5150, for any date.

If any such DOCUMENT(S) is withheld and / or not provided with this request, please specify as to such, and described each, as per the instructions below.

I will be willing to pay for the expenses of obtaining the copies of said DOCUMENTS, beyond the $ 6.00 already herein provided.

Thank you.

Respectfully submitted,

**DATE: February, 6th, 2006. SIGNED:** ______________________.
**John Cobb.**

2-7-06

## I. INSTRUCTIONS

1. Documents Requested: The Requests set out herein call for all documents in U.C.S.D.'s actual or constructive possession, custody, control, or care, including, but not limited to, those documents in the actual or constructive possession, custody, control, or care of police officer, lawyer, agent, or other representative of U.C.S.D.

U.C.S.D. is further requested to identify any document called for by these Requests even if U.C.S.D. knows or believes it to be in the possession of U.C.S.D., or their agents or attorneys.

If U.C.S.D. subs[illegible]ly becomes aware of any docume[illegible]e for by these Requests, U.C.S.D. [illegible] requested to provide a copy of that document to John Cobb or to identify it even if U.C.S.D. knows or believes it to be in the possession of John Cobb or his attorneys.

2. Documents Withheld: If any document is withheld under a claim of privilege or other protection, so as to aid the case, hereto to determine the validity of the claim of privilege or other protection, U.C.S.D. must provide the following information with respect to any such document:

(a) The identity of the person(s) who prepared the document, who signed it, and over whose name it was sent or issued;
(b) The identity of the person(s) whom the document was directed;
(c) The nature and substance of the document with sufficient particularity to enable John Cobb hereto to identify the document;
(d) The dated of the document;
(e) The identity of the person who had custody of, or control over, the document and each copy thereof;
(f) The identity of each person to whom copies of the document were furnished;
(g) The number of pages of the document;
(h) The basis on which any privilege or other protection is claimed; and
(i) Whether any non-privileged matter is included in the document.

3. Partial Production: If U.C.S.D. objects to a particular Request, or portion thereof, U.C.S.D. must produce all documents called for which are not subject to that objection. Similarly, whenever a document is not produced in full for some other reason, U.C.S.D. must state with particularity the reason(s) it is not being produced in full, and describe, to the best of U.C.S.D.'s knowledge, information, and belief, and with as much particularity as possible, those portions of the document which are not produced.

4. If U.C.S.D. is unable to produce documents responsive to any particular Request, U.C.S.D. must affirm that a diligent search and reasonable inquiry was made for such documents and must specify whether the inability to comply with the Request is because the particular item or category of documents has never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in the possession, custody or control of U.C.S.D. U.C.S.D. must also set forth the name and address of any natural person or organization known or believed by that party to have possession, custody, or control of that item or category of item.

5. U.C.S.D. must produce the documents called for herein either as they are kept in the usual course of U.C.S.D.'s affairs, or organize them is such a manner as will facilitate John Cobb's identification with the particular Request(s) to which they are responsive.

**Definitions - DOCUMENTS**

The word " DOCUMENTS " shall mean any and all writings, including but not limited to computer generated ( e.g. e-mails ), handwriting, typewriting, printing, photo-stating, photographing, tape recording and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof. Without limiting the scope of the foregoing, the word " DOCUMENTS " shall include all originals, copies, and drafts of all

notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contract, manuals, recordings, tapes, transcriptions of records and recordings, business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any PERSON(S), and any other pertinent information set forth in written language or any electronic or magnetic representation thereof. The word "DOCUMENTS" shall also include all writings on electronic storage devices capable of storing electronic data including but not limited to magnetic tapes, floppy disks, hard drives, cassette tapes, CD-ROMs, central processing units, optical storage devices, tape drives, or removable storage media.

# DECLARATION OF SERVICE BY MAIL

I, Elliot Montezingo, declare as follows. I am over the age of 18, and am not a party to the within action. I am employed in the County of San Diego, California, within which county the subject service occurred. On 2/7, 2006, I served the U.C.S.D. Police Department, by mail, at the following address:

**U.C.S.D. Police Department.**
**Records Division**
**9500 Gilman Drive**
**La Jolla, CA 92093-0017.**

a true copy of the following letter;

**Ref: Request for DOCUMENTS. Re: Citation, UC 62151.**

I work at, UPS Store 0835, at the address of;
5663 Balboa Ave.

**I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

**Date:** 2/7/06, **2006. SIGNED:** Elliot Montezingo.

THE FRONT OF THE DOCUMENT HAS A ... BOX AND THERMOCHROMIC. ABSENCE OF THESE FEATURES WILL INDICATE A COPY

RE: UC 62151

Travelers Express. MoneyGram.

INTERNATIONAL MONEY ORDER

02/07/2006

75-53
919

5500839211

MONEY ORDER

SEE BACK BEFORE CASHING

PAY TO THE ORDER OF: U.C.S.D.

*****$6.00

SIX DOLLARS ****

00 CENTS ******

PURCHASER, SIGNER FOR DRAWER

BY SIGNING YOU AGREE TO THE SERVICE CHARGE AND OTHER TERMS ON THE REVERSE SIDE

3955 ... SD CA 92111

TRAVELERS EXPRESS COMPANY

4204002040

347038107211

5500839211 0

⑆091900533⑆550 0839211 0⑈ 90

UNIVERSITY OF CALIFORNIA, SAN DIEGO
POLICE DEPARTMENT
9500 GILMAN DRIVE # 0017
LA JOLLA, CALIFORNIA 92093-0017

CSV1015

PRESORTED
FIRST CLASS

UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004387463
$ 00.37[1]
FEB 13 2006
MAILED FROM ZIP CODE 92093

John Cobb
3955 Mt. Albertine Way
San Diego, CA 92111

LAVZRMF 92111

Exhibit No. 41

NAME OF COURT: San Diego Superior Court
STREET ADDRESS: 200 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Misdemeanor Arraignment Dept.
TELEPHONE: (619) 685-6220

**PEOPLE OF THE STATE OF CALIFORNIA**
vs.
DEFENDANT: John Harold Robert Cobb

**NOTICE OF CORRECTION AND PROOF OF SERVICE**
**(Vehicle Code, § 40505)**

| AMENDING OFFICER NAME/ID NO.: | DEPARTMENT/AGENCY: |
|---|---|
| J. Reyes 606 | UCSD POLICE |
| CITATION NUMBER: UC62161 | CASE NUMBER: 2006-0203 |

1. A *Notice to Appear/Notice to Correct Violation* was issued to you by an officer of this department on *(date)*: 02/03/06
2. The citation issued to you contained an error as indicated by the items checked below. This notice of correction does not affect the validity of the citation or the required court appearance.

☐ Date/time of violation should be ____________

☒ Date/time of court appearance should be changed from 02/03/06 to 03/29/06

☒ Violation section(s) should be changed from 647(d) to 647(d)PC

☐ Location of violation should be changed from ____________ to ____________

☒ Other *(specify)*: Change of court. San Diego Superior Court 200 West Broadway Misdemeanor Arraignment Dept. San Diego, CA 92101 (619) 685 6220

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 02/22/06 [signature]
(Signature of officer)

Form Adopted for Mandatory Use
Judicial Council of California
TR-100 [New January 1, 2000]

(Proof of service on reverse)

UNIVERSITY OF CALIFORNIA, SAN DIEGO
POLICE DEPARTMENT
9500 GILMAN DRIVE # 0017
LA JOLLA, CALIFORNIA 92093-0017

SAN DIEGO CA 921
24 FEB 2006

UNITED STATES POSTAGE
PITNEY BOWES
CV 1015
02 1A $ 00.39⁰
0004309660 FEB 24 2006
MAILED FROM ZIP CODE 92093

John Harold Robert Cobb
3955 Mt Albertine Way
San Diego, CA 92111

9211143247

Exhibit No. 42

SAN DIEGO

**NOTICE TO APPEAR** ☐ TRAFFIC ☒ NON-TRAFFIC ☒ MISDEMEANOR

UC 62151

Date of Violation: 2 03 06 | Time: 1800 | ☐ AM ☐ PM | Day of Week: FRI | Case #: 2006-0203

Name (First, Middle, Last): Jhn Harold Robert Cobb | ☐ Owner's Responsibility (Veh. Code, § 40001)

Street: 2155 Mt Albertine Way

City: San Diego | State: CA | ZIP Code: 92111

Driver's Lic. No.: 16539830 | State: CA | Class: C | Commercial ☐ Yes ☒ No | Age: 46 | Birth Date: 09 10 59

Sex: M | Hair: Brn | Eyes: Blu | Height: 602 | Weight: 220 | Race: W | Other Description

Veh. Lic. No. or VIN | State

Yr. of Veh. | Make | Model | Body Style | Color | ☐ COMMERCIAL VEHICLE (Veh. Code, § 15210(b)) | ☐ HAZARDOUS MATERIAL (Veh. Code, § 353)

Evidence of Financial Responsibility

Registered Owner or Lessee | ☐ Same as Driver

Address | ☐ Same as Driver

City | State | ZIP Code

Correctable Violation (Veh. Code, § 40610) | ☐ Booking Required

| No. | Code and Section | Description | Misdemeanor or Infraction (Circle) |
|---|---|---|---|
| ☒ | 647(d) | Public Toilet lewd act | (M) I |
| ☐ | | | M I |
| ☐ | | | M I |
| ☐ | | | M I |

Approx. Speed | P.F./Max Spd. | Veh. Lmt. | Safe | Radar | ☐ Continuation Form Issued

Location of Violation(s): at Pepper Canyon Hall | City of Occurrence: San Diego | ☐ Accident

Conditions (Weather, Road & Traffic Conditions): Sat Hut, dry, light

VIOLATION(S) not committed in my presence, certified on information and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

J. Reyes — Arresting or Citing Officer — I.D.# 606

Name of Arresting Officer if different from Citing Officer — I.D.#

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.

X Signature: [signature]

WHEN: APPEAR ON DATE 03 22 06 TIME 0800 ☒ AM ☐ PM

WHAT TO DO: FOLLOW THE INSTRUCTIONS ON THE REVERSE.

WHERE:

☒ San Diego Superior Court, Kearny Mesa Branch, Court A, 8950 Clairemont Mesa Blvd., San Diego, CA 92123 (858) 565-4086

☐ San Diego Superior Court, Misdemeanor Arraignment Dept., 220 West Broadway, San Diego, CA 92101 (619) 685-6220

☐ San Diego Superior Court, Kearny Mesa Branch, Court B, 8950 Clairemont Mesa Blvd., San Diego, CA 92123 (858) 565-1085

☐ San Diego Superior Court, Juvenile, 2851 Meadowlark Dr., San Diego, CA 92123 (858) 565-4086

Judicial Council of California Form
(Veh. Code, §§ 40500(b), 40513(b), 40522, 40600; Pen. Code, § 853.9)

SEE REVERSE
TR-130

02-12-06
101696
6922

---

NAME OF COURT: San Diego Superior Court
STREET ADDRESS: 220 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Misdemeanor Arraignment Dept.
TELEPHONE: (619) 685-6220

PEOPLE OF THE STATE OF CALIFORNIA
vs.
DEFENDANT: John Harold Robert Cobb

**NOTICE OF CORRECTION AND PROOF OF SERVICE**
**(Vehicle Code, § 40505)**

| AMENDING OFFICER NAME/I.D. NO.: J. Reyes 606 | DEPARTMENT/AGENCY: UCSD POLICE |
|---|---|
| CITATION NUMBER: UC62151 | CASE NUMBER: 2006-0203 |

1. A *Notice to Appear/Notice to Correct Violation* was issued to you by an officer of this department on *(date)*: 02/03/06
2. The citation issued to you contained an error as indicated by the items checked below. This notice of correction does not affect the validity of the citation or the required court appearance.

☐ Date/time of violation should be ______

☒ Date/time of court appearance should be changed from 02/03/06 to 03/29/06

☒ Violation section(s) should be changed from 647(d) to 647(d)PC

☐ Location of violation should be changed from ______ to ______

☒ Other (specify): Change of Court. San Diego Superior Court 220 West Broadway Misdemeanor Arraignment Dept. San Diego, CA 92101 (619) 685-6220

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 02/22/06 [signature] (Signature of officer)

Form Adopted for Mandatory Use
Judicial Council of California
TR-109 [New January 1, 2006]

(Proof of service on reverse)

# UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT
## SAN DIEGO, CALIFORNIA

- [x] ARREST REPORT
- [ ] NOTIFY WARRANT
- [ ] WARRANT ARREST
- [ ] JUVENILE CONTACT

CASE NO. 2006-0203

P.1

| Name (L,F,M) | | | Charge(s) |
|---|---|---|---|
| Cobb | John | Harold Robert | 647(d) PC - Lewd act in public restroom |

| Alias/Maiden Name (L,F,M) | Race | Sex | Age | DOB | Ht. | Wt. | Build | Hair | Eyes | UCSD Student |
|---|---|---|---|---|---|---|---|---|---|---|
| | W | M | 46 | 09-10-1959 | 6-02 | 220 | H | bln | blu | Yes [ ] No [x] |

| Address (Local) | (Phone) | Address (Permanent) | (Phone) |
|---|---|---|---|
| 3955 Mt Albertine way, San Diego, CA 92111 | (unk) - | | ( ) - |

| Location of Incident | Date | Time |
|---|---|---|
| UCSD- Pepper Canyon Hall restroom | 2/3/2006 | 1745 |

| Location of Arrest | Date | Time |
|---|---|---|
| UCSD- Pepper Canyon Hall restroom | 2/3/2006 | 1820 |

| Arresting Officer | Badge | Admonished | Admonished by | Date/Time |
|---|---|---|---|---|
| J. Reyes | 606 | Yes [x] No [ ] | J. Reyes #606 | 2/3/2006 @ 1820 |

| Citizen's Arrest | Citizen's Name (L,F,M) | Waiver | Statement | Evidence Collected | Property Tag # |
|---|---|---|---|---|---|
| Yes [x] No [ ] | Cilingir, Atila Veli | Yes [x] No [ ] | Yes [ ] No [x] | Yes [ ] No [x] | N/A |

Complaints or evidence of injury Yes [ ] No [x]

Explain:

Treated By: N/A

Description of evidence:

**HAIR LENGTH/TYPE**
- [ ] BALD
- [ ] COLLAR
- [ ] LONG
- [x] NECK
- [ ] SHORT
- [ ] SHOULDER
- [ ] COARSE
- [ ] FINE
- [ ] THICK
- [x] THINNING
- [ ] WIRY
- [ ] OTHER

**HAIR**
- [ ] AFRO/NAT
- [ ] BRAIDED
- [ ] BUSHY
- [ ] GREASY
- [ ] MILITARY
- [ ] PONYTAIL
- [ ] PROCESSED
- [x] STRAIGHT
- [ ] WAVY/CURLY
- [ ] WIG
- [ ] OTHER

**FACIAL HAIR**
- [x] CLEAN SHAVEN
- [ ] FULL BEARD
- [ ] FU MANCHU
- [ ] GOATEE
- [ ] LOWER LIP
- [ ] MUSTACHE
- [ ] NONE FUZZ
- [ ] SIDEBURNS
- [ ] UNSHAVEN
- [ ] VAN DYKE
- [ ] OTHER

**COMPLEXION**
- [ ] ACNE
- [ ] DARK
- [ ] FRECKLED
- [ ] LIGHT
- [x] MEDIUM
- [ ] PALE
- [ ] POCKED
- [ ] RUDDY
- [ ] SALLOW
- [ ] TANNED
- [ ] OTHER

**SPEECH**
- [ ] ACCENT
- [x] LISPS
- [ ] MUMBLES
- [ ] OFFENSIVE
- [ ] QUIET
- [x] RAPID
- [ ] SLOW
- [ ] STUTTERS
- [ ] TALKATIVE
- [ ] OTHER

**VOICE**
- [ ] DISGUISED
- [x] HIGH PITCH
- [ ] LOUD
- [ ] LOW PITCH
- [ ] MEDIUM
- [ ] MONOTONE
- [ ] NASAL
- [ ] PLEASANT
- [ ] RASPY
- [ ] SOFT
- [ ] OTHER

Driver's License No.: N6539830 State: CA

Social Security No.: N/A

Booking Number: N/A

Citation Number: UC62151

Warrant Number: N/A

Suspect description (e.g. glasses, tatoos, teeth, birthmarks, jewelry, scars, etc.)
N/A

Clothing description
White shirt, white pants, black shoes

| Suspect Vehicle | Year | Make | Model | Color/Color | Body type | License No. | State |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| Additional vehicle identifiers (chrome, damage, etc.) | VIN number | Disposition/vehicle |
|---|---|---|
| | | |

| Registered owner (L, F, M) | Address | Phone |
|---|---|---|
| | | ( ) - |

UNIVERSITY OF CALIFORNIA
POLICE DEPARTMENT

_____ EMPLOYEE'S REPORT
_____ SUPPLEMENTAL
X CONTINUATION

CASE#: 2006-0203
PAGE#: 2
DATE: 2/3/2006

## SYNOPSIS/ELEMENTS:

John Harold Robert Cobb was placed under private person's arrest by Atila Cilingir, after COBB was seen looking over the bathroom stall wall. COBB was issued a notice to appear citation for loitering in or about a public toilet per section 647 (d) PC. COBB was directed to leave the UCSD campus for seven days per section 626.6 PC. COBB was released at the scene.

## ORIGIN:

On 02-03-2006 at about 1745 hours, I received a radio call of a lewd act that was committed in the men's restroom located at Pepper Canyon Hall.

## INVESTIGATION:

The suspect, later identified as COBB was described as a white male adult, dressed in a white shirt and white pants, wearing black shoes. COBB was seen heading north along Russell lane towards the UCSD Price Center. As I was entering the cul-de-sac of lot 411, I saw COBB walking west bound on Lyman Lane and heading towards the east entrance of the Price Center. I saw Corporal Gustafson #601 in his marked patrol car approaching me on Lyman lane. Corporal Gustafson and I contacted COBB at the east entrance of Price Center. COBB appeared to be nervous. I asked COBB for some identification. COBB asked me why he was being contacted. I told COBB that he fit the description of a suspicious male that was seen looking over a stall in the men's restroom. COBB denied it was him and told me that he did not need to show me any identification or tell me who he was. Corporal Gustafson asked COBB again if he had any identification on him. COBB then placed his backpack on the ground and looked through one of the pockets. Corporal Gustafson told COBB to step away from the backpack and to let us search for his wallet. COBB told us that we did not have the right to search him or his belongings and pulled out his wallet from his backpack. COBB told us again that he did not need to show us any identification and put his wallet back into the pocket. COBB then began to look through another compartment in his bag. As COBB was looking through the other compartment, Corporal Gustafson tried to pull his backpack away from him and COBB resisted. I grabbed COBB's left arm and placed it behind his back in a rear wrist lock. Corporal Gustafson grabbed COBB's right arm and placed it behind his back in a rear wrist lock. As we were placing COBB in handcuffs, COBB fell over a small sloped wall behind him into some plants.

| REPORTING OFFICER: | BADGE: | APPROVED BY: |
|---|---|---|
| J. Reyes | 606 | |

UNIVERSITY OF CALIFORNIA
POLICE DEPARTMENT

_____ EMPLOYEE's REPORT
_____ SUPPLEMENTAL
__X__ CONTINUATION

CASE#: 2006-0203
PAGE#: 3
DATE: 2/3/2006

Corporal Gustafson stayed with COBB and I met with the victim Atila Cilingir. CILINGIR provided the following statement:

STATEMENTS:
Atila CILINGIR-Victim/ Reporting Party

CILINGIR told me that COBB was in the bathroom and that he was in the stall next to COBB. CILINGIR told me that he was standing up with his clothing, pants and underwear pulled down and his genitals hanging out. CILINGIR told me he looked up and saw COBB looking at him over the bathroom stall wall. CILINGIR asked COBB what he was doing. CILINGIR told me that COBB mumbled something to him and continued looking at him. CILINGIR told me he felt very uncomfortable. CILINGIR then pulled up his pants and immediately left the bathroom. CILINGIR told me that he waited outside the restroom and followed COBB to the Price Center, he called the UCSD police department as he followed COBB. CILINGIR told me that he would like to place COBB under private person's arrest per 647 (d) PC.

After talking to CILINGIR, I accepted CILINGIR'S private person's arrest of COBB. I told COBB that he was being placed under private person's arrest for loitering in or about a public toilet per section 647 (d) PC and was ordered off campus for seven days per 626.6 PC. Sergeant Morris #651 took three digital photographs of COBB (attached to the report).

I read COBB his Miranda Rights per my department notebook and asked COBB if he understood his rights. COBB responded, "Yes," and said, "He had nothing to say." I issued COBB a written notice to appear, citation #UC 62151 for violation of 647 (d) PC. I then read COBB the off campus order. COBB said he understood and was given a copy of the 626.6 PC order. COBB was released at the scene.

| REPORTING OFFICER: | BADGE: | APPROVED BY: |
|---|---|---|
| J. Reyes [signature] | 606 | [signature] 651 |

UNIVERSITY OF CALIFORNIA
POLICE DEPARTMENT

_____ EMPLOYEE's REPORT
_____ SUPPLEMENTAL
__X__ CONTINUATION

CASE#: 2006-0203
PAGE#: 4
DATE: 2/3/2006

**FOLLOW-UP:**
None

**EVIDENCE:**
None

**INJURIES:**
None

**PROPERTY DAMAGE:**
None

**RELATED REPORTS:**
See Corporal Gustafson's attached supplemental report.

| REPORTING OFFICER: J. Reyes | BADGE: 606 | APPROVED BY: |
|---|---|---|

UNIVERSITY OF CALIFORNIA
POLICE DEPARTMENT

_____ EMPLOYEE's REPORT
X SUPPLEMENTAL
_____ CONTINUATION

CASE#: 2006-0203
PAGE#: 1
DATE: 2/3/2006

**INVOLVED PARTY:**
John Harold Robert COBB
DOB: 09/10/1959

**NARRATIVE:**
On 02/03/2006, at approximately 1745 hours, I received a radio call of a male looking into bathroom stalls in the men's restroom at Pepper Canyon Hall on the UCSD campus. I was told the suspect was a tall white male, approximately 210 pounds, wearing all white, carrying a purple backpack. He was last seen walking north on Russell Lane. I drove north on Russell Lane from Gilman Drive to Lyman Lane. When I reached Lyman Lane, I looked west and saw a male matching the description of the suspect walking westbound on Lyman Lane. At that time, Officer REYES (#606) advised on his radio that he also saw the suspect. He was on Lyman Lane, approaching the Price Center loading dock. As I pulled up to the Price Center loading dock, Atila Veli CILINGIR, the reporting party, pointed to the male and said, "That's him."

Officer REYES caught up to the suspect at the east entrance to the Price Center food court. Officer REYES asked the male for identification. The male, later identified as John Harold Robert COBB, refused to provide identification or tell us his name. He said he did not have to provide identification. Officer REYES told him that he matched the description of a male seen looking into bathroom stalls. Then COBB reached into his backpack and pulled out his wallet. Then he quickly put it back into his backpack, saying that he did not have to show us his identification. Then COBB opened up another compartment of his backpack. He was quickly and frantically reaching around the compartment. I told COBB to put his backpack down and I would help find his identification. COBB said, "You don't have permission to search me." I told him again to put his backpack down. He continued to reach around for something in his backpack. I feared that COBB was searching for a weapon and I pulled the backpack out of his hands. COBB tried to pull it back out of my hands. At that time, Officer REYES put COBB's left arm behind his back, into a rear wrist lock. I put COBB's right arm behind his back, into a rear wrist lock. COBB dropped the backpack. There was a short wall in front of COBB with ivy on the other side. COBB fell forward onto the ivy and I handcuffed him.

Officer REYES went to talk to CILINGER while I monitored COBB. I told COBB that I pulled the

| REPORTING OFFICER: | BADGE: | APPROVED BY: |
|---|---|---|
| S. Gustafson [signature] | 601 | [signature] |

UNIVERSITY OF CALIFORNIA
POLICE DEPARTMENT

____ EMPLOYEE'S REPORT
X SUPPLEMENTAL
____ CONTINUATION

CASE#: 2006-0203
PAGE#: 1
DATE: 2/3/2006

INVOLVED PARTY:
John Harold Robert COBB
DOB: 09/10/1959

NARRATIVE:
On 02/03/2006, at approximately 1745 hours, I received a radio call of a male looking into bathroom stalls in the men's restroom at Pepper Canyon Hall on the UCSD campus. I was told the suspect was a tall white male, approximately 210 pounds, wearing all white, carrying a purple backpack. He was last seen walking north on Russell Lane. I drove north on Russell Lane from Gilman Drive to Lyman Lane. When I reached Lyman Lane, I looked west and saw a male matching the description of the suspect walking westbound on Lyman Lane. At that time, Officer REYES (#606) advised on his radio that he also saw the suspect. He was on Lyman Lane, approaching the Price Center loading dock. As I pulled up to the Price Center loading dock, Atila Veli CILINGIR, the reporting party, pointed to the male and said, "That's him."

Officer REYES caught up to the suspect at the east entrance to the Price Center food court. Officer REYES asked the male for identification. The male, later identified as John Harold Robert COBB, refused to provide identification or tell us his name. He said he did not have to provide identification. Officer REYES told him that he matched the description of a male seen looking into bathroom stalls. Then COBB reached into his backpack and pulled out his wallet. Then he quickly put it back into his backpack, saying that he did not have to show us his identification. Then COBB opened up another compartment of his backpack. He was quickly and frantically reaching around the compartment. I told COBB to put his backpack down and I would help find his identification. COBB said, "You don't have permission to search me." I told him again to put his backpack down. He continued to reach around for something in his backpack. I feared that COBB was searching for a weapon and I pulled the backpack out of his hands. COBB tried to pull it back out of my hands. At that time, Officer REYES put COBB's left arm behind his back, into a rear wrist lock. I put COBB's right arm behind his back, into a rear wrist lock. COBB dropped the backpack. There was a short wall in front of COBB with ivy on the other side. COBB fell forward onto the ivy and I handcuffed him.

Officer REYES went to talk to CILINGER while I monitored COBB. I told COBB that I pulled the

| REPORTING OFFICER: | BADGE: | APPROVED BY: |
|---|---|---|
| S. Gustafson | 601 | |

**UNIVERSITY OF CALIFORNIA**
**POLICE DEPARTMENT**

_____ EMPLOYEE'S REPORT
X SUPPLEMENTAL
_____ CONTINUATION

CASE#: 2006-0203
PAGE#: 2
DATE: 2/3/2006

backpack out of his hands because he refused my orders to put his backpack down and continued searching through the backpack. I told him I thought he may have a weapon and I grabbed his backpack from him and handcuffed him for my safety. I asked COBB if he understood why I took his backpack and handcuffed him. He said, "Yes."

Sgt. MORRIS (#651) arrived within a few minutes to assist. COBB was placed under private person's arrest by CILINGIR. Officer REYES issued COBB a notice to appear citation and a 626.6 P.C. stay away order. COBB was released at the scene.

| REPORTING OFFICER: | BADGE: | APPROVED BY: |
|---|---|---|
| S. Gustafson [signature] | 601 | [signature] 651 |

UNIVERSITY OF CALIFORNIA, SAN DIEGO

UCSD

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO   SANTA BARBARA · SANTA CRUZ

POLICE DEPARTMENT (0017)

9500 GILMAN DRIVE
LA JOLLA, CALIFORNIA 92093-0017

TO: John Harold Robert Cobb
Name

3955 Mt. Albertine Way San Diego, CA 92111
Address

09-10-59 / N6539830
DOB / DL#

SS/N#

A person who is not a student or employee of the University and is not required by his/her employment to be on the campus of the University, who comes onto campus and/or enters a University facility and it reasonably appears to an officer designated by the Chancellor of the University of California, San Diego to maintain order on such campus that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or who has entered the campus or facility for the purpose of committing any such act, the designated officer may direct the person to leave the campus or facility.

If the person directed to leave fails to leave or if the person willfully and knowingly re-enters upon the campus or facility within seven days after being directed to leave, he/she may be guilty of a misdemeanor in violation of section 626.6 of the California Penal Code.

You are hereby notified by the undersigned, an officer designated by the Chancellor of the University of California, San Diego to maintain order on such campus, that you are directed to leave the San Diego campus of the University of California.

You are further advised that, if you fail to leave the campus, or if you return thereto within seven days after this direction to leave, you may be arrested and later found guilty of a violation of section 626.6 of the California Penal Code.

J. Reyes #6006
Name of Officer

[signature] 6006
Signature of Officer

02/03/06-1810
Date / Time of order to leave

[signature]
Notice received by

**UNIVERSITY OF CALIFORNIA**
**POLICE DEPARTMENT**
**SAN DIEGO**

Case # 2006-0203

# ORDER OF ARREST
# by
# A PRIVATE PERSON

I, the undersigned private person, pursuant to California Penal Code Section 837, hereby arrest: JOHN HAROLD ROBERT COBB for the commission of a public offense committed in my presence, a violation of: 647(d) P.C. ________.

I request that an officer employed by the University of California Police Department, San Diego take the arrested person into custody. I understand that having initiated this arrest, that I will appear as a witness for the people in all subsequent proceedings should my presence be necessary for the prosecution.

Exhibit No. 43

---

OFFICE OF CITY ATTORNEY - CRIMINAL DIVISION
1200 THIRD AVENUE, SUITE 700
SAN DIEGO, CA 92101

NOTICE TO DEFENDANT
WM2255
Violation Date(s): 02/03/06

A complaint has been filed against you charging a violation of:
PC647(K)(1) INVASION OF PRIVACY 1 COUNT

It will be necessary for you to appear in the Misdemeanor Arraignment Department of the Superior Court, Room 1001, 220 West Broadway, San Diego, on 06/23/06 at 12:30 PM as a defendant in said action prosecuted by the People of the State of California.

JOHN HAROLD COBB
3955 ABERTINE WY
SAN DIEGO CA 92111

APPEARANCE IS MANDATORY. Failure to appear as above notified may result in a WARRANT OF ARREST being issued against you.

VZC

OFFICE OF THE SAN DIEGO CITY ATTORNEY
Criminal Division
1200 Third Avenue, Suite 700 • San Diego, California 92101-4103

NOTIFY WARRANT — DRH

FIRST CLASS

UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004616104
$ 00.39⁰
JUN 14 2006
MAILED FROM ZIP CODE 92101

92111+3247-35 C047

Exhibit No. 44

**CENTRAL OFFICE**
233 "A" Street, Suite 500
San Diego, CA 92101-4009
(619) 338-4700
FAX (619) 338-4811

**NORTH COUNTY BRANCH**
400 S. Melrose Drive, Suite 200
Vista, CA 92081-6632
(760) 945-4000
FAX (760) 726-1308

**SOUTH BAY BRANCH**
765 Third Avenue, Suite 100
Chula Vista, CA 91910-5842
(619) 498-2001
FAX (619) 498-2039

**County of San Diego**

**DEPARTMENT OF THE PUBLIC DEFENDER**
**STEVEN J. CARROLL**
PUBLIC DEFENDER

**EAST COUNTY BRANCH**
250 E. Main Street, Sixth Fl.
El Cajon, CA 92020
(619) 579-3316
FAX (619) 441-4744

**JUVENILE DELINQUENCY**
8525 Gibbs Drive, Suite 105
San Diego, CA 92123-2709
(858) 974-5700
FAX (858) 974-5858

**JUVENILE DEPENDENCY**
8525 Gibbs Drive, Suite 300
San Diego, CA 92123-2709
(858) 974-5757
FAX (858) 974-5711

June 20, 2006

John Cobb
3955 Mt Albertine Way
San Diego, CA 92111

Court Case Number: M992810
P.D. Case Number: P06CAM15286

Attorney: Peter Will:

The attorney named above has been appointed by the court to be your defense lawyer. Since any misdemeanor/felony may involve possible time in jail, please call 338-4700 to contact your attorney.

Do not talk to ANYONE about the facts of your case, including your family and friends. It will be helpful if you write down any questions you may have about the case, along with the names, addresses and telephone numbers of witnesses or people who can testify on your behalf in the event the case proceeds to trial. Bring this information with you.

Your next court appearance(s):

Hearing Date: 07/03/2006
Hearing Time: 01:30 pm
Hearing Dept: 2
Hearing Type: Readiness Conference 2

The Courthouse is downtown at 220 West Broadway, at the corner of Front and Broadway. Please arrive ONE-HALF HOUR BEFORE your appearance to meet with your attorney.

COUNTY OF SAN DIEGO
DEPARTMENT OF THE PUBLIC DEFENDER
233 A STREET, SUITE 500
SAN DIEGO, CA 92101

FIRST CLASS AUTO

Hasler

016H16505302
$00.317
06/23/2006
Mailed From 92123
US POSTAGE

DADPSMA 92111

Exhibit No. 45

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

☒ Central Division ☐ East County Division ☐ North County Division ☐ South County Division Waivers: ☒ Time

PEOPLE vs. COBB JOHN H STATUS: OR $ ☐ BB ☐ CR (Y/N)

CASE # M992410 PROS. # MM225501 DOB: 091059 BKG # CTS: days hrs.

DATE: 06-21-06 A01132 DEPT. # 150 INTERPRETER: ☐ Spanish ☐ Sworn ☐ Oath on File

JUDGE/COMM/PRO-TEM: ROBERT C. RICE ☐ STIP. FILED REPORTER – CSR # 

CLERK: TAPE # COUNTER #

CHARGE(S): PC647(K)(1)

FUTURE DATES: ☐ CONFIRMED ☐ VACATED

T. Rogers — P. Romero — P.DEFENDERS B 93-136 CB

Attorney for the People (DDA / DCA) — Attorney for the Defendant (PD / APD / PCC / Retained / Counseling)

☐ Defendant present by / with / without counsel ☐ in pro per ☐ via audio/video ☐ not produced in courtroom ☐ Defendant failed to appear

☐ 4TH AMENDMENT WAIVER PREVIOUSLY ORDERED ☐ PROTECTIVE ORDER PURSUANT TO PC136.2 PREVIOUSLY ISSUED

☐ Defendant waives ☐ arraignment for judgment. ☐ time for judgment.

PROBATION is ☒ GRANTED ☐ Formal ☒ Summary on the following conditions: ☐ DENIED and defendant sentenced as follows:

☐ As to Ct 1 ☒ Imposition of sentence is suspended for 1 years. ☐ As to ___ ☐ Imposition of sentence is suspended for ___ years.

☐ Serve 90 / 180 / 365 / ___ days in the custody of the Sheriff; ☐ EXECUTION OF CUSTODY IS SUSPENDED for ___ years.

☐ Comply with ☐ Street ☐ Gang ☐ Drug ☐ Graffiti ☐ Additional conditions attached. ☒ Violate no laws ☒ minor traffic violations excepted.

CUSTODY ☐ Serve ___ days / hrs. in the custody of the Sheriff; ___ days suspended ___ days / hrs. CTS (___ days actual ___ days PC4019)

☐ ___ days custody stayed pending ☐ successful completion of probation ☐ ___ ☐ review hearing.

☐ Serve FORTHWITH ☐ Work Release - call within 72 hours for reporting date. ☐ Book & Release ☐ Reporting ___ at ___

☐ Detention Facility ☐ Central ☐ Las Colinas ☐ Vista ☐ Short Term Work Furlough ☐ Serve ☐ consecutive to ☐ concurrent with:

☐ Consecutive weekends ☐ NO Early release (PC4018.6 or 4024(c)) ☐ NO Work Release ☐ NO County Parole ☐ NO ESP/Home Detention

☐ CUSTODY ☐ IN LIEU OF ☐ $ ___ fine at $50.00 per day ☐ ___ days PSWP

☐ CUSTODY SATISFIED BY ☐ ___ days PSWP ☐ ___ days in ☐ ___ ☐ residential rehabilitation program.

FINES/FEES ☒ Attorney Fee $ ☐ Add to Fine ☐ Indigent as to Attorney Fees

Pay Fine (Ct. 1) $ 383 State Rest Fnd Fine $ A/R Fee $ TOTAL DUE: $383

Fine (Ct. ) $ Security Fee $ $

Dom. Violence Fund $ Admin. Fee $ [Suspended Amount $

Probation Revocation Restitution Fine imposed & suspended $ 100 [Credit for ___ days served $

☐ Payments set at $ 50 per month beginning on 10-25-06 and on the ___ of each month thereafter until paid in full.

☐ Fines and Fees stayed pending ☐ DVRP completion ☐

The Court finds the defendant has the ability to repay the County of San Diego for costs of Court Appointed Attorney fees. This order is not a condition of probation.

RESTITUTION ☐ Pay restitution to the victim of $ ___ ☐ to be determined ☐ by Probation, payments through ☐ Court Collections

☐ Revenue & Recovery ☐ at $ ___ per month beg. ☐ directly to victim and show proof to the court ☐ by ___ ☐ at Review Hrg.

☐ See stipulated restitution order. ☐ Court retains jurisdiction re: restitution ☐ Subject to civil process.

PUBLIC SERVICE WORK PROGRAM (PSWP)/VOLUNTEER WORK ☐ COMPLETE

☐ PSWP ☐ Call within 72 hrs. to enroll (see reverse) ☐ Enroll by: ___ ☐ VOLUNTEER WORK ☐ at any non-profit organization

☐ ___ days as condition of probation ☐ at organization on Court approved list ☐ Other: ___

☐ ___ days in lieu of ☐ fines/fees $ 353 ☐ ___ days custody ☐ ___ hours as condition of probation

☐ ___ days credit for time served/completed ☐ ___ hours in lieu of ☐ fines/fees $ ___ ☐ ___ days custody

☐ TOTAL days to be completed ☐ ___ hours credit for time served/completed

☐ ___ days per week authorized ☐ Out of county work authorized ☐ ___ TOTAL hours to be completed

☐ To run consecutive to /concurrent with ___ ☐ Submit proof to the Court by ___ ☐ ___ days custody for each day/8 hours missed

☐ PSWP ☐ VOLUNTEER WORK Stayed pending DVRP completion

ALCOHOL/DRUGS ☐ Abstain from alcohol. ☐ Not frequent places where alcohol is the primary source of business, except in the course of employment.

☐ Not use or possess any controlled substance without a valid prescription. ☐ Submit to analysis at the request of a peace officer for detection of alcohol/controlled substance. ☐ Submit person, property, place of residence, vehicle, personal effects to search at any time with or without a warrant, and with or without reasonable cause, when required by a Probation Officer or other law enforcement officer. (to expire ___)

☐ Complete a ☐ Residential ☐ Non-Residential treatment program for ___ days/months. Proof due by ___

EDUCATION/TESTING ☐ ATTEND AND COMPLETE: ☐ Anger Management (___ hours/sessions) ☐ Parenting Ed. (___ hours/sessions)

☐ Certified 52 wk Domestic Violence Rehab. Program. ☐ STOP ☐ Shoplifting Ed. ☐ Safe Boating Class ☐ 8 hr. Repeat Traffic Offenders Traffic School.

☐ ___ course ☐ through ___

☐ Submit to ☐ Sheriff to administer ☐ HIV TEST pursuant to PC1202.1. ☐ HIV/AIDS Ed. ☐ while in custody ☐ as directed by Assessor.

☐ Out of County authorized. ☐ AA / NA / CA / MA Mtgs. ___ times per ☐ wk ☐ mo. for ___ days / months.

☐ Commence/continue education, psychological, psychiatric, drug, alcohol or other rehab. program recom. by the Assessor and not leave or terminate such program without written permission of the Court and/or therapist. ☐ Seek/maintain full-time employment, education, training, or a combination thereof.

☐ PROOF OF ☐ Test Results ☐ ENROLLMENT ___ ☐ PROGRESS ___ ☐ COMPLETION ☐ by ___

to the ☐ Court ☐ at REVIEW HEARING(S) ☐ Assessment Unit ☐ AND every 30 / 60 / ___ days THEREAFTER.

VIOLENCE/WEAPONS ☐ Not use force or violence upon another. ☒ Have no contact with any victim or complaining witness in this matter.

☐ Not own or have possession, custody or control of any WEAPONS or FIREARMS. ☐ Weapon(s) to be ☐ destroyed ☐ returned to ___

☐ Defendant advised that within 10 years of this conviction, owning/possessing/having custody or control of any firearm is a crime pursuant to PC 12021(c)(1).

☐ Protective Order issued pursuant to PC136.2 - See Protective Order for specific conditions. ☐ PC12021 Notice given.

DRIVERS LICENSE ☐ Not drive without a valid license and liability insurance ☐ VC14607.6 advisal given; ☐ License is ☐ suspended ☐ revoked

☐ ___ days / yrs. ☐ pursuant to ☐ VC13202 ☐ .3(a) (cont. subs.) ☐ .5 (under21) ☐ .6 (graffiti)

☐ License to be surrendered to the court ☐ by ___ ☐ Defendant petitions for a restricted license. ☐ Critical need found. Petition granted ☐ Petition denied. ☐ License restricted for ___ ☐ days ☐ mos. Driving permitted to/from ☐ work ☐ school ☐ court ordered activities ☐ in course of employment.

MISC. ☐ Comply with all Family/Juvenile Court orders. ☒ Stay ___ away from UCSD. ☐ Not unlawfully enter the United States.

☐ Register pursuant to ☐ HS11590 ☐ PC290 ☐ PC457.1. ☐ Not take, hold or receive property of another without written consent of the owner.

☐ Property impounded/seized by law enforcement or held in the custody of the court is ordered disposed of pursuant to that agency/court policy.

☐ Defendant has provided DNA database samples – PC296(f).

REFERRALS Report ☒ forthwith ☐ by ___ to ☐ Assessment Unit ☐ Probation Dept. re: ___

Exhibit No. 46

# Government Claims Form

California Victim Compensation and Government Claims Board
P.O. Box 3035
Sacramento, CA 95812-3035

1-800-955-0045 • www.governmentclaims.ca.gov

State of California

For Office Use Only
Claim No.:

## Is your claim complete?

- ☐ *New!* **Include a check or money order for $25 payable to the State of California.**
- ☐ Complete all sections relating to this claim and sign the form. Please print or type all information.
- ☐ Attach receipts, bills, estimates or other documents that back up your claim.
- ☐ Include two copies of this form and all the attached documents with the original.

## Claimant Information

1. Last name: COBB First Name: JOHN MI: H
2. Tel: 858 277 2026
3. Email:
4. Mailing Address: 3955 Mt. Albertine Way City: San Diego State: CA Zip: 92111
5. Best time and way to reach you: mail
6. Is the claimant under 18? ☐ Yes ☒ No If YES, give date of birth: MM DD YYYY

## Attorney or Representative Information

7. Last name First Name MI
8. Tel:
9. Email:
10. Mailing Address City State Zip
11. Relationship to claimant:

## Claim Information

12. Is your claim for a stale-dated warrant (uncashed check) or unredeemed bond? ☐ Yes ☒ No
State agency that issued the warrant: If NO, continue to Step 13.
Dollar amount of warrant: Date of issue: MM DD YYYY
Proceed to Step 22.
13. Date of Incident: 02/03/06
Was the incident more than six months ago? ☐ Yes ☒ No
If YES, did you attach a separate sheet with an explanation for the late filing? ☐ Yes ☐ No
14. State agencies or employees against whom this claim is filed:
See attached
15. Dollar amount of claim: $10,000.00 (ten thousand $)
If the amount is more than $10,000, indicate the type of civil case: ☐ Limited civil case ($25,000 or less) ☐ Non-limited civil case (over $25,000)
Explain how you calculated the amount:
S.D. Law Library Books - Similar Cases

16 Location of the incident:

see attached

17 Describe the specific damage or injury:

see attached

18 Explain the circumstances that led to the damage or injury:

see attached

19 Explain why you believe the state is responsible for the damage or injury:

see attached

20 Does the claim involve a state vehicle? ☐ Yes ☒ No

If YES, provide the vehicle license number, if known:

## Auto Insurance Information

21

*Name of Insurance Carrier*

*Mailing Address* *City* *State* *Zip*

| | | | |
|---|---|---|---|
| Policy Number: | | Tel: | |
| Are you the registered owner of the vehicle? | | ☐ Yes | ☐ No |
| If NO, state name of owner: | | | |
| Has a claim been filed with your insurance carrier, or will it be filed? | | ☐ Yes | ☐ No |
| Have you received any payment for this damage or injury? | | ☐ Yes | ☐ No |
| If yes, what amount did you receive? | | | |
| Amount of deductible, if any: | | | |
| Claimant's Drivers License Number: | | Vehicle License Number: | |
| Make of Vehicle: | Model: | Year: | |
| Vehicle ID Number: | | | |

## Notice and Signature

22 I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true and correct to the best of my information and belief. I further understand that if I have provided information that is false, intentionally incomplete, or misleading I may be charged with a felony punishable by up to four years in state prison and/or a fine of up to $10,000 (Penal Code section 72).

[signature] 7/26/2006

*Signature of Claimant or Representative* *Date*

23 Mail the original and two copies of this form and all attachments with the $25 filing fee or the "Filing Fee Waiver Request" to: Government Claims Program, P.O. Box 3035, Sacramento, CA, 95812-3035. Forms can also be delivered to the Victim Compensation and Government Claims Board, 630 K Street, Sacramento.

## For State Agency Use Only

24

*Name of State Agency* *Fund or Budget Act Appropriation No.*

*Name of Agency Budget Officer or Representative* *Title*

*Signature* *Date*

VCGCB-GC-002 (Rev. 8/04)

# AFFIDAVIT FOR WAIVER OF GOVERNMENT CLAIMS FILING FEE AND FINANCIAL INFORMATION FORM

*(Request for Permission to Proceed In Forma Pauperis)*

California Victim Compensation and Government Claims Board
P.O. Box 3035
Sacramento, CA 95812-3035

1-800-955-0045 • www.governmentclaims.ca.gov

State of California

For Office Use Only
Claim No.:

***I request a fee waiver so that I do not have to pay the $25 fee to file a government claim with the Victim Compensation and Government Claims Board. I cannot pay any part of the fee.***

## Claimant Information

1. Cobb | John | H
*Last name* | *First Name* | *MI*

2. Tel: 858-277-2026

3. Claim Number (if known):

## Employment Information

4. My occupation: unemployed
My employer:
*Employer's Mailing Address* | *City* | *State* | *Zip*
My spouse's or partner's employer:
*Employer's Mailing Address* | *City* | *State* | *Zip*

5. If you are an inmate in a correctional facility, please attach a certified copy of your trust account balance, enter your inmate identification number below and skip to step 23.
*Inmate Identification Number:*

## Financial Information

6. I am receiving financial assistance from one or more of the following programs. ☒ Yes ☐ No

**If no, proceed to step 7. If yes, check all that apply, then skip to step 24.**

- ☐ SSI and SSP: Supplemental Security Income and State Supplemental Payments Programs
- ☐ CalWORKS: California Work Opportunity and Responsibility to Kids Act
- ☒ Food Stamps
- ☐ County Relief, General Relief (GR), or General Assistance (GA)

7. Number in my household and my gross monthly household income, if it is the following amount or less:

| | Number | Monthly family income | | Number | Monthly family income |
|---|---|---|---|---|---|
| A ☐ | 1 | $969.79 | F ☐ | 6 | $2,626.04 |
| B ☐ | 2 | $1,301.04 | G ☐ | 7 | $2,957.29 |
| C ☐ | 3 | $1,632.29 | H ☐ | 8 | $3,288.54 |
| D ☐ | 4 | $1,963.54 | I ☐ | There are more than 8 people in my family. Add $331.25 for each additional person. | |
| E ☐ | 5 | $2,294.79 | | | |

Number: ______ Total Income: ______

**If you checked a box in step 7 A through I, complete steps 9 through 15. Then skip to step 24.**

8. My income is not enough to pay for the common necessities of life for me and the people in my family, and also pay the filing fee. ☐ Yes ☐ No

**If yes, fill in steps 9 through 24.**

## Monthly Income and Expenses

**9** My gross monthly pay is: $

**10** My income changes each month: ☐ Yes ☐ No

**11** Number of persons living in my home:

| | Name | Age | Relationship | Monthly Income |
|---|---|---|---|---|
| A | | | | $ |
| B | | | | $ |
| C | | | | $ |
| D | | | | $ |
| E | | | | $ |
| F | | | | $ |

**12** Other money I get each month

| | Source: | |
|---|---|---|
| A | | $ |
| B | | $ |
| C | | $ |
| D | | $ |
| E | | $ |
| F | | $ |

**15** My total gross monthly household income: $

**13** Total other money: $

**14** My monthly income: $

**16** My payroll deductions are:

| | | | | | |
|---|---|---|---|---|---|
| A | | $ | E | | $ |
| B | | $ | F | | $ |
| C | | $ | G | | $ |
| D | | $ | H | | $ |

**17** My total payroll deduction amount is: $

**18** My monthly take home pay is $

**19** My net monthly income: $

**20** I own or have interest in the following property:

A Cash $

B Checking and savings (List banks):

| | | |
|---|---|---|
| 1) | | $ |
| 2) | | $ |
| 3) | | $ |
| 4) | | $ |

C Cars, other vehicles, and boats (List make and year)

| | Property | Value | Loan Balance |
|---|---|---|---|
| 1) | | $ | $ |
| 2) | | $ | $ |
| 3) | | $ | $ |

D Real estate (List addresses)

| | | | |
|---|---|---|---|
| 1) | | $ | $ |
| 2) | | $ | $ |

**21** My monthly expenses are:

| | | |
|---|---|---|
| A | Rent or house payment | $ |
| B | Food and household supplies | $ |
| C | Utilities and telephone | $ |
| D | Clothing | $ |
| E | Laundry and cleaning | $ |
| F | Medical and dental | $ |
| G | Insurance | $ |
| H | School, child care | $ |
| I | Transportation and auto expenses | $ |

J Installment payments (specify)

| | | |
|---|---|---|
| 1) | | $ |
| 2) | | $ |
| 3) | | $ |

Total installment payments: $

K Wage assignment or withholdings $

L Spousal or child support $

M Other:

| | | |
|---|---|---|
| 1) | | $ |
| 2) | | $ |

Total other expenses: $

**22** Total monthly expenses: $

**23** I have attached other information that supports this application on a separate sheet. ☐ Yes ☐ No

## Signature Section

**24** *I declare under penalty of perjury under the laws of the state of California that the information on this form and all the attachments is true and correct.*

[signature]

*Signature of Claimant*

7/25/2006

*Date*

VCGCB-GC-0010 8/04

14. State agencies or employees against whom this claim is filed:

State of California;
University of California Regents;
University of California at San Diego; ( " U.C.S.D. " );
University of California at San Diego Police Department; ( " U.C.S.D. Police Dept. " ).

U.C.S.D. Police Dept. Officers; U.C.S.D. Police Officer J. Reyes ( ID No. 606 ).
U.C.S.D. Police Officer Tom Morris ( ID No. 651 ).
U.C.S.D. Police Officer M. Jones ( ID No. 602 ).

15. Dollar amount of claim:

$ 10,000.00 ( ten thousand dollars )

16. Location of the incident:

U.C.S.D. Campus. Pepper Canyon Hall. Price Center.

17. Describe the specific damage or injury:

Physical abuse, battery.
Discriminatory enforcement of laws. Violation of Civil Rights. Conspiracy to violate civil rights.
Falsification of police reports. Defamation. Discrimination, harassment, and retaliation.

Emotional distress; humiliation, anxiety, depression. Worsening of preexisting condition.

18. Explain the circumstances that led to the damage or injury:

**i. <u>Illegal Arrest by S.D.S.U. Police. Incident Dated 7-24-1997</u>**

On 7-24-1997 I was illegally arrested by two S.D.S.U. Police Officers – Sgt. Aaron Woodard ( ID No. 310 ), and Officer Sonny Cavarlez ( ID No. 405 ). They falsified two police reports regarding this situation. Sgt. Aaron Woodard was a Black male. Officer Cavarlez is a Philippine male. Sgt. Woodard ( I believe ), no longer works at the S.D.S.U. Police Department. Cavarlez was promoted to Sergeant, and is now a Lieutenant in the S.D.S.U. Police Department. I filed a law suit regarding this in Federal Court – '99 CV 1321 CGA, filed on June 24, 1999. This was dismissed because of the statute of limitations. The statute of limitation at the time for false arrest ( personal injury ), was 1 year. It is now 2 years.

The two S.D.S.U. Police Officers falsified a police report to cover-up my illegal arrest. This included a false statement of fact that I refused to identify myself. This was not true. I gave Cavarlez my Student Identification Card, and Sgt. Woodard my driver's license. Evidence of the falsified police report was provided by a witness who made a declaration for a restraining order. She made a declaration of events of this illegal arrest which was different from what the two S.D.S.U. Police Officers wrote in their police reports. I gave a copy of this R. O. declaration to the City Attorney's Office. The San Diego City Attorney's Office subsequently conspired to cover this (my illegal arrest ) up – they did not charge either S.D.S.U. Police Officer with a PC § 118.1 violation ( law against police officer filing false report ).

Refer to Attachments No.s 4 & 5 for letters I sent to S.D.S.U. regarding further harassment with regards to this situation.

## II. Incident Dated 2-5-1999 ( M. Jones )

On 2-5-1999, I was standing in the restaurant area ( food halls ) of Price Center, and was contacted by U.C.S.D. Police Officer M. Jones ( ID No. 602 ). Officer Jones talked to me, and asked me some questions. I do not recall these questions. Officer Jones gave no citation to me on 2-5-1999. There was no reason for Officer Jones to contact me on this occasion. There was no probable cause or reasonable suspicions for Officer Jones to contact me.

Later, with regards to a vehicle code violation, I requested discovery from the City of San Diego City Attorney's Office, and was provided the;

" SAN DIEGO REGIONAL FIELD INTERVIEW REPORT ";

[ Number 4431194, dated 2-5-1999, attached herein as Attachment No. 1. ]

This is documentation of my above described contact by U.C.S.D. Police Officer M. Jones. This document is defamatory, evidences discrimination and harassment by Officer Jones, and has been substantially upsetting to me.

## III. Profiling / Harassment and Discrimination by Officer Jones

Some time after this 2-5-1999 incident ( sometime in 2000-2003 ). I was walking out of the U.C.S.D. Bookstore ( the second and upper level ). As I was leaving, I noticed Officer M. Jones seated at a small table across from another ( Hispanic looking ) U.C.S.D. Police Officer. They were eating. As I walked past these two U.C.S.D. Police Officers, I noticed Officer Jones pointing me out ( using his finger ) to this second U.C.S.D. Police Officer, and then this second Police Officer looking over at me. This is an example of me being profiled by the U.C.S.D. Police.

## IV. Incident Dated 2-3-2006 ( Reyes )

On 2-3-2006, as I was walking into the price center, I was contacted by U.C.S.D. Police Officer Reyes, and issued Citation No. UC 621521 ( for violation of PC § 647 (A) ). This citation has been attached herein as Attachment No. 2. This citation was issued without probable cause and without reasonable suspicion. I was also issued a stay-away order. This is attached herein as Attachment No. 3.

I told Officers Reyes, a second white officer ( Gustafson ) and Morris ( who showed up later ), that I had not done anything illegal. Officer Reyes issued me the citation anyway.

I told Officer Reyes ( in the presence of a second U.C.S.D. Police Officer – Gustafson, ID No. 601 ) several times, that I was only required to give him my name and address, and that I was not required to give him my driver's license. After this, Officer Reyes grabbed some bus passes out of my shirt pocket. He did this quickly, and without my permission. After this, I stated that I wanted to get his name and ID number. I went to get a pen out of my outer backpack pocket. I was then grabbed first by Officer Reyes, and then by the second officer ( Gustafson ). I was taken to the ground, and rolled over. This scrapped my left knee. ( I later showed this to the two officers. ). I was also placed

in handcuffs. Officer Reyes started opening my backpack. I said to him that he did not have permission to search my backpack. He searched it anyway. He took out my wallet, and got out my driver's license. The information of my Driver's License Number ( "N6539830"; on both the citation and stay-away order ), and of my birth-date, has been illegally obtained.

I have obtained a copy of the police report, and it contains lies. One of which has been made by Officer Reyes, who states that;

> " COBB denied it was him and told me that he did not need to show me any identification or tell me who he was. "

This is a false statement. I did not ever say that I was not going to tell the officer's who I was, I only told them that I was not required to give them my driver's license.

I further believe that Officer Reyes is ethnically Philippine ( like S.D.S.U. Officer Cavarlez, refer to above Section i ). I allege that Officer Reyes knows of my situation at S.D.S.U. ( that I was falsely accused of not identifying myself to S.D.S.U. Police ), and has falsified his U.C.S.D. police report due to this knowledge. This is further profiling and harassment by police officers ( like in Sections i, ii, and iii above ).

I did not resist the officers in anyway. This incident was emotionally distressing to me, and I suffered physical harm.

19. Explain why you believe the state is responsible for the damages or injury:

The State of California, is the employer of U. C. Police Officers Jones, Morris and Reyes.

The State of California is ( or was ) the employer of S.D.S.U. ( San Diego State University ) Police Officers Aaron Woodard and Sonny Cavarlez.

The State has a policy, custom and practice of covering up the illegal acts of its police officers This includes my illegal arrest in 1997 by the two S.D.S.U. Police Officers.

The state is conspiring with prosecution officials to cover up illegal arrests.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Dated:** 7/26, **2006. Signed:** [signature] .

**John Cobb – Declarant and Claimant.**

ATTACHMENT NO. 1

**SAN DIEGO REGIONAL**
**FIELD INTERVIEW REPORT**

X 4431194

AGENCY: UCSD
DATE: 02-05-99
TIME: 1330
DR NUMBER:

LOCATION OF INTERVIEW: UCSD PRICE CENTER PLAZA LA JOLLA CA 92093

NAME (LAST NAME FIRST): COBB, JOHN HAROLD ROBERT

NICKNAME / AKA:
PHONE #: (619) 277-2028

RESIDENCE ADDRESS (CITY / STATE): 3955 MT. ALBERTINE WAY SD 92111

SOC. SEC. NO.: 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
RACE: W
SEX: M
HAIR: BRN
EYES: BLU
HT.: 6'3"
WT.: 250

D.O.B.: 09-10-59
DRIVERS LICENSE: N6539830
STATE: CA

PHYSICAL ODDITIES (SCARS, ETC.): VERY PALE, SLUMPED SHOULDERS

CLOTHING WORN: WHITE JKT, WHITE PANTS
VEH. LIC. NO / STATE: RED

VEH: YEAR | MAKE | MODEL | COLOR | TYPE

COMPANION 1 (LAST NAME FIRST): —

RACE | SEX | D.O.B. | HAIR | EYES | HT. | WT.

COMPANION 2 (LAST NAME FIRST): —

RACE | SEX | D.O.B. | HAIR | EYES | HT. | WT.

CRIME POTENTIAL (2 VIOL. MAXIMUM): 314.1 PC / 647(d) PC

REMARKS (REASON FOR CONTACT): KNOWN VIOLENT SEX OFFENDER LOITERING AT PRICE CENTER. HOSTILE TO POLICE. C-37 I

VEHICLE
- ☐ DAMAGE – FRONT
- ☐ DAMAGE – FRONT
- ☐ DAMAGE – RIGHT
- ☐ DAMAGE – LEFT
- ☐ FRONT LOWERED
- ☐ FRONT RAISED
- ☐ REAR LOWERED
- ☐ REAR RAISED
- ☐ RUST / PRIMER
- ☐ CUSTOM WHEELS
- ☐ VINYL TOP
- ☐ DECAL / EMBLEM
- ☐ UNIQUE EXT.
- ☐ UNIQUE INT.
- ☐ CUSTOM COLOR
- ☐ CAMPER SHELL

INT. COLOR (________________)

HAIR LENGTH
- ☐ LONG
- ☒ SHORT
- ☒ BALD / THINNING

HAIR STYLE
- ☐ AFRO / NATURAL
- ☐ WAVY / CURLY
- ☐ BRAIDED / PONY TAIL

FACE
- ☐ MUSTACHE
- ☐ BEARD
- ☐ GOATEE

COMPLEXION
- ☒ LIGHT
- ☐ DARK
- ☐ ACNE

BUILD
- ☒ THIN
- ☐ HEAVY
- ☐ MUSCULAR

- ☐ GLASSES

OFFICER(S): M. JONES
I.D. NO.(S): 602
BEAT OF OCCURRENCE: 2/132

ARJIS-1 (REV 9-92)

W

ATTACHMENT NO. 2

UNIVERSITY OF CALIFORNIA POLICE, SAN DIEGO

**UC 62151**

NOTICE TO APPEAR ☐ TRAFFIC ☒ NON-TRAFFIC ☒ MISDEMEANOR

Date of Violation: 02/03/06 Time: 1800 ☐ AM ☒ PM Day of Week: FRI Case #: 2006-0263

Name (First, Middle, Last): John Harold Robert Cobb ☐ Owner's Responsibility (Veh. Code, § 40001)

Address: 3955 Mt Albertine Way

City: San Diego State: CA ZIP Code: 92111

Driver Lic. No.: N0539830 State: CA Class: C Commercial ☐ Yes ☒ No Age: 46 Birth Date: 09/16/59

Sex: M Hair: Brn Eyes: Blu Height: 6-02 Weight: 220 Race: W Other Description:

Veh. Lic. No. or VIN State ☐ COMMERCIAL VEHICLE (Veh. Code, § 15210(B))

Yr. of Veh. Make Model Body Style Color

Evidence of Financial Responsibility ☐ HAZARDOUS MATERIAL (Veh. Code, § 353)

Registered Owner or Lessee ☐ Same as Driver

Address ☐ Same as Driver

City State ZIP Code

Correctable Violation (Veh. Code, § 140610) ☐ Booking Required Misdemeanor or Infraction (Circle)

| Yes | No | Code and Section | Description | M/I |
|---|---|---|---|---|
| ☐ | ☒ | 647(d) | Public toilet lewd act | (M) I |
| ☐ | ☐ | | | M I |
| ☐ | ☐ | | | M I |
| ☐ | ☐ | | | M I |

Speed Approx. | P.F./Max Spd. | Veh. Lmt. | Safe | Radar | ☐ Continuation Form Issued | N

Location of Violation(s) at: Peppy Canyon Hall City of Occurrence: San Diego W E

Comments (Weather, Road & Traffic Conditions): Night, fair, dry, light ☐ Accident S

☒ VIOLATION(S) not committed in my presence, certified on information and belief.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

J. Reyes 6060

Arresting or Citing Officer I.D.#

/ /

Date Name of Arresting Officer if different from Citing Officer I.D.#

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.
X *Signature*

WHEN: APPEAR ON DATE 03/22/06 TIME: 0800 ☒ AM ☐ PM

WHAT TO DO: FOLLOW THE INSTRUCTIONS ON THE REVERSE.

WHERE: ☒ San Diego Superior Court, Kearny Mesa Branch, Court A, 8950 Clairemont Mesa Blvd. San Diego, CA 92123 (858) 565-1006

☐ San Diego Superior Court, Misdemeanor Arraignment Dept. 200 West Broadway San Diego, CA 92101 (619) 685-6220

☐ San Diego Superior Court, Kearny Mesa Branch, Court B, 8950 Clairemont Mesa Blvd. San Diego, CA 92123 (858) 565-1006

☐ San Diego Superior Court, Juvenile, 2851 Meadowlark Dr. San Diego, CA 92123 (858) 565-1006

Judicial Council of California Form
Rev. 09-20-05 (Veh. Code, §§ 40500(b), 40513(b), 40522, 40600; Pen. Code, § 853.9) SEE REVERSE TR-130

ATTACHMENT NO. 3

UNIVERSITY OF CALIFORNIA, SAN DIEGO UCSD

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO SANTA BARBARA · SANTA CRUZ

POLICE DEPARTMENT (0017)

9500 GILMAN DRIVE
LA JOLLA, CALIFORNIA 92093-0017

TO: John Harold Robert Cobb
Name
3955 Mt. Albertine Way San Diego, CA 92111
Address
09-10-59 / N6539830
DOB / DL#

SS/N#

A person who is not a student or employee of the University and is not required by his/her employment to be on the campus of the University, who comes onto campus and/or enters a University facility and it reasonably appears to an officer designated by the Chancellor of the University of California, San Diego to maintain order on such campus that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus or facility, or who has entered the campus or facility for the purpose of committing any such act, the designated officer may direct the person to leave the campus or facility.

If the person directed to leave fails to leave or if the person willfully and knowingly re-enters upon the campus or facility within seven days after being directed to leave, he/she may be guilty of a misdemeanor in violation of section 626.6 of the California Penal Code.

You are hereby notified by the undersigned, an officer designated by the Chancellor of the University of California, San Diego to maintain order on such campus, that you are directed to leave the San Diego campus of the University of California.

You are further advised that, if you fail to leave the campus, or if you return thereto within seven days after this direction to leave, you may be arrested and later found guilty of a violation of section 626.6 of the California Penal Code.

J. Reyes #6006
Name of Officer

[signature] 6006
Signature of Officer

02/03/06-1810
Date / Time of order to leave

[signature]
Notice received by

ATTACHMENT NO. 4

To: San Diego State University - Police Complaints Department

San Diego State University ( S.D.S.U. )

From: John Cobb

3955 Mt. Albertine Way

San Diego, CA 92111.

(858) 277-2026.

////

////

**Police Complaint**

////

This is a complaint about a certain SDSU Police Officer. I do not know her name. This officer is a black female. I was told by other SDSU Police Officers on 9/10/02, that she is the daughter of SDSU Police Officer Aaron Woodard ( ID # 310 ).

On 9/10/02, I was contacted by SDSU Police Officers at SDSU – Refer to Citation No. 36577, issued on 9/10/02. I told these officers that in 1997 I had been illegally arrested by then Sgt. Aaron Woodard and SDSU Police Officer Sonney Cavarlez ( ID # 405 ). Refer to the description below:

On 9/10/02, as I was sitting in the police car, this black female officer, the daughter of Officer Woodard, repeatedly look at me, made eye contact with me, then looked at my chest, and then made eye contact with me again. She did this about four or five times. This behavior was very offensive to me. I find it to be rude, and hurtful, and some for of sexual harassment.

Presumably, this police officer did this in reference to the incidents as describe below. This situation started with Ms. Nordahl looking an my chest, knowing that I was applying for employment, and knowing that I knew that she was a supervisor of some kind. ( I have fat around my chest area, and certain people are always communicating this to me by looking at my chest ). The illegal arrest by Sgt. Woodard ( this police officer complaint's father ), ensued thereafter, apparently as some kind of retaliation for the Nordahl incident.

I believe that something needs to be done to correct the behaviors of the identified S.D.S.U. Police Department's Personnel. This is a continuing and ongoing situation.

* * * *

**EVENTS OF JULY 14, 1997 – Sexual Harassment by Sandra Nordahl**

**( Employee of S.D.S.U. Foundation )**

On July 14, 1997, I returned to the 3rd floor, Gateway Building to look at more jobs, and fill out more little blue slips. When I got to the 3rd floor reception area, a woman, Sandra Nordahl, was standing in the reception area, and asked what I wanted. I said that I was looking for employment. Ms. Nordahl, then explained something about how to apply. I then proceeded to Barbara Velez, who was seated in the cubicle where I had seen her before. I asked for the white binder.

I took the binder and went to the little desk ( the one that I had filled out an employment application at before) and started to look at jobs and fill in some more blue slips ( task slips ). As I was doing this, Ms. Nordahl went to Ms. Velez and told her to file and / or mail some papers. I looked over ( to my left ) at Ms. Nordahl, and as I did so, she was already looking to her right at me. Ms. Nordahl then looked at me as if to communicate something - she was looking at me with a serious expression on her face. After making eye contact - she then looked down at my chest, and then up again at my eyes - making eye contact again. When I finished looking at the white binder with the job listings, I gave some more task slips to Ms. Velez, and asked if she had gotten my application and task slips from the last time. She said yes. Then I left the building.

What the Ms. Nordahl had done concerned me. She had look at my chest within the context of giving directions to another employee (establishing herself as a person of authority / supervisor ), and within the context of knowing I was applying for work. Later that same day (July 14, 1997), I returned to the 3rd floor of the Gateway Building to ask her why she had done that.

I went back to the third floor reception area of the Gateway Building, and as I turned around the corner from the elevator into the reception area, Ms. Nordahl was standing facing me. She was standing in front of two other people, one male ( 18-24 ) and one female ( about 40-50 ) - these two people had their backs towards me. As I rounded the corner and looked to my left, Ms. Nordahl, again; made eye contact with me, looked down at my chest, and then made eye contact with me again. I walked towards her, and as I did this, she kept eye contact - looking at me ( my eyes ) and not talking to the two people.

I stopped about 4-5 feet from her and said to her (I did not interrupt her):

John Cobb: "When you look at my chest like that, are you communicating to me that I am not going to get a job ?"

Mr. Nordahl: "What ?"

John Cobb: "When I come in here applying for a job, are you communicating to me by looking at my chest ( I pointed to my chest area), that I'm not going to get a job, that you're not going to turn in my application, or something like that." (Approximately).

Ms Nordahl: "No."

John Cobb: Then I turned around and started to walk away.

Ms. Nordahl: "That's ridiculous".

John Cobb: Then, after she said this, I turned around to her again and said ( from where I was standing – I had gotten about 4-5 feet ): " Well, it should occur to you, that when you look at somebody like that, within the context of them applying for a job, they could interpret it as being suggestive of something; being rude, or offensive or perverse.

Ms. Nordahl: "I am the manager of this place." ( I believe the term used was manager ).

John Cobb: "You have looked down at my chest now two times."

Ms. Nordahl: Turned around and left - went into the office cubicle area, went around the first corner – to the left.

John Cobb: Then I turned around to leave the Building, via the elevator. As I got to the elevator I said loudly, "Discrimination is illegal".

////

////

**ILLEGAL ARREST by**

**Sgt. Aaron Woodard (ID # 310 ) and Officer Sonny Cavarlez ( ID # 405 )**

**( Events of July 24, 1997 – at SDSU Foundation )**

On July 24, 1997, I went to the Gateway Building to look through the white binder of Navy Student Contract job listings. At that time I was a student in the Defense Conversion Program at S.D.S.U. Additionally, I had previously noticed other white binders with labels referring to employment, and I planned to look through those binders also. Additionally, I noticed on the first floor of the Gateway Building, there was a cardboard sign referring to employment opportunities. It said to apply on the fourth floor of the Gateway Building.

So, on July 24, I to the third floor. I went to the first cubical and asked a person, who I recognized ( I had been there before ), to look at the white binders. I deliberately was very, very softly spoken, and courteous. She was very courteous in return. But as she handed me the white binder, she made eye contact with me, looked down at my chest, and then made eye contact with me again. I took the white binder and went back into the reception area and sat in a chair to look through it.

I did this for about 5 minutes. As I was looking down, reading the binder, I noticed a police officer approaching and standing in front of me ( this would be Cavarlez ). He asked me for my student identification card. I got out my wallet, and gave it to him. As he was holding it, he talked to me in a very slow, and very methodical way, he kept looking down at my student id in his hand:

Police Officer No. 1 ( I later was able to identify the Officer as Cavarlez ):

"Mr. Cobb, you came into the Campanile Building about a a week ago, or two weeks ago. And when you were in this building, a week ago, or two week ago, there was an incident involving you and a woman. And when you were in here, a week ago, or two weeks ago ... ". ( Approximately ).

John Cobb : At first, I thought that I didn't know what he was referring to. Then I supposed it was about my discussion with some person on July 14, 1997. But I wasn't sure. Then I thought that, since this is a police officer - the law, and everything, that everything should for certain. So I said to the Police Officer:

"I don't want to listen to this."

Police Officer No. 1 : Talking in a slow and methodical way:

"You were in this building a week ago, or two weeks ago. And when you were in this building a week or two weeks ago, there was an incident involving you and an employee ..."

John Cobb : As he was speaking, I thought again that I wasn't absolutely sure who he was talking about, then I assumed again it was this certain person. I then thought, why was he talking so slowly, and why was he repeating what he had already said. I thought he was lecturing me, telling me off about it, so I said;

"I don't want to listen to this."

Police Officer No. 1: He move his body around in an authoritarian way, and shifted his

weight from one leg to another. He then said:

"Mr. Cobb, you are going to sit there and listen to what I have to say. Mr. Cobb, you were in this building a week ago, or two weeks ago. When you were in this building a week ago, or two weeks ago, there was an incident involving you and an employee ..."

Then a second police officer showed up. ( This was Officer Sgt. Woodard. )

Police Officer No. 2: "Show me you driver's license". He said this is a very terse, sharp, and loud way.

John Cobb : I gave police officer No. 2 ( Woodard ) my driver's license.

The first police officer then repeated what he had been saying.

Police Officer No. 1: "Mr. Cobb, you were in this building a week ago, or two weeks ago. When you were in this building, a week ago or two weeks ago, there was an incident involving you and an employee."

John Cobb: "I don't want to listen to this."

Police Officer No. 2 ( Woodard ): "Right, you're being arrest."

John Cobb : "What am I being arrested for."

Police Officer No. 2 ( Woodard ): "Trespassing."

John Cobb: "How is it that I am trespassing ? I'm not trespassing."

Then Police Officer No. 1 ( Cavarlez ) takes out handcuffs, and tells me to stand up and turn around, and then puts the hand cuffs onto me ( my arms in back ).

John Cobb: "You can't do this, I'm not trespassing."

The police officers then took possession of my pith helmet and my three ring binder. I became irritated and said that "if they stole my binder I would sue their ass."

We went into the elevator, and down to the first floor. When we got out of the building, and in front of some SDSU students, Police Officer No. 1 ( Cavarlez ) said; "You understand that you are being arrested for not doing what a police officer tells you to do."

I was taken to the SDSU Police Station, and put into a cell. As I was taken out of the police car to go into the building, there was a line of mostly women, about 7-10, standing outside the door, laughing at

me. They looked to be middle-aged women, probably SDSU employees – not students. I was taken into the building, and placed into jail cell.

As I was sitting in the cell, Police Officer No. 1 ( Cavarlez ) repeatedly asked me for my social security number (S.S.N.). I said that I didn't have to tell him that. He would leave, and return again to ask for my S.S.N. He did this repeatedly for about 30 to 40 minutes. I answered to him repeatedly that I didn't have to tell him my S.S.N. He said "what law is it that says you don't have to give me your S.S.N." I said to him, that the only information I'm required to give to the police is my name and address. This went back and forth many times. At one time, Police Officer No. 1 came into the cell with a book and said to show him where in the law it said that I didn't have to give him my Social Security Number. I became very anxious about the situation. I was handcuffed the entire time. Eventually I said to him that - one time in the past, I had been told by a police officer that somebody was using my social security number to collect social security. Upon hearing this I telephoned the Social Security Office. They said they would send me some forms to fill in, and then they would check things out. They also said that I should not give out my Social Security Number to anybody.

As Police Officer No. 1 ( Cavarlez ) was going in and out of the cell I was in, he was also having a discussion with Police Officer No. 2 ( Woodard ) about whether the Gateway Building is or is not a "building open to the general public". Officer No. 1 ( Cavarlez )believed it to be open to the general public. I could hear them thumbing through pages of a book. At one time, I got up and looked through a window in the door, and saw the two officers looking through a book.

Eventually, I was taken out of the cell. I was told by Police Officer No. 2 ( Woodard ) that I was being issued a PC 626.6 - Power to direct person to leave campus. Police Officer No. 2 said I was not to return to SDSU for 7 days; (1 week). I knew that PC 626.6 only applies to people that are not students.

I stated to Police Officer No. 2 that I was a student, that I was enrolled in the Defense Conversion Program. I said that I was off for the current week, but that I had to attend class the following Monday, July 28 1997. Police Officer No. 2 then stated he wanted proof that I was allowed onto the campus. I showed him various Defense Conversion Paperwork; brochures, course outlines and dates ( syllabus ), and my calendar, in my green binder. Then he said that I was to go to the teacher, and get a note that stated I was allowed in the class, and then bring him the note. I was then given a ticket - SDSU University Police Notice To Appear - No. 004107: PC 602(n) - "Refusing to Leave". I was then released. I then went home, to where I live. I felt very depressed about the situation. I felt very distressed.

When I went to the arraignment, I learned that Officer Cavarlez had falsified a police report, stating that I had refused to identify myself, not true, and that I had refused to leave the building after being told to do so, also not true. Officer Sgt. Aaron Woodard initialized the bottom of this police report.

////

////

**Dated:** ____________________, **2002. Signed:** ________________________________.

John Cobb - Complainant

////

////

////

////

////

////

////

**ATTACHMENT NO. 5**

To: Steven Weber – President, San Diego State University
5500 Campanile Drive
San Diego, CA 92182
From: John Cobb
3955 Mt. Albertine Way
San Diego, CA 92111.
(858) 277-2026.

////

////

**Complaint**

This letter is being sent to you in regards to a situation which seems to be continuing and on going. I was a student In the Defense Conversion Program in 1997. On July 14, 1997, I went into the 3rd Floor of the SDSU Foundation to apply for work with the Navy Student Services Contract Module. A person named Sandra Nordahl, looked at my chest in a deliberate way, as I was applying for jobs. ( I have fat around my chest area, and certain people are communicating this to me by looking at my chest ). Refer to the below description. Later, when I returned to the SDSU Foundation to look for jobs, I was illegally arrested by Sgt. Aaron Woodard and Sonny Cavarlez, of the SDSU Police Department. Refer to the below description.

I consider this type of behavior as a form of sexual harassment. I recently have interacted with Sgt. Aaron Woodard's daughter, who I have been informed is a SDSU Police Officer. On 9/10/02, she repeated this behavior; she looked at me, made eye contact with me, then looked at my chest, and then made eye contact with me again. She did this about four or five times.

The situation in 1997 resulted in a lawsuit, filed by me ( '99 1321 CGA ). The 1997 situation, and resulting lawsuit, was started with the conduct by Ms. Nordahl ( conduct enacted knowing that I was applying work, and knowing that I knew that she was a supervisor of some kind ), and then her and other people's attempt to cover everything up.

I believe that something needs to be done to correct this situation. This is a continuing and ongoing situation.

////

////

////

**Dated:** ____________________, **2002. Signed:** _______________________________.

John Cobb - Complainant

////

////

////

////

////

////

////

Exhibit No. 47

Sedgwick CMS

Sedgwick Claims Management Services, Inc.
PO Box 14421 Lexington, KY 40512
Phone: (925) 988-1151 Fax: 925-988-1597

December 28, 2007

John Cobb
3955 Mt. Albertine Way
San Diego, CA 92111

| | | | |
|---|---|---|---|
| RE: | Our Principal | : | Regents of the University of California |
| | Location | : | University of California San Diego |
| | Claimant | : | John Cobb |
| | Claim # | : | A752904461-0001-01 |

Dear Mr. Cobb:

Sedgwick Claims Management Services, Inc. is the "Third Party Administrator" for the Regents of the University of California.

We have completed our review of your claim for damages against the University of California San Diego Police Department. Please be advised that pursuant to the California statute of limitations you have two years from the date of injury to either resolve a personal injury claim or file a lawsuit in a court of competent jurisdiction in order to preserve your rights. As such, your claims involving incidents in 1997 and 1999 are barred pursuant to the statute of limitations.

Regarding your claim for an incident that occurred on 2/3/2006, upon reviewing Police Report No 2006-0203 we have concluded that the actions of the officers were entirely reasonable given the circumstances.

Therefore, we find no liability on the part of the UCSD Police Department and we must respectfully deny your claim for damages against the University.

Should you have any questions, please contact the undersigned.

Sincerely,

Greer Gustavson
Sr. Claims Examiner
(925) 988-1151

Cc: Diana Olson

**Sedgwick CMS**
**Sedgwick Claims Management Services, Inc.**
PO Box 4276, Walnut Creek, CA 94596

UNITED STATES POSTAGE
PITNEY BOWES
02 1M
0004[illegible]4438
$ 00.41[0]
JAN 02 200[illegible]
MAILED FROM ZIP CODE 9459[illegible]

92111$3247 C047

Exhibit No. 48

48

The State Bar of California

Tuesday, January 15, 2008

State Bar Home

Home > Attorney Search > Attorney Profile

# Shane Elliot McKay - #240620

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

| | | | |
|---|---|---|---|
| Bar Number | 240620 | | |
| Address | Tulare County Public Defender's Office<br>County Civic Center<br>221 S Mooney Blvd Rm G-35<br>Visalia, CA 93291 | Phone Number<br>Fax Number<br>e-mail | Not Available<br>Not Available<br>ellmcshane@hotmail.com |
| District | District 5 | Undergraduate School | Univ of Washington; Seattle WA |
| County | Tulare | Law School | UCLA SOL; Los Angeles CA |
| Sections | None | | |

## Status History

| Effective Date | Status Change |
|---|---|
| *Present* | Active |
| 12/4/2005 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

Disciplinary and Related Actions

This member has no public record of discipline.

Administrative Actions

This member has no public record of administrative actions.

Start New Search >

**Contact Us** **Site Map** **Privacy Policy** **Notices** © 2008 The State Bar of California

The State Bar of California

Tuesday, January 15, 2008

State Bar Home

Home > Attorney Search > Attorney Profile

# Nancy Namyee Song - #236589

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

| | | | |
|---|---|---|---|
| Bar Number | 236589 | | |
| Address | San Diego Public Defender<br>233 A St Ste 500<br>San Diego, CA 92101 | Phone Number<br>Fax Number<br>e-mail | Not Available<br>Not Available<br>Not Available |
| District | District 9 | Undergraduate School | Univ of California Irvine; Irvine CA |
| County | San Diego | Law School | California Western SOL; San Diego CA |
| Sections | None | | |

## Status History

| Effective Date | Status Change |
|---|---|
| *Present* | Active |
| 5/27/2005 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

Disciplinary and Related Actions

This member has no public record of discipline.

Administrative Actions

This member has no public record of administrative actions.

Start New Search >

**Contact Us** **Site Map** **Privacy Policy** **Notices** © 2008 The State Bar of California

# Steven John Carroll - #60761

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

| | | | |
|---|---|---|---|
| Bar Number | 60761 | | |
| Address | Ofc Public Defender<br>233 A St #800<br>San Diego, CA 92101-4008 | Phone Number<br>Fax Number<br>e-mail | (619) 338-4797<br>(619) 338-4643<br>steve.carroll@sdcounty.ca.gov |
| District | District 9 | Undergraduate School | Univ of Iowa; Iowa City IA |
| County | San Diego | Law School | Univ of San Diego SOL; San Diego CA |
| Sections | None | | |

## Status History

| Effective Date | Status Change |
|---|---|
| *Present* | Active |
| 12/18/1974 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

Disciplinary and Related Actions

*This member has no public record of discipline*

Administrative Actions

*This member has no public record of administrative actions.*

Start New Search >

 © 2007 The State Bar of California

Exhibit No. 49

**SHORE, Howard Harris**

JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Succeeded to court upon majority vote of judges in county [pursuant to Prop. 220] to convert Municipal Courts to Superior Courts, effective Dec. 1, 1998.

**Other Judicial Office:** Judge, Municipal Court, San Diego Judicial District, San Diego County, appointed to newly-created position by Governor Deukmejian Jan. 24, 1990 (oath Jan. 26, 1990), elected in 1990 (unopposed), and reelected in 1996.

**Past Employment:** Deputy District Attorney, San Diego County, June 1974 to Jan. 1990 (prosecuted a variety of matters including family support, welfare fraud, and capital cases).

**Memberships/Awards:** Member: Calif. Judges Assn., 1990—; San Diego County Judges Assn., 1990—; and American Inns of Court, San Diego, 1988—. Member of team of lawyers and judges that visited Portugal at invitation of Portuguese government to demonstrate American Justice System, 1990.

**Teaching/Lectures/Panelist:** Adjunct Professor of Law, Univ. of San Diego School of Law, 1980— (Advanced Criminal Evidence and Scientific Evidence). Participant at various Continuing Education of the Bar programs. Faculty, Calif. Judicial College.

**Publications:** Author: "The Case for Capital Punishment, Dicta" (San Diego Bar Assn), July 1989; "Legislature Acted Correctly in Limiting Polygraph Evidence," Los Angeles Daily Journal, Jan. 11, 1984 (p. 4); "Breach of the Peace and Related Offenses," 4 San Diego Enforcement Quarterly 6 (1974) [revised in Vol. 9, p. 9 (1980)]; "The Law of Bad Checks," 3 San Diego Enforcement Quarterly 4 (1974); and "Marine Archaeology and International Law," 9 Univ. of San Diego Law Rev 668 (1972).

**Education:** LL.M. (Nov 19, 1973), London School of Economics and Political Science, London, England; Certificate in International Law (July 23, 1973), Hague Academy of International Law, Hague, The Netherlands; J.D. (May 27, 1972), Univ. of San Diego School of Law, San Diego, Calif. (Law Review staff); B.S. (June 8, 1969, Mathematics), Worcester Polytechnic Institute, Worcester, Massachusetts; Graduate (1963), Winthrop High School, Winthrop, Massachusetts.

**Born:** Sept. 29, 1945; Boston, Massachusetts, and reared in Winthrop, Massachusetts; Married. Three children.

**Interests:** Enjoys reading, writing, the fine arts, outdoor sports, running, swimming in the ocean, and travel.

**Admission:** Admitted to Calif. Bar June 17, 1974; to U.S. Dist. Court, Southern Dist. of Calif., June 18, 1974; and to U.S. Supreme Court Nov. 14, 1977.

**Political Affiliation/Religion:** Independent

**Office Address:** County Courthouse<br>220 West Broadway<br>San Diego, CA 92101

**Office Phone:** (619) 531-3056 (general number)

*ATTORNEYS' COMMENTS*

**Temperament/Demeanor**

Interviewees seemed to like Judge Shore. They said, "[He has an] excellent demeanor," "He's highly focused and works hard," "He has a more relaxed temperament than many other judges," and his demeanor is "moderate" and "very good." Attorneys who held a less positive view of this jurist said he is "studious and self-absorbed," and described him as "form over substance. Very stuffy and proper."

**Intelligence/Knowledge**

In general, lawyers seem to respect Judge Shore's intelligence. They described his knowledge of the law as "excellent" and "above average." "He's fairly knowledgeable." "Deserves a B+ regarding his knowledge." Another attorney gave conditional praise when he said, "[His knowledge is] good. But he looks for ways to help the prosecution."

**On Motions**

Attorneys said they appreciate Judge Shore's attention to detail and complete preparation for his hearings. They said, "He's definitely well prepared," "He's usually very prepared," and "I'd give him a B+ for his preparation. He's usually well prepared." One lawyer felt that this judge demonstrated an "about average level of preparation." One attorney did say, "He's very well prepared because he's very anxious to deny defense requests."

**On Trial**

San Diego lawyers expressed varied opinions about trying cases before Judge Shore. During many of his trials, some believe he is "very firm but professional," and creates a "somewhat relaxed" or "professional and relaxed" courtroom atmosphere. Others offered less favorable comments. "Things are handled very professionally, but it's a bit tense in his courtroom." "Sometimes [he] gets very flustered and in over his head emotionally, but not intellectually."

**Continuances**

It's difficult to guess how Judge Shore will rule when continuances are requested.

Two attorneys said he grants them an "average" amount of the time compared to other judges. Another lawyer said he is "more likely" to grant one than other judges. Others said, "He's a little bit less likely" to grant a continuance, and "He's probably less likely to grant one" than other San Diego judges.

**Settlement**

When asked about settlement, attorneys said, "[Judge Shore] has very good settlement skills," and "[I have] no complaints. He gets involved" trying to help settle matters.

Another lawyer criticized Judge Shore when he said, "He won't stand up to the D.A."

**Proclivities**

Regarding proclivities, only one lawyer clearly praised Judge Shore: "He's very neutral. Really fair to both sides." Most of the other lawyers said Judge Shore frequently rules in favor of the prosecution. "He's conservative. Leans toward the prosecution." "[He leans] a little toward the prosecution." "He's incredibly pro-prosecution."

**Summary**

While some interviewees questioned Judge Shore's neutrality, almost all of them praised his legal knowledge and level of preparation.

*FROM THE BENCH*

Judge Shore graciously responded to questions regarding his courtroom preferences and procedures.

***General Preferences***

Please review all of the local court rules that govern your case *before* entering the courtroom.

**Trial**

"Please be precise about what you want, and succinct" in what you file in Judge Shore's courtroom. Judge Shore said he prefers attorneys "to avoid [orally] repeating what's already been clearly set forth in their Points and Authorities." He said he always makes time to carefully read everything that has been filed ahead of time. However, lawyers are free to reiterate their major arguments to him. Whenever possible, Judge Shore asks that attorneys "get to the point" in as little time as possible. Trial briefs are not required and Judge Shore did not indicate any preference about receiving them. Attorneys do not have to stand behind the lectern the entire time they are speaking to the court. They may also address the bench from their desks or tables.

**HAYES, Judith Frances Ritch**

JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Appointed [succeeding Judge Judith L. Haller, elevated] by Governor Wilson March 8, 1995, and elected in subsequent election.

**Other Judicial Office:** Judge, Municipal Court, San Diego Judicial District, San Diego County. Appointed [succeeding Judge Richard M. Murphy, elevated] by Governor Deukmejian June 18, 1990 (oath June 19, 1990).

**Past Employment:** Deputy Attorney General, Calif. State Dept. of Justice, 1985-90 (handled white collar fraud and defense of personal injury actions in state and federal courts in southern Calif.). Assistant U.S. Attorney, Southern Dist. of Calif., San Diego, 1980-85 (prosecuted mail and tax fraud cases). Deputy District Attorney, San Diego County, 1978-80.

**Memberships/Awards:** Member: Calif. Judges Assn., 1990—; San Diego County Judges Assn., 1990— (President, 1996-97); and San Diego County Bar Assn., 1978—; American Inns of Court, Louis M. Welsh chapter.

**Teaching/Lectures/Panelist:** Adjunct Professor, University of San Diego School of Law, Trial Practice, 1994-97; Instructor, National Institute of Trial Advocacy, 1997—; Moderator, CEB Recent Developments in Criminal Law, 1998-99.

**Education:** J.D. (1977), Univ. of San Diego Law School, San Diego, Calif.; B.A. (1970, Speech), Catholic Univ. of America, Washington, D.C.

**Born:** Oct. 28, 1948; Trenton, New Jersey; Married (Superior Court judge). One child.
**Interests:** Enjoys Alaskan native culture studies.
**Admission:** Admitted to Calif. Bar Dec. 21, 1977.

**Office Address:** County Courthouse
220 West Broadway
P.O. Box 2724
San Diego, CA 92112

**Office Phone:** (619) 531-3842

*ATTORNEYS' COMMENTS*

**Temperament/Demeanor**

Interviewees were quick to praise Judge Hayes' judicial demeanor. They said, "[It's] great," "She's very laid-back and mellow," "I'm very, very impressed by her," and "She's open-minded." Three attorneys described her temperament as "excellent."

**Intelligence/Knowledge**

Every interviewee spoke highly of Judge Hayes' legal acumen. Two said, "[Her knowledge is] excellent," and others said, "It's above average," "[It's] very good," and "She's a very smart judge."

**On Motions**

Two interviewees said Judge Hayes is "very well prepared." Others agreed and said, "[She does] excellent preparation [before her hearings]," and "She reads everything twice. She's very prepared."

**On Trial**

Judge Hayes has developed strong trial management skills. Lawyers said: "She handles complex issues well;" "There's a relaxed atmosphere in her courtroom;" "She's not overbearing;" "She really listens to what you have to say;" and "She exercises average control [of her courtroom compared to other judges]." Only one lawyer voiced reservations about presenting a case before this judge. He said, "The decorum may be a little strict, but it's not unreasonable."

**Continuances**

Two lawyers said Judge Hayes is "more likely" to grant a continuance than other judges. Others agreed. "She's very good about granting these." "I had this come up just this morning. She's average to a bit more liberal about granting these." "She'll grant one if you've demonstrated good cause."

**Settlement**

Members of the bar appreciate Judge Hayes' negotiating skills and ability to settle various matters. "She's more likely than most judges to jump in and hold a sidebar." "She absolutely gets involved." "She's more likely to get actively involved" than other judges. "If she feels there's a problem, she'll call a sidebar." "Like most judges, she'll get involved when needed." One attorney was even more specific. "Depending on the complexity of the issue, she may handle [a contested issue] at sidebar—or otherwise take a recess."

**Proclivities**

Judge Hayes' neutrality was routinely praised. Attorneys said, "She's extremely fair," "She's very fair, middle of the road," "She's very neutral. One of my favorites," "She's very human interest-oriented. She looks at both sides of the cases fairly," and "She's right down the middle. Very fair."

**Summary**

According to interviewees, Judge Hayes has a very pleasant judicial demeanor and strong courtroom management skills. Lawyers said, "She's pleasant, even-tempered and firm," and "She's very fair. She will give you a fair hearing."

## HAYES, Charles Rutherford

JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Appointed to newly-created position by Governor Deukmejian Dec. 18, 1987 (oath same day), and elected in subsequent elections.

**Other Judicial Office:** Judge, Municipal Court, San Diego Judicial District, San Diego County, Feb. 3, 1986 (date of appointment and oath) to Dec. 18, 1987, appointed [succeeding Judge Laura P. Hammes, elevated] by Governor Deukmejian.

**Past Employment:** Chief Deputy District Attorney (1985-86), Special Assistant U.S. Attorney, Southern District of Calif., 1978-85, Chief, Fraud Division, 1978-85), and Deputy District Attorney (1970—78, trial deputy), San Diego County.

**Memberships/Awards:** Member: Calif. Judges Assn., 1986—; and San Diego County Bar Assn. Former member, Calif. District Attorneys Assn. Master, American Inns of Court; Former Trustee San Diego County Law Library.

**Education:** J.D. (1969), Calif. Western School of Law, San Diego; B.A. (1966, Political Science), Occidental College, Los Angeles, Calif.

**Born:** July 19, 1944; Woodland, Calif.; Married (Superior Court Judge). One child. Tends a small vineyard of Merlot and Cabernet grapes.

**Interests:** Amateur wine maker (winner of gold and silver medals for his Cabernet, Chardonnay, and champagne at County Fairs). Holds an brown belt in karate.

**Admission:** Admitted to Calif. Bar Jan. 15, 1970.

**Office Address:** Hall of Justice, Dept. 66
330 West Broadway
San Diego, CA 92101

**Office Phone:** (619) 685-6022

*ATTORNEYS' COMMENTS*

**Temperament/Demeanor**

Judge Hayes got decidedly mixed reviews from the attorneys interviewed. Comments ranged from very positive to very negative. Some attorneys rated him as "very good," "terrific," "always a gentleman," and "friendly and open." Others said: "He's a good guy;" "He runs a pleasant courtroom;" "He's going to do the right thing;" and "I enjoy being in his courtroom." Others thought him to be "formal" and "judicious." Still others thought the judge was "a strange guy," "arrogant," "blows hot and cold," "unsuitable," "unsympathetic," "inflexible," and "sanction happy."

**Intelligence/Knowledge**

A former Deputy District Attorney, Judge Hayes also got mixed reviews on his knowledge of the law. Some attorneys rated Judge Hayes' intelligence and knowledge as "high," "very good," "pretty good," and "good. Other attorneys questioned his learning and understanding.

**On Motion**

Judge Hayes hears all matters from the bench. He permits oral arguments at motion hearing "and listens." Judge Hayes issues tentative rulings and written decisions. Attorneys may appear by telephone. It is difficult to get a summary judgment motion granted by Judge Hayes.

**On Trial**

Judge Hayes limits attorney voir dire, but otherwise conducts it himself. He does not like speaking objections. He expects high levels of professionalism. Nevertheless, one attorney vowed to "never allow him to try one of my cases." Exhibits must be pre-marked.

**Settlement**

Attorneys interviewed claimed that Judge Hayes does not do settlement conferences. Nevertheless, he encourages settlement and helps whenever he can.

**Continuances**

Judge Hayes strictly enforces the fast track rules. Some claim he enforces them unfairly, but others said that Judge Hayes does not enforce them "slavishly." Some lawyers said continuances are "difficult to get" and are "a lot of grief." One lawyer claimed that lawyers must "pay for them" in the form of sanctions. Other lawyers said that Judge Hayes will grant a continuance "if there is a good reason" and will "accommodate lawyers within reason." Attorneys reported that all requests must be in writing and grant of a continuance is more likely of the case is less than one year old.

**Proclivities**

Judge Hayes is "very efficient at managing his calendar." "He likes dignified attorneys and works to uphold the dignity of the proceedings." Judge Hayes has been known to comment on the negative tone in legal papers. "He doesn't like lawyers who get nasty, lose their cool, or make accusations against opposing counsel." "If you're well prepared, you'll like this judge, but if you're not, you won't have a good experience."

**Summary**

Judge Hayes has a "terrific" collection of California landscapes in his courtroom, he studies martial arts, and he is married to Judge Judith Hayes. Opinion on Judge Hayes is split. Attorneys either like him or not. Preparation and professionalism seem to be the underlying criteria. As one attorney put it, "Lawyers: Be Prepared."

**MELOCHE, Donald L.**

RETIRED JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election**: Appointed [succeeding Judge Gilbert Harelson, retired] by Governor Deukmejian April 28, 1987 (oath May 8, 1987), elected in subsequent election, and retired June 21, 1998.

**Past Employment**: Private law practice: El Cajon, Calif., 1967-87 (partner, McDougal, Meloche, Love & Eckis, 1967-87); Lemon Grove, Calif., 1965-67 (with Davies Barwick & Knowlton); and San Diego, Calif., 1963-65 (legal dept., Ryan Aerospace Co.); Deputy District Attorney, San Diego County, 1965-67 and 1958-63.

**Memberships/Awards**: Member: Calif. Judges Assn., 1987—; Calif. Trial Lawyers Assn., 1965—; San Diego County Bar Assn., 1958— (past Vice President); San Diego Trial Lawyers Assn., 1975— (past Secretary-Treasurer); and Foothills Bar Assn., 1967—. Former member, El Cajon Chamber of Commerce, 1967-87.

**Teaching/Lectures/Panelist**: Instructor ("Business Law"): Grossmont College, 1979-80; and San Diego City College, 1959-68.

**Military Experience**: Served from Second Lieutenant to First Lieutenant, U.S. Marine Corps, Korean War, 1952-55 (United States, Japan, and Korea).

**Education**: J.D. (1956), Univ. of Colorado School of Law, Boulder, Colo.; Attended George Washington Univ., Washington, D.C., 1954-55; B.S. (1952, Business Administration), Univ. of Colorado, Boulder; Graduate (1947), North Phoenix High School, Phoenix, Arizona (played football).

**Born**: June 21, 1928; Nogales, Arizona; Married. Three children.

**Interests**: Enjoys flying old planes (owns a Cessna 1970 and an open cockpit Bucker Jungman), jogging, and skiing.

**Admission**: Admitted to Colorado Bar 1956 and Calif. Bar June 4, 1957. Also admitted to U.S. Court of Appeals, Ninth Circuit, and U.S. Dist. Court, Central and Southern Dists. of Calif.

**Political Affiliation/Religion**: Republican

**DAVIDSON, John L. [Leo]**

JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Succeeded to court upon majority vote of judges in county [pursuant to Prop. 220] to convert Municipal Courts to Superior Courts, effective Dec. 1, 1998. Reelected to new six year term in General Election, held Nov. 2, 2002.

**Other Judicial Office:** Judge, Municipal Court, San Diego Judicial District, San Diego County, appointed [succeeding Judge Charles G. Rogers, retired] by Governor Wilson July 19, 1994 (oath same day), elected in subsequent elections.

**Past Employment:** Deputy District Attorney, San Diego County, 1984-94. Deputy City Attorney, San Diego, Calif., 1982-84.

**Memberships/Awards:** Member: Calif. Judges Assn., 1994—; and San Diego County Judges Assn., 1994—. Former member: Calif. District Attorneys Assn., 1984-94; San Diego Deputy District Attorneys Assn., 1984-94.

**Education:** J.D. (1981), Univ. of San Francisco School of Law, San Francisco, Calif. (Class Vice-President, Evening Program); B.A. (1978, with Honors, Political Science), Calif. State Univ., Sonoma; Graduate (1974).

**Personal:** Married. Two children.

**Interests:** Enjoys traveling and reading personal biographies of historical leaders.

**Admission:** Admitted to Calif. Bar June 16, 1982; and to U.S. Dist. Court, Southern Dist. of Calif., July 12, 1982.

**Political Affiliation/Religion:** Republican

**Office Address:** Courthouse
220 West Broadway
San Diego, CA 92101

**Office Phone:** (619) 531-3434 (general number)

**BRANDENBURG, Anthony J[illegible]es**

COMMISSIONER, SUPERIOR COURT, San Diego County

**Appointment/Election:** Succeeded to court upon majority vote of judges in county [pursuant to Prop. 220] to convert Municipal Courts to Superior Courts, effective Dec. 1, 1998.

**Other Judicial Office:** Commissioner, Municipal Court, North County Judicial District, San Diego County, appointed by judges of court effective June 2, 1989.

**Past Employment:** Private law practice, Oceanside, Calif., 1984-89 (with Gore, Grosse, Greenman & Lacy, and its predecessor Andreasen, Gore, Grosse, Greenman & Betz).

**Memberships/Awards:** Member: Calif. Judges Assn., 1989—; San Diego County Judges Assn. (Board of Directors, 1992—); Calif. Court Commissioners Assn., 1990-1996 (Board of Directors); American Bar Assn., 1989—; San Diego County Bar Assn., 1990—; Board of Directors (San Diego County Judges Assn.; North County Bar Assn., Elected vice president, 2002, 1989—); and Rotary International. Former member: Encinitas Union School Dist. Board of Education, 1981-89 (President, 1984-86). Recipient: Professor of the Year, Webster University, 1991; National Assn. of Counties Award for Excellence, 1993; elected to attend National Judicial College, Reno, Nevada, 1998. President elect, Calif. Court Commissioner's Assn., 2002. President, San Diego County Judges Assn., 2003.

**Teaching/Lectures/Panelist:** Adjunct Faculty, United States International Univ., San Diego, 1984—. Law Professor, Webster Univ., San Diego, 1985—. Lecturer, Administration Office of the Courts, Calif.. Faculty, National Judicial College, Reno, Nevada.

**Education:** J.D. (1979), Western State Univ. School of Law, San Diego, Calif. (recipient, American Jurisprudence Award in Bankruptcy); M.A. (1976), Univ. of Connecticut, Storrs; B.S. (1975), Eastern Connecticut State Univ., Willimantic.

**Born:** May 19, 1940; Boston, Massachusetts; Married.

**Interests:** Enjoys reading, jogging, hiking, and camping.

**Admission:** Admitted to Calif. Bar Dec. 12, 1983.

**Office Address:** County Courthouse<br>P.O. Box 122724<br>San Diego, CA 92112

**Office Phone:** (619) 531-3434 (general number)

**WEATHERS, Theodore M.**

JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Appointed [succeeding Judge Lawrence W. Stirling, retired] by Governor Davis July 23, 2003 (oath July 31, 2003).

**Other Judicial Office:** Commissioner, Superior Court, San Diego County, January 3, 2000-to July 30, 2003, appointed by the Court in December 1999.

**Past Public Office:** Deputy Public Defender, San Diego County, 1990-1999.

**Past Employment:** Private Law Practice, New York, NY, 1988-1989; In-house counsel, CIBA-Geigy Corp., Ardsley, NY, 1985-1988; Assistant District Attorney, Bronx, NY 1981-1985.

**Memberships/Awards:** Member: Calif. Center for Judicial Education and Research, New Judge Education Committee, 2002-2005; Calif. Judges Assn., 2000—; San Diego County Judges Assn., 2000—; San Diego County Bar Assn., 1991—; Tom Homann Law Assn., 1991—; Lawyers Club of San Diego, 1999—; Calif. Women Lawyers, 2001—.

**Teaching/Lectures/Panelist:** Faculty: Calif. Center for Judicial Education and Research, B.E. Witkin Judicial College, 2002, 2003; CJER Orientation for New Trial Court Judicial Officers (NJO), 2003; National Institute of Trial Advocacy, 1995—. Adjunct Professor of Law: University of San Diego School of Law, 2001; California Western School of Law, 1995-1997.

**Education:** J.D. (1981) New York Law School, New York, NY; B.A. (1977) Rutgers, The State University of New Jersey, New Brunswick, NJ.

**Born:** March 10, 1956, Newark, NJ.

**Admission:** Admitted to Calif. Bar June 18, 1990. Other admissions include New York State Supreme Court, June 21, 1982; United States District Court, Southern District of New York, Sept. 14, 1982; United States District Court, Eastern District of New York, Sept. 14, 1982; New Jersey, Dec. 16, 1982; United States District Court, District of New Jersey, Dec. 16, 1982; Florida, Dec. 22, 1983; United States District Court, Southern District of Calif., June 18, 1990; United States Court of Appeals, Ninth Circuit, June 28, 1990.

**Political Affiliation/Religion:** Democrat

**Office Address:** Main Courthouse<br>220 W. Broadway<br>San Diego, CA 92101

**Office Phone:** (619) 531-3434

*FROM THE BENCH*

Judge Weathers graciously responded to questions regarding his courtroom preferences and procedures.

**General Advice and Preferences**

Like most jurists, Judge Weathers asks attorneys to *always* be on time, arrive fully prepared and act courteously toward everyone in his courtroom. Notice motions must always be in writing and filed ahead of time. Attorneys do not have to stand behind the lectern while presenting their arguments. Attorneys do not have to request permission before approaching the bench or a witness. When he conducts trials, Judge Weathers says briefs are "always welcome but not required." This jurist usually does not impose time limitations on attorneys' courtroom presentations. However, this might change, depending on his future department assignments.

Judge Weathers said the attorneys currently appearing before him are highly competent professionals.

**PRECKEL, Allan John**

JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Appointed [succeeding Judge Zalman J. Scherer, deceased] by Governor Deukmejian Sept. 19, 1990 (oath Sept. 21, 1990), elected in 1992 (unopposed), and reelected in 1998.

**Other Judicial Office:** Judge, Municipal Court, San Diego Judicial District, San Diego County, March 8, 1989 (date of oath) to Sept. 21, 1990, appointed [succeeding Judge Raymond Edwards Jr., elevated] by Governor Deukmejian March 6, 1989.

**Past Employment:** Deputy District Attorney, San Diego County, Jan. 7, 1972 to March 7, 1989.

**Memberships/Awards:** Member: Calif. Judges Assn., 1989—; and San Diego County Judges Assn., 1989—. Former member: Calif. District Attorneys Assn., 1975-89; Deputy District Attorneys Assn. of San Diego, 1972-89; and San Diego County Bar Assn., 1972-89.

**Education:** J.D. (June 1971), Univ. of Chicago Law School, Chicago, Illinois; B.S. (June 1968, cum laude, Economics), Univ. of Santa Clara [now Santa Clara Univ.], Santa Clara, Calif.; Graduate: St. Augustine High School, San Diego (1964), and St. John of the Cross, Lemon Grove (1960), Calif.

**Born:** Nov. 12, 1946; Grand Forks, North Dakota; Married. Two children.

**Interests:** Enjoys his family, and assisting with his daughters' equestrian competitions.

**Admission:** Admitted to Calif. Bar Jan. 5, 1972; and to U.S. Dist. Court, Southern Dist. of Calif., in Jan. 1972.

**Political Affiliation/Religion:** Republican; Catholic

**Office Address:** East County Regional Center, Dept. 12<br>250 East Main<br>El Cajon, CA 92020

**Office Phone:** (619) 441-4627 (courtroom) or (619) 531-3434 (general number)

*ATTORNEYS' COMMENTS*

**Temperament/Demeanor**

Several members of the bar said they are pleased with Judge Preckel's judicial demeanor. "I've had good experiences with him." "Good decorum." "He's easygoing. Easy to approach. I look forward to appearing before him." However, others shared less favorable opinions, saying he is "too formal and unfriendly," "He can be a bit too harsh at times," "He's not very personable and he isn't very popular among attorneys." Two lawyers said, "He can be a bit feisty," and "He's too aggressive at times." Those particularly displeased with this jurist said, "He's peevish, short-tempered," and "I don't think his attitude is very pleasant."

**Intelligence/Knowledge**

Attorneys rated Judge Preckel's legal knowledge as "excellent." One attorney said he is "extremely knowledgeable." Others said, "[He has a] strong knowledge of the law," and his legal knowledge is "good. Above average," "[He has] pretty good knowledge of the law. A real journeyman," "[He has] satisfactory [knowledge]," and "He'll take the time to review the law."

**On Motions**

Attorneys who regularly argue before Judge Preckel praised his handling of the motion calendar. They said, "He's very well prepared at all times," "He goes over the briefs," "He has seemed well prepared when I've been in front of him," and "He's not afraid to do what's right, even when it means granting a suppression motion." Two others remarked, "He's well prepared in general," and "[He exhibits] satisfactory preparation for motion hearings."

**On Trial**

Judge Preckel's trial management skills garnered mixed opinions. Those who approve of them said, "He maintains appropriate control of his courtroom," "[He has] good control of his courtroom," and "He's firm, but won't try to demean the attorneys." One attorney less pleased with this jurist's style on the bench said, "If you try to take advantage of him, he'll just take firmer control of his courtroom." Lawyers also said Judge Preckel's courtroom has a "tense, formal atmosphere," while another (who generally praised many of Judge Preckel's skills) said that during trials, "He's tough. He won't hesitate to come down on attorneys when it's necessary."

**Continuances**

There was a split of opinion regarding Judge Preckel's willingness to grant continuances when good cause has been shown. Attorneys said, "[You're] less likely to get one from him," "He's a little tougher on granting these," "[It can be] very difficult to get one from him," and "He's maybe a little tougher [about granting these.]" However, two lawyers said they rarely worry about getting a continuance from Judge Preckel. They said, "He's reasonable about granting these," and if you "show good cause, he'll grant one." Another attorney said lawyers have an "average" chance of obtaining a continuance from Judge Preckel.

**Settlement**

Attorneys had mixed opinions on Judge Preckel's settlement skills. One group of interviewees said, "He'll jump in quickly when needed, but won't pressure the attorneys," "Judge Preckel is very quick to get involved," "He's very judicially assertive," and "He takes the initiative and gets involved [to help settle matters or solve problems]." Attorneys unconvinced that this jurist tries hard to settle or negotiate important matters said, "He'll get involved, but I haven't seen him do that much," "He's not one to jump in the middle of things to resolve matters," "He's not proactive," and "He'll get involved when matters need to be resolved, but you'll have to ask him to do so."

**Proclivities**

Many interviewees said Judge Preckel often sides with the prosecution on contested matters. They said, "He's likely to favor the prosecution," "He leans somewhat toward the prosecution," "He leans heavily toward the prosecution," and "He's a little more pro-prosecution, but probably no more than the other San Diego criminal judges." Two lawyers differed with those above and said this jurist is "extremely fair" and "evenhanded." One lawyer volunteered his opinion on Judge Preckel's fairness and his approach to sentencing. He said, "He's more than fair, but he'll really [pound] you on sentencing."

**Summary**

One interviewee said he thinks Judge Preckel needs to "treat lawyers with more respect," while another disagreed and said, "He's respectful to attorneys appearing before him." In general, members of the bar seem to think this judge is effective, even if he does not have the warmest courtroom personality. As two lawyers put it, "He's very professional," and "He's an all-around excellent judge, but not a 'touchy-feely' kind of guy."

**KNOEPP, Terry Jay**

RETIRED JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Appointed [succeeding Judge Napoleon A. Jones Jr., appointed to federal court] March 10, 1995 (oath same day), and elected in subsequent election.

**Other Judicial Office:** Judge, Municipal Court, San Diego Judicial District, San Diego County. Appointed [succeeding Judge Jesus Rodriguez, elevated] by Governor Deukmejian March 7, 1989 (oath March 8, 1989), and elected June 7, 1994 (opposed) for term commencing Jan. 3, 1995.

**Past Employment:** Private law practice: San Diego, Calif., 1978-89 (Of Counsel: Worley, Schwartz, Garfield & Rice (1988-89), and Sullivan, Hill, Lewin & Markham (1986-88); and partner, Smith, Bollman & Knoepp, 1978-86). Candidate for Calif. State Assembly, 1978. U.S. Attorney, U.S. Dept. of Justice, Southern Dist. of Calif., 1975-78. Deputy District Attorney, San Diego County, 1966-75 (Chief, Appellate Research and Training Division, 1971-75). Deputy City Attorney, San Diego, 1965.

**Memberships/Awards:** Member: Calif. Judges Assn., 1989—; and San Diego County Bar Assn., 1965—.

**Teaching/Lectures/Panelist:** Adjunct Professor of Law: Univ. of San Diego Law School, 1980-81; and Western State Univ. School of Law, San Diego, 1978-79.

**Education:** J.D. (1963), Univ. of Calif., Boalt Hall School of Law, Berkeley, Calif.; B.A. (1960, History and Economics), Univ. of Calif., Berkeley, Calif.

**Born:** Jan. 31, 1938; Pittsburgh, Pennsylvania, and grew up in La Jolla, Calif.

**Interests:** Enjoys collecting and driving vintage cars.

**Admission:** Admitted to Calif. Bar Jan. 5, 1965.

**Political Affiliation/Religion:** Republican

**WEBER, Joan Patricia**

JUDGE, SUPERIOR COURT, San Diego County

**Appointment/Election:** Appointed [succeeding Judge Michael I. Greer, retired] by Governor Wilson Jan. 26, 1994, and elected June 7, 1994 (opposed).

**Other Judicial Office:** Judge, Municipal Court, San Diego Judicial District, San Diego County, appointed [succeeding Judge Robert J. Stahl Jr., retired] by Governor Deukmejian June 18, 1990 (oath June 19, 1990).

**Past Employment:** Assistant U.S. Attorney, U.S. Dept. of Justice, San Diego, Calif., 1983-90. Private law practice, Phoenix, Arizona, 1981-83 (associate, Meyer, Hendricks & Victor). Law Clerk for Ninth U.S. Circuit Court of Appeals Judge J. Clifford Wallace, 1980-81.

**Memberships/Awards:** Member: Calif. Judges Assn., 1990—; American Bar Assn; San Diego County Bar Assn., 1980—; and Lawyers Club of San Diego, 1980—; Enright Inn of Court, 1991—.

**Education:** J.D. (1980), Univ. of Arizona, Tucson, Arizona; B.A. (1977), Ohio State Univ., Columbus, Ohio.

**Born:** March 26, 1955; Cincinnati, Ohio; Married (attorney). Two children.

**Interests:** Enjoys singing, swimming, jogging, and playing tennis.

**Admission:** Admitted to Calif. Bar Jan. 13, 1981, and to Arizona Bar in Nov. 1981.

**Political Affiliation/Religion:** Democrat

**Office Address:** County Courthouse<br>P.O. Box 122724<br>San Diego, CA 92112

**Office Phone:** (619) 531-3434

# JUDGE HOWARD H. SHORE

## SAN DIEGO COUNTY SUPERIOR COURT

## PROFILE

Howard H. Shore
Superior Court Judge
San Diego

**Career highlights:** Elevated by unification to San Diego Superior Court, 1998; appointed by Gov. George Deukmejian to San Diego Municipal Court, 1990; deputy district attorney, 1974-90

**Law school:** University of San Diego School of Law, 1972

**Age:** 57

By Claude Walbert
Daily Journal Staff Writer

SAN DIEGO — Superior Court Judge Howard H. Shore was somber as he read the documents that a conservator just delivered to his chambers. The conservator's charge had a "medical emergency."

Shore knew what that meant. The conservator needed court permission to stop life support for a person with multiple critical diseases.

Physicians had concluded that there was no hope of resuscitation, Shore said as he read the documents.

"In other words, they're asking me to let them end the life," Shore said.

Shore sat silently for a moment, then signed the documents.

Behind him on the wall hung quotations from the Talmud, the commentary on Jewish law, a gift from his wife, Esther Shore, after he became a judge. The quotations list the qualities that a judge should possess: wisdom, understanding and strength of character.

Shore said he often refreshes his memory of the Talmudic principles, and to him, strength of character "is the cornerstone of being a judge."

The judge needs that strength, he said, to carry out his duties. He spends half his day handling emotionally draining psychiatric and conservatorship cases.



He recalled placing a man under the protection of a conservator because the man was convinced that, since the events of Sept. 11, 2001, he had been designated to hunt down and kill terrorists.

But sometimes a person comes into the court whose vitality, despite overwhelming problems, gives everyone a spiritual lift, Shore said.

Such was Lillian Rose, 90, who was confined to a wheelchair because of declining physical and mental powers.

She was wheeled into his courtroom on a morning when it was crowded with lawyers and patients whose cases were on the calendar. When she saw Shore, she said, "You're so high up there, and you look so handsome in that black robe."

That brought smiles to everyone's face, Shore said.

Shore eventually put her under the care of a conservator because she increasingly was unable to care for herself. But he told her he hoped that, when he reached 90, he would have her spirit and cheerfulness.

Deputy County Counsel Len Pollard, who represents the public conservator and appears in Shore's courtroom four times a week, said such empathy is typical of Shore.

Pollard recalled a similar case, in which a 76-year-old patient was unable to get by without assistance. But she had dressed with meticulous care for the court hearing, Pollard said, and Shore complimented her on her appearance and how well she took care of herself. Even so, Shore was required by the law to place her under a conservatorship, Pollard said.

"That's the kind of judge you want in there — sympathetic but following the law," Pollard said.

Shore is demanding of himself and makes carefully reasoned decisions, Pollard said.

"He doesn't get reversed much," Pollard observed.

Shore, who has taught advanced evidence courses for 23 years at the University of San Diego's law school, also likes counsel to present evidence according to the Evidence Code, said Pollard, who is responsible for preparing witnesses to testify.

Sometimes when the county's medical witnesses ramble, Shore reminds Pollard that "it's good for the evidence to be focused."

The mental health cases, he said, can be both a challenge and an opportunity to boost the ill person's sense of self-worth. Most of the people he sees on that calendar have done nothing wrong, he said, but they have a mental illness.

"It's a very sad calendar," Shore said.

Shore also determines whether criminal defendants who appear before him during his afternoon calendar are competent to stand trial.

He recalled one defendant who

claimed to be a white racist who hated blacks. The man was black. Shore sent him to Patton State Hospital.

What would be the legal result, Shore wondered, if that man went to trial and refused to accept blacks on his jury and they were systematically excluded?

"That kind of case would challenge the outer limits of the law," Shore said.

And it would be the kind of case that Shore delights in handling himself. He likes exploring the law, and he expects to learn each time he takes the bench, he said.

That eagerness to broaden his intellectual world was clear by the time Shore was a young man, but his parents' embrace of new ways may have opened his heart to learning while he was still a boy.

Shore, the son of Russian and Lithuanian immigrants, was born Sept. 29, 1945, in Boston and grew up in nearby Winthrop, Mass. His parents spoke Yiddish, but Shore learned little of the language.

"I could have learned it fluently, and I wish I had, because it's a very rich, colorful language," Shore said.

In high school, Shore's love of music led him to play in the marching and dance bands, and he still plays the saxophone. He also ran track, and running became a lifelong passion, too.

After receiving his undergraduate degree in mathematics from Worcester Polytechnic Institute in 1969, Shore decided law suited him better than math. He had a friend in San Diego who made the city seem like a great place to live, Shore said, and he enrolled at the University of San Diego School of Law. Just as he was starting law school, he received his notice to report for the draft.

At the military physical, doctors told him he had large quantities of albumin in his urine. They said it was a serious condition, he would never be accepted in the military, and he should see a private physician immediately.

"They scared the heck out of me," Shore said.

But Shore's private doctor could find nothing wrong. Finally, the doctor asked whether he did a lot of running. Shore said he ran marathons, and the doctor told him elevated albumin excretion was common in distance runners.

Shore reported his doctor's findings to the military physician, but the physician refused to approve him for duty. So Shore returned to law school, graduating in 1972.

The year he graduated, Shore published a law review article, "Marine Archeology and International Law." His fascination with international law led him to enroll at the London School of Economics and Political Science, where he earned his master of laws degree. He also earned a certificate in international law from the Hague Academy of International Law.

After his return to San Diego, however, Shore wasn't sure he wanted to work in international law. A clerkship at the district attorney's office convinced him that prosecution was what he liked best, so after his admission to the State Bar in 1964, he became a county prosecutor, his first and only job as a lawyer.

He prosecuted cases ranging from rapes and child molestation to welfare fraud and murder during a 16-year career in the district attorney's office. One of his last cases as a prosecutor was also the one that gained the most notice.

He and Richard J. Neely, the assistant district attorney, prosecuted Joselito Cinco for the murder of two San Diego policemen. Cinco was sentenced to death in 1988 and later hanged himself in prison.

Gov. George Deukmejian appointed Shore to the San Diego Municipal Court in 1990. He was elevated to the Superior Court in 1998 when the courts were unified.

Besides his mental-health and conservatorship calendars, Shore has managed a busy law-and-motion calendar for six years. Many of the county's most notorious cases pass through his courtroom. A case that put Shore in the national spotlight involved a clash between advocates of California's medical-marijuana law and prosecutors. *People v. Konow*, SCD152825 (San Diego Super. Ct., filed May 17, 2000).

Mudd dismissed the complaint Sept. 5, 2000, ruling that the statute was so vague that the defendants had been denied due process and equal protection because they couldn't know what was proscribed under the law. He wondered aloud why the case even got to a criminal court.

Prosecutors asked Shore to reinstate the charges. He did, saying that the defendants had failed to establish affirmative defenses, and he ordered Mudd to determine whether enough evidence existed to bind over the defendants without further consideration of their defenses. When the case returned to Mudd, he said he no longer had authority to consider the defendants' motion to dismiss the charges, and he said the evidence was sufficient to go to trial.

The defendants made a motion to set aside the charges under Penal Code Section 995, saying that they had been denied their right to ask for dismissal of the charges. Judge Michael D. Wellington granted the motion, reversing Shore's ruling.

The case went to the 4th District Court of Appeal, which upheld Shore. *People v. Konow*, 2002 DJDAR 12746 (Cal. App. 4th Dist. Nov. 6, 2002). Now the case is headed for the state Supreme Court.

To Shore, as he watches the case play out, that's just the way the law works. He doesn't view judicial conflict as personal attacks.

"[Mudd] is a wonderful judge, and I have the greatest respect for him," Shore said.

The same is true of Wellington, Shore said.

He expects the U.S. Supreme Court to make the final decision in the case.

Deputy District Attorney D. Michael Ebert, who appears frequently on Shore's law-and-motion calendar, said Shore is a "student of the law."

"He's an expert in evidence law," Ebert said.

Besides teaching at the University of San Diego, Ebert said, Shore lectures for the district attorney and for California Judicial College.

"He makes a very precise, accurate ruling," Ebert said. "I listen to [his rulings] as an education factor."

Lawyers in the courtroom and at the appellate level can see exactly how Shore arrived at his ruling, Ebert said. He described Shore as one of the three best judges at deciding difficult points of the law. Ebert explained that his opinion was based on his more than 30 years as a prosecutor, 20 of those years in appellate work.

Shore, who has cut back on his long-distance running but still enjoys ocean swimming, likes to relax from the legal world with music — classical, jazz, rock, whatever. And his children are all very musical, he said, so it's a family affair.

In fact, his saxophone playing gave him a family. He had met a woman from Israel, a singer, who needed musicians. Then the woman's sister visited and met Shore.

She was a Yemenite who immigrated to Israel, served in the Israeli army as a paratrooper, and became an artist. Now she and Shore have three children.

With Shore and his wife, family comes first, he said. And religion and music and tradition are always shared. When Shore tells his children "good night," he said, he says it in Yiddish, just as his parents did for him.

*This profile originally appeared in the Los Angeles Daily Journal on March 28, 2003.*

*Here are some of Judge Shore's recent cases and the lawyers involved:*

- *People v. Ghio*, SCD169992
  For the prosecution: Timothy R. Walsh, district attorney's office
  For the defense: Michael Begovich, public defender's office

- *People v. Young*, SCD167945
  For the prosecution: Mary Ellen Barrett, district attorney's office
  For the defense: Jonathan B. Jordan, San Diego

- *People v. Stanley*, CD170041
  For the prosecution: Dennis M. Panish, district attorney's office
  For the defense: Frank M. Puglia, San Diego

- *People v. Cage*, SCD167856
  For the prosecution: Tia Lisa Quick, district attorney's office
  For the defense: Ronald J. Brahms, San Diego

- *People v. Golden*, SCD164517
  For the prosecution: Garry Haehnle, district attorney's office
  For the defense: William F. Nimmo, San Diego

# BIOGRAPHY

## CURRENT ASSIGNMENT

Court: San Diego County Superior Court
Title: Judge
Dates: 1998 to present
Appointed by: Unification
Date: December 1, 1998

## PREVIOUS JUDICIAL APPOINTMENTS

Court: San Diego Municipal Court
Title: Judge
Dates: 1990-1998
Appointed by: Gov. Deukmejian
Date: January 24, 1990

## EDUCATION

Law School: London School of Economics & Political Science
Location: London, UK
Date: 1973
Degree: LL.M.

Law School: University of San Diego School of Law
Location: San Diego, CA
Date: 1972
Degree: J.D.
Honors: Law Review

Coll./Univ: Worcester Polytechnic Institute
Location: Worcester, MA
Date: 1969
Degree: B.S. Mathematics

High School: Winthrop HS
Location: Winthrop, MA

## PRACTICE HISTORY

San Diego County District Attorney - Deputy District Attorney
Location: San Diego, CA
From: 1974-1990

## BARS AND RELATED PROFESSIONAL ACTIVITIES

1990-present: California Judges Association
1990-present: San Diego County Judges Association
1988-present: American Inns of Court, Welsh Chapter, Master
1980-present: University of San Diego, Adjunct Professor of Law
1974: Admitted to California State Bar and to USDC - Southern District of California; and to US Supreme Court, 1977

## PERSONAL HISTORY

Birthdate: September 29, 1945
Birthplace: Boston, MA
Sex: M
Political Affiliation: Independent
Recreation: Reading, writing, music (plays saxophone), running, swimming, travel

## PUBLICATIONS

The Death Penalty, Dicta, 7/1989 edition, pp. 7-12
Polygraph Ev., Los Angeles Daily Journal, p. 4, January 11, 1984
1972: Marine Archeology and International Law, 9 San Diego Law Review 668

## OTHER

1996-present: Faculty, California Judicial College
1992: CJSP, Faculty, Criminal Law and Evidence
Eyewitness I.D., San Diego

# JUDGE FREDERICK MAGUIRE

## SUPERIOR COURT SAN DIEGO COUNTY, STATE OF CALIFORNIA

## PROFILE

*Elected to San Diego Superior Court, 2000; deputy district attorney, San Diego County, 1989-2001; assistant prosecutor, Monmouth County, N.J., 1984-88*

By Claude Walbert
Daily Journal Staff Writer

SAN DIEGO - Superior Court Judge Frederick Maguire had collected some odd cases during his 16 years as a county prosecutor, but none was more comic than the upside-down Santa Claus.

It all began not long after Christmas 1992. Margie and Lawrence Beavers were awakened in their Oceanside home by footsteps on the roof.

They knew it wasn't Santa's reindeer when they heard a thud and a scream.

They tracked the noise to the living room, where they found the soot-blackened head and shoulders of a man dangling upside down inside their cold fireplace. He said he was Santa Claus. "Where's my gifts?" a skeptical Margie Beavers responded.

Maguire was the deputy district attorney assigned to prosecute the hapless Santa, otherwise known as Frank Morales.

Just before the trial began, Morales fired his lawyer. He put on his own defense in the two-day trial.

"He cross-examines Margie Beavers," Maguire said. "He says, 'Wasn't the room with the fireplace on the left side of the house as you walked out to the front door?'

"'No, it was on the right side,' she said."

Morales insisted it was on the left. Beavers said she had lived in the house 33 years and knew which side it was on. "So Frank, right in front of the jury," Maguire said in his rich New Jersey accent, "twists himself around and leans



over backwards until his head is upside down, and says, 'You're right, I was looking at it from a different angle.'" The jury needed only 90 minutes to convict Morales of burglary and resisting arrest. After a mental assessment, the judge presiding over the case placed him on probation.

When Maguire became a judge four years ago, it became his turn to balance justice and mercy.

"I follow the court rules," Maguire said. "Folks who accept guilt and are remorseful, we have to give them a sentence adjustment."

Maguire has seen his share of headline-grabbing cases since he took the bench in 2001. There was the Granite Man, Roger Mohlman, who promised to install granite countertops and collected more than $72,000 from 23 people without completing any work.

His broken promises brought probing television attention and multiple counts of fraud. He pleaded guilty to felony contracting without a license and came to court with $72,000 in restitution checks for his victims. Maguire accepted the stipulated plea and gave him probation and community service. People v. Mohlman, SCN138004 (San Diego Super. Ct., filed Dec. 11, 2001). Then there was the nationally famous psychiatrist, Dr. Harold Bloomfield, the author of 19 books, who kept chilled lemonade, laced with Ecstasy, in his refrigerator at home to serve female guests.

Bloomfield offered one woman an "energy transfer" massage and gave her a green drink. The drink left her unable to resist as he undressed her and rubbed himself against her body.

Another woman said Bloomfield gave her a bitter-tasting lemonade and then took off her shirt. When he was distracted by the ringing of his telephone, the woman fled, drink in hand. Analysis of the lemonade indicated the presence of methamphetamines.

"You couldn't make up some of this stuff," Maguire said. "We live reality TV."

The doctor, who had no criminal history, admitted guilt early on, cooperated with police, and voluntarily entered drug rehabilitation. Maguire banned him from practicing medicine and sentenced him to probation and community service. People v. Bloomfield, CN138596 (San Diego Super. Ct., filed Dec. 21, 2001).

Becoming a judge wasn't something Maguire planned. He was a career prosecutor and happy in his job. "If you would have asked me 20 years ago when I got out of law school what were the chances of me ever becoming a judge, I'd have laughed," said Maguire, 46.

As the years passed, the prospect of becoming a judge seemed less foreign, but he didn't apply for an appointment because he thought his comparative youth would eliminate him from consideration.

After Gray Davis, a Democrat, became governor, Maguire figured his Republican political affiliation eliminated any chance for an appointment. "I had no political juice," Maguire said. "I still don't."

© Daily Journal Corporation

But he had begun to feel it was time for a change.

"I remember the last case I tried and thinking, 'It's time to move along,'" he said. "I didn't feel that there was a lot of zip there. I was still giving it 100 percent, but ...you should have a spirit of determination about what you're doing. I'd been doing this 15 years."

It was time to move on, he said. So, when two judges he knew from his days as a prosecutor in the Vista courts told him that he should run for an upcoming vacancy, he asked his wife, Jill Maguire, what she thought. They were in the middle of remodeling their home, and she was pregnant with their fourth child, so he expected her to say it wasn't the right time. Instead, she encouraged him to run for the post.

"I was totally unprepared," Maguire said.

He had never been interested in politics, and he knew just enough about that world to understand that it wasn't for him.

"It takes a special breed of person," Maguire said, "and it's something that's not in my constitution."

Yet, in the March 2000 primary in a race against two opponents, Maguire avoided a runoff by capturing 63 percent of the votes.

"I definitely thought I'd be in a runoff," he said.

Maguire said he has talked to people familiar with the political world, and their opinions about why he was elected so easily are "all over the place." "How it happened, I don't know," he said.

He was sworn into office Jan. 8, 2001. Since then, he has garnered a reputation as a patient and respectful judge. Deputy District Attorney Catherine A. Stephenson, a veteran prosecutor, recalled how very patient Maguire was with a defendant who represented himself on a minor charge but had counsel for a more serious felony charge, which she prosecuted.

"He was extremely fair to both sides," Stephenson said.

Maguire, as a former prosecutor, came to the bench with an edge over some new judges in criminal matters and was "very comfortable in that arena," Stephenson added.

Amy E. West of Rhoads, Seikaly & West in San Diego represented the defendant in that case. It was her first felony trial, pitting her against a prosecutor with two decades of experience. "He treated both sides equally," West said of Maguire. "He never embarrassed me. He was really great about explaining things. You cannot beat him."

West also said that, when the defendant was in his pro per role, Maguire explained where the man could find the code sections he needed for motions and told him to return to court on those matters when he had read the code.

"He never told the defendant that he was wasting the court's time, and I've seen that happen with other judges," West said. "I was really impressed with the respect he showed the pro per." Matthew P. Greco, a deputy district attorney, knew Maguire when he was in the office and has appeared in the judge's courtroom.

Greco said a hallmark of Maguire has always been a dry sense of humor, and he has taken that to the bench. "He finds humor even in a criminal court, but it's never inappropriate," Greco said. "It's not at the expense of the parties or to belittle anyone, and he's not playing to an audience."

Maguire is accessible to both sides in the courtroom, and he has a fundamental sense of fairness, Greco said. Charles N. Guthrie, a San Diego defense lawyer, had his introduction to Maguire years ago, when Maguire was still a prosecutor. Guthrie had moved to suppress evidence against his client. "I thought I knew everything about search and seizure," said Guthrie, who had been a San Diego police officer and had written a book on the subject. "Then Fred Maguire got up, and he went on about 10 minutes," Guthrie said. "I said, 'Whoa, I've met my match.'"

Since Maguire became a judge, Guthrie has appeared before him in a complex jury trial.

"He really knows the law," Guthrie said. "The nice thing is he was a prosecutor so long that nothing is shocking to him."

Matthew A. Mohun, an alternate public defender, said Maguire is unusually accommodating to jurors and sometimes displays a disarming sense of humor.

"He takes each case very seriously," Mohun said. "It's obvious that he likes and enjoys input from the attorneys."

Maguire's early years molded the way he relates to others. Born Sept. 16, 1958, in Elizabeth, N.J., Maguire grew up in the beach city of Belmar. He had seven brothers and two sisters, but big, close families were the rule in Belmar. Seven of Maguire's siblings still live in Belmar or nearby.

His businessman father, Thomas A. Maguire, was descended from Irish immigrants. Marie Maguire, his mother, was Italian.

"Let's put it this way," Maguire said. "He was real Irish; she was real Italian."

Both of his parents had it rough growing up, he said, and, with 10 young children, the couple didn't have much money to spend.

Maguire remembers only one trip with the entire family while he was growing up. That was in 1972, when his oldest brother was to get his diploma from Georgetown University.

He would be the first college graduate in the family, so Maguire's family and assorted relatives assembled a convoy of three cars for the trip to Washington, D.C.

Before they left, they tried to find the key to the front door. But the doors to the three-story clapboard house never had been locked during the 10 years the Maguires had lived there. If there was a key, no one knew where it was.

Maguire remembers his mother turning to one of his older brothers, who had been sneaking into the house after curfew by climbing onto a low roof and entering the house through a rear window.

"You've been coming in the back window for enough years," Marie Maguire chided the youth, much to his surprise. "Now just reverse it!" So while the family waited outside, the young man locked all the doors in the house, then climbed out the rear window.

Although Maguire's family didn't have much money, growing up in Belmar was pleasant.

Maguire remembers the days when the schools would be closed because of snow. The streets, with no cars circulating, would be turned into football fields. And there were after-school pickup games, baseball or basketball, depending on the season.

As Maguire grew older, he earned pocket money by mowing lawns or painting. He graduated from Saint Rose High School in 1976, and from there he took a trip across the country to enroll at the newly opened California State



© Daily Journal Corporation

University, San Bernardino.

Three years earlier, he and half of his family had driven to California to visit an aunt, and that trip had convinced Maguire that someday he wanted to live in California.

After he graduated from the state university in 1980 with a degree in philosophy, Maguire returned to the East Coast to earn money for law school. He worked for a company that furnished modular panels for offices. His job was to unload the panels from trucks, haul them into massive office buildings and install them.

The job paid well, but the work wasn't consistent, so Maguire spent only a year working for the company before enrolling at Seton Hall University School of Law.

He received his law degree in 1984 and went to work as an assistant prosecutor for the Monmouth County prosecutor's office in Freehold, N.J.

Maguire met his future wife, a court reporter, shortly after becoming a prosecutor.

But California called, and, after four years as a Monmouth County prosecutor, the family moved to San Diego. He was admitted to the State Bar in June 1989 and accepted a job offer from the district attorney's office.

Maguire moved from the Municipal Court section to Vista, then to cross-designation as an assistant U.S. attorney, handling civil forfeitures and tracing laundered money.

Then he was assigned to one of the district attorney's busiest units, called Jurisdictions United for Drug and Gang Enforcement. That's where he worked when he campaigned for the judicial seat and won it.

Maguire said he hasn't tried to chart his judicial future.

"I was never one who said I want to achieve this goal - you know, like I have to kick down walls to achieve this goal," he said. "My feeling has always been to have options open.

"My plan is to stay and do this. I can't think of any better job, I really can't. Think of that: I'm a judge in San Diego. Go around the country, talk to lawyers. They'll say, 'That's a pretty good thing.'"

Here are some of Judge Maguire's recent cases and the lawyers involved:

People v. Howard, SCD185156 - drug possession

For the prosecution: John A. Ristad, district attorney's office

For the defense: Courtney K. Cutter, public defender's office

People v. Harrison, SCD180671 - robbery

For the prosecution: James D. Koerber, district attorney's office

For the defense: Kenneth N. Hamilton, La Mesa

People v. Allen, SCD184638 - carjacking

For the prosecution: Dino J. Paraskevopoulos, district attorney's office

For the defense: Charles N. Guthrie, San Diego

People v. Govedarov, SCD177865 - rape

For the prosecution: Catherine A. Stephenson, district attorney's office

For the defense: Amy E. West, Rhoads, Seikaly & West, San Diego

People v. Reynada, SCD187432 - drug sales

For the prosecution: James A. Fontaine, district attorney's office

For the defense: Douglas L. Miller, public defender's office

*This profile originally appeared in the Los Angeles Daily Journal on April 27, 2005*

# BIOGRAPHY

## CURRENT ASSIGNMENT

Court: Superior Court San Diego County, State of California
Title: Judge
Dates: 2001 to Present
Status: Elected
Appointed by: Election

## EDUCATION

Law School: Seton Hall University School of Law
Date: 1984
Degree: J.D.

College: California State University
Location: San Bernardino, CA
Date: 1980
Degree: B.A. Philosophy

High School: Saint Rose High School
Date: 1976

## PERSONAL HISTORY

Sex: M

## MILITARY

Dates: 1967-1969
Branch: U.S. Army
Rank: O1 - Second Lieutenant (2LT)
Honors: Recipient, National Defense Service Medal



© Daily Journal Corporation

# DISTRICT JUDGE THOMAS J. WHELAN

# US DISTRICT COURT - SOUTHERN

## PROFILE

When the Republican-controlled Senate Judiciary Committee spurned several of President Clinton's choices to fill a vacancy in the Southern District of California, Sen. Diane Feinstein made them an offer they could not refuse:

Thomas J. Whelan, 59, presiding judge of the Superior Court of San Diego County.

First off, Whelan is one of the most respected and well-liked members of the legal community. Secondly, his credentials were a cinch to impress committee members from both sides of the aisle, from Ted Kennedy to Strom Thurmond.

Whelan is a lifelong Democrat but was appointed to the state bench by a conservative Republican governor. He presided over a number of highly publicized criminal trials — most notably the double-homicide committed by Betty Broderick on her ex-husband and his new wife — in which he demonstrated a courtroom savvy that enabled him to control both the lawyers and the media. He was a prosecutor for 21 years with an impressive list of convictions, yet is highly regarded by the defense bar.

Last June, Feinstein chose Whelan from among 12 candidates, describing him as "an intelligent, no-nonsense judge who has the ability to get to the heart of an issue."

His appearance before the Judiciary Committee was brief; only a handful of senators showed up.

"I was told that was a good sign," Whelan said. "When there is a strong turnout, it means a lot of the members have questions and the nomination is in trouble."

Whelan said he was impressed with the thoroughness of the FBI background check. "They actually got in touch with a guy I worked with 42 years ago as box boys in a food market. He's now the police chief of Redondo Beach. Talk about the luck of the Irish."



Whelan was approved by the committee without opposition and was confirmed by a voice vote in the Senate. He took the bench in November, filling a vacancy that existed for more than three years. He replaced John S. Rhoades, who took senior status.

"I had to learn the new job in a hurry," said Whelan who presided over four trials in his first four weeks on the job. "Our district has an average of over 1,000 pending cases per judge. That's the highest in the United States."

Whelan thrives on trial work.

"That's the reason I became a lawyer in the first place," he said. "I was working in the contracts and planning department at General Dynamics [in 1969], making $1,200 a month, and I took a $400 pay cut to become a deputy district attorney."

Whelan got all the trial work he could handle. He was a lead prosecutor for the San Diego district attorney's office for two decades, assigned to many highly publicized cases. They include the 1975 conviction of Daniel Altstadt, an 18-year-old Eagle Scout, for murdering his mother, father and sister with a hatchet, as well as the 1989 conviction of David Weeding for attempted rape and murder.

Criminal defense lawyers said Whelan did not have the typical prosecutor's mind-set.

"He was not aggressive. He had a balanced view of the law that made him stand out from other prosecutors," said veteran criminal defense lawyer Alex Landon who has known Whelan for 25 years.

Edwin L. Miller, who was San Diego district attorney from 1971 to 1995, described Whelan as even-tempered and unflappable.

"I gave him a number of tasks, including running the office in El Cajon. No matter what he was asked to do, he said, 'No problem.' That 'can do' attitude made him a standout lawyer, and a nice guy to boot," Miller said.

Whelan was appointed to the San Diego Superior Court in 1990, by Gov. George Deukmejian, who was partial to prosecutors, even Democrats.

"I remember sitting down with the governor's judicial appointments secretary for an interview, and he said, 'Would you consider reregistering?' And I said, 'Not if that's what I have to do to get this job.' Once that was settled, we had a good discussion."

Six months after donning his robes, Whelan was handed the double homicide trial of Betty Broderick. She was the San Diego matron divorced by her prominent attorney-husband, Daniel, so he could marry a younger woman. She exacted revenge by shooting the newlyweds to death in their home.

The first trial, which drew intense media coverage, ended in a mistrial:

the jury could not agree if Broderick was guilty of murder or manslaughter.

The second trial drew equally intense media coverage. Whelan recalled, with a pool TV camera inside and rows of electronic equipment in the corridor outside the courtroom, feeding daily reports to the networks and television stations around the country.

"People called it a media circus and maybe it was," Whelan said, "but I thought the reporters and technicians behaved well, and the cameras were not intrusive. My problems were with the lawyers, not the reporters."

Still, Whelan drew flak from the media during trial when at one point he ordered the cameras shut down and the reporters ejected.

"I took that action because the lawyers were trying to plead their case to the media," Whelan explained. "They were playing to the cameras and that was a distraction. Editorial writers said I had no right to do it, but my ruling went all the way to the California Supreme Court and was upheld."

Nevertheless, Whelan said, he does not oppose TV coverage of trials.

"I know that many judges got turned off by the O.J. Simpson trial, and with good reason," he said. "But I believe, under the right conditions, there is a place for cameras in the courtroom."

These days, the question is academic. Whelan works in a tightly controlled courthouse where cameras of any kind, as well as tape recorders, are barred. He is one of eight full-time judges assigned to the Southern District of California who, along with seven others on senior status, manage one of the heaviest caseloads in the federal system.

By most standards, Whelan runs an informal, lawyer-friendly courtroom.

"If lawyers step over the line, I'll let them know. But they don't need my permission to approach a witness to show him a document, or if they are more comfortable walking around the well instead of standing at the podium, that's OK with me," he said.

Lawyers who practice in the federal courts say Whelan's style is refreshing.

"He's starting to earn the same measure of respect over here as he did in the Superior Court," said Mario G. Conte Jr., executive director of the Federal Defenders of San Diego Inc. "He is approachable, helpful and imminently fair in his rulings. He's already one of the top judges on the bench."

Whelan said he enjoys the variety of cases he's assigned in the federal system. "Judges in the state system develop specialties, and that seems to work well enough. But here, we get our cases by lottery, so I can be trying a patent case one day, then a trial involving the interstate sale of narcotics or a suit involving the constitutionality of a ballot initiative. It's much more of a challenge."

But the greatest satisfaction of the new job, Whelan said, is the privilege of swearing in new citizens.

"As a state judge, the happiest time was officiating at weddings and adoptions," he said. "And I just did my first naturalization, swearing in a thousand new citizens. It was an occasion of great joy for them and their families. Those are the moments I treasure as a judge."

As a kid growing up in San Diego, the son of an electrician, Whelan said, he had one eye on a legal career.

"I knew I needed a college education and a profession to get ahead, so I decided I was going to be either a lawyer or a dentist," he said. "Dental school proved to be too expensive, so I steered toward law."

Whelan worked his way through high school, college and law school at the University of San Diego, beginning as a box boy and cashier in a local market and eventually becoming a contracts administrator and systems planner at the Convair division of General Dynamics.

After earning his law degree in 1965, Whelan remained at General Dynamics for another four years before joining the San Diego district attorney's office in 1969.

Whelan said he plans to preside full time for at least 10 more years, then continue working with a reduced caseload as a senior judge.

"Thank goodness we have a number of senior judges still active. We'd be swamped without them," Whelan said.

Whelan and his wife, Cathy, have been married for 36 years. They have a son and three daughters. Whelan said his principal diversion is travel; he and his wife make frequent trips to Ireland and motor through the countryside.

"I've racked up so many miles on the Old Sod that they made me the grand marshal of this year's San Diego St. Patrick's Day Parade," Whelan said with a smile.

*This profile originally appeared in the Daily Journal on May 1, 1992, written by B. J. Palermo. It was updated on May 26, 1999 by Dick Goldberg.*

# BIOGRAPHY

## CURRENT ASSIGNMENT

Court: US District Court - Southern
Title: District Judge
Dates: 1998 to present
Appointed by: Pres. Clinton
Date: November 1, 1998

## PREVIOUS JUDICIAL APPOINTMENTS

Court: San Diego Superior Court
District: County Courthouse
Title: Presiding Judge
Dates: 1998-1998
Date: January 1, 1998

Court: San Diego Superior Court
Title: Assistant Presiding Judge
Dates: 1996-1997
Appointed by: Re-election (unopposed)

Court: San Diego Superior Court
Title: Judge
Dates: 1990-1996
Appointed by: Gov. Deukmejian
Date: January 17, 1990

## EDUCATION

Law School: University of San Diego School of Law
Location: San Diego, CA
Date: 1965
Degree: J.D.

Coll./Univ: University of San Diego
Location: San Diego, CA
Date: 1961
Degree: B.A. Business

High School: St. Agustine HS
Location: San Diego, CA

## PRACTICE HISTORY

Deputy District Attorney
Location: San Diego County
From: 1969-1990

## BARS AND RELATED PROFESSIONAL ACTIVITIES

1990-present: California Judges Association
1975-1989: California District Attorneys Association
1969-1989: State Bar of California Pro-Bono: Attorney Discipline: State Bar Court, Member, Review Department, 1988, 1989; Committee on the Courts, 1982-1983; Supervising Referee, Hearing Department, 1979-1987; Mandatory Fee Arbitration Program, Arbitrator, 1979-1987; Disciplinary Board, Member, 1978; Criminal Law and Procedure Committee, Member, 1976-1977
1969-1989: San Diego County Bar Association Pro-Bono: Jury Voir Dire Committee, Member, 1989; State Bar Conference of Delegates, Representative, 1982, 1983, 1987; Criminal Law Section, Vice Chair 1981; Inn of Courts, Faculty, 1977-1978
1969: Admitted to California Bar

## PERSONAL HISTORY

Birthdate: February 21, 1940
Birthplace: St. Paul, MN
Sex: M
Spouse: Catherine Whelan
Religion: Roman Catholic
Political Affiliation: Democrat
Recreation: Sports, sailing

## PUBLICATIONS

1965: San Diego Law Review, Vol. II, 153, Negligence -Stolen Vehicles

## OTHER

1983: California Lawyer, Vol. I, Profiled Prosecutor
1981-1994: Lecturer, CEB programs, "Recent Developments in Criminal Law"

# COMMENTS ON TRIAL COURT PROCEDURES

## PRETRIAL

Do you render tentative rulings in law and motion matters? .......... YES

If yes, do you provide an explanation for your tentative rulings? .......... YES

Are you willing to resolve disputes that arise during depositions over the telephone? .......... YES

Do you prefer to hear motions in limine:
BEFORE trial? .......... YES
AFTER trial? .......... NO

Do you allow modification of the pretrial conference order after the trial has started? .......... YES

What is the most common reason you would bifurcate a case?
**- Prejudice to the parties.**

How do you encourage settlement?
**- Discuss case with counsel for both sides in chambers.**

Under what circumstances would you tend not to grant a request for continuance of:
(A) a discovery deadline
**- No set rule, depends on circumstances of each case.**
(B) a deadline for filing a responsive pleading
**- Good cause not shown.**
(C) a trial date
**- Good cause not shown.**

Under what circumstances have you referred a matter to a special master or referee on your own motion?
**- Have not done this.**

## COURTROOM PROCEDURE

Do you require trial briefs? .......... YES

At oral argument, do you prefer the attorneys to:
- summarize the major points? .......... YES
- respond to your specific questions? .......... YES

Do you require attorneys to use the lectern? .......... NO

What are your object preferences on how an attorney makes an objection?
**- Legal grounds, no speaking objections.**

Do you allow sidebar approaches for objections? .......... NO

Do you allow attorneys for the parties to stipulate to a briefing schedule? .......... YES

Under what circumstances do you examine a witness yourself?
**- Never in a jury trial.**
**- During court trial or motion or hearing per E.C. Sec 402 if both parties don't adequately cover area so I can make an informed decision.**

Under what circumstances do you find it necessary to exercise control over an attorney who is examining a witness?
**- If he or she violates a pre-trial ruling or is not courteous to a witness.**

## TRIAL

Do you conduct the voir dire examination of potential jurors? .......... YES

What kind of questions do you like an attorney to ask during voir dire?
**- Those that go to challenges for cause.**

What procedure do you use for handling challenges?
**- Challenges for cause at sidebar.**

Do you limit the time for an opening statement? .......... NO

What is the most common mistake attorneys make regarding the opening statement?
**- Argue their case.**

During trial, what time of day do you start and finish for the day?
**9:00** a.m. **4:30** p.m.

Do you have specific times during the day when you prefer to take a break? .......... YES

If yes, what are these times?
**10:30** a.m. **3:00** p.m.

Under what circumstances have you used court-appointed experts?
**- Mental health concerns (criminal cases).**

Do you allow jurors to take notes? .......... YES

Do you allow jurors to examine exhibits after they have been introduced? ..........
**- Yes, but rarely.**

Do you allow jurors to examine exhibits during deliberations? .......... YES

As a general rule, do you provide the jury with written jury instructions? .......... YES

In court trials, as opposed to jury trials, do you permit opening statements? .......... YES

What is the most common mistake attorneys make regarding closing statements?
**- Too lengthy and repetitive.**

## GENERALLY

What do you expect attorneys to do to contribute to the efficient running of your courtroom?
**- Talk to each other and bring unresolved issues to my attention before jury is scheduled to return.**

What type of behavior by attorneys is most irritating to you?
**- Interrupting each other.**
**- Speaking objections.**

Under what circumstances, if any, would you impose sanctions on an attorney?
**- Admonish first (unless direct contempt) but if repeats, then sanctions.**

Please comment on any areas of attorney performance you consider important?
**- Case preparation to enable meaningful settlement conference and/or an orderly trial.**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** John Cobb

**(b)** County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

(3950 Mt. Albertine Way, San Diego, CA. 92111. (858) 277-2026)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Plaintiff is Acting Pro Per

**DEFENDANTS** J. Reyes; S. Gustafson; T. Morris; W. McIntyre; D. Rosso; D. King; M. Hudson; M. Aguirre; R. Dungris; S. McKoy; S. Carroll. Does 1-100.

County of Residence of First Listed Defendant San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

2008 JAN 31 AM 11:

CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

BY DEPUTY

'08 CV 0188 JAH WMc

Attorneys (If Known) Plaintiff is Acting pro per.

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC §§ 1983, 1985, 1965(2), 1985(3), 1986

Brief description of cause:
Unlawful detention by police, unlawful issuing of citation, harassment, battery, etc.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE 1-31-2008

SIGNATURE OF ATTORNEY OF RECORD Plaintiff John Cobb → John Cobb is acting in pro per.
(John Cobb)

FOR OFFICE USE ONLY

RECEIPT # IFP AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______