John Cobb – Plaintiff.
3955 Mt. Albertine Way
San Diego, CA 92111
Telephone: (858) 277-2026.

FILED
08 MAY 22 AM 10:58
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: 9 DEPUTY

////

////

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Cobb, Plaintiff,<br>vs.<br>1.) J. Reyes ( ID 606 );<br>2.) S. Gustafson ( ID 601 );<br>3.) Lt. Tom Morris ( ID 691 );<br>4.) William MacIntyre ( ID 617 );<br>5.) Lt. David Rose ( ID 690 );<br>6.) U.C.S.D. Police Chief O. King;<br>Prosecutors:<br>7.) Michael Hudson;<br>8.) Mike Aguirre;<br>9.) Bonnie Dumanis;<br>Public Defenders:<br>10.) Shane McKay;<br>11.) Steven Carroll;<br>12.) Does 1 through 100;<br>Defendants. | **POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS.**<br><br>**[ Case Number: 08-cv-0188-JAH-WMc ].**<br><br>Date: June 23, 2008<br>Time: 2:30 p.m.<br>Department: 11.<br>Judge: Hon. John A. Houston. |

////

////

# I. FACTS

On 2-3-2006, Plaintiff ( John Cobb ) was walking to the library when he was stopped ( unreasonably ) by the two U.C.S.D. police officer defendants Reyes and Gustafson. Plaintiff provided Reyes and Gustafson his true name and address. Plaintiff would not provide Reyes and Gustafson his driver's license. Reyes then unlawfully and unreasonable, committed an assault and battery upon plaintiff, by grabbing a bus pass out of plaintiff's shirt pocket. Upon finding that the buss pass was not a drivers license, Reyes and Gustafson, then, unlawfully and unreasonable, assaulted and battered plaintiff by taking plaintiff to the ground, unlawfully searched plaintiff's backpack, and obtained plaintiff's drivers license. Reyes and Gustafson then recorded unlawfully obtained information from plaintiff's driver's license onto a notice-to-appear and stay-away-order.

These notice-to-appear and stay-away-order were not issued with reasonable suspicion and probable cause, that a crime of PC § 647(d) had occurred.

Following this, falsified police reports were written by Reyes and Gustafson, to justify their unreasonable acts. This is evidenced by the discrepancies in the two officers versions of the same event. There was a subsequent malicious prosecution, to cover-up the unlawfulness of the police, and to attempt to justify the issuing of the citation – to attempt to keep the two U.C.S.D. law enforcement officers protected by qualified immunity. To use the absolute immunity of the prosecutor, to protect the unlawfulness of the two U.C.S.D. police officers. This was done by changing the charge from PC § 647(d), a misdemeanor, to PC § 647 (k) (1), an infraction and enhancement. This was unreasonable, since Plaintiff has no priors upon which to base the PC § 647 (k) (1) enhancement. This situation is more fully describe in plaintiff's <u>Declaration and Analysis</u>, <u>Section V</u>.

Plaintiff has had this covering-up occur to him before, in 1992 ( described in plaintiff's <u>Declaration and Analysis</u>, <u>Section I</u> ), when he was the victim of a battery, and subsequently was unlawfully taken into custody and to County Mental Health, by the U.C.S.D. police. Falsified police reports were made to justify an unlawful arrest. This was done my Officer MacIntyre, who is now a U.C.S.D. investigator, and Sgt. Rose, who is now a U.C.S.D. police lieutenant. A conspiracy between the U.C.S.D. police, the witnesses, and San Diego City Attorney's Office

followed, to cover up this false arrest. The prosecuting attorney committed artifice in the court, and there is even evidence that the Judge was arguably involved in the conspiracy. It is alleged, that these two U.C.S.D. police officers, MacIntyre, and Rose, are the main instigators, along with Chief King, of the U.C.S.D. police department's perpetual covering up of unlawfulness of its police officers, and of a continuing harassment policy directed towards Plaintiff.

Plaintiff was also unlawfully arrested in 1997 by two S.D.S.U. police officers ( described in plaintiff's Declaration & Analysis, Section II ). Another conspiracy followed, between the S.D.S.U. police, various witnesses, the San Diego City Attorney, and the District Attorney, to cover-up this unlawful arrest. In this situation, plaintiff had a trial with a judge who was known to favor the prosecution. Post conviction, this Judge, even placed Plaintiff John Cobb into jail without bail – a violation of PC § 1272. Note that, it is alleged, that U.C.S.D. police officer MacIntyre used to work as a S.D.S.U. police officer.

Plaintiff had another U.C.S.D. police interaction, in which Officer Jones wrote a ' filed interview report '. This is described in Declaration & Analysis, Section III. This report falsely state that plaintiff is a known violent sex offender.

Further false accusations were made against plaintiff by a S.D.S.U. police officer, in a year 2000 restraining order extension. This was the same S.D.S.U. police officer who unlawfully arrested plaintiff in 1997, and later falsified a police report to cover this up. This is described in Declaration &Analysis, Section IV.

## II. REBUTTLE

### A. Plaintiff's Rebuttal and Opposition to Motions To Dismiss By All Defendants

Plaintiff hereby Opposes all Points and Authorities set forth in Defendants' Motion to Dismiss. This includes Defendants;

i. Reyes, Gustafson, Morris and King; and

ii. MacIntyre and Rose; and

iii. Dumanis and Carroll.

### B. With Regards To Discovery

Plaintiff is alleging that the U.C.S.D. police force has continually violated his constitutional

rights, and has cover-up procedures and practices in place, to avoid any consequences. Plaintiff alleges that the U.C.S.D. police force has done this to other people as well – violated their constitutional rights, and then covered-up it up. Plaintiff requests that discovery be conducted to prove that this has happened to other people, and is a continuing problem at U.C.S.D.

**C. State Law Immunities and Claims-Presentation Requirements Inapplicable**

[ From book; California Government Tort Liability Practice, Fourth Edition, San Diego County Public Law Library; KFC 332 .C352, 2004. Page 1050, § 13.11 ].

" Generally, government tort immunities recognized by state law cannot override liabilities created by the federal Civil Rights Act. See Martinez v California (1980) 444 US 277. ... Similarly, state claims-presentation requirements do not apply to federal civil rights actions. Felder v. Casey (1988) 487 US 131, ... '.

From Martinez v. California, 444 US 277:

" [ Footnote 8 ] "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. 1983 or 1985 (3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced. See McLaughlin v. Tilendis, 398 F.2d 287, 290 (7th Cir. 1968). The immunity claim raises a question of federal law." Hampton v. Chicago, 484 F.2d 602, 607 (CA7 1973), cert. denied, 415 U.S. 917 . ".

From Felder v. Casey, 487 US 131:

" In enacting 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right

is asserted in state court. ".

None of the instant case defendants are protected by state law immunities. Claims presentations requirements are inapplicable.

**D. Exhaustion of State of Administrative Remedies Generally Not Prerequisite**

[ From book; California Government Tort Liability Practice, Fourth Edition, San Diego County Public Law Library; KFC 332 .C352, 2004. Page 1053, § 13.14 ].

" Exhaustion of state remedies is not a prerequisite to bringing an action under 42 USC § 1983. Patsy v. Board of Regents (1982) 457 US 496, . . .

**E. Qualified Immunity Not Bar To Declaratory and Injunctive Relief.**

Qualified immunity is defense to liability for damages only, and does not bar actions for declaratory and injunctive relief. American Fire, Theft & Collision Managers v. Gillespie ( 9th Cir. 1991 ) 932 F.2d 816, 818. Plaintiff will move the court for an injunction to prohibit further harassment from the U.C.S.D. police, and to remove any unlawful data and information that the U.C.S.D. police department is maintaining about plaintiff ( e.g. W. & Inst. Code § 5150 data, sexual orientation data. ).

**F. State Statutory Immunity Provisions Do Not Apply**

State statutory immunity provisions do not apply to federal civil rights action. Guillory v. County of Orange ( 9th Cir. 1984 ) 731 F.2d 1379, 1382.

None of the defendants are protected by any statutory immunities.

**G. Statutory Violations By Reyes And Gustafson**

Plaintiff was the victim of an assault and battery, by Officers Reyes and Gustafson. This is a Penal Code § 242 violation. The two officers have falsified their police reports with regards to their own observations about the incident. This is a Penal Code § 118.1 violation.

**H. Prosecutors & Judges**

**Prosecutors**

These prosecutors have obstructed justice, and perverted the course of justice.

| **Prosecutor Name** | **Description & Date of Incident.** | **Is / was a:** | **Case / Situation Description** |
|---|---|---|---|
| Beth Woodley ( aka Beth Williams ) | U.C.S.D. Event on 2-10-1993. | San Diego City Attorney. | Def. attacked by woman; illegally arrested; illegally taken to County Mental Health. Ms. Woodley spoke artifice in the court. |
| Kay Meier | S.D.S.U. event on 7-24-1997. | Deputy District Attorney, San Diego County. | Def. illegally arrest by two S.D.S.U. police officers. Ms. Meier plea bargained on a non-crime, and committed artifice in the court. |

Beth Woodley ( name changed to Beth Williams ) made errors during the 1993 trial. Ms. Woodey made a statement of artifice in the court.

**<u>Relevant San Diego Judges As Former San Diego District Attorneys and Other Prosecution Attorneys.</u>**

There is a pattern of Plaintiff John Cobb being assigned Judges who are former San Diego District Attorneys, and other type of prosecuting attorneys. These judges then commit errors, this is especially true when Def. John Cobb had been illegally arrested or given a citation, by a police officer.

These Judges include the following:

| **Judge Name** | **Exhibits No. & Date of Incident.** | **Is a former:** | **Case / Situation Description** |
|---|---|---|---|
| Judith Hayes | U.C.S.D. event. 2-10-1993. | U.S. Deputy Att'y General; U.S. Att'y; and | J.C. attacked by woman; illegally arrested; illegally |

| | | | |
|---|---|---|---|
| | | Deputy District Attorney in San Diego County. | taken to County Mental Health. |
| Thomas Whelan | S.D.S.U. event. 7-24-1997. | Deputy District Attorney ( San Diego County ) | J.C. illegally arrest by two S.D.S.U. police officers. Restraining Order Judge. Whelan signed a *wrong* restraining order – so as to obstruct justice. |
| Howard Shore | S.D.S.U. event. 7-24-1997. | Deputy District Attorney ( San Diego County ) | J. C. illegally arrest by two S.D.S.U. police officers. Trial and Plea Bargain Judge. Placed Def. John Cobb into jail for 30 days, without bail. Was a statute violation. |
| Allan Preckel | Unlawful traffic ticket. 2-5-1998. | Deputy District Att'y San Diego County. | Insufficient evidence for traffic conviction – appeal. |
| Terry Knoepp | Unlawful traffic ticket. 2-5-1998. | Deputy District Attorney San Diego County | Insufficient evidence for traffic conviction – appeal. |
| Joan Weber | Unlawful traffic ticket. 2-5-1998. | U.S. Attorney, San Diego. | Insufficient evidence for traffic conviction – appeal. |

## III

## PLAINTIFF WAS ARRESTED – TAKEN INTO CUSTODY AND RESTRAINED, BY U.C.S.D. POLICE OFFICERS REYES AND GUSTAFSON.

## [ CLEARLY ESTABLISHED CONSTITUTIONAL AND STATUTORY RIGHTS ]

### I. Fourth Amendment of U.S. Constitution

The Fourth Amendment of the United States Constitution reads:

" The right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. ". [ USC – 4th Amendment. ].

The Supreme Court has ruled that the Fourth Amendment is applicable to the state governments by operation of the Due Process Clause of the Fourteenth Amendment – *Mapp v. Ohio*, 367 U.S. 643 (1961).

**California Case Law**

From case of People v. Garcia ( 2006 ), 145 Cal.App.4th:

" As we shall explain, nothing in either the letter or spirit of Terry v, Ohio, supra, 392 U.S. I, 88 S.Ct. I868, 20 L.Ed.2d 889 can be used as a springboard to justify a "patdown" search for identification. ...

Pat down search for identification of defendant, who was detained for riding bicycle without operative headlamp and denied having identification, was unjustified in absence of concern that defendant was armed and dangerous.

U.S.C.A. Const. Amend. 4. ...

To justify a pat down search, the officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a suspicion that the suspect is armed and dangerous. U.S.C.A. Const. Amend. 4. ...

Terry allows a frisk for a dangerous weapon, but it does not authorize a search for contraband, evidentiary material, or anything else in the absence of reasonable grounds to arrest. U.S.C.A. Const. Amend. 4. ...

A pat down search for weapons is controlled by requirements of the Fourth Amendment, and probable cause is essential. U.S.C.A. Const. Amend. 4. ...

A "search" is a governmental intrusion upon, or invasion of, a citizen's personal security in an area in which he has a reasonable expectation of privacy.

U.S.C.A. Const. Amend. 4.".

From the case of People v. Loudermilk (1987), 195 Cal.App.3d 996:

" There is no constitutional proscription against asking a suspect who is the subject

of an investigative detention to identify himself. As part of this inquiry, the police officer may require the suspect to produce proof of identification, if he has it. If he refuses to identify himself to the officer, this fact may by itself be considered suspect and, together with surrounding events, may create probable cause to arrest. However, this rule does not permit a suspect to be detained and searched merely because he either refused to identify himself or refused to produce proof of identification. Nor does this allow an officer who conducts a temporary detention to immediately conduct a search for identification. However, an officer may seize the suspect's wallet where the defendant lies to the officer and himself creates the confusion as to his own identity. ...

(4b) We must emphasize that we do *not* hold that a suspect may be detained and searched merely because he either refused to identify himself or refused to produce proof of identification. Nor do we hold that each time an officer conducts a *Terry* stop he may immediately conduct a search for identification. The rule we announce does not provide officers with unfettered discretion and does not open citizens to harassment. Our decision, allowing the officer to seize the wallet, is limited to the unique facts of this case, where defendant lied to the officer and himself created the confusion as to his own identity. The seizure of defendant's wallet was minimal and strictly limited to the legitimate inquiry into his identity. We conclude that the seizure of defendant's wallet was reasonable within the meaning of the Fourth Amendment. ".

From the case of People v. Long, 189 Cal.App.3d 77:

" (3) Arrest § 13.4--Temporary Detention--Determination of Validity--Specific and Articulable Facts. In order to justify an investigative stop or detention by a peace officer the circumstances known or apparent to him must include specific and articulable facts causing him to suspect that some activity relating to crime has taken place or is occurring or about to occur, and the person he intends to stop or detain is involved in that activity. An investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. ".

**Instant Case: Plaintiff's Fourth Amendment Rights Violated –**

**Plaintiff Unreasonably Searched**

Defendant Officers Reyes and Gustafson received radio calls as follows:

Reyes: " ORIGIN: ... I received a radio call of a lewd act that was committed in the men's restroom ...". [ Original Complaint; Ex. No. 42; Page 4. ].

Gustafson: " NARRATIVE: I received a radio call of a male looking into bathroom stalls ... ". [ Original Complaint; Ex. No. 42; Page 6. ].

Plaintiff was positively identified by Reporting Party Atilla Cilingir:

" NARRATIVE:

... As I pulled up to the Price Center loading dock, Atila Veli CILINGIR, the reporting party, pointed to the male and said " That's him ". [ O.C. Ex. No. 42; Page 7, Narrative of Def. Gustafson ].

Plaintiff gave Def. Officers his name and address;

" The two officers asked me for identification and / or my drivers license. I said that I would give them only my name and address. .... ". [ O.C., Declaration and Analysis of Plaintiff John Cobb. Page 24, Lines 19-20 ].

" I gave them my name and address and I believe that it was written down by one of the police officers ". [ O.C., Declaration and Analysis of Plaintiff John Cobb. Page 25, Lines 3-4 ].

**No Facts Supporting a PC § 647(d) Violation**

**( From Reporting Party's Statement )**

O.C. Ex. No. 42, Page 4, is Atila CILIGNIR'S, as the Reporting Party's, statement. This contains no evidence of any kind that a PC § 647(d) violation occurred. It contains no evidence that a lewd act occurred at any time. It is alleged, that Officer Reyes has falsified his police report, and falsely stated that he received a call about a lewd act occurring in the restroom. That the following is not true, and has been falsely stated by Officer Reyes:

Reyes: " ORIGIN: ... I received a radio call of a lewd act that was committed in the men's restroom ...". [ Original Complaint; Ex. No. 42; Page 4. ].

**Def. Reyes' Trickery To Conduct An Unlawful Search –**

**No Reasonable Suspicion To Conduct a PC § 647(d) Investigation**

Officer Reyes had absolutely no specific and articulable facts together with rational inferences there from which could reasonably support a suspicion that Plaintiff violated PC § 647(d). Refer to Section above.

**Def. Officers' Bad Faith and Malice**

The two Def. U.C.S.D. police officers have acted in bad faith, and with malice, by falsifying their police report of the incident. Refer also to Section L. below. They have falsely stated that the point of contention with the Plaintiff was in his refusing to identify himself, when in truth, it was his refusal to give them his driver's license, and agreeing to give them his name and address.

Officer Reyes:

"

[ O.C. Ex. No. 42; Page 6. Reyes investigation . ].

Officer Gustafson:

" NARRATIVE: ...

The male, later identified as John Harold Robert COBB, refused to provide identification or tell us his name. He said he did not have to provide identification. ... Then COBB reached into his backpack and pulled out his wallet. Then he quickly put it back into his backpack, saying that he did not have to show us his identification. ".

[ O.C. Ex. No. 42; Page 6. Gustafson narrative . ].

Neither of these radios calls involves any evidence for any reason to ask Plaintiff for his driver's license. Such evidence would include; driving a car; being underage and inside a bar ( e.g. People v Long, 189 Cal.App.3d 77). There is no evidence that Plaintiff had a weapon or had been involved in violence ( e.g. People v. Loudermilk, 195 Cal.App.3d 996). No evidence that would justify a search of Plaintiff. Such evidence would include, being involved in a violent act; or the use or possession of a weapon, or was inside a bar and underage.

For the instant case stop, Plaintiff was stopped as a pedestrian while walking to the library for the bus stop. Plaintiff was positively identified by the Reporting Party [ " Atila Veli CILINGIR, the reporting party, pointed to the male and said, " That's him. " ": O.C. Ex. No. 42, Page 6]. There was no evidence that Plaintiff was not truthful when giving his name and address to Def. U.C.S.D.

Officers. The Defendant Officers received no reasonable fact which would justify requiring Plaintiff to;

i. produce his driver's license; nor

ii. conduct a search of Plaintiff's backpack;

**Instant Case Unlawfully Obtained Information and Evidence**

There was no reasonable grounds for Defendant Officers to obtain information from Plaintiff's drivers license and record it onto the Notice to Appear: Evidence including; Plaintiff's Driver's License Number – "N6539830"; Status – "CA"; Class – "C"; Commercial – "☒ No"; date of birth – " 9-10-59"; and driver's license personal descriptors of; Sex – "M"; Hair –"Bln"; Eyes – " Blue "; Height – "6-02", Weight – " 220", Race – "W". [ From O.C. Ex. No 42, Page 1 – Notice To Appear ].

Def. Officer Reyes did cross out and did not record Notice To Appear information regarding any vehicle: " Veh. Lic. No. of VIN "; "State"; "Yr. of Veh."; Make"; "Model"; "Body Style "; " Color"; "Evidence of Financial Responsibility "; " Registered Owner of Lessee ".

This unlawfully obtained information was written by Officer Reyes onto the Notice to Appear – Ex. No. 42, Page 1, and onto the PC § 626.6 document – O.C., Ex. 42 No. 9.

**J. Fifth Amendment of U.S. Constitution**

From the case of <u>Hiibel v. Sixth Judicial District Court of Nevada, 542 U. S. 177</u>:

" [2] Key Cite Notes

Frisk. Most Cited Cases

In order for Terry stop to be constitutionally reasonable, officer's action must be justified at its inception, and reasonably related in scope to circumstances which justified interference in first place; seizure cannot continue for excessive period of time or resemble traditional arrest. U.S.C.A. Const. Amend. 4. ...

[5] Key Cite Notes

Frisk. Most Cited Cases

... officer's request was commonsense inquiry when investigating potential domestic dispute involving motorist, and not effort to obtain arrest for failure to identify after

Terry stop yielded insufficient evidence. ...

The Court recognized similar constitutional limitations in Brown v. Texas, 443 U.S. 47, 52, 99 S. Ct. 2637, 61 L.Ed.2d 357, where it invalidated a conviction for violating a Texas stop and identify statute on Fourth Amendment grounds, and in Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903, where it invalidated on vagueness grounds California's modified stop and identify statute that required a suspect to give an officer "credible and reliable" identification when asked to identify himself, id., at 360, 103 S. Ct. 1855. This case begins where those cases left off. Here, the initial stop was based on reasonable suspicion, satisfying the Fourth Amendment requirements noted in Brown. Further, Hiibel has not alleged that the Nevada statute is unconstitutionally vague, as in Kolender. This statute is narrower and more precise. In contrast to the "credible and reliable" identification requirement in Kolender, the Nevada Supreme Court has interpreted the instant statute to require only that a suspect disclose his name. It apparently does not require him to produce a driver's license or any other document. If he chooses either to state his name or communicate it to the officer by other means, the statute is satisfied and no violation occurs. Pp. 2456-2457. ...

The Fifth Amendment prohibits only compelled testimony that is incriminating, see Brown v. Walker, 161 U.S. 591, 598, 16 S. Ct. 644, 40 L. Ed. 819, and protects only against disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used, Kastigar v. United States, 406 U.S. 441, 445, 92 S. Ct. 1653, 32 L.Ed.2d 212. Hiibel's refusal to disclose was not based on any articulated real and appreciable fear that his name would be used to incriminate him, or that it would furnish evidence needed to prosecute him. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118. ...

As we stated in Kastigar v. United States, 406 U.S. 441, 445, ...

the Fifth Amendment privilege against compulsory self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." ...

[8] In this case petitioner's refusal to disclose his name was not based on any articulated real and appreciable fear that his name would be used to incriminate him, or that it "would furnish a link in the chain of evidence needed to prosecute" him. ... Even today, petitioner does not explain how the disclosure of his name could have been used against him in a criminal case. ... the Fifth Amendment does not override the Nevada Legislature's judgment to the contrary absent a reasonable belief that the disclosure would tend to incriminate him. ".

Further, in Davis v. Washington (2006) 126 . S. Ct. 2266; the Supreme Court held that;

" These cases require us to determine when statements made to law enforcement Personnel during a 911 call or at a crime scene are "testimonial" and thus subject to the requirements of the Sixth Amendment's Confrontation Clause. ...

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.1

Plaintiff's fifth amendment right ( and also his fourth amendment right ) was violated by the two defendant U.C.S.D. police officers taking plaintiffs information, beyond that of his name and address, from his driver's license.

**K. Constitutional Rights**

From the U.S. Supreme Court Case of case of Brendlin v. California, 551 U.S. _____. ( Certiorari to the Supreme Court of California, No. 06-8120 ).

" Syllabus ...

(a) A person is seized and thus entitled to challenge the government's action when officers, by physical force or a show of authority, terminate or restrain the person's freedom of movement through means intentionally applied. ... There is no seizure without that person's actual submission. ...

When police actions do not show an unambiguous intent to restrain or when an

individual's submission takes the form of passive acquiescence, the test for telling when a seizure occurs is whether, in light of all the surrounding circumstances, a reasonable person would have believed he was not free to leave. ".

Defendant U.C.S.D. Police had the intent to investigate Plaintiff. From Brendlin v. California;

" The State Supreme Court contrary conclusions reflects three premises with which this Court respectfully disagrees. First, the view that the police only intended to investigate the car's driver ... ".

Plaintiff was the focus and person of Defendant U.C.S.D. police officers' *investigation*:

" INVESTIGATION:

Corporal Gustafson and I contacted COBB at the east entrance ...I asked COBB for some identification... I told COBB that he fit the description of a suspicious male that was seen looking over a stall in the men's restroom. ...". [ Ex. No. 42; Page 3; " INVESTIGATION: ". By Reyes. ].

Plaintiff was considered a *suspect* by the U.C.S.D. police:

" Officer REYES caught up to the suspect ...Officer REYES asked the male for identification. "

[ Ex. No. 42; Page 6. Gustafson's narrative ].

Plaintiff was read his Miranda Rights by Defendant Officer Reyes and issued a Notice To Appear:

" I read COBB his Miranda Rights per my department notebook and asked COBB if he understood his rights. COBB responded " Yes," and said, " He had nothing to say."

I issued COBB a written notice to appear, citation # UC 62151 ... I then read COBB the off campus order. COBB was released at the scene.". [ Ex. No. 42; Page 4; Reyes Narrative. ].

Under these circumstances, a reasonable person would not feel free to leave, and therefore would have been seized.

### L. Malice and Inference of Malice

[ From book; California Government Tort Liability Practice, Fourth Edition, San Diego County Public Law Library; KFC 332 .C352, 2004. Page 708, § 11.9 ]:

" NOTE -> Deliberately falsifying evidence to obtain an arrest warrant amounts to malice,

making the immunity of CC § 43.55 inapplicable. McKay v County of San Diego, 111 CA3d 251 ...

See Laible v Superior Court, Inference of malice may be drawn when officer making arrest warrant posses exculpatory evidence that he withheld from magistrate )

... "

From the case of Lailble v Superior Court, 207 CA3d 1:

" The City and County argue that an issue of fact concerning malice was not presented by petitioner because he failed to show the kind of deliberate falsification alleged in McKay. But the malice alleged in McKay, described as malice "in spades," is not the only form of malice. Withholding exculpatory evidence from the magistrate may not be malice in spades, but if deliberate or with reckless disregard of the plaintiff's liberty interests it may nonetheless be malicious.

[6] Malice may be proved by circumstantial evidence, and is defined as "that attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose. It does not necessarily require that the defendant be angry or vindictive or bear any actual hostility or ill will toward the plaintiff." (BAJI No. 6.94.)

[5b] Absent a declaration of malice by Inspector Ryan, petitioner could prove malice only by presenting circumstantial evidence. He sought to do so here by presenting evidence that Inspector Ryan possessed significant exculpatory evidence (the discrepancy in $100 bills, the car salesman's failure to identify, the age of the mug shot, the failure of Mr. Bodine to identify) which he failed to investigate further and failed to present to the magistrate when seeking an arrest warrant.

Clearly, presentation of falsified documents is stronger evidence of malice than is withholding of exculpatory evidence, because innocent reasons for withholding evidence can more easily be imagined. But where, as asserted here, significant exculpatory evidence has been withheld, an inference of malice may reasonably be drawn. It is for the trier of fact, not the law and motion court, to weigh the available inferences against Inspector Ryan's profession of pure motives. **[157 Cal.App.3d 54]** ".

### i. Instant Case

Defendant Officers Reyes and Gustafson, have deliberately falsified their police reports. This evidences malice. This is an issue to be resolved by a jury. The motive for the falsified police reports is to cover-up violations of plaintiff's constitutional rights. To cover-up the unreasonable search and seizure of plaintiff. It is alleged, that this is a continuing practice of the U.C.S.D. police department.

### ii. Evidence of Falsified Police Reporting by U.C.S.D. Police
### ( Evidence of Bad Faith By U.C.S.D. Defendant Police Officers )

There is evidence that the two U.C.S.D. police officers have acted in bad faith. There are two police reports, one written by Officer Reyes, and a second written by Officer Gustafson. They differ in the following way.

[ Officer Reyes Narrative / Report is Original Complaint ( " O.C. " ) Ex. No. 42, Page 3, and Officer Gustafson's Narrative / Report is O. C., Ex. No. 42, Page 6. ].

<u>Officer Reyes's</u> report has Officer Gustafson telling plaintiff " to step away from the backpack and to let us search for his wallet ", *before* plaintiff " pulled out his wallet from his backpack ".

Contrary to this, is <u>Officer Gustafson's</u> own report which states that plaintiff *first* pulled his wallet out; " Then COBB reached into his backpack and pulled out his wallet ", and then *after* this, was told for the first time, by Gustafson, to " put the backpack down and I would help him find his identification ".

Note that, in his Original Complaint ( " O. C. " ), Plaintiff John Cobb states that he did two back pack searches. The first one for his wallet, which he took out and then put back. And then a second search, for a pencil and paper to write down the identifications of the two U.C.S.D. police officers. Note also, that plaintiff stated that he did identify himself, he only would not ultimately give his driver's license to the police officers.

Officer Gustafson's report has plaintiff pulling his wallet out of his backpack, right away. There is no Gustafson verbal warring telling plaintiff to not search his backpack, before plaintiff pulls out his wallet. Contrary to this, Officer Reyes' report states that Gustafson gave a verbal warning to plaintiff to step away from his backpack and let the office search it, before pulling out his wallet.

This is a substantial discrepancy, and very significant, since Officer Gustafson states that he was fearful of plaintiff having a weapon: " I feared that COBB was searching for a weapon and I pulled the backpack out of his hands. " [ Gustafson Narrative. O.C. Ex. No. 42, Page 6 ].

Note also, that the two officer are stating the plaintiff refused to identify himself nor to tell them who he was. This is not true. Plaintiff did tell the officers who he was. Plaintiff only did not want to give the officers his driver's license, and the officers had no reasonable fact to justify getting plaintiff's driver's license. This issue subsequently led to the officers committing an assault an battery upon plaintiff.

This evidences that the police officers and Officer Reyes have acted in bad faith. There is enough evidence of bad faith, that there are issues of fact for a jury. A jury can reasonably conclude that plaintiff was unlawfully detained.

**M. Statutory Rights – Statutes PC §§ 834 and 235**

It is alleged that, Plaintiff John Cobb was arrested by Defendants Reyes and Gustafson – acting as U.C.S.D. Police Officers. Plaintiff was *not* arrested by " Victim / Reporting Party " Atila Cilingir – acting as a private person.

PC § 834 defines an arrest, stating that;

" An arrest is taking a person into custody, in a case and in the manner authorized by law.

An arrest may be made by a peace officer or by a private person. "

PC § 235 states;

" An arrest is made by an actual restraint of the person, or by the submission to the custody of an officer… ".

**N. From Officer Reyes' Narrative Statement**

Plaintiff was arrested by U.C.S.D. Police Officer Defendant Reyes and Gustafson;

[ From Reyes' police report ]:

" <u>INVESTIGATION:</u>

The suspect, later identified as COBB was described as a white male adult, dressed in a white shirt and white pants, wearing black shoes. COBB was seen heading north along Russell Lane towards the UCSD Price Center. As I was entering the

cul-de-sac of lot 411, I saw COBB walking west bound on Lyman Lane and heading towards the east entrance of the Price Center.

I saw Corporal Gustafson # 601 in his marked patrol car approaching me on Lyman lane. Corporal Gustafson and I contacted COBB at the east entrance of Price Center, ... COBB asked me why he was being contacted. I told COBB that he fit the description of a suspicious male that was seen looking over a stall in the men's restroom. ...".

[ Ex No. 42; Page 3 ].

" Corporal Gustafson stayed with COBB and I met with the victim Atila Cilingir.".

[ Ex. No. 42; Page 4 ].

[ Plaintiff's Original Complaint – " O.C. "; Exhibit No. 42; Pages 3, 4 – Reyes' Police Report. ].

**O. From Officer Gustafson's Narrative Statements**

Further, Def. Officer Gustafson confirms that Plaintiff was arrested by Officer Reyes. Gustafson states in his police report narrative;

" ... I received a radio call of a male looking into bathroom stalls in the men's restroom at Pepper Canyon Hall ... I looked west and saw a male matching the description of the suspect walking westbound ... At that time, Officer REYES (#606) advised on his radio that he also saw the suspect. ... As I pulled up to the Price Center loading dock, Atila Veli CILINGIR, the reporting party, pointed to the male and said, " That's him ". Officer REYES caught up to the suspect at the east entrance to the Price Center food court. Officer REYES asked the male for identification. ... Officer REYES issued COBB a notice to appear citation and a 626.6 P.C. stay away order. COBB was released at the scene. "

[ Original Complaint; Exhibit No. 42; Page 6 / 7( 7 same as 6 ), and 8; Gustafson's Narrative ].

**P. Plaintiff Not Arrested by Reporting Party Atila Cilingir**

Plaintiff was not arrested by " Victim / Reporting Party " Atila Cilingir.

PC § 841 states;

" The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, ....

The person making the arrest must, on request of the person he is arresting, inform the latter of the offence for which he is being arrested. ".

Plaintiff was never contacted for arrest nor custody nor restraint nor submission to custody, by Atila Cilingir. Plaintiff was contacted for arrest and submission to custody by Defendants U.C.S.D. Police Officers Reyes and Gustafson – refer to Sections A. and B. above.

Refer to Plaintiff's Original Complaint ( "O.C. "), <u>**DECLARATION AND ANALYSIS OF PLAINTIFF JOHNCOBB**</u>, page 24, lines 1 – 15.

Further, there is no police report evidence of " Victim / Reporting Party " Atila Cilingir, stating that he contacted Plaintiff for arrest, as required by PC § 841. Refering to O.C. Exhibit No. 42, Page 4; U.C.S.D. Police Report:

[ Reyes, after stopping and detaining Plaintiff, leaves Plaintiff with Officer Gustafson, and then takes the statement of CILINGIR ].

" Corporal Gustafson stayed with COBB and I met with the victim Atila CILINGIR. CILINGIR provided the following statement:

<u>STATEMENTS:</u>

Atila CIINGIR – Victim/ Reporting Party

[ Summarizing Cilingir's Statement; Cilingir never states that he contacted Plaintiff for arrest.

He only states that he followed Plaintiff, and then contacted the UCSD police department, and then tells the police that he wanted to place Plaintiff under arrest. ].

### Q. Reyes and Gustafson To Be Governed By Reasonable Cause

The standard of Defendants Reyes and Gustafson's arrest and investigation is the one of " reasonable cause ". PC § 235a states;

" Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance. ... "

### R. PLAINTIFF FORUTH AMENDMENT RIGHT TO BE SECURE IN HIS PAPERS

Whren v. United States; 517 U.S. 806, 116 S.Ct. 1769;

" The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. "

Plaintiff's right to be secure in his papers was violated, by the two Defendant police officers obtaining his driver's license.

**S. With Relation of PC § 647 (k) (1)**

PC § 647 (k) (1) ( now ( j ) (1 ) ) reads;

" (k) (1) Any person who looks through a hole or opening, into, or otherwise views, by means of any instrumentality, including, but not limited to, a periscope, telescope, binoculars, camera, motion picture camera, or camcorder, the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside. This subdivision shall not apply to those areas of a private business used to count currency or other negotiable instruments. ".

Plaintiff did not violate this statute. Plaintiff is 6 feet, 2 inched tall. When standing, Plaintiff's head went up above the partition. The space above a toilet stall partition is public space, and is not reasonably a private area. The state court criminal charge was reduced to an enhancement and an infraction. Plaintiff had no priors for such an enhancement. Plaintiff received a benefit in another case, and accepted this plea. Plaintiff alleges that all this indicates that the prosecution did not think that a PC § 647 (k) (1) crime had been committed.

**T. Causation**

Officer Reyes and Gustafson's assault and battery upon plaintiff caused him pain and suffering. Plaintiff had a scrapped knee, and bruises from this assault and battery by the officers. Plaintiff suffered severe emotional distress from this situation.

**U. Punitive Damages**

There is evidence and proof of malice on the part of the two Defendant police officers

Reyes and Gustafson. Refer to Sections " **Def. Officers' Bad Faith and Malice** ", and " L. **Malice and Inference of Malice** ", above.

**V. Class-Based Invidious Discriminatory Animus and Neglect to Prevent Conspiracy**

Plaintiff alleges that certain actors chose a particular course of action at least in part because of plaintiff's membership in a protected class. Plaintiff needs discovery in order to prove this.

Father, it is alleged that the U.C.S.D. police department, and other actors, have a prearranged plan, and ongoing conspiracy operation, to cover-up unlawfulness by police officers. Plaintiff has been victimized by these actors in the past ( e.g. Officer MacIntyre and Rose, discussed in Declaration & Analysis, Section I ). Also, refer to Dec. & Analysis, Sections II, III, IV, and V.

Falsifying police reports, as has occurred in the instant case, and in previous cases – Dec. & Analysis, Section I, II, is part of this conspiracy. Utilizing the immunities of prosecutors and judges, to ratify unreasonable police acts is also part of this conspiracy operation.

No specific intent to deprive a person of a federal right is necessary to create liability under 42 U.S.C. § 1983. [ Monroe v. Pape, 365 U.S. 167 ].

**W. Denial of Fair Trial**

It is alleged that Defendant Prosecutor Hudson, and Public Defender McKay, conspired to conceal exculpatory evidence, and obstruct a fair trial. Refer to Dec. & Analysis, Section V.

**X. Further Complaint Amendments**

Plaintiff hereby respectfully asks for permission of the court, to amend his complaint to correct any defects in the single, already filed compliant ( Original Complaint ), e.g. police officers as individuals and in their personal capacity.

////

////

Respectfully submitted, May 20, 2008, Signed, [signature]

John Cobb – Plaintiff.