NUNC PRO TUNC
JUN - 9 2008

FILED
2008 JUN 11 PM 2:08
CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY FNK DEPUTY

John Cobb – Plaintiff.
3955 Mt. Albertine Way
San Diego, CA 92111
Telephone: (858) 277-2026.

////

////

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

John Cobb, Plaintiff,

vs.

1.) J. Reyes ( ID 606 );
2.) S. Gustafson ( ID 601 );
3.) Lt. Tom Morris ( ID 691 );
4.) William MacIntyre ( ID 617 );
5.) Lt. David Rose ( ID 690 );
6.) U.C.S.D. Police Chief O. King;

Prosecutors:

7.) Michael Hudson;
8.) Mike Aguirre;
9.) Bonnie Dumanis;

Public Defenders:

10.) Shane McKay;
11.) Steven Carroll;
12.) Does 1 through 100;

Defendants.

**SUPPLEMENTAL POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS, AND DECLARATION OF JOHN COBB.**

**[ Case Number: 08-cv-0188-JAH-WMc ].**

Date: June 23, 2008.
Time: 2:30 p.m.
Department: 11.
Judge: Honorable John A. Houston.
Trial: None set.

////

////

# TABLE OF AUTHORITIES

Page

Knowles v. Iowa, 525 U.S. 113 ....................................................

People v. Garcia ( 2006 ), 145 Cal.App.4th 782, 52 Cal. Rptr. 3d 70 ..................

People v. Superior Court ( Caswell ) 46 Cal.3d.381 ....................................

People v. Aldridge (1984) 35 Cal.3d 473 ..............................................

Illinois v. Gates, 462 U.S. 213 ........................................................

People v. McNeil ( 2002 ) 96 Cal.App.4th 1302 .........................................

People Rodriguez ( 2006 ), 143 Cal.App. 4th, 1137 .....................................

Relating to definition of " suggestive conduct ";

Case 1. People v. Bremmer ( 1979 ), 30 Cal.App.3d 1058 ................................

Case 2, People v. Kukkanen, 248 Cal.App.2d Supp. 899 ..................................

Case 3, in re Daniel G. ( 2004 ), 120 Cal.App.4th 824 ..................................

Case 4, In re Daniel G. (2004) [ Cal.App.4th ] .........................................

Case 5, In re Hall [ 30 Cal.3d 408 ] ....................................................

Case 6, People v. Superior Court ( Caswell ) ( 1988 ) 46 Cal.3d 381 ....................

Case 7, People v. Boyd ( 1990 ) 222 Cal.App.3d 541 .....................................

Pryor v. Municipal Court ( 1979 ) 25 Cal.3rd 238 .......................................

People v. Rylaarsdam ( 1982 ) 130 Cal.App.3rd Supp. 1. .................................

Agar v. Superior Court (1971) 21 Cal.App.3d 24 .........................................

Heck v. Humphrey (1994) 512 U.S. 477 ...................................................

Small v. Commonwealth, 305 Ky 530, 204 SW2d 945 .........................................

Katz v. Peyton, 334 F2d 77 ..............................................................

Whiteley v. Warden, Wyoming State Penitentiary ( 1977 ) 401 US 560 .......................

## STATUTES

U.S. Federal Rules of Evidence

Rule 410, 410(2) ..........................................................................

California Penal Codes

236

237(a)

240

242

647

( Sorry, but this is not finished, and is incomplete ).

## REGARDING THIS MOTION

This is a second and additional part, and a second and additional filing, in plaintiff's opposition to defendants' motions to dismiss. This second part and filing is titled;

**SUPPLEMENTAL POINTS AND AUTOHORITIES IN OPPOSITION**

**TO MOTION TO DISMISS, AND DECLARATION OF JOHN COBB.**

Plaintiff needs this second Points and Authorities, and a Declaration, since, he is not a lawyer, and is continually leering about the laws, and the constitution. Plaintiff respectfully requests the Court's and other parties patience and understanding.

## CONTENTS OF FILINGS

**( List of plaintiff's case pleadings documents filed and served to-date )**

Plaintiff has filed and served three sets of pleadings document(s), so far in his compliant. These are as follows:

1.) Plaintiff's compliant ( original case filing document, filed on Jan 31, 2008 ), containing 49 exhibits, numbered 1-49. This document is also referred to as " Original Complaint ", or " O.C. ". Exhibits can be referred to as, e.g. "O.C. Ex. No. 10".

2.) Plaintiff's opposition to Defendants' motions to dismiss, filed on May 22, 2008. This contains four (4 ) exhibits, numbered 1 – 4. These documents are as follows;

a.) Notice of Opposition To Motions To Dismiss; and

b.) Points and Authorities in Opposition To Motion To Dismiss; and

c.) Declaration and Analysis in Opposition To Motions To Dismiss ( containing the 4 exhibits. These can be referred to as This Motion " T.M." 1 – 4, e.g., T.M. Ex. No 1. ).

3.) Plaintiff's supplemental ( second part ) opposition to Defendants" motions to dismiss, and is *this* document. This document include a declaration by plaintiff. This is to be included with No. 2 ) above. This document contains 9 exhibits, numbered 5 – 13. These can be referred to as This Motion " T.M." 5-13, e.g., T.M. Ex. No. 5. This supplemental part includes;

a.) Notice of Opposition To Motions To Dismiss; and

b.) Supplemental Points and Authorities in Opposition To

Motion To Dismiss, and Declaration of John Cobb.

**POLICE REPORTS AND REPORTING PARTY'S STATEMENTS**

Plaintiff has typed and numbered the statements of Def. Reyes, Def. Gustafson, and Reporting Party Atila Cilingir. This had been done for clarity, and to simplify discussion and argument.

Further, typed-out and sentenced numbered statements of Defendants Reyes and Gustafson, and Reporting Party Cilingir, are used to analyze these statements under legal scrutiny, and to point out discrepancies, and false statements.

**REYES AND GUSTAFSON POLICE REPORTS –**

**TYPED OUT AND SENTENCED NUMBERED**

This Motions ( "T.M." ) Exhibits No. 5 and 6 ( T.M. Ex. No. 5; T. M. Ex. No. 6 ), included herein, are typed out and sentenced numbered versions of the police reports ( Original Complaint ( " O.C." ) Ex. No. 42 ) and narratives of Def. Officers Reyes and Gustafson.

**REPORTING PARTY ATILA CILINGIR'S STATEMENT;**

**AS WRITTEN IN THE U.C.S.D. POLICE RPEORT –**

**TYPED OUT AND SENTENCED NUMBERED**

Exhibit No. 7 ( T.M. Ex. No. 7 ), included herein, is a typed out and sentenced numbered version of the police report's statement of Reporting Party and Victim, Atila Cilingir.

**REYES AND GUSTAFSON POLICE REPORTS –**

**Analysis – Assuming U.C.S.D. Police Reports Are True**

Exhibits No. 8 and 9 ( T.M. Ex. 8 & 9 ), is an analysis – facts and legal conclusions, which assume that the Defendant Reyes and Gustafson version of the incident ( as stated in their police reporting ) is truthful.

The analysis points out the unconstitutional and unlawful conduct of the officers.

**REYES AND GUSTAFSON POLICE REPORTS –**

**Versions Showing Defendant Police Officers' Discrepancies**

Exhibits No. 10 and 11 ( T.M. Ex. 10 & 11 ), is an analysis – facts and legal conclusions, which indicate the discrepancies in reporting, between Defendant Reyes' and Gustafson's written police report versions of the incident.

**REYES AND GUSTAFSON POLICE REPORTS –**

**ANALYSIS – U.C.S.D. POLICE REPORTS' DISCREPANCIES.**

**INTRODUCTION**

**FOUR LEVELS OF EVIDENCE AND SEIZURE**

**( Standards of Evidence )**

**Standards of Evidence.**

Highest 1.) Criminal Conviction.

2.) Probable Cause: ( Arrests and Warrants ).

3.) Seized; Upon Reasonable Suspicion.

Lowest 4.) Not Seized; E.g. Conversation, questions. Citizen can walk away. Consensual.

**LEVELS DESCRIBED IN DETAIL**

**Standards of Evidence.**

Highest **1.) Criminal Conviction**

Conviction beyond a reasonable doubt ( highest level of the standard of proof ).

A no contest plea, does may not be required to allocute the charges. This means that a nolo contendere conviction typically may not be used to establish either *negligence per se*, malice, or whether the acts were committed at all in later civil proceedings related to the same set of facts as the criminal prosecution. From, Federal Rule of Evidence 410(2).

Under the Federal Rules of Evidence, (*See* Federal Rule of Evidence 410; Federal Rule of Evidence 803(22). ), and most state rules which parallel them, nolo contendere pleas may not be used to defeat the hearsay prohibition if offered as an "Admission of [a] Party-Opponent" (*See* Federal Rule of Evidence 801(d)(2).).

**2.) Probable Cause: ( Arrests and Warrants ):**

In the context of warrants, the *Oxford Companion to American Law* defines probable cause as "information sufficient to warrant a prudent person's belief that the wanted individual had committed a crime (for an arrest warrant) or that evidence of a crime or contraband would be found in a search (for a search warrant)."

Probable cause is a stronger standard of evidence than a reasonable suspicion, but weaker than what is required to secure a criminal conviction.

From Beck v. Ohio, 379 U. S. 89:

" Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

Brinegar v. United States, 338 U.S. 160, 175 -176; Henry v. United States, 361 U.S. 98, 102 .".

**3.) Seized; Upon Reasonable Suspicion**

" A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave, ...

[ added; needs requirement that ]

... reasonable suspicion that respondent was engaging in criminal activity and, therefore, did not violate the Fourth Amendment by stopping her for routine questioning. ". [From; United States v. Mendenhall, 446 U.S. 544. ].

Lowest **4.) Not Seized; E.g. Conversation, questions. Citizen can walk away. Is Consensual.**

" Police officers enjoy "the liberty (again, possessed by every citizen) to address questions to other persons," id., at 31, 32-33 (Harlan, J., concurring), although "ordinarily the person addressed has an equal right to ignore his interrogator and walk away." Ibid. ". [ From; United States v. Mendenhall, 446 U.S. 544. ].

From Florida v. Royer, 460 U.S. 491 (1983);

" Second, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is

willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See Dunaway v. New York, supra, at 210, n. 12; Terry v. Ohio, 392 U.S., at 31, 32-33 (Harlan, J., concurring); id., at 34 (WHITE, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555 (1980) (opinion of Stewart, J.). The person [460 U.S. 491, 498] approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. Terry v. Ohio, 392 U.S., at 32 -33 (Harlan, J., concurring); id., at 34 (WHITE, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. United States v. Mendenhall, supra, at 556 (opinion of Stewart, J.). If there is no detention - no seizure within the meaning of the Fourth Amendment - then no constitutional rights have been infringed. ".

**Definition of Investigative Detention**

An investigative detention is an encounter between a suspect and a police officer in which the person has been seized by the officer and the officer has reasonable suspicion justifying the seizure. An investigative detention is a seizure of a private citizen by a law enforcement officer that is justified by a reasonable suspicion that the citizen is engaged in criminal activity. The primary purpose of the seizure is investigation and questioning.

From, Terry v. Ohio ( 1968 ) 392 U.S. 1;

" And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts [392 U.S. 1, 22] available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132 (1925); Beck v. Ohio, 379 U.S. 89, 96 -97 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e. g., Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253 (1960); Henry v. United States, 361 U.S. 98

(1959). And simple "'good faith on the part of the arresting officer is not enough.' . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be `secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck v. Ohio, supra, at 97. ... Thus, it is argued, the police should be allowed to "stop" a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity. ".

**Definition of Seizure**

A person is "seized" for purposes of a detention when either or the following occurs;

1.) an officer applies physical force on the person; or

2.) The person submits to the officer's show of authority.

From the case of California v. Hodari D., 499 U.S. 621;

" Held:

... To answer this question, this Court looks to the common law of arrest. To constitute a seizure of the person, just as to constitute an arrest - the quintessential "seizure of the person" under Fourth Amendment jurisprudence - there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's "show of authority" to restrain the subject's liberty. '.

**There Must Be Reasonable Grounds For The Detention**

The determination whether founded suspicion2 existed must be based on "the totality of the circumstances--the whole picture."3 United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). "[T]he detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417-18, 101 S.Ct. at 695; see also United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) ("Fourth Amendment requires 'some minimal level of objective justification' for making the stop.") (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)).

Further, any information given to a police officer by an informant must be reliable ( refer to discussion below ).

I.

**Detentions Not Justified**

The determination of whether a detention is reasonable is made in light of the particular facts of each case; In re Tony C., 21 Cal.3d 888.

In the following cases, the courts have held that the stops were not based on adequate grounds:

1.) People v. Henze, 253 Cal. App. 2d 986. A situation where two men handled shiny objects. Their criminal convictions were overturned because their originating conduct was not sufficiently linked with crime to justify a detention.

" The questions at issue are the validity of the detention, search, and arrest of the defendants at the time of their apprehension. ... The key issue is whether there was a sufficient basis to justify the temporary detention of the defendants at the time they were caught. ...

The case for detention boils down to the fact that the police saw two unknown men seated on the grass in a public park at 2:30 p.m. handling objects which shone in the sun. While this conduct qualified as unusual activity, we think the police acted prematurely in detaining the defendants without further information to fortify their initially aroused suspicions and to link this unusual activity in some fashion with crime. Accordingly, on the present record the evidence obtained as a result of the detention falls within the classification of improperly obtained evidence which should have been denied admission. ".

**Relevance**

At the time plaintiff was detained ( seized ) by the Def. U.C.S.D. police, there was no " sufficient basis to justify the temporary detention of " plaintiff " at the time " he was " caught ". There is no fact in the police report ( O. C. Ex. No. 42 ), which indicates that plaintiff was involved in committing a crime, at the time he was first detained. The only facts the police officers had to justify initially detaining plaintiff were:

i.) a man " looking into bathroom stalls " [ Gustafson's report, T.M. Ex No.6, line 3 ]; and

ii.) a man " looking over a stall " [ Reyes' report, T. M. Ex. No. 5, line 14 ].

As in the above People v. Henze case, the police have acted prematurely, and needed further

information before detaining plaintiff.

2.) United States v. Kerr, 817 F.2d 1384. A situation where a man was loading boxes into a car.

" Fourth amendment issues regarding the lawfulness of a search or seizure generally present mixed questions of law and fact. ... In contrast, a temporary detention for investigative purposes, or Terry stop, requires that the police officer have founded suspicion: reasonable suspicion based on articulable facts of some criminal activity afoot. ... To establish founded suspicion to support a temporary detention, the police officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. ... ".

**Relevance**

The only " specific and articulable facts " the instant case police officers had to " establish founded suspicion to support a temporary detention " of plaintiff were:

i.) a man " looking into bathroom stalls " [ Gustafson's report, T.M. Ex No.6, line 3 ]; and

ii.) a man " looking over a stall " [ Reyes' report, T. M. Ex. No. 5, line 14 ].

Officer Reyes wrote in his police report that he received a call of a " lewd act that was committed in the men's restroom ". This is more a legal conclusion, and not an " articulable fact ". Looking into bathroom stalls, is not a lewd act, and a lewd act is not looking over a stall. An "articulable fact" for a lewd act would be, for example, that there was "the touching of genitals".

3.) People v Aldridge ( 1984 ), 35 Cal 3d 473. A California Supreme Court case regarding police detaining someone because they were in a high crime area, it was nighttime, and the person tries to avoid the police.

" Officer Carlisle testified that his sole reason for detaining defendant was the radio broadcast he received from Officer Baldenegro. [6] Therefore, the detention of defendant can be found reasonable only if Baldenegro had sufficient information to justify making the detention himself. ...

However, the People suggest only three factors which they claim objectively justify a detention: it was nighttime; the incident took place "in an area of continuous drug transactions"; and defendant and his companions apparently sought to avoid the police.

Whether considered separately or together, these factors do not justify the detention. ... By contrast, the officer in the present case made no observation that objectively suggested narcotics activity or any other criminal conduct. Baldenegro's stated intent and consistently repeated policy was to conduct a general detention and interrogation of all persons on the lot, evidently hoping to uncover some evidence of some crime by some person. Our state and federal Constitutions were written precisely to outlaw such unrestricted general sweeps and searches. [9] It has long been the law, as Justice Jackson wrote, that "a search is not made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." (United States v. Di Re (1948) 332 U.S. 581, 595 [92 L.Ed. 210, 220, 68 S.Ct. 222] (fn. omitted).)

[1c] The People have not shown the required objective, specific, and articulable facts necessary to support this detention. Because the detention **[35 Cal.3d 481]** was unlawful, ..."

**Relevance**

Officer Gustafson's and Reyes' "reason for detaining" plaintiff "was the radio broadcast they received from" presumably, a dispatcher. "Therefore, the detention of " plaintiff " can be found reasonable only if " the dispatcher " had sufficient information to justify making the detention himself " or herself.

Officer Gustafson's report states that the dispatcher broadcast; " a male looking into bathroom stalls in the men's restroom ".

The dispatcher broadcast to Reyes, that " a lewd act was committed in the men's restroom ". Reyes then goes on to say that plaintiff " fit the description of a suspicious male that was seen looking over a stall in the men's restroom ".

This looking is insufficient to justify a detention. Without more ( e.g. an invasion of privacy, or a lewd act fact ), there is no crime.

" The " dispatcher has " not shown the required objective, specific, and articulable facts necessary to support this detention ".

Further, the instant case Defendant Officers did not "objectively" observe or know of any "suggested " unlawful sexual activity, or any other criminal conduct. ". The U.C.S.D. police

department and its officers are alleged to be "conducting sweeps of the area". That " unrestricted general sweeps and searches " are being carried out.

**No Reasonable Suspicion For**

**Any PC § 647 Violations**

Penal Code Section 647 reads " ... Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

> (d) Who loiters in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act.
>
> (k) (1) Any person who looks through a hole or opening, into, or otherwise views, by means of any instrumentality, including, but not limited to, a periscope, telescope, binoculars, camera, motion picture camera, or camcorder, the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside. This subdivision shall not apply to those areas of a private business used to count currency or other negotiable instruments. ".

**With Regards to PC § 647(d)**

Officer Reyes wrote out a Notice To Appear for " 647(d) Public toilet lewd act ". O.C., Ex. No. 38. There was neither reasonable suspicion nor probable cause for such a violation.

This Motion, in Exhibit No. 3, contains a copy of what is on the Lewd Conduct and Sex Crimes Attorney Bruce Nickerson's web site, at " www.brucenickerson.com ". This is the section titled " Lewd Conduct Cases Primer for Attorneys ". T.M. Ex No. 3, on pages 6-7, included as Step Seven, on how to handle the case, reads:

> " Seventh, when you obtain the police report carefully determine what you client is alleged to have done. If the allegation is that he simply " loitered " around the bathroom and that is the only charge, you must file a demurrer or a motion in arrest of

judgement, because there is no crime. Following my Caswell case, ( cited above ), I have never lost a " loitering " case that did not also include an allegation of actual sexual conduct. ".

The case of People v. Superior Court ( Caswell), 46 Cal.3d.381, states three " situations where noncriminal conduct may legitimately give rise to probable cause to believe an individual is in violation of section 647(d) ". These are;

1.) " an officer may personally know an individual and may be aware that the individual has repeatedly solicited or committed lewd acts at the same location in the past. [14] [13b] Under such circumstances, if the officer observes the individual linger suspiciously in the restroom for an inordinately long period of time, he might properly **[46 Cal.3d 396]** infer that the suspect did not have an innocent intent. fn. 5 ".

Foot Note 5 reads; "FN 5. Of course, while evidence of past acts is not admissible to prove "conduct on a specified occasion" (Evid. Code, § 1101, subd. (a)), it is admissible to prove a disputed fact other than one's propensity to commit a crime, such as intent. (Evid. Code, § 1101, subd. (b).) Further, it is clear a police officer may consider such past acts when determining whether reasonable cause to arrest exists. (See, e.g., People v. Martin (1973) 9 Cal.3d 687, 692 & fn. 5 [108 Cal.Rptr. 809, 511 P.2d 1161], cert. den. 414 U.S. 1113 [38 L.Ed.2d 740, 94 Cal.Rptr. 844].) "; and

2.) " In other cases, a police officer may have information from a reliable informant that a particular individual has disclosed his intent to frequent a particular public restroom to attempt to solicit acts in the restroom; in that situation too, the officer may well have probable cause to infer the suspect's intent even if the suspect has not yet committed indecent exposure or an actual solicitation. "; and

3.) " Similarly, complaints by citizens who have used a certain restroom that an individual was lingering inside engaging in suggestive conduct -- not amounting to an actual solicitation or indecent exposure -- may legitimately give rise to a reasonable inference that the individual harbors the illicit intent. ".

**Definition of " Lewd Conduct "**

In the past in California, and in other states, there has been conflicts about the meaning and definitions of terms and laws, relating to 'lewd conduct'. This is discussed by lewd conduct and sex crimes Attorney Bruce Nickerson's on his website. I have included excerpts of his website in T. M. Ex. No. 3. Pages 3-4 discuss this conflict, and states that the conflict has been resolved primarily by the cases:

1.) Pryor v. Municipal Court ( 1979 ) 25 Cal.3rd 238 ( a California Supreme Court case );

2.) People v. Caswell (1988) 46 Cal.3d 388 ( a California Supreme Court case ); and

3.) People v. Rylaarsdam ( 1982 ) 130 Cal.App.3rd Supp. 1.

The California Supreme Court of California, in People v. Caswell ( above ), above, defines " lewd or lascivious or any unlawful act " ( from PC § 647(d), same as instant case ) as:

" [ 8] Finally, the phrase "lewd or lascivious or any unlawful act," as interpreted by prior case law, also withstands constitutional scrutiny. fn. 3 [9a] This court was confronted with construing similar **[46 Cal.3d 392]** language in section 647, subdivision (a) in Pryor v. Municipal Court (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636]. We concluded the "terms 'lewd' and 'dissolute' ... are synonymous, and refer to **conduct** which involves the touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, annoyance or offense, if the actor knows or should know of the presence of persons who may be offended by his **conduct**." (Id. at p. 256.) [3d] , [5b] , [9b] , [10a] This limitation "serves not only to define the reach of the law but also to add a requirement of specific intent, a feature which has often served to avert a determination that a statute is unconstitutionally vague. [Citation.]" (Ibid.) We thus conclude section 647(d) satisfies the "fair notice" prong of the void-for-vagueness test. ...

...FN 3. The phrase "or any unlawful act" has been properly construed in this context to mean a "lewd" act. "As for the 'unlawful' act prohibited by section 647, subdivision (d), the word means under the doctrine of ejusdem generis and in the context of this subdivision, a 'lewd' act." (People v. Ledenbach (1976) 61 Cal.App.3d Supp. 7, 10 [132 Cal.Rptr. 643] [italics in original]; see also People v. S. P. (1980) 115 Cal.App.3d Supp. 12, 16 [170 Cal.Rptr. 478].) Thus, the dissenting opinion's concern that the term "any unlawful act" fails to provide constitutionally adequate notice is unfounded. ".

**Relevance**

For the instant case, Def. Gustafson's police report states he received a " radio call " about a "male looking into bathroom stalls". [ O.C. Ex. No. 42; Page 6; T.M. Ex. No. 6. line 3]. There is absolutely no statement regarding lewd conduct, in Gustafson's report.

Def. Office Reyes wrote in his report, that he received a radio call of a man who had committed a " lewd act ". [ O. C. Ex. No. 42, Page 3; T. M. Ex. No. 5, line 5. ]. Reyes then states on line 14, [ T. M. Ex. No. 5, line 14 ], that " .. COBB .. fit the description of a suspicious male that was seen looking over a stall in the men's restroom ". There is no use of the word " lewd ", or a synonym thereof, in the statement of Reporting Party Cilingir [ O.C. Ex. No. 42, Page 4; T. M. Ex. No: 7 ]. Cilingir's statement does not describe any " lewd ", or " lewd or lascivious or unlawful act " at all. Taken together, the minimum this implies, is that Def. Reyes does not understand the meaning of the word " lewd ". He had defined it as looking over a stall in a bathroom.

Beyond this, it implies that Def. Reyes wrote his police report, after the incident, to falsely justify and cover-up an unlawful and unconstitutional seizure and search of plaintiff. To initiate a prosecution so as to accomplish this. To use the prosecutorial and judicial immunities to cover-up the unlawfulness of the detention.

The U.C.S.D. police report statement of the reporting party, Atila Cilingir, ( O.C. Ex. No. 42, Page 4, under " **STATEMENTS:** "; T. M. Ex. No. 7. ], does not use the term " lewd " anywhere at all. Nor does it use a synonym for the word " lewd " anywhere. Nor does it use any term or phrase which describes sexual conduct of any kind ( e.g. lascivious; dissolute; or any of their synonyms.

Cilingir's statement is devoid of any word or phrase which describes the behavior proscribed by PC § 647(d), as discussed in People v. Caswell, and discussed above.

Cilingir's statement does not state that plaintiff looked at his nudity. Does not say that plaintiff tired to look at his nudity. Cilingir's statement does not state that he was in the bathroom stall, with the door closed. If the door was open, he would not have a reasonable expectation of privacy.

There are no facts which are sufficient to state a violation of any law. As such, the defendant officers did not have sufficient reasonable suspicion grounds to seize plaintiff.

**Definition of " Suggestive Conduct "**

Plaintiff has done a website search on "www.findlaw.com", for the phrase " suggestive conduct ", and found seven cases, including the above referenced case, People v. Superior Court ( Caswell), 46 Cal.3d.381. This search is herein include as Exhibit No. 12 ( T.M. Ex. No. 12 ).

**Case No. 1**

People v. Bremmer ( 1979 ), 30 Cal.App.3d 1058, reads:

" 2. Search by a Peace Officer When the Probationer's Activities Suggest a resumption of Misconduct. Since a peace officer's primary concern lies with enforcement of the law and not with rehabilitation of a probationer, the officer's exercise of authority is ordinarily activated only by violations, or seeming violations, of public order and safety. [5] When a known probationer subject to warrantless search is discovered conducting himself in a manner that suggests a resumption of the misconduct that brought about the condition of probation, a peace officer may exercise the authority of a general search order to search. The officer's search is a search on **[30 Cal.App.3d 1066]** suspicion only, but a suspicion grounded on present activity as related to past performance. The reasonableness of the exercise of the authority of a general search order is determined by the circumstances of the particular case. For purposes of illustration we give a few examples of **suggestive conduct**:

a. A police officer sees a probationer convicted of the sale of narcotics and subject to general search order, standing on a street corner at night in a high crime area engaging in brief conversations with passersby. An investigation of the probationer's activities and a warrantless search of his person for narcotics is authorized.

b. A police officer sees a probationer convicted of pickpocketing and subject to general search order, moving slowly and circuitously through a crowded airport, racetrack, or football stadium. An investigation and warrantless search of his person for stolen items is proper.

c. A police officer sees a person sitting in a parked car in a warehouse district

at midnight, and on investigation he learns by radio that this person is on probation for burglary and subject to a general search order. A warrantless search of the probationer and his vehicle is authorized.

In the foregoing instances sufficient relationship exists between the probationer's present activity and his past misconduct to make reasonable a search by a peace officer acting under the authority of a general search order.".

**Relevance**

As to relevance in the instant case, plaintiff was not on probation nor on parole at the time of the incident ( 2-3-2008 ). [ Declaration of John Cobb, Paragraph No. 1 ]. This can further be proven through discovery, and a through check of plaintiff's criminal record. The defendant U.C.S.D. police officers had no information, and no evidence, that plaintiff was on probation or parole. There is no evidence anywhere in the police report ( O.C. Ex. No. 42 ), that plaintiff was on probation or on parole. As such, the defendant officers did not have sufficient reasonable suspicion grounds to seize plaintiff.

**Case No. 2**

People v. Kukkanen, 248 Cal.App.2d Supp. 899, reads:

" [4] The city ordinances involved in Lane, Moss, Whitney, Hansen and Spitcauer, supra, all contained prohibitions of certain activities. In People v. Jordan, supra, Cr.A. 6645, the legislation purported to be a licensing ordinance. That ordinance was held invalid because read as a whole the purport of the provisions of the ordinance was "unmistakably the regulation of the lewd or non-legitimate aspects" of a figure studio. Robins, supra, decided since this case was argued, also involved a licensing ordinance.

By contrast no prohibitions are found in Ordinance 132,174 which adopted the 1966 amendment to section 103.102. The same regulations for granting or denying licenses and for disciplinary action are in the licensing ordinance as were there before Ordinance 132,174 was introduced. Most of these were in the ordinance when Daniel v. Board of Police Commissioners, supra, was decided. Not one of the grounds for disciplinary action mentions any sexual act or **suggestive conduct**.

It is not to be forgotten that the field mentioned in Lane and the cases following Lane is that of the "regulation of the criminal aspect of sexual activity." Neither nudity nor sex is obscene per se and under all circumstances (Parmelee v. United States (1940) 72 App.D.C. 203 [113 F.2d 729]). Nudity is not prohibited by this ordinance, although its use as entertainment requires a license. Any prosecution for obscene **[248 Cal.App.2d Supp. 905]** nudity would have to be under some other valid regulation. fn. 3 This licensing ordinance no more controls nonobscene nudity than did the same ordinance control the sale of intoxicating liquor (Daniel) or did a licensing ordinance for lawyers unlawfully regulate the practice of law (In re Galusha (1921) 184 Cal. 697 [195 P. 406]). ...

... F N 3. This is illustrated in the cases at bench. At the location known as The Wheel no lewd or obscene act was performed by the waitress Elizabeth Ann Kukkanen and she was booked only for lack of an entertainment license. At the location known as Three Little Pigs the officers observed what they considered a lewd act (the lifting of her breast into the beer she was serving) on the part of the waitress Delores Tenuta. She was not arrested under this licensing act but was booked under state law, to-wit, Penal Code, section 647 subdivision (a) (lewd **conduct**). ".

**Relevance**

This case defines "suggestive conduct" as a term for lewd conduct. It further states that nudity is not obscene conduct.

In the instant case, there is no specific fact example ( stated in the police report, Ex. No. O.C. 42 ) of any " suggestive conduct "; of any "lewd conduct"; of any " sexual act ". of any " sexual activity ". There is only a general statement of a " lewd act that was committed in the men's restroom " [ T. M. Ex. No. 5, line 5 ], stated in Reyes police report. Reyes goes on to say that the situation was about " a suspicious male that was seen looking over a stall " [ T. M. Ex. No. 5, line 14 ].

Def. Gustafson's radio call is only about a "male looking into bathroom stalls". There is absolutely no statement regarding lewd conduct, nor suggestive conduct, in Gustafson's report. There is no fact of a lewd or suggestive act in Gustafson's report at all.

It is alleged, that the use of the term " a lewd act " was used by Reyes ( in his police report, as written after the incident ), to try to justify plaintiff's unlawful detention. It at least shows that Def. Office Reyes certainly does not understand what the term "lewd " means. It means "

**Case No. 3**

In re Daniel G. ( 2004 ). 120 Cal.App.4th 824, reads:

" The court in *People v. Superior Court* ( *Caswell* ) ... The Supreme Court rejected that contention, holding that apparently lawful **conduct** could well give rise to probable cause to believe an individual had violated the statute. "For example, an officer may personally know an individual and may be aware *that the individual* has repeatedly solicited or committed lewd acts at the same location in the past. Under such circumstances, if the officer observes *the individual* linger suspiciously in the restroom for an inordinately long period of time, he might properly infer that the suspect did not have an innocent intent. In other cases, a police officer may have information from a reliable informant *that a particular individual* has disclosed *his* intent to frequent a particular public restroom to attempt to solicit acts in the restroom; in that situation too, the officer may well have probable cause to infer *the suspect's intent* even if *the suspect* has not yet committed indecent exposure or an actual solicitation. Similarly, complaints by citizens who have used a certain restroom *that an individual* was lingering inside engaging in **suggestive conduct**--not amounting to actual solicitation or indecent exposure--may legitimately give rise to a reasonable inference that *the individual* harbors the illicit intent." ...

The common thread running through both *Frazier* and *Caswell* is the confluence of the past and present **conduct** of a specific individual. In *Frazier,* all three defendants had been spotted near the high school on past occasions either engaged in or in very close proximity to ongoing criminal activity. In determining whether there was sufficient evidence that the three defendants intended to look for the opportunity to commit a crime, the convictions were sustained as to only the two defendants who were observed nearby or in the process of committing criminal acts at the time of their arrests. ( *Frazier, supra,* 11 Cal. App. 3d at pp. 183-184.) The defendant who was "doing **[120 Cal.App.4th 835]** nothing" at the time of his arrest--who was seen simply standing with a group of

juveniles--had his conviction reversed. In *Caswell*, the Supreme Court held that evidence of an individual's prior **conduct**, when coupled with evidence of other suspicious but noncriminal **conduct** occurring right before the arrest, might be enough to show the required intent to commit a lewd act. ( *Caswell, supra,* 46 Cal.3d at pp. 395-396, and fn. [6] Such evidence is missing here. Gangs will often maintain their dominance through fear and intimidation by the use of gang signs and symbols. ... They may also do so by way of seemingly benign jewelry, words, or clothing. ... [construing constitutionality of Iowa school district regulation banning gang-related clothing and symbols].) Other evidence might include observations of intimidating **conduct** such as menacing looks or threatening body language. ".

**Relevance**

In the instant case, there is no fact or evidence ( in the police report; O.C. Ex. No. 42 ) that plaintiff did " linger suspiciously in the restroom for an inordinately long period of time ". There is no fact as to how long plaintiff was in the bathroom. No fact that plaintiff had disclosed to an informant his intent to violate any law.

No fact that plaintiff engaged in any " suggestive conduct ". No fact that plaintiff was wearing gay styled clothes or jewelry ( "gang signs and symbols ... gang-related clothing and symbols " – homosexual type clothes and jewelry, characteristic of the gay or homosexual community ). NO evidence for example, that plaintiff wore a shirt which read something like " I want to have sex ". No fact or evidence that plaintiff was threatening, or giving menacing looks, or threatening with his body language.

No fact that plaintiff was sexually suggestive by way of his manner, talking, facial expressions, body language, hand gestures, movements of any type. Reporting Party Cilingir states that plaintiff " mumbled something to him and continued looking at him " ( O .C. Ex. No. 42, Page 4, T. M. Ex. No. 7, line 6 ). This is neither sexually suggestive, nor suggestive conduct.

There is no evidence of plaintiff's prior conduct, e,g. prior crimes, as grounds for any intent, as require by People v. Caswell.

As such, there was no reasonable suspicion that plaintiff had, was, or was going to, commit

any crime(s).

**Case No. 4**

In re Daniel G. (2004) [ Cal.App.4th ]: This is the same case as describe above.

**Case No. 5**

In re Hall [ 30 Cal.3d 408 ]:

This case relates to suggestive police line-ups.

**Case No. 6**

People v. Superior Court ( Caswell ) ( 1988 ) 46 Cal.3d 381:

Describe above.

**Case No. 7**

People v. Boyd ( 1990 ) 222 Cal.App.3d 541:

Case deals wit suggestive police line-ups.

**Relevance**

In the instant case, none of the above 3 situations apply to plaintiff, and there is insufficient evidence for any reasonable suspicion that plaintiff had, was, or was going to, commit a crime.

As to No. 1: Plaintiff has never been convicted of any loitering or solicitation crime. Refer to Declaration of John Cobb, Paragraph No. 39 ( Plaintiff has never been convicted or even charged with any kind of sex crime ).

As to No. 2: There is no evidence ( in the U.C.S.D. Police Report; O.C. Ex. No. 42) ) that plaintiff had told someone that he was going to go to the bathroom and solicit for illegal sexual acts.

As to No.3: There is no evidence that plaintiff was loitering, or lingering " suspiciously in the restroom for an inordinately long period of time ", or any evidence remotely like this. No where in the statement of Reporting Party Cilingir, T. M. Ex. No. 7, does it state that plaintiff was loitering. No where in the U.C.S.D. police report ( O.C. Ex. No. 42 ), does it state a fact that plaintiff was loitering. No where is there any evidence that plaintiff was " lingering inside engaging in suggestive conduct ". There is not a scintilla of evidence that plaintiff engaged in any " suggestive conduct " whatsoever.

**With Regards To Searches**

**Reasonable Expectation of Privacy:**

In *Katz v. United States* ***States****, 389 U.S. 347 (1967)*,[22] Justice Harlan issued a concurring opinion articulating the two-part test later adopted by the Court as the definition of a *search* for Fourth Amendment purposes: (1) governmental action must contravene an individual's actual, subjective expectation of privacy; (2) and that expectation of privacy must be reasonable, in the sense that society in general would recognize it as such.

In order to meet the first part of the test, the person from whom the information was obtained must demonstrate that they, *in fact*, had an actual, subjective expectation that the evidence obtained would not be available to the public. In other words, the person asserting that a search was conducted must show that they kept the evidence in a manner designed to ensure its privacy.

The second part of the test is analyzed objectively: would society at large deem a person's expectation of privacy to be reasonable? If it is plain that a person did not keep the evidence at issue in a private place, then no *search* is required to uncover the evidence.

**Relevance**

Plaintiff had a reasonable expectation to privacy with regards to his shirt pocket ( from which Def. Officer Reyes grabbed a bus pass, presumably thinking it was a driver's license ). Plaintiff also had an expectation of privacy with regards to his wallet, his driver's license, the information on it, and a reasonable expectation to privacy to the searching of his backpack. Plaintiff did not voluntarily give his driver's license to the police officers. Plaintiff was battered when both of these privacy violations occurred.

**With Regards to PC 647 § (k)(1) ( is now (j)(1) )**

From People v. Pearson (1985) 169 Cal.App.3d 319:

" The United States Supreme Court has uniformly held that application of the Fourth Amendment depends on (1) whether the person invoking its protection by his conduct "has 'exhibited an actual (subjective) expectation of privacy,'" and (2) whether the individual's expectation, viewed objectively, is "reasonable" or "justifiable." (Smith v. Maryland (1979) 442 U.S. 735, 740 [61L.Ed.2d 220, 226-227, 99 S. ct. 2577 ]. ).

From Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1:

"Moreover, the plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant. If voluntary consent is present, a defendant's conduct will rarely be deemed "highly offensive to a reasonable person" so as to justify tort liability. (Rest.2d Torts, § 652B, com. c [no liability for public observation of plaintiff "since he is not then in seclusion, and his appearance is public and open to the public eye"]; Gill v. Hearst Publishing Co. (1953) 40 Cal.2d 224, 230 [253 P.2d 441] [plaintiffs waived any right to privacy by a "pose voluntarily assumed in a public market place"]; Aisenson v. American Broadcasting Co. (1990) 220 Cal.App.3d 146, 162 [269 Cal.Rptr. 379] ["One factor relevant to whether an intrusion is 'highly offensive to a reasonable person' is the extent to which the person whose privacy is at issue voluntarily entered into the public sphere."]; Melvin v. Reid (1931) 112 Cal.App. 285, 290 [297 P. 91] [no right to privacy in matters publicized with consent: "There can be no privacy in that which is already public."]; see also Kapellas v. Kofman (1969) 1 Cal.3d 20, 36-37 [81 Cal.Rptr. 360, 459 P.2d 912].) The maxim of the law "volenti non fit injuria" (no wrong is done to one who consents) applies as well to the invasion of privacy tort. (Rest.2d Torts, § 892A, com. a; see also Civ. Code, § 3515.) In determining the " 'offensiveness' " of an invasion of a privacy interest, common law courts consider, among other things, "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." (Miller v. National Broadcasting Co., supra, 187 Cal.App.3d at pp. 1483-1484.) ".

**Relevance**

The instant case privacy violation aspect parallels the case of People v. Henze, 253 Cal. App. 2d 986, described above. This is a case where two men had committed burglary, and were looking at the coins they had take, These coins were shinny, and the police observed the shiny coins, and apprehended the two men based upon this alone ( the shininess ), with out knowing that the two men had stolen the shiny coins – without knowing that a crime had occurred, even

though it had. The police stopped the car, and found other items from the burglary. The convictions were reversed for prejudicial error in the admission of evidence. There had been no reasonable suspicion ( only just shinny coins – insufficient evidence ) to originally detain the two men.

**Reliability of Information**

From Illinois v. Gates, 462 U.S. 213:

To determine whether an " informant's tip establishes probable cause ... The "totality of the circumstances" approach that traditionally has informed probable-cause determinations is substituted in its place. ...

3. The judge issuing the warrant had a substantial basis for concluding that probable cause to search respondents' home and car existed. Under the "totality of the circumstances" analysis, corroboration of details of an informant's tip by independent police work is of significant value. Cf. Draper v. United States, 358 U.S. 307 . Here, even standing alone, the facts obtained through the independent investigation of the Bloomingdale police officer and the DEA at least suggested that [462 U.S. 213, 215] respondents were involved in drug trafficking. In addition, the judge could rely on the anonymous letter, which had been corroborated in major part by the police officer's efforts. Pp. 241-246. ...

(See *People v. Ivey* (1991) 228 Cal.App.3d 1423 [good faith exception does not apply when arresting officer relies on information the police department knows or should know is inaccurate].) ...

The Illinois Supreme Court concluded - and we are inclined to agree - that, standing alone, the anonymous letter sent to the Bloomingdale Police Department would not provide the basis for a magistrate's determination that there was probable cause to believe contraband would be found in the Gateses' car and home. The letter provides virtually nothing from which one might conclude that its author is either honest or his information reliable; ".

**Relevance**

In the instant case, there was no " corroboration" of the " lewd act " information claimed to have been received by Officer Reyes [ T. M. Ex. No. 5, line 5. ], and no "corroboration " of

information before plaintiff was seized. If fact, Cilingir's statement refutes any " lewd " conduct, or facts alluding to "lewd " conduct by plaintiff. Further, the " corroboration" did not occur even *after* plaintiff was seized, and plaintiff was arrested and issued a citation for lewd conduct. In spite of all this, Reyes wrote plaintiff a Notice To Appear for " 647(d) public toilet lewd act ".

There is not a scintilla of evidence as to who saw the lewd act. There is not even a statement that the lewd act was observed by an anonymous witness. Officer Reyes just states that he received a radio call about a lewd act. He does not say that he receive a call of a lewd act, as seen by some witness.

**Information From Unknown Informant**

Information for an informant whose identity or reliability is unknown cannot of itself furnish a basis of probable cause for an arrest, unless the information is corroborated in essential particulars or is verified in essential points by investigation before the arrest. ( Katz v. Peyton, 334 F2d 77. ). If the initial impetus for an arrest is an informant's tip that is not by itself sufficient to establish probable cause, the corroborating information relied on by the arresting officer must tend to show that the arrestee had committed or was in the process of committing a felony ( Whiteley v. Warden, Wyoming State Penitentiary ( 1977 ) 401 US 560. ).

" 1. Petitioner's arrest violated his rights under the Fourth and Fourteenth Amendments and the evidence secured incident thereto should have been excluded from his trial. Pp. 564-569.

(a) The complaint, which did not mention that the sheriff acted on an informer's tip, and which consisted of no more than the sheriff's conclusion that the individuals named committed the offense, could not support the independent judgment of a disinterested magistrate. P. 565.

(b) The standards applicable to the factual basis for an arresting officer's probable-cause assessment are no less strict than those applicable to the magistrate's assessment Here the arresting officer had no information to corroborate the report that the suspects had committed the crime and the fact that the warrantless arrest was based on a police radio bulletin cannot supply the element of probable cause that the officer who issued the bulletin lacked. Pp. 565-567. ".

**Relevance**

In the instant case; " the arresting officer [ added: Reyes ] had no information to corroborate the report that the suspects [ added: plaintiff ] had committed the crime and the fact that the warrantless arrest was based on a police radio bulletin cannot supply the element of probable cause that the officer who issued the bulletin lacked."

**When No Underlying Facts**

A police officer does not have reasonable grounds for believing that a person has committed a felony when the only information he has is that a reliable person has told the officer that he believes the accused had committed a felony, without stating the facts upon which that belief is based ( Small v. Commonwealth, 305 Ky 530, 204 SW2d 945. ).

**Relevance**

There were no underlying facts as to what plaintiff did which consisituted the lewd act. The U.C.S.D. police officers could not have had reasonable grounds to detain, or arrest plaintiff.

**Invented Ground For A Stop**

If police have invented the ground for the stop, the detention is not authorized, even it the stop the police then determine that the defendant has an outstanding warrant and arrest the defendant pursuant that warrant. ( People Rodriguez ( 2006 ), 143 Cal.App. 4th, 1137 ).

From People v. Ridriguez;

> If it indeed happened, fabricating the grounds for a traffic stop and repeating this fabrication under oath at a suppression hearing "strikes at the very core of our system of law." fn. 1. The subsequent discovery of lawful grounds to arrest and search the defendant does not dissipate the taint of such a flagrant violation of the defendant's constitutional rights and society's necessary trust in its law enforcement officials. Nor is this violation, if it occurred, one for which the suppression of evidence is too drastic a remedy. Quite the opposite is true. Failing to invoke the most drastic remedy available to a court would have the effect of legitimizing deceitful conduct on the part of the police and permitting them to conduct a traffic stop for any reason or no reason at all in contravention of leading United States and California Supreme Court opinions. fn. 2 ".

**Relevance**

In the instant case, there is an invented fact of a " lewd act ", committed by a man fitting plaintiff's description. This is stated directly in Reyes' police report. He received a radio of a mane fitting plaintiff's description committing a lewd act. Plaintiff was seized due to this lewd act. There is no corroboration of this lewd act by the victim's ( Reporting Party Cilingir's ) own statement, nor in Officer Gustafson's police report. Officer Gustafson's police report provides insufficient facts to stop plaintiff ( plaintiff looking into bathroom stalls ).

It is not objectively reasonable that Reporting party Cilingir's observations constitute a lewd act, as per PC 647 § (d). The only person using the term " lewd act " is Officer Reyes himself.

**Officers' Mistake of Law – Required To Be Correct**

From the case of People v. McNeil ( 2002 ) 96 Cal.App.4th 1302:

"[2] Its application does not depend on the subjective good faith of individual officers, but on the objective reasonableness of the officers' reliance on a defective warrant or statute. (*Illinois v. Krull, supra,* 480 U.S. at p. 355.) Such a standard "requires officers to have a reasonable knowledge of what the law prohibits." (*United States v. Leon,* 468 U.S. at p. 920, fn. 20.) In particular, "[a] statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws." (*Illinois v. Krull*, *supra*, 480 U.S. at p. 355.) ."

An office's mistake of law involves the officer relying on his or her own knowledge, which is required to be correct and cannot be excused by mistaken belief.

**Relevance**

In the instant case, there was the fact of a committed lewd act. This lewd act is not attributable to any one. It is not attributable to the witness Cilingir. It is not in his witness statement.

It is not objectively reasonable that Reporting party Cilingir's observations constitute a lewd act, as per PC 647 § (d). The only person using the term " lewd act " is Officer Reyes himself.

**FACTS**

[ Note The police report of Office Reyes is T.M. Ex. No. 5.

The police report of Office Gustafson is T.M. Ex. No. 6.

The witness statement of Atila Cilingir is T. M. Ex. No. 7. ].

Please read through the Declaration of John Cobb , attached herein. Please also read through Exhibits No.s 11, 12 and 13.

Plaintiff was arrested ( a probable cause requirement ), as determined by being read his Miranda rights. T. M. Ex. No. 5, line 32; " I read COBB his Miranda Rights ..." .

The instant case is that, Officers Reyes and Gustafson received radio calls about a man looking into bathroom stalls. But they had no information regarding that any crime that had been committed. E.g. a violation of privacy crime ( nor a sexual solicitation ). They had no facts that a crime had occurred.

The U.C.S.D. notice to appear was written for PC 647 § (d) – lewd conduct, and then the City Attorney dropped this charge, and charged plaintiff with a cout 1 of PC 647 § (k)(1) – a privacy violation. never prosecuted plaintiff for the Notice To Appear citation charge of PC 647 § (d), a lewd conduct charge. There is no fact in the police report that a lewd conduct act occurred ( e.g. genital contact, or masturbation observed ). No fact of such in Cilingir's witness statement. Plaintiff was prosecuted for PC § 647 (k)(1), a privacy charge. Plaintiff accepted a plea to this charge privacy, with a reduction on another charge ( a petty theft reduce to a trespassing ).

In the instant case, defendant police officers Reyes and Gustafson, did not have reasonable suspicion to detain plaintiff for a privacy violation. They also did not have probable cause to arrest plaintiff for a privacy violation. They had no probable cause to issue plaintiff a citation for a privacy violation.

The defendant police officers behavior is governed by the fourth amendment, applied to the states by the fourteenth amendment, and by the concepts of reasonable suspicion and probable cause.

The defendant police officers didn't determine that there was a privacy interest violation.

At the time of the incident, Def. police officers, acted as if they did not have any reasonable concept of what a privacy violation could be. They acted as if they did not have any reasonable concept of what a PC section 647(d) ( lewd and lascivious conduct ) violation could be. They only knew of the lewd and lascivious concept.

Officer Reyes interviews Report Party Cilingir, then writes out a dilatation for lewd conduct, even though Cilingir's statement is void of any lewd conduct. Officer Reyes is further stating, that

he received a call about a lewd act which occurred in the bathroom, takes the statement of Cilingir, Cilingir himself does not state he saw a lewd act, and does not use the word lewd in his statement. Then Reyes wrties out a citation for a lewd act having occurred. Taken together, this infers that Reyes had injected the lewd act crime into the circumstances.

**Reyes' Investigation With Cilingir – Produced Insufficient Evidence For A Privacy Violation**

Reyes investigation did not determine whether Cilingir was inside the toiled, with the door open or closed. If is was open, he would not have had a reasonable expectation of privacy.

**Negligent Training and Entrustment**

The two U.C.S.D. police officers have been inadequately trained. The U.C.S.D. police department has inadequately tested their police officers. If the instant case restroom is a location where men meet to engage in sexual activity ( as describe in the cases of Pryor v. Municipal Court (1979) 25 Cal.3rd 238; People v. Rylaarsdam (1982) 130 Cal.App 3rd Supp. 1; People v. Superior Court ( Caswell, 1988 ) 46 Cal.3d 381 ), and the U.C.S.D. police department knows about this, then the U.C.S.D. police department should be training its officers about such situations. Note that the above cases have been settled for a long time. Police officer are required to know settled law. Training is officers to know what and what does not constitutes lewd an lascivious, and sexual exposing behaviors ( PC §§ 314.1, 647(a), 647(d) ). Officer Reyes doesn't know. Officer Gustafson doesn't know, and Officer Jones doesn't' know.

Further, the U.C.S.D. police department and the U.C.S.D. police officers are working at getting plaintiff convicted of some type of sexual deviancy crime. There is evidence of the falsification of police reports. This had happened in the past at U.C.S.D., with the police.

**Excessive Use of Force**

Claims for excessive force or unlawful seizure of evidence during the course of an arrest generally fall outside of Heck v. Humphrey (1994) 512 U.S. 477. Plaintiff is claiming the defendant police officers used excessive force.

Plaintiff should not have been seized altogether. Still, the situation regarding plaintiff not giving his driver's license to the police officers should have been handled by them in a non-violent way. E.g., by them stating that if plaintiff did not provide his driver's license, that he would be charged

with a crime, and / or, would be taken to the police station for identification there. E.g. booking, Photograph and fingerprints. Def. police officers should not be scheming to look for ways to search detainees who won't provide physical identification.

**No Protection From Liability Via Gov't Code § 821.6**

In Gillian v City of San Marino, 147 CA 4th 1033, the court held that Gov't Code § 821.6 does not immunize public employees against causes of action based on arrests without probable cause.

From the text of the case:

> "Defendants, however, are immune from liability for defamation and intentional infliction of emotional distress, but they are not immune from liability for violation of Civil Code section 52.1 based on a false arrest. We conclude further that the defendants are entitled to a new trial to determine the amount of compensatory damages. [147 Cal.App.4th 1038] ...
>
> [2] " 'Probable cause exists when the facts known to the arresting officer would persuade someone of "reasonable caution" that the person to be arrested has committed a crime. ... Upon proof that an arrest and confinement occurred without process and that the plaintiff was damaged, the defendant has the burden of persuasion to prove that the arrest was justified. ... Probable cause is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs. (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 454.) The arresting officer's actual motivations or beliefs should play no role in the court's determination of probable cause. (*Ibid.*).
>
> We conclude, as did the jury, based on the totality of the circumstances, that the information known to the police at the time of Gillan's detention was not sufficiently consistent, specific, or reliable to cause a reasonable person to believe the accusations of sexual molestation. ...
>
> Because Government Code section 821.6 provides no immunity from liability for false arrest or false imprisonment (*Sullivan v. County of Los Angeles*, *supra*, 12 Cal.3d at pp. 719-722), section 821.6 provides no immunity from liability under Civil Code section 52.1

based on an arrest without probable cause. ".

**Damages Available**

Liabilities arise when there is " injury ". Refer to Govt C 815.2(a0, 815.4, 815.6, 820(a), 835. Govt. Code 810.8 defines " injury " as " death, injury to a person, damage of loss of property, or any other injury that a person may suffer to his person, reputation, character, feeling, or estate, of such nature that it would be actionable if inflicted by a private person. ".

Although the definition of " injury " under 8110.8 is braod, ( Delta Farms Reclamation Dist. No. 2028 v. Superior Court ( 1983 ) 33 C3d 699, 711, 190 CR 494 ( emotional distress is compesatable injury )), " public entities and public employees may be held liable only for injuries to the kind of interests that have been protected by the courts in actions between private persons. "

**Under Federal Civil Rights**

In cases involving actual injuries stemming from violations of civil rights, a plaintiff is entitled to damages that would be generally available under analogous state tort law. Memphis Community Sch. Dist. V. Stachura, 477 US 299. " [C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, ..., personal humiliation, and mental anguish and suffering. " 477 US at 307, 91.

**Punitive Damages**

Punitive damages may be awarded against an individual defendant when conduct is oppressive or shown to be motivated by evil motive or intent, or when is involves reckless or callous indifference to the federally protected rights of others. Smith v Wade, 461 US 30; Dang v Cross, ( 9th Cir. ) 422 F3d 800. ( noting that in Smith, the Supreme Court adopted general standard for imposition of punitive damages, which included "oppressive" conduct). Significantly, this "threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness.". 461 US at 56. Thus the mere fact that a plaintiff establishes a substantive dur process claim based on reckless conduct by a defendant does not automatically mean that punitive damages may be awarded, the jury must make a separate finding on the Smith factors. See 461 US at 52.

**Relevance**

Deliberately falsifying evidence to obtain an arrest warrant amounts to malice, ( making the immunity of CC 43.55 ) inapplicable. McKay v County of San Diego, 111 CA3d 251.

In the instant case, there is substantial evidence that the two police reports ( written by Officers Reyes and Gustafson ), have may discrepancies in them. Further, they have been falsified, and differ substantially from plaintiff's account of the incident.

Further, there is the issue of the " lewd act " evidence fact. Where did this come from. Is is that it was just made up by the U.C.S.D. police.

**Taking Plaintiff's Driver's License Information**

**Violated His Fifth Amendment Right**

" (c) Hiibel's contention that his conviction violates the Fifth Amendment's prohibition on self-incrimination fails because disclosure of his name and identity presented no reasonable danger of incrimination. The Fifth Amendment prohibits only compelled testimony that is incriminating, see *Brown* v. *Walker,* 161 U. S. 591, 598, and protects only against disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used, *Kastigar* v. *United States,* 406 U. S. 441, 445. Hiibel's refusal to disclose was not based on any articulated real and appreciable fear that his name would be used to incriminate him, or that it would furnish evidence needed to prosecute him. *Hoffman* v. *United States,* 341 U. S. 479, 486.".

In the instant case, plaintiff was a pedestrian, had take a bus to U.C.S.D., and any crime potential did not involve an automobile, or, to being in a bar and underage. As such, Def. Officers obtaining of plaintiff's drivers license information, could have led to information used in a criminal prosecution, or could have led to other evidence that might be so used – violations of plaintiff's fifth amendment right.

**Plaintiff Was Seized**

A person is "seized" for purposes for detention when either of the following occurs;

1.) an officer applies physical force to the person; or

2.) the person submits to the officer's show of authority.

[ California v. Hodari D., 499 U.S. 621, United States vs. Santamaria-Hernandez, 968 F.2d 980. ].

## Clearly Established Rights

From Anderson v. Creighton, 483 U.S. 635;

" Held:

1. Petitioner [ added; same as U.C.S.D. defendant police officers ] is entitled to summary judgment on qualified immunity grounds if he can establish as a matter of law that a reasonable officer could have believed that the search comported with the Fourth Amendment even though it actually did not. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time the action was taken. Harlow v. Fitzgerald, 457 U.S. 800 . In order to conclude that the right which the official allegedly violated is "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The Court of Appeals - which apparently considered only the fact that the right to be free from warrantless searches of one's home unless the searching officers have probable cause [483 U.S. 635, 636] and there are exigent circumstances was clearly established - erred by refusing to consider the argument that it was not clearly established that the circumstances with which petitioner was confronted did not constitute probable cause and exigent circumstances. The relevant question here is the objective question whether a reasonable officer could have believed petitioner's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. Petitioner's subjective beliefs about the search are irrelevant. Pp. 638-641. ".

In the instant case, the U.C.S.D. officers contacted plaintiff for a Terry stop, requiring reasonable suspicion. Upon determining that no crime occurred, the officers, converted the stop into a stop upon probable cause – an arrest, and following this, when writing their police reports, falsified their police reports to fabricate probable cause. They fabricated a safety concern, which did not exist.

## No Reasonable Suspicion For Contacting Plaintiff.

In the instant case, the U.C.S.D. officers contacted plaintiff for a Terry stop, requiring

reasonable suspicion.

This started with them receiving radios calls concerning;

Gustafson's report is as follows;

Gustafson: " I received a radio call of a male looking into bathroom stalls in the men's restroom at Pepper Canyon Hall on the UCSD campus. "

[ Gustafson's police report, This Motion ("T.M."), Ex. No. 6, Line 3 ].

Gustafson describes a " looking into bathroom stalls " crime potential.

Whereas, Reyes' report is totally different, and a completely different crime potential, and is a lewd act crime potential.

Reyes: " On 02-03-2006, ... I received a radio call of a lewd act that was committed in the men's restroom located at Pepper Canyon Hall.".

What should have occurred, was that that the defendant officers should have released plaintiff from the Terry-stop, after investigating, and determining that no crime had occurred. Instead, they determined that no crime had occurred, unreasonably searched plaintiff, and then issued plaintiff a citation anyway, so as to change the stop into an arrest. They issued the citation ( for PC 647 (d) ), and changed the seizure into an arrest. Note that the police officers would have written their police reports after the incident was long over. Upon reflecting about what a better way to cover-up the unreasonable search, they falsified the police report ( specifically victim Cilingir's statement ) to state that a privacy violation had occurred ( PC 647 (k) (1) ). This would have had to have been the case, since, they realized that they could not falsify the facts enough, to make Cilingir spell out facts which violated the lewd conduct charge ( 647 (d) ). Eventually, much, much later, the prosecution ( continuing the conspiracy and cover-up ) changed the changed into this PC 647(k)(1) violation.

This is alleged to have occurred because, after the incident occurred, the police officers, so as to protect themselves from possible liability from what they had done during the stop, changed the stop from a Terry-stop ( reasonable suspicion ), into an arrest-stop ( probable cause ).

However, to do this, they had to fabricated a fact, e.g. that plaintiff violated Reporting Party Cilinginr's privacy, and continued looking into the stall, after Cilingir spoke to plaintiff. Upon determining that no crime occurred, that plaintiff had not committed a crime, the officers.

wrote plaintiff a citation for a crime plaintiff did not commit, a citation issued without reasonable suspicion nor probable cause ( PC 647(d) ). Following this, when writing their police reports, the officers fabricated their reports, and finessed the situation into one based on reasonable suspicion and probable cause for a privacy violation ( PC 647( k) (1) ). They realized that it was easier to do the cover-up this way.

converted the stop into a stop upon probable cause – an arrest, and following this, when writing their police reports, falsified their police reports to fabricate probable cause. They fabricated a safety concern, which did not exist.

**No Reasonable Suspicions Nor Probable Cause For a Lewd Conduct, PC § 647(d) Charge, as Charged By Defendant U.C.S.D. Police Officers Reyes and Gustafson.**

In the instant case, the U.C.S.D. officers contacted plaintiff for a Terry stop, requiring reasonable suspicion. Upon determining that no crime occurred, the officers, converted the stop into a stop upon probable cause – an arrest, and following this, when writing their police reports, falsified their police reports to fabricate probable cause. They fabricated a safety concern, which did not exist.

**Plaintiff Was Seized by U.C.S.D. Police**

The Defendant U.C.S.D. police seized plaintiff – a reasonable person would believe that he had been detained by these police officers.

From Reyes' police report ( T.M. Ex. No. 5 ):

10. Corporal Gustafson and I contacted COBB at the east entrance of Price Center.
11. COBB appeared to be nervous.
12. I asked COBB for some identification.
13. COBB asked my why he was being contacted.
14. I told COBB that he fit the description of a suspicious male that was seen looking over a stall in the men's restroom.

From Gustafson's police report ( T.M. Ex. No. 6 ):

11. Officer REYES caught up to the suspect at the east entrance to the Price Center

food court.

12. Officer REYES asked the male for identification.

Plaintiff did not walk away from the offices. Plaintiff believed he had been detained ( seized ) by the two Defendant U.C.S.D. police officers, Reyes and Gustafson ( T. M. Declaration of John Cobb; Paragraph No. 3 ). Cobb was eventually read his Miranda Rights – he was arrested.

**A Misdemeanor Arrest Is Invalid If The Offense Did Not Occur In Officers Presence**

**( Plaintiff's Alleged Offense Did Not Occur in Presence of Defendant Officer )**

From the case of, <u>People v. Welsch (1984) 151 Cal.App.3d:</u>

" Penal Code section 836 states: "A peace officer may make an arrest in obedience to a warrant, or may ... without a warrant, arrest a person: [¶] 1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence."

[1] The requirement of "presence," entitling an officer to make a valid misdemeanor arrest, is to be interpreted liberally. (In re Alonzo C. (1978) 87 Cal.App.3d [illegible] [151 Cal.Rptr. 192].) Physical proximity is not essential as long as the crime is "apparent to the officer's senses." (Pate v. Municipal Court (1970) 11 Cal.App.3d 721, 725 [89 Cal.Rptr. 893]; People v. Bradley (1957) 152 Cal.App.2d 527, 533 [314 P.2d 108].)

Whether the offense is committed in the officer's presence is to be determined by the events observable to the officer at the time of the arrest. "If the officer cannot testify, based on his or her senses, to acts which constitute every material element of the misdemeanor, it cannot be said that the officer has reasonable cause to believe that the misdemeanor was committed in his presence." (In re Alonzo C., supra, 87 [illegible]; 713.) ".

**U.C.S.D. Police Defendants Had No <u>Reasonable Suspicion</u>**

**That Plaintiff Had Committed, Was Committing, or Would Commit Any Crime**

**( Insufficiency of Facts To Constitute Any Crime(s) )**

**U.C.S.D. Police Defendants Had No <u>Probable Cause</u> For Violation of PC § 647(d).**

**( Insufficiency of Facts For Violation )**

Reading Reporting Party and Victim Atila Cilingir's statement, as written in the police report. ( This Motion ( " T.M." ) Ex. No. 7 ), there are no facts of any kind, stating that plaintiff violated PC § 647(d). PC 647(d) reads;

> " 647. Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: ...
>
> (d) Who loiters in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act. ...
>
> (k) (1) Any person who looks through a hole or opening, into, or otherwise views, by means of any instrumentality, including, but not limited to, a periscope, telescope, binoculars, camera, motion picture camera, or camcorder, the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside. This subdivision shall not apply to those areas of a private business used to count currency or other negotiable instruments. "

**With No Reasonable Suspicion Not Probable Cause –**
**Police Stop of Plaintiff Should Be Governed By Consent Rules**

Plaintiff was seized by the U.C.S.D. police in violation of the Fourth Amendment. There was no reasonable suspicion ( for a Terry-Stop ), nor probable cause for his seizure.

As such, Plaintiff could have walked away from U.C.S.D. police. Certainly, plaintiff's seizure and subsequent search were unconstitutional.

> " Police officers enjoy "the liberty (again, possessed by every citizen) to address questions to other persons," id., at 31, 32-33 (Harlan, J., concurring), although "ordinarily the person addressed has an equal right to ignore his interrogator and walk away." Ibid. ". [ From; United States v. Mendenhall, 446 U.S. 544. ].

From Florida v. Royer, 460 U.S. 491 (1983);

The person [460 U.S. 491, 498] approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. Terry v. Ohio, 392 U.S., at 32 -33 (Harlan, J., concurring); id., at 34 (WHITE, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. United States v. Mendenhall, supra, at 556 (opinion of Stewart, J.).

**Plaintiff Was Falsely Imprisoned, Assaulted, and Battered by U.C.S.D. Police**

Plaintiff was seized by the U.C.S.D. police in violation of the Fourth Amendment. There was no reasonable suspicion ( for a Terry-Stop ), nor probable cause for arrest.

Plaintiff was assaulted and battered by the Defendant U.C.S.D. police officers. This is a violation of PC §§ 240 / 241, and PC §§ 242 / 243. Defendants Reyes and Gustafson assalted, battered, and imprisoned plaintiff, against his will.

Plaintiff was falsely imprisoned by the Defendant U.C.S.D. police officers. This is a violation of PC § 236. If the false imprisonment in effected by means of violence, menace, fraud, or deceit, it becomes a felony, PC § 237.

**No Legal Justification For a Patdown Search for Identification**

From the case of People v. Garcia ( 2006 ) 145 Cal.App.4th 782;

" [1] The celebrated case of *Terry v. Ohio* (1968) 392 U.S. 1, allows the police to perform a "pat down search" for weapons where there is reason to believe that the person is armed and dangerous. This rule cannot be morphed into a new rule to justify a search for ordinary evidence, here evidence of identification. ...

What we do know is this, there is no legal justification for a patdown search for identification.".

**Alleged Conspiracy Between Police Officers, Prosecutors, and Public Defenders**

Newman v. County of Orange; (9th Cir. 2006) 457 F.3d 991, 995

" Plaintiff was charged with violation of Penal Code §148 after he sprayed a motorcycle officer with rocks and dirt while leaving the scene where he had been ticketed for

speeding. Plaintiff went to trial, was acquitted and sued the officer under 42 U.SC. §1983 for malicious prosecution, among other things. Under federal law, there is a rebuttable presumption that the prosecutor exercises independent judgment when criminal charges are filed. The Ninth Circuit held that a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. The presumption "protects the officers unless such evidence shows that officers interfered with the prosecutor's judgment in some way, by omitting relevant information, by including false information, or by pressuring the prosecutor to file charges. A suspect's account of the incident, by itself, is unlikely to influence a prosecutor's decision, and thus, it cannot, by itself, serve as evidence that officers interfered with the prosecutor's decision." The ruling precludes the plaintiff from offering at trial evidence of the prosecution and from recovering as damages attorneys fees incurred in defending himself in the criminal proceeding. ".

Plaintiff will need discovery to investigate whether or not such events, as describe above occurred ( e.g. presenting false evidence ).

**United States Federal Rules of Evidence, Rule 410; 410(2).**

**( No Contest Plea Doesn't Prevent Plaintiff's Instant Case ).**

United States Federal Rules of Evidence, Rule 410(2), states;

" **Rule 410. Inadmissibility of Pleas, Plea Discussions, and Relate Statements**

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(2) a plea of nolo contendere; ... ".

A nolo contendere conviction typically may not be used to establish either *negligence per se*, malice, or whether the acts were committed at, all in later civil proceedings related to the same set of facts as the criminal prosecution.

Plaintiff's instant case civil suit is not barred by his no contest pleas in Superior Court of California cases M 992810 ( Exhibits No. 8 & 9 ) and M 983663 ( Exhibits No. 10 & 11 ). Plaintiff entered a plea of no contest in both of these cases. Refer to Exhibits No. 8 & 9.

**Burden of Proof**

Plaintiff contends that the burden of proof for reasonable suspicion and on probable cause should be on the defendants.

**California Statutes Violated**

Defendant Officers Reyes and Gustafson, have committed an assault ( PC § 240 ) and battery ( PC § 242 ) violations upon plaintiff. They also unlawfully imprisoned plaintiff, a PC § 236 violation. The false imprisonment was effected by means of violence, which is a PC § 237(a) violation

Plaintiff respectfully requests permission to amend his complaint to specifically charge defendants with these violations.

The two officers have falsified their police reports with regards to their own observations about the incident. This is a Penal Code § 118.1 violation.

**Immunities and State Action**

State officials sued in their individual capacities are persons within the meaning of § 1983. And thus subject to liability for actions taken under color of state law. Hafer v. Melo, aupra.

Plaintiff hereby sues all U.C.S.D. defendants in their individual capacities. Reyes; Gustafson; Morris; MacIntyre; Rose; King.

Without discovery, it is not possible to determine further facts regarding the causes of action against these individuals.

**Defendants MacIntyre and Rose**

These defendant unlawfully arrested plaintiff in 1993. It is alleged by plaintiff that these officers, MacIntyre, believed to be a police investigator, and Rose is a Lieutenant, are part of a cover-up operation, which cover-up unconstitutional acts by U.C.S.D. police officers. As such, they are alleged to have contributed to plaintiff's damages via their maintaining of such U.C.S.D. practices and policies. Police chief King is also alleged to be part of this operation.

**District Attorney**

State action is found with " counties ". From Cal Const. art XI. Plaintif was also unlawfullyl arrested by two S.D.S.U. police officers in 1997. Plaintiff has evidence of a cover-up of this unlawful arrest. One person involved in the cover-up was a San Diego County district attorney.

California counties are treated as municipalities for § 1983 purposes: Moor v. County of Alameda, 411 US 693.

**With Regards To The Public Defenders**

Defendants Carroll and McKay are persons.

California counties are treated as municipalities for § 1983 purposes: Moor v. County of Alameda, 411 US 693.

**With Regards To The City Attorneys – Aguirre and Hudson**

Local governments and municipal corporations and their agents acting under color of " state " law are " persons " subject to liability under 42 USC 1983: Monell v. Department of Soc. Servs. 436 US 658.

It is also alleged that Def. Hudson has been adequately served a complaint and summons.

**With Regards To Class Based Invidious Discrimination**

Plaintiff needs discovery to explore this cause of action further.

**Conspiracies With State Actors**

**Proposed Injunction(s)**

In actions seeking prospective relief under Section 1983 of the Civil Rights Act, neither judges nor prosecutors can claim absolute immunity; Pulliam v. Allen ( 1984 ), 466 U.C. 522.

Prohibit further enforcement of such a situation as plaintiff experienced. That is, the enforcement and a plea of guilty or no contest to a non-crime(s). E..g.. in the instant case, a plea to an enhancement ( and / or enhancement-infraction ), without there being any substantive charge(s). If that is what happened. An injunction against the U.C.S.D. police department to stop arresting me on insufficient grounds.

To stop the City of San Diego and San Diego City Attorney's Office, and the District Attorneys Office from plea bargaining on non-crimes.

To stop police, prosecutors, and judges from running a perpetual evidentiary fishing expedition operation.

To stop police, prosecutors, and judges from convicting plaintiff, and other defendants, with insufficient evidence.

////

////

Respectfully submitted, June 9, 2008, Signed, ____________________

John Cobb – Plaintiff.

# Declaration of John Cobb

# DECLARATION OF JOHN COBB

I, Plaintiff John Cobb declare as follows:

## With Regards To The Incident

1.) On the date of the incident (2-3-2006 ), I was not on any parole, and not on any probation.

2.) I was approached by Defendants Reyes and Gustafson, who were wearing police uniforms, and asked me for identification.

3.) I did then submit to their detention, but my submission was involuntary. I did not feel that I was free to leave.

4.) I told Office Reyes my name and address.

5.) I would not( ultimately ) give the officers my driver's license.

6.) I was assaulted and battered by the two officers.

7.) I believe that I was eventually arrested. I was read Miranda rights, and issued a citation ( a Notice To Appear ).

## With Regards To Accessing and Searching My Backpack

8.) On the date of the incident, there were three different occasions / times that I accessed, or attempted to access, my backpack. The first was to take out my wallet, the second was to put the wallet back ( without having given the officers my driver's license ), and the third was to attempt to get a pen and paper.

9.) The back pack has 5 pockets on the outside, and another two pockets inside. The top most pocket is a pocket with a see-through mesh on its top. It is approximately 6 X 5 inches, and the see-though mesh covers this entire 6 x 5 inches. It is a flat, non-deep type of pocket. It has a zipper across the entire top. This top, see-through mesh pocket, is where I keep pens and post-its.

10.) I also had my laptop computer in the outermost non-see-through, and largest pocket. It was wrapped in towels for protection.

11.) The laptop computer was never demand nor asked for by any police officer. It

was never taken out of the backpack. During the incident, it was never mentioned in any way.

12.) For this incident, I had my wallet inside one of the large, voluminous ( roomy ) pockets. You cannot see what is inside these compartments from outside. The wallet was not in the one see-thorough pocket.

13.) These three times of accessing or attempting to access my backpack is corroborated by the two U.C.S.D. police officers' police reports, herein include as Exhibits No. 5 & 6.

14.) On the date of the incident, I told the U.C.S.D. police officers, that I was going to take a pen and paper out of my backpack, and record their names and badge numbers.

15.) I did this having already taken out of the backpack, and put back into the backpack, my wallet ( the first two backpack accesses ). These two accesses were into pockets the contents of which, could not be seen from outside.

16.) I had taken out my wallet from one of the large, roomy pockets – a pocket that one cannot see into. I had not taken out the wallet from the one see-through pocket, on the top of the backpack.

17.) I also had placed my backpack onto the ground, and was squatted down, when I took out, and put back, my wallet from the backpack. During this time, the two police officers were standing up.

18.) After being squatted down to take out and put back my wallet, I then stood up, and was standing, when I attempted to access the see-through pocket, with my backpack slung over my shoulder.

19.) During my see-through access attempt, I was standing facing the two police officers, who were standing and facing me also.

20.) They approximately 3-4 feet in front of me.

21.) This pen and paper was located in an outer most pocket of my backpack, and this outermost pocket has a see-through mesh, so that one can see what is inside the pocket. ( I can produce this same backpack and demonstrate this. ).

22.) As I was opening this outermost see-through pocket ( third access, attempted ),

Officer Reyes ( I believe ) told me not to do this, and I opened or started to open this outermost pocket anyway. Refer to my Original Complaint, Page 25, line 6 and 8:

" I said that I was going to take out a pen and ( and paper ? ) to write down their badge numbers "; and

" I then started to take out a pen from the *outside* pocket of my backpack ".

23.) My hands were never inside my backpack for this third backpack attempted access, ( police report; " another compartment " ), to get a pen ( and paper ? ) search.

24.) My fingers may have been on the pen ( or a pencil ), I don't recall.

25.) I am certain, that I never actually had hold of a pen, and never brought out a pen ( or other writing instrument ), out of the pocket.

26.) Note, that I did actually have my hands inside my backpack for the first two accesses, pulling my wallet out, and putting it back. These accesses, were in a backpack compartment which was not on the outside of the backpack, and did not have a see-through mesh. These accesses were into a large and roomy, and cannot-see-into backpack pocket.

27.) Further, I never actually got anything ( a writing instrument or paper ) out of this see-through ( mesh covered ) backpack pocket. This was because I was grabbed by the two police officers, before getting anything out of this pocket.

28.) I keep pens and post-its in this outside, see-through mesh backpack pocket.

29.) Throughout this incident, the only time that I ever had a pen ( holding it in my hands ), was after having been given a pen by the police officers ( Reyes ), after being let out of handcuffs, so as to sign the Notice To Appear.

30.) The signature on the Notice To Appear, Original Complaint, Exhibit No. 38, is my signature, made with a pen given to me by Officer Reyes.

31.) Further, with regards to the defendant police officer's police reports, they ( or at least Gustafson has ) have mischaracterized my taking out of a pen, as a quick and frantic ( Gustafson ) second ( " another compartment ") backpack search.

Gustafson has falsely stated that I was " quickly and frantically reaching around the compartment " [ line 19 ], and " He continued to reach around for something in his

backpack " [ line 23 ]. Reyes has said that;

" COBB then began to look through another compartment of his bag. " [ line 21 ], and " As COBB was looking through the other compartment, ... " [ line 24 ].

32.) These descriptions, describe more accurately my taking-my-wallet-out and putting-it-back, back backpack accesses ( access one and two ).

33.) I was then grabbed by the two officers, and taken to the ground, and rolled over, and placed into handcuffs. This scrapped my knee, and gave me a bruise.

34.) After being grabbed by the two officers, Officer Gustafson, made a statement to me, approximately equivalent to; police safety, and weapons, and said that police get attacked regularly.

35.) I remember thinking at this time, that he was suggesting, that the pen I was going to use, that I was going to use it, or could use it as a weapon as a weapon.

36.) The only time that I ever held in my hand a pen ( or any writing instrument, or anything at all, apart from my wallet ( Note, my backpack was carried by being slung over my solder, and then was placed onto the ground for my wallet search, and then slung over my shoulder again ) ), was after I was released from the handcuffs, and was given a pen by the Defendant U.C.S.D. police officer(s), so as to sign the Notice To Appear.

37.) After being released, and soon after the incident, I thought that this safety concern was odd, because, after being let out of the handcuffs, the officers gave me a pen ( a weapon ? ) to sign the Notice To Appear. So, why did they have a concern for safety when I was going to use my pen? I thought this was contradictory.

38.) I was never " frisked " ( a pat down search of outer clothing ), by anybody.

**With Regards to the U.C.S.D. Police Reports by Def.s Reyes and Gustafson**

39.) The police reports mischaracterize my third backpack access. This was an attempt by me, to obtain a writing instrument and paper to record the officers' names and badge numbers.

40.) I was about at the stage of unzipping the zipper to the see-through pouch, when I was grabbed by the two officer.

41.) I never put my hand inside the outer, see-through pocket of my backpack.

42.) I did not get a grasp or hold of a pen, or anything else.

**With Regards To PC § 647**

**PC § 647(d)**

43.) I am 48 years old, and have never been charged nor convicted of any type of sex crime. I have never previously been convicted of any part of PC § 647. I have never previously been charged nor convicted of PC 647(k) (1), a so called privacy violation.

44.) For the instant case, Def. Officer Reyes, wrote out a citation for " 647(d) Public toilet lewd act ". This was amended, by the City Attorney ( of San Diego ) to; " PC647 (K) (1) INVASION OF PRIVACY 1 COUNT ".

45.) I did not notice this changed charge right away.

46.) I went into the restroom only to use the restroom.

47.) After looking at Mr. Cilingir, and Cilingir talking to me, I looked away from him, contrary to what the police report ( in Cilingir's statement ) states, which is, that I " continued looking at him ". This is false.

48.) I never viewed Mr. Cilingir's nudity, nor tried to view his nudity.

49.) I never did commit any lewd act, nor try to commit any lewd act, nor any other unlawful act.

**PC § 647(K)(1) ( Now (J)(1) )**

50.) On 2-3-2006, and in regards to the incident, I did not engage in any provocative behavior. I was not wearing any suggestive clothing. I did not do anything which would constitute sexual related acts.

51.) A long time after this case, I recalled an incident which occurred in the late 1970's or early 1980's. In relation to my education, I made a trip to a university in Los Angeles. While there, I needed to defecate, and I went into a men's bathroom.

52.) The toilet stall walls were very low. The tops were approximately 30 inches from the floor. There was nobody else in the bathroom when I used it, but I remember thinking that it was unusual, to sit on a toiled, and have so much of my upper body exposed to anybody who could just look over.

53.) This indicates to me, since the bathroom was at a university, that the area

above a toilet stall partition is public. As such, a person in such a stall cannot have a reasonable expectation of privacy, since the area of his body that is exposed above such a low toilet stall wall or partition, can be directly seen by anybody in the bathroom.

54.) Also, men stand next to one another at urinals and urinate. Such a location cannot reasonable be considered to be private.

55.) I am 6 feet, 2 inches tall. My head or part of it, towers above most, if not all toilet stall partitions.

56.) This was the situation with the instant case. When I stood up, I was able to see the top of Cilingir's head, as he was standing up also.

57.) Further, it is not unusual for men to go into a bathroom and, instead of urinating at a urinal, to go into a toilet stall, keep the door open, and urinate into the toilet bowl. I have done this many times, when, for example, the urinals are all occupied.

58.) I have also been in bathrooms in which the toilet stalls do not have doors.

59.) With regards to the instant case, the police report statement of Atila Cilingir does not say whether he had the toiled door open or not. If the door was open, he would not have a reasonable expectation of privacy.

**With Regards To My Public Defender**

60.) Further, with regards to my public defender, Shane McKay. Mr. McKay, told me, something equivalent to, that the PC 647 § (k) (1) charge was a rarely prosecuted charge, and that there was no case law about it.

61.) Further, I am 6 feet, two inches tall. On 2-3-2008, my head extended over the top of the bathroom stall partition, and that is why I was able to see, and could only see, the top of Mr. Cilingir's head, and eyes, in the stall next to mine. I never viewed, nor tried to view, Mr. Cilingir's nudity – e.g. his genitals.

62.) The fact that I am tall ( 6 feet, 2 inches ), would have been apparent to the involved police officers, prosecutors, and by my public defenders, including Shane McKay, in this case.

63.) Not Mr. McKay, nor any other public defender, stated to me that there was a bad faith issue with any of the Defendant U.C.S.D. police officers (Reyes and Gustafson),

or with the reporting party Atila Cilingir, or both. There was nothing said to me that anybody had falsified their statements of facts in the case.

**Damages**

64.) I suffered sever emotional distress due to the instant case situation. Further, I have experienced severe emotional distress in each of the following past situations:

i. I had been through the U.C.S.D. Briggs situation in 1993. This is described in my This Motion; " Declaration and Analysis In Opposition To Motions To Dismiss "; ( "T.M. D & A", already filed and served in this motion – plaintiff's opposition to defendants' motions to dismiss ), T.M. D & A; Chapter Section I, consisting of pages 1-33. In this situation, I had been battered, unreasonably seized – unlawfully taken to County Mental Health, I knew that the witnesses were lying, that U.C.S.D. police office MacIntyre had falsified his police report. The prosecutor spoke artifice to the judge and trier of fact. This situation was extremely distressing to me.

ii. In 1997, I was illegally arrested by two S.D.S.U. police officers. A substantial conspiracy followed to cover this up, and effect a satisfactory result for S.D.S.U.

iii. In 1999, I had been exposed to the "Field Interview Report", made by U.C.S.D. Police Officer Jones (This situation is described in T. M. D & A. Chapter Section III ). This Filed Interview Report is included in the Original Compliant ( "O.C."), as Exhibit No. 26, Page 3 ). This report states that I was a known violent sex offender; was loitering as per PC § 647(a); and could expose my self as per PC § 314.1. This Filed Interview Report has been on my mind for many years. I have had a continuing fear that witnesses could lie, and falsely state that I had done acts as described in this F.I. Report. The lying of witnesses, is what happened in the Briggs situation, described above in Section i.

I know a lot more about the law now, and believe that this Field Interview Report was a ' reasonable suspicion ( Terry-stop )' type of police seizure. Officer Jones recorded a substantial amount of my personal information in this Field Interview Report, and this privacy violation is also very distressing to me.

iv. In 2000, a restraining order extension was issued against me by S.D.S.U. This involved false statements that I was drunk in public, looking under bathroom stalls, and exposing himself for sexual encounters.

In the instant case, as a direct and proximate result of having been assaulted and battered by U.C.S.D. police officers Reyes and Gustafson, and also having been issued by them ( or by Reyes ) a summons and notice to appear for PC § 647(d) – lewd or lascivious conduct, I suffered pain and suffering and severe emotional distress damages. These are as follows:

65.) Officer Reyes, with out my consent, grabbed a bus pass out of my shirt pocket. I felt a tug on my shirt. This was intimidating, offensive, and humiliating.

66.) I was grabbed by the two officers and taken to the ground. I was rolled over, and placed into handcuffs. This caused me pain and suffering. This scrapped my left knee, and I showed this to the officers later. I also received a mild bruise to my hip.

67.) Due to my past unlawful arrests, which includes one 1993 unlawful arrest by other U.C.S.D. police officers ( MacIntyre and Rose ), one unlawful arrest at S.D.S.U. (in 1997 ), one at Home Depot ( 2004 ), and the resulting unlawful criminal prosecutions and police cover-ups and false statements of witnesses, and also my knowledge of U.C.S.D. Jones' Filed Interview Report ( Original Complaint ("O.C.") Ex. No. 26 ), in which he falsely stated that I was a known violent sex offender, and falsely stated I could be exposing myself in public – a violation requiring registration as a sex offender, and falsely stated that I was involved in a potential PC § 647(a) violation ( involves lewd and lascivious conduct ), I was substantially upset, and suffered extreme emotional distress, as a result of this case situation.

68.) Note that the instant case PC 647 § (d) citation, written as " 647(d) Public toilet lewd act ", and circles it as a " Misdemeanor " ( a loitering for sex crime – lewd and lascivious conduct ) was written on 2-3-2006, but was not amended to PC § 647 (k) (1) ( a privacy type crime ) until around 6-14-2006 ( O.C. Ex. No. 43 ). Further, I did not realize that the charge had been changed ( (d) to (k) (1) ), and meant something different, until well after this 6-14-2006 date. I was substantially distressed throughout this entire time.

69.) I was distressed at being pointed out by Mr. Cilingir through the police.

70.) Further, I do not believe that my conduct ( on 2-3-2006 ) violated PC § 647(k) (1). I accepted a plea bargain which included another case, and a reduced charge in the other case.

71.) I suffered severe humiliation, humiliation during the multiple court appearances, nervousness, trouble and inability to sleep, anxiety, and depression, resulting from this citation and prosecution situation.

72.) At times I had trouble sleeping, inability to concentrate, became anxious about the legal situation, and felt that I could be convicted of something that I did not do ( a humiliating sex crime ).

////

////

**I declare under penalty of perjury, that the foregoing in true and correct.**

**Dated: June 9, 2008. Signed, ________________.**

**John Cobb – Plaintiff.**

# TABLE OF EXHIBITS
## ( & DESCRIPTIONS )

( Plaintiff John Cobb has the original of these Exhibits, and can provide these upon request. )

( Exhibits No.s 1 – 4, are in the first part of plaintiff's opposition to defendants' motions to dismiss. Exhibits No.s 5 – , are in plaintiff's second ( "Supplemental ..." ) part of his opposition to defendants' motions to dismiss – this document. )

**Ex. No.** **Description**

1. Relating to U.C.S.D. Briggs incident, in 1993. Admission document, into County Mental Health, of John Cobb ( as defendant in battery case ). Made by Defendant U.C.S.D. police officer MacIntyre. Dated, 2-10-1993. States that John Cobb is being admitted into County Mental health, due to " Mental ill ".

2. Relating to U.C.S.D. 1993 Briggs incident. PSYCHIATIC ASSESSMENT – of John Cobb. ( Dated 2-10-1993. Redacted. ). States that ( Defendant ) John Cobb was battered ( scratched and kicked ) by Briggs. Last page ( page three ) shows negative drug screen.

3. Excerpt of website of attorney Bruce Nickerson. Site is located at "www.brucenickerrson.com". Nickerson is a attorney specializing in lewd conduct and sex crimes. The " Primer For Attorneys: Lewd Conduct Cases ", states that, for example, that if a solicitation for sex occurs, but does not state where, that a demurrer or motion in arrest of judgement should be made, because,
   " In the absence of any specific location, there is no evidence one way or the other that your client intended to perform the act in a public pale, and the presumption of innocence will acquit him. ".

4. State Bar of California information, on two prosecution attorneys, involved in Plaintiff John Cobb's Murgia motion, for case M 018229. The Murgia motion was denied. On 5-15-2008 Attorney Rawlins, stated to Plaintiff John Cobb, that PC § 647 (k) (1) ( now labeled (j) (1) ), is an enhancement, and involves a prior.

**-----Above; first opposition papers-----Below; second and "Supplemental" opposition papers-------------**

5. Typed out, and sentenced numbered, version of Defendant U.C.S.D. Police Officer Reyes' police report / narrative.

6. Typed out, and sentenced numbered, version of Defendant U.C.S.D. Police Officer Gustafson's police report / narrative

7. Typed out, and sentenced numbered, version of Reporting Party Atila Cilingir's statement, made to the U.C.S.D. police, as written in the U.C.S.D. police report / narrative.

8. Page 1.

**MISDAMEANOR/FELONY – PRE-DISPOSITION MINUTES**, for case M 992810.
Charge of PC § 647 (k) (1) ( now redesignated to (j) (1) ). States;

" **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
PEOPLE vs. COBB JOHN H. STATUS: OR ..,
CASE M992810 ...
CHARGE(S): ..........PC 647(K)(1)..........…
**CONVICTION** ☒ Defendant withdraws any previously entered plea.
**DEFENDANT PLEADS:** ☒ **NO CONTEST** to Ct. 1 . ".

Page 2.

**MISDAMEANOR/FELONY – Judgment Minutes**, for case M 992810.

9. Page 1.

**MISDAMEANOR/FELONY – PRE-DISPOSITION MINUTES**, for case M 983663.
Charge of PC § 484 (A) – 488, plea to a charge of PC § 602(K). States;

" **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
PEOPLE vs. COBB JOHN H. STATUS: OR ..,
CASE M983663 ...
CHARGE(S): ..........PC484(A) – 488..........…
☒ Amendment to ☒ adding
☒ Other: PC 602(K) ,...
**CONVICTION** ☒ Defendant withdraws any previously entered plea.
**DEFENDANT PLEADS:** ☒ **NO CONTEST** to Ct. 2 .
☒ On motion of / People / remaining is / **DISMISSED** ☒ D177 ".

Page 2.

**MISDAMEANOR/FELONY – Judgment Minutes**, for case M 983663.

10. Website " www.findlaw.com " search on phrase " suggestive conduct ", produced 7 cases.

11. OFFICER J. REYES
( Typed out and Sentence-Numbered Police Report,
showing discrepancies between Reyes and Gustafson reports. )

12. OFFICER S. GUSTAFSON
( Typed out and Sentence-Numbered Police Report,
showing discrepancies between Reyes and Gustafson reports. )

13. POLICE REPORT STATEMENT OF ATILA CILINGIR
( Analysis of Reporting Party and Victim's Statement, as Typed out and Sentence-Numbered, from the U.C.S.D. Police Report. )

John Cobb – Plaintiff.
3955 Mt. Albertine Way
San Diego, CA 92111

Telephone: (858) 277-2026.

////

////

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| John Cobb, Plaintiff,<br><br>vs.<br><br>1.) J. Reyes ( ID 606 );<br>2.) S. Gustafson ( ID 601 );<br>3.) Lt. Tom Morris ( ID 691 );<br>4.) William MacIntyre ( ID 617 );<br>5.) Lt. David Rose ( ID 690 );<br>6.) U.C.S.D. Police Chief O. King;<br>Prosecutors:<br>7.) Michael Hudson;<br>8.) Mike Aguirre;<br>9.) Bonnie Dumanis;<br>Public Defenders:<br>10.) Shane McKay;<br>11.) Steven Carroll;<br>12.) Does 1 through 100;<br><br>Defendants. | **DECLARATION OF VERACITY.**<br><br>**[ Case Number: 08-cv-0188-JAH-WMc ].**<br><br>Date: June 23, 2008.<br>Time: 2:30 p.m.<br>Department: 11.<br>Judge: Honorable John A. Houston.<br>Trial Date: None set. |

////

////

**DECLARATION OF JOHN COBB**

I, John Cobb, declare as follows:

That, each and every page of all of the Exhibits presented herein, in this opposition to defendants' motions, are true and correct copies of the original documents. I, John Cobb, have possession of the originals of these documents, and they are available for inspection upon request by any party, or by the Court.

I declare under penalty of perjury that he foregoing is true and correct.

Dated: 6-7, 2008. Signed: [signature].

# Exhibit No. 5

# OFFICER J. REYES
## ( Typed out and Sentence-Numbered Police Report )

SYNOPSIS/ELEMENTS:

1. John Harold Robert Cobb was placed under private person's arrest by Atila Cilingir, after COBB was seen looking over the bathroom stall wall.
2. COBB was issued a notice to appear citation for loitering in or about a public toilet per section 647 (d) PC.
3. COBB was directed to leave the UCSD campus for seven days per section 626.6 PC.
4. COBB was released at the scene.

ORIGIN:

5. On 02-03-2006 at about 1745 hours, I received a radio call of a lewd act that was committed in the men's restroom located at Pepper Canyon Hall.

INVESTIGATION:

6. The suspect, later identified as COBB was described as a white male adult, dressed in a white shirt and white pants, wearing black shoes.
7. COBB was seen heading north along Russell lane towards the UCSD Price Center.
8. As I was entering the cul-de-sac of lot 411, I saw COBB walking west bound on Lyman Lane and heading towards the east entrance of the Price Center.
9. I saw Corporal Gustafson #601 is his marked patrol car approaching me on Lyman lane.
10. Corporal Gustafson and I contacted COBB at the east entrance of Price Center.
11. COBB appeared to be nervous.
12. I asked COBB for some identification.
13. COBB asked my why he was being contacted.
14. I told COBB that he fit the description of a suspicious male that was seen looking over a stall in the men's restroom.
15. COBB denied it was him and told me that he did not need to show me any identification or tell me who he was.
16. Corporal Gustafson asked COBB again if he had any identification on him.
17. COBB then placed his backpack on the ground and looked through one of the pockets.
18. Corporal Gustafson told COBB to step away from the backpack and to let us search for his wallet.
19. COBB told us that we did not have the right to search him or his belongings and pulled out his wallet from his backpack.
20. COBB told us again that he did not need to show us any identification and put his wallet back into the pocket.

21. COBB then began to look through another compartment of his bag.
22. As COBB was looking through the other compartment, Corporal Gustafson tried to pull his backpack away from him and COBB resisted.
23. I grabbed COBB's left arm and placed it behind his back in a rear wrist lock.
24. Corporal Gustafson grabbed COBB's right arm and placed it behind his back in a rear wrist lock.
25. As we were placing COBB in handcuffs, COBB fell over a small sloped wall behind him into some plants.
26. Corporal Gustafson stayed with COBB and I met with the victim Atila Cilingir.
27. CILINGIR provided the following statement:
28. [ Statement of Atilia Cilingir not include here. Is in typed out Ailia Cilingir Section. ].
29. After talking to CILINGIR, I accepted CILINGIR'S private person's arrest of COBB.
30. I told COBB that he was being placed under private person's arrest for loitering in or about a public toilet per section 647 (d) PC and was ordered off campus for seven days per 626.6 PC.
31. Sergeant Morris #651 took three digital photographs of COBB ( attached to the report ).
32. I read COBB his Miranda Rights per my department notebook and asked COBB if he understood his rights.
33. COBB responded, "Yes," and said, "He had nothing to say".
34. I issued COBB a written notice to appear, citation #UC 62151 for violation of 647 (d) PC.
35. I then read COBB the off campus order.
36. COBB said he understood and was given a copy of the 626.6 PC order.
37. COBB was released at the scene.

# Exhibit No. 6

**OFFICER S. GUSTAFSON**

**( Typed out and Sentence-Numbered Police Report )**

INVOLVED PARTY:

1. John Harold Robert COBB.
2. DOB: 09/10/1959

NARRATIVE:

3. On 02/03/2006, at approximately 1745 hours, I received a radio call of a male looking into bathroom stalls in the men's restroom at Pepper Canyon Hall on the UCSD campus.
4. I was told the suspect was a tall white male, approximately 210 pounds, wearing all white, carrying a purple backpack.
5. He was last seen walking north on Russell Lane.
6. I drove north on Russell Lane from Gilman Drive to Lyman Lane.
7. When I reached Lyman Lane, I looked west and saw a male matching the description of the suspect walking westbound on Lyman Lane.
8. At that time, Officer REYES (#606) advised on his radio that he also saw the suspect.
9. He was on Lyman Lane, approaching the Price Center loading dock.
10. As I pulled up to the Price Center loading dock, Atila Veli CILINGIR, the reporting party, pointed to the male and said, " That's him ".
11. Officer REYES caught up to the suspect at the east entrance to the Price Center food court.
12. Officer REYES asked the male for identification.
13. The male, later identified as John Harold Robert COBB, refused to provided identification or tell us his name.
14. He said he did not have to provide identification.
15. Officer REYES told him that he matched the description of a male seen looking into bathroom stalls.
16. Then COBB reached into his backpack and pulled out his wallet.
17. Then he quickly put it back into his backpack, saying that he did not have to show us his identification.
18. Then COBB opened up another compartment of his backpack.
19. He was quickly and frantically reaching around the compartment.
20. I told COBB to put his backpack down and I would help find his identification.
21. COBB said, " You don't have permission to search me".
22. I told him again to put his backpack down.
23. He continued to reach around for something in his backpack.

24. I feared that COBB was searching for a weapon and I pulled the backpack out of his hands.
25. COBB tried to pull it back out of my hands.
26. At that time, Officer REYES put COBB"s left arm behind his back, into a rear writs lock.
27. I put COBB's right arm behind his back, into a rear wrist lock.
28. COBB dropped the backpack.
29. There was a short wall in front of COBB with ivy on the other side.
30. COBB fell foreword onto the ivy and I handcuffed him.
31. Officer REYES went to talk to CILINGIR while I monitored COBB.
32. I told COBB that I pulled the backpack out of his hands because he refused my orders to put his backpack down and continued searching through the backpack.
33. I told him I thought he may have a weapon and I grabbed his backpack from him and handcuffed him for my safety.
34. I asked COBB if he understood why I took his backpack and handcuffed him.
35. He said, 'Yes".
36. Sgt. Morris (#651) arrived within a few minutes to assist.
37. COBB was placed under private person's arrest by CILINGIR.
38. Officer REYES issued COBB a notice to appear citation and a 626.6 P.C. stay away order.
39. COBB was released at the scene.

# Exhibit No. 7

# POLICE REPORT STATEMENT OF ATILA CILINGIR

## ( Typed out and Sentence-Numbered. From U.C.S.D. Police Report. )

STATEMENTS:

1. Atila CILINGIR–Victim/ Reporting Party
2. CILINGIR told me that COBB was in the bathroom and that he was in the stall next to COBB.
3. CILINGIR told me that he was standing up with his clothing, pants and underwear pulled down and his genitals hanging out.
4. CILINGIR told me he looked up and saw COBB looking at him over the bathroom stall wall.
5. CILINGIR asked COBB what he was doing.
6. CILINGIR told me that COBB mumbled something to him and continued looking at him.
7. CILINGIR told me he felt very uncomfortable.
8. CILINGIR then pulled up his pants and immediately left the bathroom.
9. CILINGIR told me that he waited outside the restroom and followed COBB to the Price Center, he called the UCSD police department as he followed COBB.
10. CILINGIR told me that he would like to place COBB under private person's arrest per 647 (d) PC.

# Exhibit No. 8

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

☒ Central Division ☐ East County Division ☐ North County Division ☐ South County Division Waivers: ☒ Time

PEOPLE vs. COBB JOHN H STATUS: OR $ ☐ BB ☐ CB (Y/N)

CASE # M992810 PROS. # MM225501 DOB: 091059 BKG # CTS: days hrs.

DATE 03-21-06 AT 1:32 DEPT. # ISD INTERPRETER ☐ Spanish ☐ Sworn ☐ Oath on File

JUDGE/COMM/PRO-TEM ROBERT C. RICE ☐ STIP. FILED REPORTER – CSR #

CLERK TAPE # 2 COUNTER # 2960

CHARGE(S): PC647(K)(1)

FUTURE DATES: ☐ CONFIRMED ☒ VACATED

P. DEFENDERS

Attorney for the People ( DDA / DCA ) Attorney for the Defendant ( PD / APD / PCC / Retained / Counseling )

☒ Defendant present ☐ with / without counsel ☐ in pro per ☐ via audio/video ☐ not produced in courtroom ☐ Defendant failed to appear

☐ 4TH AMENDMENT WAIVER PREVIOUSLY ORDERED ☐ PROTECTIVE ORDER PURSUANT TO PC136.2 PREVIOUSLY ISSUED

Case called for: ☐ FTA ☐ Arraignment ☐ Bail Review ☒ Readiness/DWT ☐ Jury Trial ☐ Preliminary Examination ☒ Motion

☐ DEJ Protective Order Expires:

☐ Warrant Ordered/Issued on ☐ Warrant Cleared ☐ Warrant Outstanding

CASE TRANSFERRED TO DEPT. TIME ESTIMATE:

☐ Complaint amended by interlineation to read:
☐ Amended ☐ Amendment to complaint filed ☐ charging ☐ adding ☐ VC23103 (a) pursuant to VC23103.5 ☐ VC22107, VC21658(a), PC647(f)
☐ as INFRACTION(S) pursuant to PC17(d)(2). ☐ other:
☐ Defendant advised of and waives the right to a separate and conflict-free attorney / interpreter for this court appearance.
☐ Defendant duly arraigned and advised of the constitutional and statutory rights as indicated on the reverse side of this minute order.
☐ Acknowledgment of advisal of constitutional rights signed and filed. ☐ Defendant has received copy of complaint.
☐ Defendant waives reading of complaint. ☐ Deft. states true name is ☐ on complaint [ line]
☐ DEFENDANT PLEADS NOT GUILTY and denies any priors/allegations/separate convictions alleged ☐ on amended complaint.
☐ Defendant WAIVES: ☐ time for speedy trial ☐ 10 day/60 day statutory time for preliminary hearing ☐ personal presence ☐ per PC977 ☐ jury trial ☐ preliminary hearing

COUNSEL ☐ REQUEST FOR APPOINTED ATTY. ☐ Granted ☐ Public Defender ☐ Alternate Public Defender ☐ Private Conflict Counsel
Atty: ☐ Denied ☐ Referred to Non-Indigent Panel ☐ Deft to retain counsel.
☐ The Court finds the defendant ☐ is ☐ is not qualified to represent self in PRO PER. ☐ Lopez Waiver signed and filed.

CONVICTION ☐ Deft. is sworn and examined. ☐ Defendant withdraws any previously entered plea.
DEFENDANT PLEADS: ☐ GUILTY ☐ NO CONTEST to ☐ VC23152(a) / (b)
☐ Admits separate conviction(s) alleged/ allegation(s)
☐ charges contained in amended/amendment to complaint. ☐ VC23103(a) per VC23103.5 ☐ as a lesser included offense of
☐ On motion of Court/People/Defendant Count(s) remaining is/are DISMISSED ☐ FOJ ☐ VOP ☐
☐ On motion of Court/People/Defendant Allegation(s)/Prior(s) remaining is/are STRICKEN ☐ FOJ ☐ VOP ☐
☐ Plea form executed and filed. ☐ Peo.vs. West ☐ BAC:
☐ ADVISALS: ☐ Theft - PC666
☐ WAIVERS: ☐ Harvey ☐ Arbuckle ☐ Blakely ☐ Non-Biological Evidence Disposal
☒ Court finds a knowing and intelligent waiver of constitutional rights and factual basis for the plea.
☐ PC1210 ☐ accepted ☐ declined. ☒ Time waived for sentencing, see JUDGMENT.
☐ Stipulated bindover. ☐ Case certified as a general jurisdiction matter. ☐ Complaint deemed the information.
☐ Defendant to provide DNA database samples as directed by Sheriff or Probation Dept. – PC296(a).

MOTIONS ☐ Motion for by People/Defendant with/without objection granted/denied.

PC1000 ☐ Defendant's application for ☐ reinstatement to ☐ Deferred Entry of Judgment granted as to count(s) for mo./yrs.
☐ New term ☐ Time waived for sentencing ☐ S.D. Rescue Mission Program ☐ Enroll by ☐ Term to be determined by Assessor.
☐ $ Admin. fee (PC1001.15) ☐ $ DEJ Restitution fee (PC1001.90). Comply with all orders of Assessor.
☐ $ credit for time served. TOTAL AMOUNT DUE $ ☐ Forthwith ☐ By ☐ Waived.
☐ Defendant has satisfactorily COMPLETED the DEJ Program, previously entered plea to count(s) set aside and charges dismissed.
☐ Defendant has FAILED to satisfactorily perform in the DEJ Program. ☐ PC1000 set aside and any unpaid fees pertaining thereto deleted.
☐ Court makes a finding of guilt to the charge(s) pled. ☐ Time waived for sentencing, see JUDGMENT.

REFERRALS Report ☐ forthwith ☐ by to ☐ Assessment Unit ☐ Probation Department
☐ Pre-Sentence ☐ Mini ☐ Supplemental ☐ Psych. ☐ Limited re: Drugs / Alcohol / Domestic Violence / Anger Management / Restitution Report Ordered.
☐ Court Collections for payment of Attorney fee * $ ☐ Indigent as to Attorney Fees.
* The Court finds that the defendant has the ability to repay the County of San Diego for the costs of Court Appointed Attorney fees.

HEARINGS Set/continued on motion of ☐ People ☐ Defense ☐ Opposed ☐ Unopposed ☐ By Stipulation, ☐ Statutory time is WAIVED

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Re-Attorney | at | in Dept. | ☐ Motion/PC1538.5 | at | in Dept. |
| ☐ Arraignment | at | in Dept. | ☐ Jury / Court Trial | at | in Dept. |
| ☐ Bail Review | at | in Dept. | ☐ Sentencing | at | in Dept. |
| ☐ Readiness/DWT | at | in Dept. | ☐ Prob. Hrg. & Sent | at | in Dept. |
| ☐ Prelim Exam | at | in Dept. | ☐ DEJ Hearing | at | in Dept. |

Time Estimate: hr/day Set with case(s): ☐ to trail for revocation

OTHER ☐ Verbal notice of license suspension (DL 310) signed. ☐ Fingerprint form filed.

CUSTODY STATUS ☐ Deft. REMANDED to custody of Sheriff, bail $ ☐ WITHOUT BAIL ☐ Per PC1275 ☐ as set
☐ increased ☐ reduced ☐ Bail Unit Report Ordered re: SOR
☐ Deft. RELEASED: ☐ on bail previously posted. ☐ after booking. ☐ DEJ ☐ OR/SOR ☐ same terms and conditions
☐ to an authorized representative of: on at
☐ Release Conditions: ☐ Attend AA/CA/NA/MA Mtgs. per week and submit proof at each court hearing. ☐ Abstain from alcohol.
☐ Not use or possess any controlled substance without a valid prescription ☐ Not use or possess alcohol.
☐ Deft. waives 4th amendment rights and agrees to submit person, vehicle, place of residence, property, personal effects to search at any time with or without a warrant, and with or without reasonable cause, when required by a Probation Officer or other law enforcement officer. ☐ until revoked. ☐ for the duration of deferred entry of judgment. ☐ Have no contact with / stay away from: ☐ PC136.2 Protective Order issued
☐ Previously ordered: ☐ 4th WAIVER ☐ continues ☐ deleted. ☐ PROTECTIVE ORDER ☐ continues ☐ deleted.

WARRANT ☐ Arrest ☐ Bench ☐ Warrant ordered ☐ Bail set at $ ☐ No Bail ☐ ISSUED ON:
☐ Schedule for hearing ☐ Mandatory Appearance ☐ Night Service Auth. ☐ Cash bail may be forfeited. ☐ HOLD issuance to DATE SET ABOVE.
☐ Warrant previously ordered/issued ☐ remains outstanding ☐ rescinded ☐ RECALLED ON:
☐ Affidavit requested. Due by:

BAIL STATUS Bail is ☐ exonerated ☐ forfeited ☐ Fine from bail, refund balance. ☐ Decl. of non-collusion/ reassumption of liability filed.
☐ Bail forfeiture set aside and bond reinstated/exonerated ☐ upon payment of court cost $ within 30 days ☐ cost waived
☐ Bond #: Bond $ Bond Co.

Attest a true copy Dated: CLERK, by , Deputy Clerk

Distribution by: on to: Jail Deft. Atty. Pros. Prob. R&R Interpreter Assessment Other:

SDSC CRM-150(Rev. 5-06) MISDEMEANOR/FELONY – PRE-DISPOSITION MINUTES

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

☒ Central Division ☐ East County Division ☐ North County Division ☐ South County Division Waivers: ☒ Time

PEOPLE vs. COBB JOHN H STATUS: OR $ ☐ BB ☐ CB (Y/N)

CASE #M992810 PROS. # WM225501 DOB: 091059 BKG # CTS: days hrs.

DATE 08-21-06 A01:32 DEPT. #ISD INTERPRETER ☐ Spanish ☐ Sworn ☐ Oath on File

JUDGE/COMM/PRO-TEM: ROBERT C. RICE ☐ STIP. FILED REPORTER – CSR #

CLERK: TAPE # COUNTER #

CHARGE(S): PC647(K)(1)

FUTURE DATES: ☐ CONFIRMED ☐ VACATED

Attorney for the People (DDA / DCA) P DEFENDERS Attorney for the Defendant (PD / APD / PCC / Retained / Counseling) 93-136 C8

☒ Defendant present by / with / without counsel ☐ in pro per ☐ via audio/video ☐ not produced in courtroom ☐ Defendant failed to appear

☐ 4TH AMENDMENT WAIVER PREVIOUSLY ORDERED ☐ PROTECTIVE ORDER PURSUANT TO PC136.2 PREVIOUSLY ISSUED

☒ Defendant waives ☐ arraignment for judgment ☐ time for judgment.

**PROBATION** is ☒ GRANTED ☐ Formal ☒ Summary on the following conditions: ☐ DENIED and defendant sentenced as follows:

☒ As to (1) ☒ Imposition of sentence is suspended for 1 years. ☐ As to ☐ Imposition of sentence is suspended for years.

☐ Serve 90 / 180 / 365 / days in the custody of the Sheriff; ☐ EXECUTION OF CUSTODY IS SUSPENDED for years.

☐ Comply with ☐ Street ☐ Gang ☐ Drug ☐ Graffiti ☐ Additional conditions attached ☒ Violate no laws ☒ minor traffic violations excepted.

**CUSTODY** ☐ Serve days / hrs. in the custody of the Sheriff; days suspended days / hrs. CTS ( days actual days PC4019)

☐ days custody stayed pending ☐ successful completion of probation ☐ review hearing.

☐ Serve FORTHWITH ☐ Work Release - call within 72 hours for reporting date. ☐ Book & Release ☐ Reportion at

to: Detention Facility ☐ Central ☐ Las Colinas ☐ Vista ☐ Short Term Work Furlough ☐ Serve ☐ consecutive to ☐ concurrent with:

☐ Consecutive weekends ☐ NO Early release (PC4018.6 or 4024.1) ☐ NO Work Release ☐ NO County Parole ☐ NO ESP/Home Detention

☐ CUSTODY ☐ IN LIEU OF ☐ $ fine at $50.00 per day ☐ days PSWP

☐ CUSTODY SATISFIED BY ☐ days PSWP ☐ days in ☐ ☐ residential rehabilitation program.

**FINES/FEES** ☒ Attorney Fee $ ☐ Add to Fine ☐ Indigent as to Attorney Fees

Pay Fine (Ct ) $ 333 State Rest Fnd Fine $ A/R Fee $ TOTAL

Fine (Ct ) $ Security Fee $ $ DUE

Dom. Violence Fund $ Admin. Fee $ [Suspended Amount] $ $ 353

Probation Revocation Restitution Fine imposed & suspended $ [Credit for days served] $

☒ Payments set at $ 30 per month beginning on 10-20-06 and on the of every month thereafter until paid in full.

☐ Fines and Fees stayed pending ☐ DVRP completion ☐

*The Court finds the defendant has the ability to repay the County of San Diego for costs of... This order is not a condition of probation.

**RESTITUTION** ☐ Pay restitution to the victim of $ ☐ to be determined ☐ payments through ☐ Court Collections

☐ Revenue & Recovery ☐ at $ per month beg. ☐ ... and show proof to the court ☐ by ☐ at Review Hrg.

☐ See stipulated restitution order. ☐ Court retains jurisdiction re: restitution ☐ Subject to civil process.

**PUBLIC SERVICE WORK PROGRAM (PSWP)/VOLUNTEER WORK** ☐ COMPLETE

☐ PSWP ☐ Call within 72 hrs. to enroll (see reverse) ☐ Enroll by: ☐ VOLUNTEER WORK ☐ at any non-profit organization.

days as condition of probation ☐ at organization on Court approved list ☐ Other:

days in lieu of ☐ fines/fees $ 353 ☐ days custody hours as condition of probation

days credit for time served/completed hours in lieu of ☐ fines/fees $ ☐ days custody

TOTAL days to be completed hours credit for time served/completed

☐ One day per week authorized ☐ Out of county work authorized TOTAL hours to be completed

☐ To run consecutive to /concurrent with ☐ Submit proof to the Court by ☐ days custody for each day/8 hours missed

☐ PSWP ☐ VOLUNTEER WORK Stayed pending DVRP completion

**ALCOHOL/DRUGS** ☐ Abstain from alcohol. ☐ Not frequent places where alcohol is the primary source of business, except in the course of employment.

☐ Not use or possess any controlled substance without a valid prescription. ☐ Submit to any test at the request of a peace officer for detection of alcohol/drugs in system. ☐ Submit person, property, place of residence, vehicle, personal effects to search at any time with or without a warrant, and with or without reasonable cause, when required by a Probation Officer or other law enforcement officer. (to expire )

☐ Complete a ☐ Residential ☐ Non-Residential treatment program for days/months. Proof due by

**EDUCATION/TESTING** ☐ ATTEND AND COMPLETE: ☐ Anger Management ( hours/sessions) ☐ Parenting Ed ( hours/sessions)

☐ Certified 52 wk Domestic Violence Rehab. Program. ☐ STOP ☐ Shoplifting Ed. ☐ Safe Boating Class ☐ S.M. Repeat/Traffic Offenders Traffic School.

☐ course ☐ through

☐ Submit to ☐ Sheriff to administer ☐ HIV TEST pursuant to PC1202.1. ☐ HIV/AIDS Ed. ☐ while in custody ☐ as directed by Assessor.

☐ Out of County authorized. ☐ AA / NA / CA / MA Mtgs. times per ☐ wk ☐ mo. for days / months.

☐ Commence/continue education, psychological, psychiatric, drug, alcohol or other rehab. program recom. by the Assessor and not leave or terminate such program without written permission of the Court and/or therapist. ☐ Seek/maintain full-time employment, education, training, or a combination thereof.

☐ PROOF OF ☐ Test Results ☐ ENROLLMENT ☐ PROGRESS ☐ COMPLETION ☐ by

to the ☐ Court ☐ at REVIEW HEARING(S) ☐ Assessment Unit ☐ AND every 30 / 60 days THEREAFTER.

**VIOLENCE/WEAPONS** ☐ Not use force or violence upon another. ☐ Have no contact with any victim or complaining witness in this matter.

☐ Not own or have possession, custody or control of any WEAPONS or FIREARMS. ☐ Weapon(s) to be ☐ destroyed ☐ returned to

☐ Defendant advised that within 10 years of this conviction, owning/possessing/having custody or control of any firearm is a crime pursuant to PC 12021(c)(1).

☐ Protective Order issued pursuant to PC136.2 - See Protective Order for specific conditions. ☐ PC12021 Notice given.

**DRIVERS LICENSE** ☐ Not drive without a valid license and liability insurance ☐ VC14607.6 advisal given ☐ License is ☐ suspended ☐ revoked

☐ days / yrs. ☐ pursuant to ☐ VC13202 ☐ .3(a) (cont. subs.) ☐ .5 (under21) ☐ .6 (graffiti)

☐ License to be surrendered to the court ☐ by ☐ Defendant petitions for a restricted license. ☐ Critical need found. Petition granted ☐ Petition denied. ☐ License restricted for ☐ days ☐ mos. Driving permitted to/from ☐ work ☐ school ☐ court ordered activities ☐ in course of employment.

**MISC.** ☐ Comply with all Family/Juvenile Court orders. ☒ Stay away from UCSD ☐ Not unlawfully enter the United States.

☐ Register pursuant to ☐ HS11590 ☐ PC290 ☐ PC457.1 ☐ Not take, hold or receive property of another without written consent of the owner.

☐ Property impounded/seized by law enforcement or held in the custody of the court is ordered disposed of pursuant to that agency/court policy.

☐ Defendant has provided DNA database samples – PC296(f).

**REFERRALS** Report ☐ forthwith ☐ by to ☐ Assessment Unit ☐ Probation Dept. re:

☐ Court Collections ☐ Revenue & Recovery ☐ Credit Agency and comply with additional conditions of probation imposed.

☐ DEFENDANT IS ORDERED TO APPEAR ON AT IN DEPT FOR:

☐ Sentencing ☐ Restitution ☐ Execution of Custody ☐ C.O.P. Form ☐ Review regarding

☐ ☐ enrollment ☐ progress ☐ completion ☐ probation conditions noted above.

**OTHER**

**CUSTODY STATUS** ☐ Deft. REMANDED to custody of Sheriff, bail $ ☐ WITHOUT BAIL ☐ as set ☐ increased ☐ reduced

☒ Deft. RELEASED: ☐ on bail previously posted ☒ on probation ☐ after booking ☐ OR/SOR ☐ same terms and conditions

☐ to an authorized representative of: on at

☐ Previously ordered: ☐ 4TH WAIVER ☐ continues ☐ deleted ☐ PROTECTIVE ORDER ☐ continues ☐ deleted.

**WARRANT** ☐ Bench WARRANT ordered ☐ Bail set at $ ☐ No Bail ☐ ISSUED ON

☐ Mandatory Appearance ☐ Night Service Authorized ☐ Cash bail may be forfeited ☐ HOLD issuance of warrant to DATE SET ABOVE.

☐ Warrant previously ordered/issued ☐ remains outstanding ☐ rescinded ☐ RECALLED ON:

**BAIL STATUS** Bail is ☐ exonerated ☐ forfeited ☐ Fine from bail, refund balance. ☐ Declaration of non-collusion/ reassumption of liability filed.

☐ Bail forfeiture set aside, bond reinstated/exonerated upon payment of court cost $ within 30 days ☐ cost waived

☐ Bond # Bond $ Bond Company

Attest a true copy Dated: 8-21-06 CLERK, by Deputy Clerk

Distribution by on to: Jail Deft Atty. Pros. Prob. R&R Interpreter Assessment Other:

SDSC CRM-148 (Rev. 12-05) **MISDEMEANOR – Judgment Minutes**

# Exhibit No. 9

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

☒ Central Division ☐ East County Division ☐ North County Division ☐ South County Division Waivers: ☒ Time

PEOPLE vs. COBB JOHN H STATUS: OR $ ☐ BB ☐ CP (Y/N)

CASE # M963663 PROS. # EA115501 DOB: 0918... BKG # CTS: days hrs.

DATE: 03-21-06 AT 1:32 DEPT. # TSD INTERPRETER: ☐ Spanish ☐ Sworn ☐ Oath on File

JUDGE/COMM/PRO-TEM: ROBERT C. RICE ☐ STIP. FILED REPORTER – CSR #

CLERK: TAPE # 2 COUNTER # 7460

CHARGE(S): PC484(A)-488

FUTURE DATES: P. Romero ☐ CONFIRMED ☐ VACATED

T. Rogers P. DEFENDERS 93435

Attorney for the People (DDA/DCA) Attorney for the Defendant (PD/APD/PCC/Retained/Counseling)

☒ Defendant present by ☐ with / without counsel ☐ in pro per ☐ via audio/video ☐ not produced in courtroom ☐ Defendant failed to appear

☐ 4TH AMENDMENT WAIVER PREVIOUSLY ORDERED ☐ PROTECTIVE ORDER PURSUANT TO PC136.2 PREVIOUSLY ISSUED

Case called for ☐ FTA ☒ Arraignment ☐ Bail Review ☒ Readiness/DWT ☐ Jury Trial ☐ Preliminary Examination ☐ Motion

☐ DEJ Set c/ M992810 Protective Order Expires:

☐ Warrant Ordered/Issued on ☐ Warrant Cleared ☐ Warrant Outstanding

CASE TRANSFERRED TO DEPT. TIME ESTIMATE:

☐ Complaint amended by interlineation to read:

☐ Amended ☒ Amendment to complaint filed ☐ charging ☒ adding ☐ VC23103 (a) pursuant to VC23103.5 ☐ VC22107, VC21658(a), PC647(f)

☐ as INFRACTION(S) pursuant to PC17(d)(2) ☒ other: PC 602 (K)

☐ Defendant advised of and waives the right to a separate and conflict-free attorney / interpreter for this court appearance.

☐ Defendant duly arraigned and advised of the constitutional and statutory rights as indicated on the reverse side of this minute order*.

☐ Acknowledgment of advisal of constitutional rights signed and filed. ☐ Defendant has received copy of complaint.

☐ Defendant waives reading of complaint. ☐ Deft. states true name is ☐ on complaint [ line]

☐ DEFENDANT PLEADS NOT GUILTY and denies any priors/allegations/separate convictions alleged ☐ on amended complaint.

☐ Defendant WAIVES: ☐ time for speedy trial ☐ 10/60/60 day statutory time for preliminary hearing ☐ personal presence ☐ per PC977

☐ jury trial ☐ preliminary hearing

COUNSEL ☐ REQUEST FOR APPOINTED ATTY. ☐ Granted ☐ Public Defender ☐ Alternate Public Defender ☐ Private Conflict Counsel

Atty: ☐ Denied ☐ Referred to Non-Indigent Panel ☐ Deft to retain counsel

☐ The Court finds the defendant ☐ is ☐ is not qualified to represent self in PRO PER ☐ Lopez Waiver signed and filed.

CONVICTION ☐ Deft. is sworn and examined. ☒ Defendant withdraws any previously entered plea

DEFENDANT PLEADS: ☐ GUILTY ☒ NO CONTEST to: PC 602 (K) ☐ VC23152(a) / (b)

☐ Admits separate conviction(s) alleged/ allegation(s)

☐ charges contained in amended/amendment to complaint. ☐ VC23103(a) per 23103.5 ☐ as lesser included offense of

☒ On motion of Court/People/Defendant Count(s) remaining is/are DISMISSED ☐ FOJ ☐ VOP ☒ 1,2

☐ On motion of Court/People/Defendant Allegation(s)/Prior(s) remaining is/are STRICKEN ☐ FOJ ☐ VOP ☐

☐ Plea form executed and filed ☐ Peo vs. West ☐ BAC:

☐ ADVISALS: ☐ Theft – PC666

☒ WAIVERS: ☒ Harvey ☐ Arbuckle ☐ Blakely ☐ Non-Biological Evidence Disposal

☐ Court finds a knowing and intelligent waiver of constitutional rights and factual basis for the plea.

☐ PC1210 ☐ accepted ☐ declined. ☒ Time waived for sentencing, see JUDGMENT.

☐ Stipulated bindover. ☐ Case certified as a general jurisdiction matter. ☐ Complaint deemed the information.

☐ Defendant to provide DNA database samples as directed by Sheriff or Probation Dept. – PC296(a).

MOTIONS ☐ Motion for by People/Defendant with/without objection granted/denied.

PC1000 ☐ Defendant's application for ☐ reinstatement to ☐ Deferred Entry of Judgment granted as to count(s) , for mo./yrs.

☐ New term ☐ Time waived for sentencing ☐ S.D. Rescue Mission Program ☐ Enroll by ☐ Term to be determined by Assessor.

☐ $ Admin. fee (PC1001.15) ☐ $ DEJ Restitution fee (PC1001.90) Comply with all orders of Assessor.

☐ $ credit for time served TOTAL AMOUNT DUE $ ☐ Forthwith ☐ By ☐ Waived.

☐ Defendant has satisfactorily COMPLETED the DEJ Program, previously entered plea to count(s) set aside and charges dismissed.

☐ Defendant has FAILED to satisfactorily perform in the DEJ Program. ☐ PC1000 set aside and any unpaid fees pertaining thereto deleted.

☐ Court makes a finding of guilt to the charge(s) pled. ☐ Time waived for sentencing, see JUDGMENT.

REFERRALS Report ☐ forthwith ☐ by to ☐ Assessment Unit ☐ Probation Department

☐ Pre-Sentence ☐ Mini ☐ Supplemental ☐ Psych. ☐ Limited re: Drugs / Alcohol / Domestic Violence / Anger Management / Restitution Report Ordered.

☐ Court Collections for payment of Attorney fee * $ ☐ Indigent as to Attorney Fees.

* The Court finds that the defendant has the ability to repay the County of San Diego for the costs of Court Appointed Attorney fees.

HEARINGS Set/continued on motion of ☐ People ☐ Defense ☐ Opposed ☐ Unopposed ☐ By Stipulation, ☐ Statutory time is WAIVED

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Re-Attorney | at | in Dept. | ☐ Motion/PC1538.5 | at | in Dept. |
| ☐ Arraignment | at | in Dept. | ☐ Jury / Court Trial | at | in Dept. |
| ☐ Bail Review | at | in Dept. | ☐ Sentencing | at | in Dept. |
| ☐ Readiness/DWT | at | in Dept. | ☐ Prob. Hrg. & Sent | at | in Dept. |
| ☐ Prelim Exam | at | in Dept. | ☐ DEJ Hearing | at | in Dept. |

Time Estimate: hr/day Set with case(s): ☐ to trail for revocation

OTHER ☐ Verbal notice of license suspension (DL 310) signed. ☐ Fingerprint form filed.

CUSTODY STATUS ☐ Deft. REMANDED to custody of Sheriff, bail $ ☐ WITHOUT BAIL ☐ Per PC1275 ☐ as set

☐ Increased ☐ reduced ☐ Bail Unit Report Ordered re: SOR

☐ Deft. RELEASED: ☐ on bail previously posted ☐ after booking ☐ DEJ ☐ OR/SOR ☐ same terms and conditions

☐ to an authorized representative of: on at

☐ Release Conditions: ☐ Attend AA/CA/NA/MA Mtgs: per week and submit proof at each court hearing. ☐ Abstain from alcohol.

☐ Not use or possess any controlled substances without a valid prescription. ☐ Not possess narcotic paraphernalia.

☐ Deft. waives 4th amendment rights and agrees to submit person, vehicle, place of residence, property, personal effects to search at any time with or without a warrant, and with or without reasonable cause, when required by a Probation Officer or other law enforcement officer ☐ until revoked. ☐ for the duration of deferred entry of judgment. ☐ Have no contact with / stay away from: ☐ PC136.2 Protective Order Issued

☐ Previously ordered: ☐ 4th WAIVER ☐ continued ☐ deleted ☐ PROTECTIVE ORDER ☐ continued ☐ deleted.

WARRANT ☐ Arrest ☐ Bench ☐ Warrant ordered ☐ Bail set at $ ☐ No Bail ☐ ISSUED ON:

☐ Schedule for hearing ☐ Mandatory Appearance ☐ Night Service Auth. ☐ Cash bail may be forfeited. ☐ HOLD issuance to DATE SET ABOVE.

☐ Warrant previously ordered/issued ☐ remains outstanding ☐ rescinded ☐ RECALLED ON:

☐ Affidavit requested. Due by:

BAIL STATUS Bail is ☐ exonerated ☐ forfeited ☐ fine from bail, refund balance. ☐ Decl. of non-collusion/ reassumption of liability filed.

☐ Bail forfeiture set aside and bond reinstated/exonerated ☐ upon payment of court cost $ within 30 days ☐ cost waived

☐ Bond #: Bond $ Bond Co.

Attest a true copy Date: CLERK, by , Deputy Clerk

Distribution by: on to: Jail Deft. Atty. Pros. Prob. R&R Interpreter Assessment Other:

SDSC CRM-150(Rev. 5-06) MISDEMEANOR/FELONY – PRE-DISPOSITION MINUTES

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

[X] Central Division [ ] East County Division [ ] North County Division [ ] South County Division Waivers: [X] Time

PEOPLE vs. COBB JOHN H STATUS: OR $ [ ] BB [ ] OS (Y/N)

CASE: 283663 PROS. #: EA115501 DOB: 091059 BKG #: CTS: 0 days hrs.

DATE: 2-21-05 AT 01:32 DEPT. # TSD INTERPRETER: [ ] Spanish [ ] Sworn [ ] Oath on File

JUDGE / COMM/PRO-TEM: ROBERT C. RICE [ ] STIP. FILED REPORTER - CSR #

CLERK: Olley TAPE # 2 COUNTER # 796

CHARGE(S): PC484(A)-488 PC 602 (K)

FUTURE DATES: [ ] CONFIRMED [ ] VACATED

T. Rogen — Attorney for the People (DDA / DCA) P. DEFENDERS B 93-35 CB — Attorney for the Defendant (PD / APD / PCC / Retained / Counseling)

[X] Defendant present / by / with / without counsel [ ] in pro per [ ] via audio/video [ ] not produced in courtroom [ ] Defendant failed to appear

**[ ] 4TH AMENDMENT WAIVER PREVIOUSLY ORDERED [ ] PROTECTIVE ORDER PURSUANT TO PC136.2 PREVIOUSLY ISSUED**

[X] Defendant waives [ ] arraignment for judgment [X] time for judgment.

**PROBATION** is [X] **GRANTED** [ ] **Formal** [X] **Summary** 3 on the following conditions: [ ] **DENIED** and defendant sentenced as follows:
[X] As to 1, 2 [X] Imposition of sentence is suspended for 3 years. [ ] As to ___ [ ] Imposition of sentence is suspended for ___ years.
[ ] Serve 90 / 180 / 365 / ___ days in the custody of the Sheriff; [ ] EXECUTION OF CUSTODY IS SUSPENDED for ___ years.
[ ] Comply with [ ] Street [ ] Gang [ ] Drug [ ] Graffiti [ ] Additional conditions attached. [X] Violate no laws [X] minor traffic violations excepted.

**CUSTODY** [ ] Serve ___ days / hrs. in the custody of the Sheriff; ___ days suspended ___ days / hrs CTS (___ days actual ___ days PC4019)
[ ] ___ days custody stayed pending [ ] successful completion of probation [ ] ___ [ ] review hearing.
[ ] Serve FORTHWITH [ ] Work Release - call within 72 hours for reporting date. [ ] Book & Release [ ] Report on ___ at ___
to: Detention Facility: [ ] Central [ ] Las Colinas [ ] Vista [ ] Short Term Work Furlough [ ] Serve [ ] consecutive to [ ] concurrent with: ___
[ ] Consecutive weekends [ ] NO Early release (PC4018.6 or 4024.1) [ ] NO Work Release [ ] NO County Parole [ ] NO ESP/Home Detention
[ ] CUSTODY [ ] IN LIEU OF [ ] $ ___ fine at $50.00/ $ ___ per day [ ] ___ days PSWP
[ ] CUSTODY SATISFIED BY [ ] ___ days PSWP [X] ___ days in [ ] ___ [ ] residential rehabilitation program.

**FINES/FEES** [X] Attorney Fee $ 100. [X] Add to Fine [ ] Indigent as to Attorney Fees

| | | | |
|---|---|---|---|
| Pay Fine (Ct. 2) $ 419 | State Rest Fnd Fine $ | A/R Fee $ | TOTAL DUE $ 579 |
| Fine (Ct. ) $ | Security Fee $ | $ | |
| Dom. Violence Fund $ | Admin. Fee $ | [Suspended Amount $ ] | |
| Probation Revocation Restitution Fine imposed & suspended $ 100. | | [Credit for ___ days served $ ] | |

[X] Payments set at $ 150 per month beginning on 10-20-06 and on the ___ of each month thereafter until paid in full.
[X] Fines and Fees stayed pending [ ] DVRP completion [ ]
*The Court finds the defendant has the ability to repay the County of San Diego for costs of Court Appointed Attorney fees. This order is not a condition of probation.

**RESTITUTION** [ ] Pay restitution to the victim of $ ___ [ ] to be determined [ ] by Probation, payments through [ ] Court Collections
[ ] Revenue & Recovery [ ] at $ ___ per month beg. ___ [ ] directly to the victim and show proof to the court [ ] by ___ [ ] at Review Hrg.
[ ] See stipulated restitution order. [ ] Court retains jurisdiction re: restitution [ ] Submit to civil process.

**PUBLIC SERVICE WORK PROGRAM (PSWP)/VOLUNTEER WORK** [ ] COMPLETE
[ ] **PSWP** [ ] Call within 72 hrs. to enroll. (see reverse) [ ] Enroll by: ___ [ ] **VOLUNTEER WORK** [ ] at any non-profit organization
8 days as condition of probation. [ ] at organization on Court approved list [ ] Other: ___
8 days in lieu of [X] fines/fees $ 389 [ ] ___ days custody ___ hours as condition of probation.
8 days credit for time served/completed ___ hours in lieu of [ ] fines/fees $ ___ [ ] ___ days custody
8 TOTAL days to be completed ___ hours credit for time served/completed
[ ] One day per week authorized [ ] Out of county work authorized ___ TOTAL hours to be completed
[ ] To run consecutive to /concurrent with ___ [ ] Submit proof to the Court by ___ [ ] ___ days custody for each day/8 hours missed
[ ] PSWP [ ] VOLUNTEER WORK Stayed pending DVRP completion

**ALCOHOL/DRUGS** [ ] Abstain from alcohol. [ ] Not frequent places where alcohol is the primary source of business, except in the course of employment.
[ ] Not use or possess any controlled substance without a valid prescription. [ ] Submit to any test at the request of a peace officer for detection of alcohol/drugs in system. [ ] Submit person, property, place of residence, vehicle, personal effects to search at any time with or without a warrant, and with or without reasonable cause, when required by a Probation Officer or other law enforcement officer. (to expire ___)
[ ] Complete a [ ] Residential [ ] Non-Residential treatment program for ___ days/months. Proof due by ___

**EDUCATION/TESTING** [ ] **ATTEND AND COMPLETE:** [ ] Anger Management (___ hours/sessions) [ ] Parenting Ed. (___ hours/sessions)
[ ] Certified 52 wk Domestic Violence Rehab. Program. [ ] STOP [ ] Shoplifting Ed. [ ] Safe Boating Class [ ] 8 hr. Repeat/Traffic Offenders Traffic School.
[ ] ___ course [ ] through ___
[ ] Submit to [ ] Sheriff to administer [ ] HIV TEST pursuant to PC1202.1. [ ] HIV/AIDS Ed. [ ] while in custody [ ] as directed by Assessor.
[ ] Out of County authorized. [ ] AA / NA / CA / MA Mtgs, ___ times per [ ] wk [ ] mo. for ___ days / months.
[ ] Commence/continue education, psychological, psychiatric, drug, alcohol or other rehab. program recom. by the Assessor and not leave or terminate such program without written permission of the Court and/or therapist. [ ] Seek/maintain full-time employment, education, training, or a combination thereof.
[ ] **PROOF OF** [ ] Test Results [ ] ENROLLMENT ___ [ ] PROGRESS ___ [ ] COMPLETION [ ] by ___
to the [ ] Court [ ] at REVIEW HEARING(S) [ ] Assessment Unit [ ] AND every 30 / 60 / ___ days THEREAFTER.

**VIOLENCE/WEAPONS** [ ] Not use force or violence upon another. [ ] Have no contact with any victim or complaining witness in this matter.
[ ] Not own or have possession, custody or control of any WEAPONS or FIREARMS. [ ] Weapon(s) to be [ ] destroyed [ ] returned to ___
[ ] Defendant advised that within 10 years of this conviction, owning/possessing/having custody or control of any firearm is a crime pursuant to PC 12021(c)(1).
[ ] Protective Order issued pursuant to PC136.2 - See Protective Order for specific conditions. [ ] PC12021 Notice given.

**DRIVERS LICENSE** [ ] Not drive without a valid license and liability insurance [ ] VC14607.6 advisal given. [ ] License is [ ] suspended [ ] revoked
[ ] ___ days / yrs. [ ] pursuant to [ ] VC13202 [ ] .3(a) (cont. subs.) [ ] .5 (under21) [ ] .6 (graffiti)
[ ] License to be surrendered to the court [ ] by ___ [ ] Defendant petitions for a restricted license. [ ] Critical need found. Petition granted [ ] Petition denied. [ ] License restricted for ___ [ ] days [ ] mos. Driving permitted to/from [ ] work [ ] school [ ] court ordered activities [ ] in course of employment.

**MISC.** [ ] Comply with all Family/Juvenile Court orders. [X] Stay ___ away from TARGET [ ] Not unlawfully enter the United States.
[ ] Register pursuant to [ ] HS11590 [ ] PC290 [ ] PC457.1. [ ] Not take, hold or receive property of another without written consent of the owner.
[ ] Property impounded/seized by law enforcement or held in the custody of the court is ordered disposed of pursuant to that agency/court policy.
[ ] Defendant has provided DNA database samples – PC296(f). 1288 Cam. del Rio N/O.

**REFERRALS** Report [X] forthwith [ ] by ___ to [ ] Assessment Unit [ ] Probation Dept. re: ___
[X] Court Collections [ ] Revenue & Recovery [ ] Credit Agency and comply with additional conditions of probation imposed.

**[ ] DEFENDANT IS ORDERED TO APPEAR ON ___ AT ___ IN DEPT ___ FOR:**
[ ] Sentencing [ ] Restitution [ ] Execution of Custody [ ] C.O.P. Form [ ] Review regarding
[ ] ___ [ ] enrollment [ ] progress [ ] completion. [ ] probation conditions noted above.

**OTHER** Waive Atty Fee

**CUSTODY STATUS** [ ] Deft. **REMANDED** to custody of Sheriff, bail $ ___ [ ] WITHOUT BAIL [ ] as set [ ] increased [ ] reduced
[X] Deft. **RELEASED:** [ ] on bail previously posted [ ] on probation [ ] after booking [ ] OR/SOR [ ] same terms and conditions
[ ] to an authorized representative of: ___ on ___ at ___
[ ] Previously ordered: [ ] 4th WAIVER [ ] continues [ ] deleted [ ] **PROTECTIVE ORDER** [ ] continues [ ] deleted.

**WARRANT** [ ] Bench WARRANT ordered [ ] Bail set at $ ___ [ ] No Bail [ ] **ISSUED ON** ___
[ ] Mandatory Appearance [ ] Night Service Authorized [ ] Cash bail may be forfeited. [ ] **HOLD** issuance of warrant to DATE SET ABOVE.
[ ] Warrant previously ordered/issued [ ] remains outstanding [X] rescinded [ ] **RECALLED ON:** ___

**BAIL STATUS** Bail is [ ] exonerated [ ] forfeited [ ] Fine from bail, refund balance. [ ] Declaration of non-collusion/ reassumption of liability filed.
[ ] Bail forfeiture set aside, bond reinstated/exonerated upon payment of court cost $ ___ within 30 days [ ] cost waived
[ ] Bond # ___ Bond $ ___ Bond Company ___

Attest a true copy Dated: ___ CLERK, by ___ Deputy Clerk

Distribution by: [signature] on 8-21-06 to: Jail Deft. Atty. Pros. Prob. R&R Interpreter Assessment Other: ___

SDSC CRM-148(Rev. 12-05) **MISDEMEANOR – Judgment Minutes**

# Exhibit No. 10

**Findlaw " suggestive conduct " search result – more readable.**

1. People v. Bremmer (1973) [30 Cal.App.3d 1058]
2. People v. Kukkanen [248 Cal.App.2d Supp. 899]
3. In re Daniel G. (2004) 120 Cal.App.4th 824 [-- Cal.Rptr.3d --]
4. In re Daniel G. (2004) [ Cal.App.4th ]
5. In re Hall [30 Cal.3d 408]
6. People v. Superior Court (Caswell) (1988) 46 Cal.3d 381 [758 P.2d 1046; 250 Cal.Rptr. 515]
7. People v. Boyd (1990) 222 Cal.App.3d 541 [271 Cal.Rptr. 738]

http://caselaw.lp.findlaw.com/scripts/callawft.pl?CiRestriction=%22suggestive+conduct+%22 - Windo...

http://caselaw.lp.findlaw.com/scripts/callawft.pl?CiRestriction=%22suggestive+conduct+%22

File Edit View Favorites Tools Help

Yahoo! http://cas... Google Google Google Page Tools

Note: To view cases, you must first REGISTER or sign into MY FindLaw.

# Search Results

*Query:* "suggestive conduct "

1. People v. Bremmer (1973) [30 Cal.App.3d 1058]
2. People v. Kukkanen [248 Cal.App.2d Supp. 899]
3. In re Daniel G. (2004) 120 Cal.App.4th 824 [-- Cal.Rptr.3d --]
4. In re Daniel G. (2004) [ Cal.App.4th ]
5. In re Hall [30 Cal.3d 408]
6. People v. Superior Court (Caswell) (1988) 46 Cal.3d 381 [758 P.2d 1046, 250 Cal.Rptr. 515]
7. People v. Boyd (1990) 222 Cal.App.3d 541 [271 Cal.Rptr. 738]

Internet 250%

# Exhibit No. 11

# OFFICER J. REYES

**( Typed out and Sentence-Numbered Police Report, showing discrepancies between Reyes and Gustafson reports. )**

**[ Reyes' Sentence-Numbered Police Report ( " Rey-SNPR "), is Exhibit no. 5. Gustafson's Sentence-Numbered Police Report ( " Guf-SNPR "), is Exhibit No. 6. ]**

SYNOPSIS/ELEMENTS:

1. John Harold Robert Cobb was placed under private person's arrest by Atila Cilingir, after COBB was seen looking over the bathroom stall wall.
2. COBB was issued a notice to appear citation for loitering in or about a public toilet per section 647 (d) PC.
3. COBB was directed to leave the UCSD campus for seven days per section 626.6 PC.
4. COBB was released at the scene.

ORIGIN:

5. On 02-03-2006 at about 1745 hours, I received a radio call of a lewd act that was committed in the men's restroom located at Pepper Canyon Hall.

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Gustafson states that there was *no* radio call report of a " lewd act that was committed " in the bathroom. Compare to Guf-SNPR, line 3. Gustafson's report just states a radio call about a man " looking into bathroom stalls.". No where in Gustafson's report is there a reference to any lewd, or lewd type act. There is no reference in Gustafson's report to any specific criminal statute, except " 626.6 PC " ( Guf-SNPR, line 38 ). ].**

INVESTIGATION:

6. The suspect, later identified as COBB was described as a white male adult, dressed in a white shirt and white pants, wearing black shoes.
7. COBB was seen heading north along Russell lane towards the UCSD Price Center.
8. As I was entering the cul-de-sac of lot 411, I saw COBB walking west bound on Lyman Lane and heading towards the east entrance of the Price Center.
9. I saw Corporal Gustafson #601 is his marked patrol car approaching me on Lyman lane.
10. Corporal Gustafson and I contacted COBB at the east entrance of Price Center.
11. COBB appeared to be nervous.
12. I asked COBB for some identification.
13. COBB asked my why he was being contacted.
14. I told COBB that he fit the description of a suspicious male that was seen looking over

a stall in the men's restroom.

15. COBB denied it was him and told me that he did not need to show me any identification or tell me who he was.
16. Corporal Gustafson asked COBB again if he had any identification on him.

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Reyes states that right before COBB accesses his backpack for the first time, Gustafson asks COBB for identification. Whereas, Gustafson states that, right before COBB accesses his backpack for the first time, Reyes stated that COBB matched a description of a suspicious male. Gustafson has COBB being asked once for id, before he accesses his backpack for the first time. Whereas Reyes has COBB being asked twice for id, once by each officer, before accessing his backpack. ].**

17. COBB then placed his backpack on the ground and looked through one of the pockets.

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Reyes' report states that COBB puts his backpack onto the ground for his first backpack access. Reyes' Sentence-Numbered Police Report ( "Rey-SNPR "), line 17.**

**Whereas, Gustafson's report does not say COBB put his backpack onto the ground for his first backpack access, and states that COBB dropped his backpack after the police physically grabbed him, during COBB's third ( " another compartment " ) backpack access, at Guf-SNPR, line 28.**

**Gustafson states that the first time he told COBB to put his backpack down, was after COBB was already doing his *third* access in "another compartment " ( Guf-SNPR, line 18 ) – Gustafson's Sentence-Numbered Police Report ( " Guf-SNPR "), lines 20, and 22. Gustafson states that COBB was still holding his backpack while he conducted his third ( " another compartment " ) access – Guf- SNPR, line 22-23. Gustafson states that COBB was holding his backpack until after the officers made physical contact with COBB; Guf -SNPR, line 28 – " Cobb dropped the backpack ". ]**

18. Corporal Gustafson told COBB to step away from the backpack and to let us search for his wallet.
19. COBB told us that we did not have the right to search him or his belongings and pulled out his wallet from his backpack.

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Both reports have COBB accessing his backpack three times. Once to take out the wallet,, once to put the wallet back, and a third access later.**

**But Gustafson's own report has COBB taking out his wallet from his backpack, and then putting the wallet back, *without* Gustafson objecting to these first two COBB backpack accesses. Whereas, Reyes' report has Gustafson objecting to COBB's backpack access during COBB's first access, at Rey-SNPR, line 18.**

**Compare Reyes' Sentence-Numbered Police Report ( "Rey-SNPR "), lines 16-20, with Gustafson's Sentence-Numbered Police Report ( " Guf-SNPR "), lines 14-17. Note also in Gustafson's report, that there is no Gustafson telling COBB not to access his backpack, before lines Guf-SNPR 14-17 ( Cobb takes out his wallet also puts is back; two accesses ).**

**In Reyes' report, the first Gustafson-telling-COBB-not-to-search is at Rey-SNPR line 18, *during* COBB"s <u>first access</u> ( Rey-SNPR line 17), and before COBB's <u>third (" another compartment ") access</u> ( Rey-SNPR line 21 ).**

**Whereas, in Gustafson's own report, the first Gustafson-telling-COBB-not-to-access is at Guf-SNPR line 20, well *after* COBB's <u>first access</u> ( Guf-SNPR, line 16 ), and *during* COBB's <u>third access ( "another compartment ")</u> ( Guf-SNPR, line 18-19 ).**

**In other words, Gustafson ( as per his report ) had no safety concerns before and during COBB's first two backpack accesses, at Guf-SNPR, lines 16-17. ].**

20. COBB told us again that he did not need to show us any identification and put his wallet back into the pocket.
21. COBB then began to look through another compartment of his bag.
22. As COBB was looking through the other compartment, Corporal Gustafson tried to pull his backpack away from him and COBB resisted.

**[ Here there is a discrepancy with Officer Gustafson's report. Reyes states that Gustafosn *tried* to pull " the backpack out of COBB's hands, and COBB resisted. Whereas, Gustafson states that he actually pulled the backpack out of COBB's hands – Guf-SNPR, line 24;**

> **" I pulled the backpack out of his hands.".**

**And again, at line 32;**

> **" I told COBB that I pulled the backpack out of his hands because he refused my orders to put his backpack down and continued searching through the backpack ". Guf-SNPR, line 32.**

**And again at Guf-SNPR, line 33;**

> **" I told him I though he may have a weapon and I grabbed his backpack from him and handcuffed him for my safety".**

**And yet again at Guf-SNPR, line 34;**

> **" I asked COBB if he understood why I took his backpack and handcuffed him ".**

**Gustafson then states, COBB *tried* to pull it back – Guf-SNPR, line 25 ( " COBB tried to pull it back out of my hands " ).**

**Note that Gustafson is able to make the distinction of *pulling a backpack out* of someone's hands ( Guf-SNPR, lines 24, 32, 33, and 34 ), and *trying to pull a backpack out* of someone's hands ( Guf-SNPR, line 25 ).**

**Further, Gustafson states that COBB dropped his backpack after Gustafson had taken the backpack away from COBB: " COBB dropped his backpack "; Guf-SNPR, line 28. This is not possible. Nowhere in Gustafons' report does he say that COBB got the backpack back, after Gustafson had pull it out of COBB's hands. ].**

23. I grabbed COBB's left arm and placed it behind his back in a rear wrist lock.
24. Corporal Gustafson grabbed COBB's right arm and placed it behind his back in a rear wrist lock.

**[ Here there is a discrepancy with Officer Gustafson's report. No where does Reyes state that COBB dropped his backpack. Gustafson states " COBB dropped his backpack " at Guf-SNPR, line 28. ].**

25. As we were placing COBB in handcuffs, COBB fell over a small sloped wall behind him into some plants.

**[ Here there is a discrepancy with Officer Gustafson's report. Reyes has COBB first being handcuffed, and then falling over into some plants. Whereas, Gustafson has COBB falling foreword onto the ivy first, and then being handcuffed; Guf-SNPR 30. ].**

26. Corporal Gustafson stayed with COBB and I met with the victim Atila Cilingir.
27. CILINGIR provided the following statement:

28. [ Statement of Atilia Cilingir not include here. Is in typed out Ailia Cilingir Section. ].
29. After talking to CILINGIR, I accepted CILINGIR'S private person's arrest of COBB.
30. I told COBB that he was being placed under private person's arrest for loitering in or about a public toilet per section 647 (d) PC and was ordered off campus for seven days per 626.6 PC.

**[ Here there is a discrepancy with Officer Gustafson's report. Gustafson does not state anywhere in his report that " loitering " had occurred, or anything like " loitering " had occurred. Neither officer states that a COBB committed a privacy violation. There is no**

**reference in Gustafson's report to any specific criminal statute, except " 626.6 PC " ( Guf-SNPR, line 38 ). ].**

31. Sergeant Morris #651 took three digital photographs of COBB ( attached to the report ).
32. I read COBB his Miranda Rights per my department notebook and asked COBB if he understood his rights.
33. COBB responded, "Yes," and said, "He had nothing to say".
34. I issued COBB a written notice to appear, citation #UC 62151 for violation of 647 (d) PC.
35. I then read COBB the off campus order.
36. COBB said he understood and was given a copy of the 626.6 PC order.
37. COBB was released at the scene.

# Exhibit No. 12

12

**OFFICER S. GUSTAFSON**

**( Typed out and Sentence-Numbered Police Report, showing discrepancies between Reyes and Gustafson reports. )**

**[ Reyes' Sentence-Numbered Police Report ( " Rey-SNPR "), is Exhibit no. 5. Gustafson's Sentence-Numbered Police Report ( " Guf-SNPR "), is Exhibit No. 6. ]**

INVOLVED PARTY:

1. John Harold Robert COBB.
2. DOB: 09/10/1959

NARRATIVE:

3. On 02/03/2006, at approximately 1745 hours, I received a radio call of a male looking into bathroom stalls in the men's restroom at Pepper Canyon Hall on the UCSD campus.

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Reyes states there was a call of a " lewd act " " committed " in the men's restroom; Rey-SNPR, line 5. Gustafson states that there was *no* radio call report of a " lewd act that was committed " in the bathroom. Compare to Rey-SNPR, line 5. No where in Gustafson's report is there a reference to any lewd, or lewd type act. There is no reference in Gustafson's report to any specific criminal statute, except " 626.6 PC " ( Guf-SNPR, line 38 ). ].**

4. I was told the suspect was a tall white male, approximately 210 pounds, wearing all white, carrying a purple backpack.
5. He was last seen walking north on Russell Lane.
6. I drove north on Russell Lane from Gilman Drive to Lyman Lane.
7. When I reached Lyman Lane, I looked west and saw a male matching the description of the suspect walking westbound on Lyman Lane.
8. At that time, Officer REYES (#606) advised on his radio that he also saw the suspect.
9. He was on Lyman Lane, approaching the Price Center loading dock.
10. As I pulled up to the Price Center loading dock, Atila Veli CILINGIR, the reporting party, pointed to the male and said, " That's him ".
11. Officer REYES caught up to the suspect at the east entrance to the Price Center food court.
12. Officer REYES asked the male for identification.
13. The male, later identified as John Harold Robert COBB, refused to provided identification or tell us his name.

14. He said he did not have to provide identification.
15. Officer REYES told him that he matched the description of a male seen looking into bathroom stalls.

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Reyes states that right before COBB accesses his backpack for the first time, Gustafson asks COBB for identification. Whereas, Gustafson states that, right before COBB accesses his backpack for the first time, Reyes stated that COBB matched a description of a suspicious male. Gustafson has COBB being asked once for id, before he accesses his backpack for the first time. Whereas Reyes has COBB being asked twice for id, once by each officer, before accessing his backpack. ].**

16. Then COBB reached into his backpack and pulled out his wallet.

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Reyes' report states that COBB puts his backpack onto the ground for his first backpack access. Reyes' Sentence-Numbered Police Report ( "Rey-SNPR "), line 17.**

**Whereas, Gustafson's report does not say COBB put his backpack onto the ground for his first backpack access, and states that COBB dropped his backpack after the police physically grabbed him, during COBB's third ( " another compartment " ) backpack access, at Guf-SNPR, line 28.**

**Gustafson states that the first time he told COBB to put his backpack down, was after COBB was already doing his *third* access in "another compartment " ( Guf-SNPR, line 18 ) – Gustafson's Sentence-Numbered Police Report ( " Guf-SNPR "), lines 20, and 22. Gustafson states that COBB was still holding his backpack while he conducted his third ( " another compartment " ) access – Guf- SNPR, line 22-23. Gustafson states that COBB was holding his backpack until after the officers made physical contact with COBB; Guf -SNPR, line 28 – " Cobb dropped the backpack ". ]**

**[ Here there is a discrepancy between Reyes' report, and Gustafson's report. Both reports have COBB accessing his backpack three times. Once to take out the wallet,, once to put the wallet back, and a third access later.**

**But Gustafson's own report has COBB taking out his wallet from his backpack, and then putting the wallet back, *without* Gustafson objecting to these first two COBB backpack accesses. Whereas, Reyes' report has Gustafson objecting to COBB's backpack access during COBB's first access, at Rey-SNPR, line 18.**

**Compare Reyes' Sentence-Numbered Police Report ( "Rey-SNPR "), lines 16-20, with Gustafson's Sentence-Numbered Police Report ( " Guf-SNPR "), lines 14-17. Note also in**

**Gustafson's report, that there is no Gustafson telling COBB not to access his backpack, before lines Guf-SNPR 14-17 ( Cobb takes out his wallet also puts is back; two accesses ).**

**In Reyes' report, the first Gustafson-telling-COBB-not-to-search is at Rey-SNPR line 18, *during* COBB"s <u>first access</u> ( Rey-SNPR line 17), and before COBB's <u>third</u> <u>(" another compartment ") access</u> ( Rey-SNPR line 21 ).**

**Whereas, in Gustafson's own report, the first Gustafson-telling-COBB-not-to-access is at Guf-SNPR line 20, well *after* COBB's <u>first access</u> ( Guf-SNPR, line 16 ), and *during* COBB's <u>third access ( "another compartment ")</u> ( Guf-SNPR, line 18-19 ).**

**In other words, Gustafson ( as per his report ) had no safety concerns before and during COBB's first two backpack accesses, at Guf-SNPR, lines 16-17. ].**

17. Then he quickly put it back into his backpack, saying that he did not have to show us his identification.
18. Then COBB opened up another compartment of his backpack.
19. He was quickly and frantically reaching around the compartment.
20. I told COBB to put his backpack down and I would help find his identification.
21. COBB said, " You don't have permission to search me".
22. I told him again to put his backpack down.
23. He continued to reach around for something in his backpack.
24. I feared that COBB was searching for a weapon and I pulled the backpack out of his hands.

**[ Here there is a discrepancy with Officer Reyes' report. Reyes states that Gustafosn *tried* to pull " the backpack out of COBB's hands, and COBB resisted. Whereas, Gustafson states that he actually pulled the backpack out of COBB's hands – Guf-SNPR, line 24;**

> **" I pulled the backpack out of his hands.".**

**And again, at line 32;**

> **" I told COBB that I pulled the backpack out of his hands because he refused my orders to put his backpack down and continued searching through the backpack ". Guf-SNPR, line 32.**

**And again at Guf-SNPR, line 33;**

> **" I told him I though he may have a weapon and I grabbed his backpack from him and handcuffed him for my safety".**

**And yet again at Guf-SNPR, line 34;**

> **" I asked COBB if he understood why I took his backpack and handcuffed him ".**

**Gustafson then states, COBB *tried* to pull it back – Guf-SNPR, line 25 ( " COBB tried to pull it back out of my hands " ).**

**Note that Gustafson is able to make the distinction of *pulling a backpack out* of someone's hands ( Guf-SNPR, lines 24, 32, 33, and 34 ), and *trying to pull a backpack out* of someone's hands ( Guf-SNPR, line 25 ).**

**Further, Gustafson states that COBB dropped his backpack after Gustafson had taken the backpack away from COBB: " COBB dropped his backpack "; Guf-SNPR, line 28. This is not possible. Nowhere in Gustafons' report does he say that COBB got the backpack back, after Gustafson had pull it out of COBB's hands. ].**

25. COBB tried to pull it back out of my hands.
26. At that time, Officer REYES put COBB"s left arm behind his back, into a rear writs lock.
27. I put COBB's right arm behind his back, into a rear wrist lock.
28. COBB dropped the backpack.

**[ Here there is a discrepancy with Officer Reyes' report. No where does Reyes state that COBB dropped his backpack. ].**

29. There was a short wall in front of COBB with ivy on the other side.
30. COBB fell foreword onto the ivy and I handcuffed him.

**[ Here there is a discrepancy with Officer Reyes' report. Reyes has COBB first being handcuffed, and then falling over into some plants. Whereas, Gustafson has COBB falling foreword onto the ivy first, and then being handcuffed; Guf-SNPR 30. ].**

31. Officer REYES went to talk to CILINGIR while I monitored COBB.
32. I told COBB that I pulled the backpack out of his hands because he refused my orders to put his backpack down and continued searching through the backpack.
33. I told him I thought he may have a weapon and I grabbed his backpack from him and handcuffed him for my safety.
34. I asked COBB if he understood why I took his backpack and handcuffed him.
35. He said, 'Yes".
36. Sgt. Morris (#651) arrived within a few minutes to assist.
37. COBB was placed under private person's arrest by CILINGIR.
38. Officer REYES issued COBB a notice to appear citation and a 626.6 P.C. stay away order.

**[ Here there is a discrepancy with Officer Reyes' report. Gustafson does not state**

**anywhere in his report that " loitering " had occurred, or anything like " loitering " had occurred. Neither officer states that COBB committed a privacy violation. There is no reference in Gustafson's report to any specific criminal statute, except " 626.6 PC " ( Guf-SNPR, line 38 ). ].**

39. COBB was released at the scene.

# Exhibit No. 13

# POLICE REPORT STATEMENT OF ATILA CILINGIR

**( Analysis of Reporting Party and Victim's Statement, as Typed out and Sentence-Numbered, from the U.C.S.D. Police Report. )**

[ **Cilingir's Sentence-Numbered Police Report ( " Cil-SNPR "), is Exhibit no. 7.**

STATEMENTS:

1. Atila CILINGIR–Victim/ Reporting Party
2. CILINGIR told me that COBB was in the bathroom and that he was in the stall next to COBB.
3. CILINGIR told me that he was standing up with his clothing, pants and underwear pulled down and his genitals hanging out.

[ **This would be normal for men going into the men's bathroom. Men urinate and defecate in bathrooms. They take their pants down to do this. The fact that Mr. Cilingir was naked was never observed nor known by COBB. There is no indication that COBB viewed Cilingir's nudity, or tired to view Cilingir's nudity. ].**

4. CILINGIR told me he looked up and saw COBB looking at him over the bathroom stall wall.

[ **This would not be unusual for a tall man, like COBB, whose head would rise above the stall partition. Or in a bathroom with low rising toilet partitions. ].**

5. CILINGIR asked COBB what he was doing.
6. CILINGIR told me that COBB mumbled something to him and continued looking at him.

[ **This is not what happened. COBB's version, is that, upon seeing COBB, Cilingir said, something equivalent to, "what are you doing ?", and COBB said, excuse me, and COBB then looked away. ].**

7. CILINGIR told me he felt very uncomfortable.
8. CILINGIR then pulled up his pants and immediately left the bathroom.

[ **COBB never knew that Cilingir had his pants down. COBB only saw the very top of Cilingir's head, above the partition. ].**

9. CILINGIR told me that he waited outside the restroom and followed COBB to the Price Center, he called the UCSD police department as he followed COBB.

[ **COBB never was aware that he was being followed. COBB was identified later by Cilingir, through the U.C.S.D. police. ].**

10. CILINGIR told me that he would like to place COBB under private person's arrest per 647 (d) PC.

[ **There is no statement of fact which is sufficient for a lewd conduct charge against COBB. There is no statement of fact, that COBB did anything illegal at all. No statement of fact that COBB violated Cilingir's privacy. There is no statement of fact that COBB did anything which constituted suggestive behavior. There is no statement of fact that Cilingir had a reasonable expectation of privacy. No statement of fact as to whether Cilingir had the door to the toilet stall he was in, opened or closed. There is no statement of fact as to whether the toilet stall that Cilingir was occupying had a door or not. There is no statement of fact as to how high the toilet stall partitions rise.**

**There is no statement of fact that COBB violated any law at all.**
**There is no statement of fact that Cilingir was the victim of any crime at all. ].**